**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-01066 |
| | ) | |
| The UNITED STATES OF | ) | |
| AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**<u>MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................2

BACKGROUND ................................................................................4

STANDARD .......................................................................................7

ARGUMENT ......................................................................................8

I.   Florida's Challenges to NTRs are Moot....................................8

II.   Florida Lacks Standing ...........................................................9

III.   The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.13

    A. Committed to Agency Discretion.......................................13

    B. No Final Agency Action ...................................................17

    C. Statutes Preclude Jurisdiction..........................................20

    D. Florida Does Not Fall Within the Zone of Interests...........................22

IV.   Plaintiff Fails to State a Claim for Relief ................................23

    A. Counts One and Four (Substantive APA Claims)..............................24

    B. Count Two (APA Arbitrary and Capricious Claim) ...........................28

    C. Count Three (APA Notice and Comment)...........................................30

    D. Count Five (INA and Constitution Claim) .........................................32

CONCLUSION..................................................................................35

CERTIFICATE OF COMPLIANCE ................................................36

**CERTIFICATE OF SERVICE** ..............................................................**36**

# TABLE OF AUTHORITIES

## CASE LAW

*Alonso-Escobar v. USCIS Field Off. Dir. Miami, Fla.*,
   462 F. App'x 933 (11th Cir. 2012) ........................................................16

*Arizona v. United States*,
   567 U.S. 387 (2012) ........................................................ 2, 14, 15, 27

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015)............................................. 10, 12, 13

*Ashcroft v. Iqbal*,
   556 U. S. 662 (2009) ...................................................... 8, 33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................... 8, 29

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................ 12, 17, 19, 20

*California v. Texas*,
   141 S. Ct. 2104 (2021) ..................................................................10

*Cantonis Co. v. Certain Interested Underwriters at Lloyds, London*, No.,
   18-81703-CIV, 2019 WL 3429962 (S.D. Fla. May 9, 2019)............................24

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ........................................................26

*Chiles v. United States*,
   69 F.3d 1094 (11th Cir. 1995).............................................17

*City of Columbus v. Trump*,
   453 F. Supp. 3d 770 (D. Md. 2020) ......................................34

*Clarke v. Security Indus. Ass'n*,
   479 U.S. 388 (1987) ................................................... 22, 23

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015)................................................ 11, 15, 27

*Ctr. for Biological Diversity v. Zinke*,
    260 F. Supp. 3d 11 (D.D.C. 2017)........................................................................30

*Damus v. Nielsen*,
    313 F. Supp. 3d 317 (D.D.C. 2018) ....................................................................28

*Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*,
    93 F.3d 897 (D.C. Cir. 1996)...............................................................................23

*Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.*,
    225 F.3d 1208 (11th Cir. 2000) .............................................................................9

*Fla. v. United States*,
    No. 8:21-CV-541-CEH-SPF, 2021 WL 1985058 (M.D. Fla. May 18, 2021) .....15

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ...............................................................................10

*Foster Children v. Bush*,
    329 F.3d 1255 (11th Cir. 2003) ...........................................................................13

*Garcia-Mir v. Smith*,
    766 F.2d 1478 (11th Cir. 1985) ...........................................................................15

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ...............................................................................27

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ..................................................................................... 13, 16

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ...........................................................................................34

*INS v. Aguirre-Aguirre*,
    526 U.S. 415 (1999) .............................................................................................26

*Jean v. Nelson*,
    727 F.2d 957 (11th Cir. 1984) ...................................................................... 15, 18

*Jeanty v. Bulger*,
    204 F. Supp. 2d 1366 (S.D. Fla. 2002).......................................... 16, 20, 28, 33

*Jennings v. Rodriguez*,
  138 S. Ct. (2018)................................................................................26

*Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ...................................................................... 4, 33

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) ...........................................................7

*Lightfoot v. D.C.*,
  273 F.R.D. 314 (D.D.C. 2011) ............................................... 19, 20, 29

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ..........................................................................31

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ....................................................................... 9, 23

*Loa-Herrera v. Trominski*,
  231 F.3d 984 (5th Cir. 2000) ........................................................ 22, 27

*Louisiana v. U.S. Army Corps of Engineers*,
  834 F.3d 574 (5th Cir. 2016) ............................................................20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................. 9, 12, 30

*Matter of Avetisyan*,
  25 I. & N. Dec. 688 (BIA 2012)........................................................25

*Matter of E-R-M- & L-R-M-*,
  25 I.&N. Dec. 520 (BIA 2011).................................................... 4, 26

*Matter of J-A-B- & I-J-V-A-*,
  27 I. & N. Dec. 168 (BIA 2017)........................................................26

*Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*,
  No. 16-25313-CIV, 2017 WL 1363344 (S.D. Fla. Apr. 5, 2017) ........24

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d (2014) .................................................................... 18, 19, 20

*National Parks Conservation Ass'n v. Norton*,
   324 F.3d 1229 (11th Cir. 2003) ..................................................................18

*Nat'l Treasury Emps. Union v. Nixon*,
   492 F.2d 587 (D.C. Cir. 1974) ....................................................................34

*Nasrallah v. Barr*,
   140 S. Ct. 1683, 1689 (2020). ......................................................................4

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ......................................................................................30

*Padilla v. ICE*,
   953 F.3d 1134 (9th Cir. 2020) ....................................................................28

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ............................................................................. passim

*Robbins v. Reagan*,
   616 F. Supp. 1259 (D.D.C.) ........................................................................34

*Ryder Truck Lines*,
   716 F.2d .............................................................................................. 31, 32

*Sierra Club v. E.P.A.*,
   315 F.3d 1295 (11th Cir. 2002) ....................................................................8

*Simon v. E. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976) ......................................................................................12

*State of Mississippi v. Johnson*,
   71 U.S. 475, 18 L. Ed. 437 (1866) ..............................................................34

*Sure-Tan, Inc. v. NLRB*,
   457 U.S. 883 (1984) ....................................................................................23

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ........................................................................ 14, 24, 25

*United States v. Fausto*,
   484 U.S. 439 (1988) ....................................................................................24

*United States v. Florida E. Coast Ry.*,
   410 U.S. 224 (1973) ........................................................................31

*United States v. Velasquez Velasquez*,
   524 F.3d 1248 (11th Cir. 2008) ......................................................33

*Wilderness Soc'y v. Norton*,
   434 F.3d 584 (D.C. Cir. 2006)........................................................18

## FEDERAL STATUTES

5 U.S.C. § 533 ....................................................................................31

5 U.S.C. § 551(6) ...............................................................................31

5 U.S.C. § 551(7) ...............................................................................31

5 U.S.C. § 553 ....................................................................................30

5 U.S.C. § 553(b)(3)(A) .....................................................................31

5 U.S.C. § 701(a)(1)............................................................................21

5 U.S.C. § 701(a)(2)............................................................................13

5 U.S.C. § 704 ....................................................................................17

5 U.S.C. § 706(1) ...............................................................................25

5 U.S.C. § 706(2)(A)...........................................................................24

5 U.S.C. § 706(2)(C)...........................................................................24

6 U.S.C. § 202(5) ........................................................................... 4, 17

6 U.S.C. § 251 .....................................................................................4

6 U.S.C. § 552(d) ................................................................................4

8 U.S.C. § 1103(a)(1)..........................................................................28

8 U.S.C. § 1103(a)(3) ......................................................................... 4, 17

8 U.S.C. § 1182(d)(5) ............................................................................ passim

8 U.S.C. § 1182(d)(5)(A) .................................................... 16, 19, 22, 27

8 U.S.C. § 1225 ....................................................................................14

8 U.S.C. § 1225(a)(1) .............................................................................5

8 U.S.C. § 1225(b) ..................................................................................2

8 U.S.C. § 1225(b)(1) .............................................................................4

8 U.S.C. § 1226a(b)(1) ..........................................................................24

8 U.S.C. § 1226(e) ........................................................................... 24, 27

8 U.S.C. § 1229a .....................................................................................4

8 U.S.C. § 1229c(f) ...............................................................................24

8 U.S.C. § 1231(h) ................................................................................24

8 U.S.C. § 1252(a)(2)(A) ......................................................................24

8 U.S.C. § 1252(a)(2)(A)(i) ..................................................................22

8 U.S.C. § 1252(a)(2)(A)(iv) ................................................................22

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................... 16, 24, 27, 30

8 U.S.C. § 1252(a)(2)(C) ......................................................................24

8 U.S.C. § 1252(a)(5) ...........................................................................24

8 U.S.C. § 1252(b)(4)(D) ......................................................................24

8 U.S.C. § 1252(b)(9) ...........................................................................24

8 U.S.C. § 1252(d) ................................................................................24

8 U.S.C. § 1252(f) .................................................................................24

8 U.S.C. § 1252(f)(1) .................................................................27

8 U.S.C. § 1252(g) ............................................................... 21, 24

## FEDERAL REGULATIONS

8 C.F.R. § 212.5 .................................................................. 20, 30

8 C.F.R. § 212.5(b)(5) ..............................................................28

## MISCELLANEOUS

*ICE, Exercising Prosecutorial Discretion Consistent with the Civil Immigration
Enforcement Priorities of the Agency for the Apprehension, Detention, and
Removal of Aliens,* (June 17, 2011), available at
https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-
memo.pdf ............................................................................32

*ICE Policy Directive No. 11002.1, Parole of Arriving Aliens Found to Have a
Credible Fear of Persecution or Torture,* (Dec. 8, 2009), available at
https://www.ice.gov/doclib/dro/pdf/11002.1-hd-
parole_of_arriving_aliens_found_credible_fear.pdf ............................................32

# INTRODUCTION

The "federal power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 395 (2012). Because immigration policy affects many complex and important areas, Congress constructed an immigration enforcement system whose "principal feature" is the "broad discretion exercised by immigration officials." *Id*. at 395-96. This reflects the reality—embodied in every Presidential administration's policies for decades—that officials must deploy limited resources according to priorities set by policymakers.

Consistent with that reality, earlier this year, U.S. Customs and Border Protection (CBP), a component of the Department of Homeland Security (DHS) responsible for enforcing immigration laws at ports of entry and at the border between ports of entry, authorized immigration officers at the border to take certain enforcement actions in specific circumstances to relieve overcrowding in congregate settings, to better protect its workforce and noncitizens in CBP custody, and to prioritize its limited enforcement resources.

Florida asks the Court to reconsider the Executive's prosecutorial discretion and border enforcement decisions and curtail its discretion to charge, detain, and/or release inadmissible noncitizens arriving at the Southwest border. Florida maintains that 8 U.S.C. § 1225(b) requires the government to initiate removal proceedings against every noncitizen arriving at the southern border, and to detain them for those

proceedings without exception. It alleges any contrary actions violate the Administrative Procedure Act (APA), the Immigration and Nationality Act (INA), and the Take Care Clause.

Florida misreads the law, which does not require DHS to detain all inadmissible noncitizens arriving or encountered at the border, or limit its discretion to institute removal proceedings. The INA demonstrates Congress's intent to allow the Executive to exercise its enforcement discretion in deciding what removal proceedings to initiate and who to detain for those proceedings. Nothing in the INA prohibits DHS from "declin[ing] to institute proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 484 (1999). Likewise, there is no qualification to DHS's discretion to release such individuals "temporarily … on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5).

Florida's claims are nonjusticiable and without merit. Florida's claims must be dismissed because they are filed in the wrong venue, are partially moot, they lack standing, and the actions they challenge are committed to agency discretion, not final agency action, and precluded from review by statute. Florida also lacks a cognizable cause of action to enforce the INA, and its claims all fail on the merits. Accordingly, should the Court decide this motion before it decides the pending motion to transfer, the Court should dismiss this case pursuant to Rule 12(b)(1), 12(b)(3), and 12(b)(6).

3

## BACKGROUND

Legal Background. The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). For decades, the Executive has exercised its discretionary authority to determine which noncitizens to prioritize for removal and through what type of proceedings.

Congress has provided DHS with various overlapping tools, including authority in 8 U.S.C. § 1225(b)(1) to initiate expedited removal proceedings against certain applicants for admission.[1] The Secretary may also place a noncitizen seeking admission into full removal proceedings held before an immigration judge under 8 U.S.C. § 1229a if the noncitizen is not "clearly and beyond a doubt entitled to be admitted," *id.* § 1225(b)(2)(A), by issuing a "Notice to Appear" (NTA), the charging document which initiates removal proceedings under section 1229a. The statute leaves to DHS's discretion whether to use expedited or full removal proceedings for noncitizens eligible for both. *See Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. 520, 523 (BIA 2011). Settled law also authorizes DHS not to initiate proceedings for

---

[1] References to the Attorney General in § 1225 now mean the Secretary. 6 U.S.C. §§ 251, 552(d). "Noncitizen" is the equivalent of the statutory term "alien." *Nasrallah v. Barr,* 140 S. Ct. 1683, 1689 n.2 (2020).

individuals. *Reno*, 525 U.S. at 484. Further, within certain limits, DHS may either detain or release applicants for admission pending their removal proceedings. 8 U.S.C. §§ 1182(d)(5), 1225(b)(2)(A), 1226(a).[2] DHS may at its "discretion parole noncitizens into the United States temporarily "on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.* § 1182(d)(5). DHS may also release on bond or conditional parole certain noncitizens arrested within the United States. 8 U.S.C.  § 1226(a).

Procedural Background. Beginning in March 2021, CBP temporarily authorized the use of "notices to report" ("NTRs") to relieve overcrowding in congregate settings and to better protect its workforce and noncitizens in CBP custody "when [noncitizen] encounters were consistently high, operational capacity strained, and COVID-19 acute." Exhibit A, Parole Plus Alternatives to Detention (Nov. 2, 2021) at 1. CBP authorized NTRs for issuance to individuals and family units processed through operationally strained border sectors on a case-by-case basis after initial processing and biometric screening. *Id*. NTRs were permitted in place of NTAs, the issuance of which are considerably more time consuming due to the necessary interagency coordination for initiating removal proceedings and creating an administrative record for the proceeding. *Id*. Substituting NTRs for NTAs

---

[2] An applicant for admission is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

decreased processing time substantially, especially for family units, and ensured that families could be more expeditiously moved out of CBP custody. *Id.*

On November 2, 2021, CBP issued a memorandum ceasing the use of NTRs. *Id.* Going forward, CBP will prioritize resources to issue NTAs to noncitizens being processed for release. *Id.* The memorandum outlines a narrow set of circumstances, applying exclusively to family units processed through the Del Rio ("DRT") or Rio Grande Valley ("RGV") sectors, in which alternative processing may be permitted by using parole in connection with ICE's Alternatives to Detention ("ATD") program. *Id.* at 2. The availability of this process is triggered "when the temporary staffing support to the sector is maximized, the seven-day average of encounters is greater than the sector's Fiscal Year 2019 May daily average," and when the number of subjects who were taken into custody in the last 48 hours exceeds the number of individuals booked out in the same period and at least one of the following is true: (1) the average time in custody in the sector exceeds 72 hours or (2) the sector exceeds 100% of the total non-COVID detention capacity. *Id.* Under this process, a U.S. Border Patrol agent may exercise discretion to release a family unit on parole prior to the issuance of an NTA, enroll them in ICE ATD, and as a condition of their parole, require them to report to ICE within 15 days for issuing an NTA. *Id.* at 1-2. This alternative processing is not available to individuals determined to be a national

security risk or public safety threat, or covered by the U.S. Centers for Disease Control and Prevention's Title 42 Order. *Id.* at 3.

    This Lawsuit. In this case, Florida alleges that CBP's use of NTRs specifically, and its release on parole of noncitizens on a case-by-case basis generally, violate the APA (Counts 1-4), INA (Count 2), and the INA and Take Care Clause (Count 5). *Id.* ¶¶ 9, 29, 52-72. Plaintiff asks that the Court hold unlawful and set aside Defendants' alleged "policy of releasing arriving aliens subject to mandatory detention, of paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and of failing to serve charging documents or initiate removal proceedings" and to permanently enjoin Defendants "from enforcing that policy." ECF 1 at 21.

## STANDARD

    Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 1529. "'Factual attacks" on the other hand, "challenge the existence of subject matter jurisdiction in fact … and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

7

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009). Conclusory statements and legal conclusions are not afforded a presumption of truth. *Id.* Allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).

## ARGUMENT

At the threshold, the Court should dismiss the Complaint pursuant to Rule 12(b)(3) for improper venue under 28 U.S.C. § 1406(a) and Local Rule 3.1(B) for the reasons explained in Defendants' simultaneously filed Motion to Transfer Venue. Should the Court not dismiss or transfer the case, the Court should dismiss the case under Rule 12(b)(1) because the NTR allegations are moot, Florida lacks standing, the APA's threshold requirements are not satisfied, and the INA precludes jurisdiction. Alternatively, the case should be dismissed under Rule 12(b)(6) because none of Plaintiff's counts state a plausible claim for relief.[3]

### I.    Florida's Challenges to NTRs are Moot.

---

[3] To the extent the Court does not dismiss the complaint in its entirety, all defendants except CBP should be dismissed because the complaint does not make any allegations against any of the other components of DHS, which are not involved in making admission and release determinations of noncitizens apprehended and inspected at or near the border.

Plaintiff's challenge to CBP's use of NTRs is moot because CBP has permanently ended the use of NTRs. Ex. A; *Sierra Club v. E.P.A.*, 315 F.3d 1295, 1299 (11th Cir. 2002) ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed."). CBP's November 2021 memorandum superseded the NTR guidance in all respects, such that any "decision on the merits" regarding NTRs "would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000).

## II.     Florida Lacks Standing.

Florida's case fails at the outset because it cannot demonstrate any actual or imminent injury caused by the challenged policies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Although Florida fails to identify any specific challenged policy, the complaint addresses: (1) the now-discontinued use of NTRs; (2) the current use of parole for recent entrants, including the use of parole with ATD for family units where approved sectors satisfy strict volume and capacity standards, *see* Ex. A. *See e.g.,* ECF 1 at ¶¶ 52-70. Despite the narrowness of these challenges, Florida alleges generalized harms based on its preference to prevent noncitizens arriving at the Southwest border from living in Florida. But it is well-settled that no one has a legally protected interest in the prosecution of another. *Linda R.S. v.*

*Richard D.*, 410 U.S. 614, 619 (1973). Further, the law already permits (and, in some instances, requires) the release of these individuals from immigration detention. Thus, none of the harms alleged by Florida are fairly traceable to challenged policies, nor are they capable of being remedied by an order by this Court.

Florida cannot show any actual or imminent harm from DHS's discontinued practice of issuing NTRs. Even assuming Florida's challenge to these documents were not moot, previously issued NTRs have expired and individuals issued NTRs have been directed to report for processing. Ex. A at 1. Thus, any alleged impact on Florida caused by noncitizens released on NTRs stems not from the policy, but from individual noncompliance, for which standing is "substantially more difficult to establish." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021). And, Florida cannot show that the use of an NTR, rather than an NTA, meaningfully impacted an individual's decision whether to abscond. *See Arpaio v. Obama*, 797 F.3d 11, 15-20 (D.C. Cir. 2015) (rejecting injury as too attenuated where challenged policy did not apply to current and future entrants).

Nor can Florida plausibly allege any harm from DHS's limited practice of using parole, at times in tandem with ICE's ATD program, for certain family units. Despite calling detention under section 1225(b) "mandatory," Florida concedes that DHS has the authority to release individuals on parole on a case-by-case basis. ECF 1 ¶ 6. Indeed, DHS is obligated to release noncitizen minors "without unnecessary

10

delay" or, in the case of an emergency or influx, transfer them to a licensed program "as expeditiously as possible." *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (confirming settlement agreement applies to accompanied minors); *Flores* Settlement Agreement ¶¶ 12.A, 14).

To the extent Florida is challenging that individuals are paroled too often, this claim is similarly non-justiciable. Simply providing evidence that a "state provides social benefits" to state residents, and speculating that costs will increase if the population increases, is insufficient to satisfy the requirements of Article III standing, which "mandate" Plaintiffs show "a 'concrete and particularized' injury that is 'fairly traceable'" to the challenged government action. *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015).

Plaintiff alleges that the policy will increase its noncitizen population, and that Florida will expend more resources on noncitizens than they otherwise would. ECF No. 1 ¶¶ 46-50 (alleging costs associated with prison, public education, public charge, and emergency medical care). But a state "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11. Such an injury is a generalized grievance; to accept it "would permit nearly all state officials to challenge a host of Federal laws simply

11

because they disagree with how many—or how few—Federal resources are brought to bear on local interests." *Id.*

Again, however, any such costs are not fairly traceable to the challenged policies because Florida complains of harms caused, if at all, by third parties, *see Lujan*, 504 U.S. at 562, and Florida cannot show the challenged conduct has a "determinative or coercive effect upon the action of someone else." *Bennett v. Spear,* 520 U.S. 154, 169 (1997).

Indeed, Plaintiff's theories of standing here are of another kind entirely: the alleged injuries, assuming they occur, would be the result of "unfettered choices made by independent actors," *Lujan*, 504 U.S. at 562. For example, increased medical expenses caring for noncitizens, would be the result of events unrelated to the challenged policies, including noncitizens needing medical care, noncitizens not paying for that care, healthcare providers requesting the States to pay, and the States paying without federal reimbursement. *Cf. Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976). Similarly, Florida's suggestion that an increase in noncitizens living in the state would increase crimes committed by noncitizens ignores the independent decision of the individuals committing the crimes. The challenged policies do not encourage or cause any noncitizen to perform an illegal act. *See Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) (holding that future injury that depends on the unauthorized acts of a third party "is too speculative

12

to satisfy standing requirements"); *accord Arpaio*, 797 F.3d at 15-20. Florida therefore lacks standing.

### III. The Court Lacks Subject-Matter Jurisdiction Over Florida's Claims.

Florida's claims are barred by the APA and INA. The challenged policies are committed to agency discretion, do not constitute final agency action, are precluded by the INA, and do not fall within the INA's zone of interests.

A. Committed to Agency Discretion

Under the APA, a plaintiff may not obtain judicial review of agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Both alleged activities Florida challenges fall under this exception.

First, the decision whether to commence a removal proceeding or to release instead with an NTR is committed to agency discretion. The choice to refrain from pursuing particular enforcement actions is "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Such decisions "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action." *Id.*

13

Florida does not dispute that the presumption against reviewability applies to enforcement decisions, but contends only that Congress imposed statutory duties on DHS through 8 U.S.C. § 1225. The statute, however, imposes no unconditional duty on DHS. *See infra* pp. 24-28. In brief, Congress has not displaced the power inherent to the Executive to exercise prosecutorial discretion—a power the Supreme Court has held is "greatly magnified" in the immigration context, *AADC*, 525 U.S. at 490, as immigration policy may also "affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws," and the "nation's foreign policy." *Arizona v. United States*, 567 U.S. 387, 395, 397 (2012). Although section 1225 uses the word "shall," the Supreme Court has instructed that the "deep-rooted nature of law-enforcement discretion" persists "even in the presence of seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005).

The justification for dismissal is further bolstered by examination of section 1225. DHS has "broad discretion" to decide "whether it makes sense to pursue removal at all." *Arizona*, 567 U.S. at 396. DHS may "decline to institute proceedings" in the first instance. *AADC,* 525 U.S. at 484; see also *Crane*, 783 F.3d at 249 ("[Section 1225] does not limit the authority of DHS to determine whether to pursue the removal of the immigrant."). Congress has not required that DHS initiate

14

removal proceedings and detain every undocumented inadmissible noncitizen it encounters at or near the border, and CBP's policy prioritizing when and how to issue NTAs at crowded border patrol stations is committed to agency discretion by law. *See, e.g.*, *Fla. v. United States*, No. 8:21-CV-541-CEH-SPF, 2021 WL 1985058, at *10 (M.D. Fla. May 18, 2021) (concluding that policy guiding enforcement discretion is committed to agency discretion by law); *Arizona*, 2021 WL 2787930, at *9-11 (same).

Second, "Congress has delegated remarkably broad discretion to executive officials under the [INA]" and its grants of authority "are nowhere more sweeping than in the context of parole." *Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985); *see Jean v. Nelson*, 727 F.2d 957, 966 & n.8 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (*Jean II*). Accordingly, the parole statute provides that the Secretary "*may* … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission," 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Courts lack jurisdiction to review the discretionary decision whether to parole an individual under 8 U.S.C. § 1252(a)(2)(B)(ii). *See e.g.*, *Alonso-Escobar v. USCIS Field Off. Dir. Miami, Fla.*, 462 F. App'x 933, 935 (11th Cir. 2012) (unpublished); *Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1382 (S.D. Fla. 2002), *aff'd*, 321 F.3d 1336 (11th Cir. 2003); *infra* p. 21.

Regardless of section 1252(a)(2)(B)(ii), the decision to release an individual on parole involves the same "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler*, 470 U.S. at 831. Indeed, parole determinations encompass, among other things, "the possibility that [a noncitizen] may abscond to avoid being returned to his or her home country," "priorities for the use of limited detention space," whether detention is in the public interest, and of course, the statutorily undefined requirements that parole be for "urgent humanitarian reasons or significant public benefit." *See Jeanty*, 204 F. Supp. 2d at 1377-78, 1382; 8 U.S.C. § 1182(d)(5). As such, the decision to release an individual on parole is committed to agency discretion and not subject to judicial review.

Finally, Florida's argument essentially maintains that section 1225 forecloses CBP from having any enforcement priorities with respect to initiating removal proceedings and paroling individuals under section 1182(d)(5), but rather must proceed under an aimless policy of ad hoc—but nominally "absolute"—enforcement. But Congress has said otherwise, authorizing DHS and its components to establish "immigration enforcement policies and priorities," 6 U.S.C. § 202(5), and to "issue such instructions" and "perform such other acts as he deems necessary for carrying out [DHS's] authority" under the INA, 8 U.S.C. § 1103(a)(3). Indeed, "[t]he overall statutory scheme established for immigration demonstrates that

Congress intended whether the [Secretary] is adequately guarding the borders of the United States to be committed to agency discretion by law and, thus, unreviewable." *Chiles v. United States,* 69 F.3d 1094, 1096 (11th Cir. 1995).

B. No Final Agency Action

Plaintiff's challenge to Defendants' alleged parole and NTR policies do not challenge "final agency action" subject to judicial review. 5 U.S.C. § 704. Agency action is final if it determines legal "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). To the extent they constitute "policies," rather than individual enforcement decisions amalgamated by Florida into a "policy" for purposes of this suit, they do not finally determine legal rights or obligations. As the Eleventh Circuit has held, agency action that "does not itself adversely affect" a party but instead "only affects his rights adversely on the contingency of future administrative action" is "nonfinal." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003)

Neither the NTR nor the alleged parole "policies" satisfy this rule. As to the NTR guidance and its replacement, "Parole Plus," neither creates legal rights nor imposes legal obligations. *Nat'l Mining Ass'n,* 758 F.3d at 250. Indeed, the agency retains the discretion to alter or revoke the guidance at will, so the guidance is nonfinal notwithstanding any expectation that rank-and-file officers will comply with the guidance while it is in effect. *Cf. Wilderness Soc'y v. Norton*, 434 F.3d 584,

17

596 (D.C. Cir. 2006). Nor does the NTR and Parole Plus guidance require CBP officers to take any specific action in any specific circumstance. Under the policy, CBP officers retained discretion on a "case-by-case basis" to release an individual on an NTR, now on Parole Plus, or to take any other enforcement action authorized by statute. Ex. A at 1-2. Agency officials are thus "free to exercise discretion" to grant or deny release in particular cases, such that the NTR and Parole Plus guidance does not constitute final agency action. *See Jean I*, 711 F.2d at 1481. As another court in this Circuit recently held, such guidance "constitute a prioritization and not a prohibition of enforcement. The policies do not change anyone's legal status nor do they prohibit the enforcement of any law or detention of any noncitizen," and so are not final agency action. *Florida*, 2021 WL 1985058, at *9.

Second, Florida has not identified any parole "policy" that exists generally. Instead, Florida challenges an amalgam of parole decisions made by DHS at the Southwest border. But as explained, parole is an individual discretionary decision made on a "case by case basis." 8 U.S.C. § 1182(d)(5)(A). Accordingly, Plaintiff cannot establish a unified "policy" to challenge. *Cf. Lightfoot v. D.C.*, 273 F.R.D. 314, 326 (D.D.C. 2011) ("The question is not whether a constellation of disparate but equally suspect practices may be distilled from the varying experiences" but rather, Plaintiffs must first identify the 'policy or custom' they contend violates the" law).

A particular noncitizen's parole decision may be a final agency action with respect to that individual, as that decision has direct consequences for their personal legal status regarding detention versus release. *See Nat'l Min. Ass'n*, 758 F.3d at 253. But an individual noncitizen's decision is not final with respect to Florida, because such an individual decision does not constitute the "direct and appreciable legal" consequences to *Florida* that the APA's finality inquiry requires. *Bennett*, 520 U.S. at 178. Defendants' mere alleged announcement of overarching guidelines or priorities for making such individualized parole decisions, as Florida claims is at issue here, prior to those guidelines being applied on a case-by-case basis, does not constitute final agency action.  *See id.*

Regardless, even were there an actual general "parole" policy, it would not constitute final agency action for the same reasons. Parole by its nature requires a case-by-case assessment and Plaintiff has identified nothing that *requires* DHS officers to take a specific action with respect to parole in any specific case. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5. No identified policy "prevent[s] DHS officials from granting [or denying] parole" in any specific case. *Jeanty*, 204 F. Supp. 2d at 1383.

To the extent Florida argues that anticipated costs for public services caused by the possible increase in migration to Florida due to Defendants' parole practices indicates that these practices have determined rights and obligations, that contention

fails. Defendants' guidance to enforcement officers on how to use their discretion regarding release of noncitizens does not "require" any State or noncitizen "to do anything" nor does it "prohibit" any State or noncitizen "from doing anything." *Nat'l Mining Ass'n*, 758 F.3d at 252. *If* more noncitizens than usual settle in Florida because of Defendants' actions, there may be downstream *practical* consequences to Plaintiff, such as increased expenditures on social services. *See e.g.*, *Louisiana v. U.S. Army Corps of Engineers*, 834 F.3d 574, 583 (5th Cir. 2016) (distinguishing practical consequences from legal consequences). These consequences, however, do not constitute the "direct and appreciable legal" consequences that the APA's finality inquiry requires. *Bennett*, 520 U.S. at 178.

## C. Statutes Preclude Jurisdiction

The INA, and therefore the APA, also bars Florida's claims. *See* 5 U.S.C. § 701(a)(1).

Section 1252(g). Florida's claim that DHS must issue NTAs to each inadmissible noncitizen apprehended at or near the border, and inspected under section 1225, is barred by section 1252(g). Section 1252(g) bars jurisdiction over any "claim by or on behalf of any alien arising from the decision or action by the [Secretary] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Section 1252(g) reflects Congress's desire to "protect[] the Executive's discretion from the courts" in general and from "attempts

20

to impose judicial constraints upon prosecutorial discretion" in particular. *AADC*, 525 U.S. at 485-86, 485 n.9.

Florida challenges the NTR policy on the grounds that "the government is also required to initiate removal proceedings against these aliens," ECF No. 1 ¶ 26. Plaintiff thus challenges Defendant's decision whether to "commence proceedings," a claim which falls squarely under the jurisdictional bar of section 1252(g). *See AADC*, 525 U.S. at 487.

Section 1252(a)(2)(b)(ii)). Florida's challenges to Defendants' individual decisions to release noncitizens on parole are barred by section 1252(a)(2)(B)(ii)—which bars review of "decision or action[s] … the authority for which is specified under this subchapter to be in the discretion of … the Secretary of Homeland Security"—as the parole decision is expressly specified by the INA to be within the Secretary's discretion. 8 U.S.C. § 1182(d)(5)(A); *supra* pp. 15-16.[4]

The court would similarly lack jurisdiction over any challenge to a parole policy or procedure. *See Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000) ("discretionary judgment regarding the application of parole . . . is not subject to review").

---

[4] To the extent Florida challenges the decision not to serve NTAs on noncitizens subject to section 1225(b)(1), i.e., amenable to expedited removal but showing a credible fear of persecution or torture, review of these decisions is separately barred by the INA. *See* 8 U.S.C. § 1252(a)(2)(A)(i), (iv).

D. <u>Florida Does Not Fall Within the Zone of Interests</u>

Florida's claims also do not fall within the zone of interests of sections 1182(d)(5) or 1225(b). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Security Indus. Ass'n*, 479 U.S. 388, 399 (1987). If a plaintiff is not the object of a challenged regulatory action—which Florida is not—the plaintiff has no right of review as its "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke*, 479 U.S. at 399.

Nothing in the text, structure, or purpose of the INA generally, or sections 1182(d)(5) or 1225(b) specifically, suggests that Congress intended to permit a State to invoke attenuated financial impacts of immigration enforcement policies to contest those policies. *See Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) ("*FAIR*") ("The immigration context suggests the comparative improbability of any congressional intent to embrace as suitable challengers in court all who successfully identify themselves as likely to suffer from the generic negative features of immigration."). *FAIR* rejected a similar challenge that the federal government's "scheme for parole" of arriving noncitizens violated statutory limits on parole authority, holding that plaintiff was not within the zone of interests there was nothing in the "language of the statutes on which it relies" nor

the "legislative history that even hints at a concern about regional impact" of immigration. *Id*. at 900-01. So too here.

Indeed, a litigant does not have a "judicially cognizable interest" in another's prosecution, *Linda R.S.*, 410 U.S. at 619, or "in procuring enforcement of the immigration laws" against third parties in particular ways. *Sure-Tan, Inc. v. NLRB*, 457 U.S. 883, 897 (1984). Congress has enacted several provisions specifically aimed at protecting the Executive's discretion from the courts, *AADC*, 525 U.S. at 486–87, making clear that only noncitizens may challenge enforcement decisions, and only certain types of decisions, and only through their removal proceedings. *See, e.g.*, 8 U.S.C. §§ 1226(e); 1252(a)(2)(B)(ii), 1252(a)(5), (b)(9), (g); *see also id*. §§ 1226a(b)(1), 1229c(f), 1231(h), 1252(a)(2)(A), (a)(2)(C), (b)(4)(D), (b)(9), (d), (f), (g); *United States v. Fausto*, 484 U.S. 439, 448 (1988) (a detailed review scheme that allows some parties, but not others, to challenge specific executive action is "strong evidence that Congress intended to preclude [other parties] from obtaining judicial review").

## IV.    Plaintiff Fails to State a Claim for Relief.

The complaint must also be dismissed under Rule 12(b)(6) as each of the six counts[5] fails to state a plausible, cognizable claim for relief.

---

[5] Count Six does not make any independent claim, asserting only "[f]or the same reasons described in Counts 1 and 5, Florida is entitled to a declaratory judgment

A. <u>Counts One and Four (Substantive APA Claims)</u>

Counts One and Four assert essentially the same claim: Defendants' practices are "not in accordance with law" or "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(A), (C) (Count 1), and are "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1) (Count 4), because they allegedly violate detention mandates of section 1225(b)(1) and (2) and the parole provision, 8 U.S.C. 1182(d)(5)(A). ECF No. 1 ¶¶ 52-57, 67-68.

These claims fail as a matter of law because the cited statutes do not support Plaintiff's theory of wrongdoing. Sections 1225(b)(1) and (2) do not require that Defendants initiate removal proceedings or detain every noncitizen encountered at or near the border.

First, as discussed, *supra* pp. 13-17, nothing in sections 1225(b)(1) and (b)(2) overcomes the "deep-rooted nature of law-enforcement discretion." *Town of Castle Rock*, 545 U.S. at 760-61. The fact that § 1225(b) uses the terms "shall ... detain[]" and "shall order" does not constrain the government's longstanding discretion to determine whether commencement of removal proceedings is appropriate. DHS is "invested with the sole discretion to commence [such] removal proceedings," *Matter*

---

that the Biden Administration is violating the law," ECF No. 1 ¶¶ 71-72, and so should be dismissed as redundant. *See, e.g., Cantonis Co. v. Certain Interested Underwriters at Lloyds, London*, No. 18-81703-CIV, 2019 WL 3429962, at *4 (S.D. Fla. May 9, 2019) ); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017).

*of Avetisyan*, 25 I. & N. Dec. 688, 690-91 (BIA 2012), and nothing in the statute evinces a "stronger indication" of intent to impose a true mandate on the Executive to mandate removal in every instance. *See Town of Castle Rock*, 545 U.S. at 761.

Second, sections 1225(b)(1) and (b)(2) by their terms do not require initiating removal and detention in all cases. Section 1225(b)(1)—which authorizes the expedited removal of certain noncitizens—does not mandate expedited removal. Immigration officers must first make a discretionary determination whether a noncitizen should be processed under § 1225(b)(1) at all. *See Matter of E-R-M-*, 25 I. & N. Dec. at 523 ("DHS has discretion to put aliens in [§ 1229a] removal proceedings even though they may also be subject to expedited removal"). Florida does not dispute that the BIA has further determined that nothing in the statute compels "DHS to exercise its prosecutorial discretion to initiate expedited removal proceedings" in the first place. *Matter of J-A-B- & I-J-V-A-*, 27 I. & N. Dec. 168, 172 (BIA 2017). The BIA's longstanding position that DHS has discretion not to apply § 1225(b)(1) in individual cases is entitled to judicial deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-425 (1999).

Next, nothing in section 1225(b)(2)(A) mandates the commencement of removal proceedings under section 1229a against all applicants for admission at the border or physically present in the country. *See, e.g., E-R-M-*, 25 I. & N. Dec. at 523

(noting "broad discretion given to … charging decisions by the Executive Branch, that is, the DHS, in the immigration context"). Rather, section 1225(b)(2)(A) "authorizes the Government to detain certain aliens" seeking admission to the United States *if* it decides to remove them through section 1229a removal proceedings. *Jennings*, 138 S. Ct. at 838. The antecedent decision whether to pursue removal at all is a separate, discretionary decision of the Secretary that is not subject to judicial review—just as prosecutors' decisions whether to bring criminal charges against suspected offenders are not subject to judicial review. *See Arizona*, 567 U.S. at 396; *AADC*, 525 U.S. at 483, 485-86, 485 n.9. Accordingly, "[i]t is undisputed that Section 1225(b)(2)(A) only directs [immigration officers] to detain an alien for the purpose of placing that alien in removal proceedings. The provision does not limit the authority of DHS to determine whether to pursue the removal of the immigrant" in the first place. *Crane*, 783 F.3d at 249.

As to Plaintiff's argument that detention is mandatory once proceedings are initiated, ECF 1 ¶¶ 22-24, nothing in the statute requires DHS to take into custody and detain all eligible individuals. Instead, as explained, the INA authorizes DHS to release detained noncitizens in particular circumstances, subject to statutory and regulatory limitations, including through parole, 8 U.S.C. § 1182(d)(5)(A), or "bond" and "conditional parole," 8 U.S.C. § 1226(a)(2)(A)-(B). And as explained, the decision whether to release is a complex decision that considers many factors,

and is not subject to judicial review. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); 1226(e); *Loa-Herrera*; 231 F.3d at 991.[6]

Finally, to the extent that DHS considers resource constraints when making case-by-case release decisions, such reliance is permissible. DHS has long interpreted section 1182(d)(5) to authorize parole of noncitizens who "present neither a security risk or a risk of absconding" and "whose continued detention is not in the public interest." 8 C.F.R. § 212.5(b)(5). It is the agency, not the court, that determines what undefined statutory terms like "significant public benefit" warranting parole may include, *see* 8 U.S.C. §§ 1103(a)(1), 1182(d)(5), and that determination has always encompassed resource constraints. *See e.g.*, *Padilla v. ICE*, 953 F.3d 1134, 1145 (9th Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1041 (2021) (describing ICE policy allowing parole "in light of available detention resources"); *Jeanty*, 204 F. Supp. 2d at 1377 (parole decision may take into consideration "priorities for the use of limited detention space"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324 (D.D.C. 2018) (describing DHS's "Parole Directive," effective since 2009). Thus, even crediting Plaintiff's allegations that Defendants case-by-case release decisions relied in part on resource constraints, this practice is

---

[6] Under 8 U.S.C. § 1252(f)(1), the Court cannot enter an injunction placing requirements and limitations on Defendants' authority to charge and detain or release noncitizens under section 1225, *see AADC*, 525 U.S. at 481-82; *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018), and so Florida's claims for such injunctive relief must be dismissed.

fully consistent with the discretionary authority vested in DHS by the language of the statute under longstanding interpretation by the agency and courts.

B. <u>Count Two (APA Arbitrary and Capricious Claim)</u>

Count Two alleges that "Defendants' policy is arbitrary and capricious for several reasons," including its failure to consider costs to States, their reliance interests, lesser alternatives, explain its departure from prior practice, and because any reliance on resource constraints is pretextual. ECF No. 1 ¶¶ 58-63.

Plaintiff's argument fails at the threshold because it presumes Defendants' release practices are spelled out in a policy document that would address such other considerations. But the only "policy" addressed in such a document at issue here are NTRs, and the policy document has *ended* that practice, Ex. A, mooting Plaintiff's challenge to it.

As to Florida's general "parole" and "release" allegations, no such "policy" exists and the Complaint does not identify any specific policy, but reveals that the parole "policy" at issue is Plaintiff's undeveloped speculation that the release of a certain threshold number of noncitizens means the Government must not be adhering to the criteria permitting parole under the statute and regulation. *See* ECF No. 1 ¶ 30 ("*If* they are, instead, paroling each of these individuals, they are not limiting the use of parole to "case-by-case bas[e]s" nor to situations presenting "urgent humanitarian reasons or significant public benefit.") (emphasis added). Plaintiff's mere conjecture

fails to plausibly allege the existence of any cohesive policy addressing the conduct at issue. *See Twombly*, 550 U.S. at 570; *Lightfoot*, 273 F.R.D. at 326 (cannot allege a "policy" by looking at disparate individual actions).

Indeed, Florida appears to be challenging as a "policy" merely an amalgam of individual release decisions issued under the parole statute and regulation that it disagrees with. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5. However, the APA may not be invoked to demand "day-to-day agency management" of agency decisions *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 67 (2004). And as explained, the Court lacks jurisdiction to review these expressly discretionary individual determinations. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *supra* pp. 15-16.

Further, the APA's limitation of review to "agency action" does not permit this "kind of broad programmatic attack" seeking "*wholesale* improvement of [a] program by court decree.'" *Norton,* 542 U.S. at 64. "Under the terms of the APA, [Plaintiff] must direct its attack against some particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891. The APA does not provide a cause of action for Plaintiff to promote its view of how parole determinations generally must be decided. *See id.*; *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) ("The discreteness limitation precludes using broad statutory mandates to attack agency policy[.]"). Plaintiff thus fails to allege a cognizable

"agency action" that could even be scrutinized under the APA for arbitrary and capricious reasoning.

C. <u>Count Three (APA Notice and Comment)</u>

Count Three alleges that Defendants violated 5 U.S.C. § 553, arguing "[e]ven assuming Defendants have discretion to depart from the clear requirements of the INA with respect to arriving aliens, a sea change of this magnitude required notice and comment." ECF No. 1 ¶¶ 64-66.

First, this claim suffers the same deficiency as Count Two. The APA only requires notice and comment for "rule making." 5 U.S.C. § 533; *see id.* § 551(4)– (5) (defining "rule" and "rule making"). Plaintiff has not identified any "rule" that it challenges regarding parole, but merely what it views as unlawful decisions in aggregate of individual discretionary determinations. These individual determinations based on the facts of specific cases are best described as "adjudications," not "rules," and are not bound by notice-and-comment rulemaking. *See* 5 U.S.C. § 551(6)–(7); *United States v. Florida E. Coast Ry.*, 410 U.S. 224, 244– 45 (1973).

Second, regarding the NTR guidance and Defendants alleged general parole policy—assuming for the sake of argument one exists—both are "general statements of policy," 5 U.S.C. § 553(b)(3)(A), that "advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power," *Lincoln v.*

*Vigil*, 508 U.S. 182, 197 (1993), and not subject to notice-and-comment rulemaking. "The key inquiry" separating a rule from a general statement of policy is the extent to which the challenged policy leaves the agency free to exercise its discretion to follow or not to follow that general policy in an individual case[.]" *Ryder Truck Lines*, 716 F.2d at 1377.

The policy document ending the NTR practice and providing for Parole Plus instead, offered guidelines, but no requirement, for when agency officers "may consider" such release mechanisms, and provide that these discretionary decisions must still be assessed "on a case-by-case basis." Ex. A at 1-2. The policy thus "leaves the agency free to exercise its discretion to follow or not to follow that general policy in an individual case." *Ryder Truck Lines*, 716 F.2d at 1377.

Similarly, while Plaintiffs do not allege that Defendants have made any relevant policy statement regarding parole, such statements have historically always left discretion in the hands of the line officer adjudicators. *See* ICE, "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens," June 17, 2011, *available at* https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf; ICE Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture," Dec. 8, 2009, *available at* https://www.ice.gov/doclib/dro/pdf/11002.1-

hd-parole_of_arriving_aliens_found_credible_fear.pdf, § 4.4 ("Parole remains an inherently discretionary determination entrusted to the agency; this directive serves to guide the exercise of that discretion.").

The alleged "policies," to the extent they even exist, "do[] not negate the discretionary nature of" the determination regarding release and "each case receives individual consideration" indicating that such policies "do[] not establish a 'binding norm'" and "need not be promulgated as a rule under the APA." *Bulger,* 204 F. Supp. 2d at 1383. Count Three must also be dismissed as a matter of law.

### D. Count Five (INA and Constitution Claim)

Count Five alleges that "the federal government cannot ignore federal statutes, and the Constitution—including the separation of powers doctrine and the Take Care Clause—provides a separate cause of action to challenge the conduct described in Count 1." ECF No. 1 ¶¶ 69-70. This Count fails to state a cognizable claim for relief.

First, Florida offers no factual allegations to support this claim, and its one-sentence, conclusory, legal assertion is insufficient to plead a claim for relief. *See Iqbal*, 556 U.S. at 678.

Second, even if Florida had offered factual allegation, sections 1225(b) and 1182(d), as explained above, do not override the government's discretion to decide whether to initiate proceedings or to release noncitizens on parole or otherwise. *Supra* pp. 13-17, 24-28.

Third, the separation of powers principle, to the extent it is implicated at all, defeats Plaintiff's legal theory. Both the Constitution, and Congress in the INA, vest the Executive with authority over decisions regarding detention and removal of noncitizens. *See, e.g., Knauff*, 338 U.S. at 543; *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1253 (11th Cir. 2008) (holding that Executive, not judiciary, has the authority to decide to detain noncitizens); *infra* p. 34 (explaining that ordering Executive to take discretionary action would violate separation of powers.

Finally, Plaintiff's Take Care Clause argument fails as it is also merely a conclusory legal assertion, *see id*., and lacks a cause of action. No court has ever found that the Take Care Clause provides a private right of action. *Las Americas Immigrant Advocacy Center v. Biden*, No. 3:19-cv-02051-IM, slip op. at 7 (D. Or. Nov. 24, 2021) (collecting cases); *see, e.g., City of Columbus v. Trump*, 453 F. Supp. 3d 770, 800 (D. Md. 2020) ("No court in this circuit, or any other circuit, has definitively found that the "Take Care Clause" provides a private cause of action which a plaintiff may bring against the President of the United States or his administration."); *Robbins v. Reagan*, 616 F. Supp. 1259, 1269 (D.D.C.), *aff'd*, 780 F.2d 37 (D.C. Cir. 1985) (similar)). The Supreme Court has cautioned courts against "creat[ing] new causes of action" under the Constitution. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020). Plaintiff's conclusory invocation of this Clause offers no

basis for this Court to be the first to break with the caution that has deterred all other courts from recognizing a private right of action.

Even were the Court to recognize such a cause of action, Plaintiff's claim still fails. The Supreme Court has distinguished between duties that are ministerial and that are "executive and political," explaining that court lacked authority to order the Executive to take certain action in the latter case but possibly could for ministerial duties, because "nothing was left to discretion. There was no room for the exercise of judgment." *State of Mississippi v. Johnson*, 71 U.S. 475, 498, 18 L. Ed. 437 (1866); *see Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 608 (D.C. Cir. 1974). Ordering the Executive to take action involving discretion and political judgment would violate separation of powers "and the general principles which forbid judicial interference with the exercise of Executive discretion." *Johnson*, 71 U.S. at 499.

Here, Plaintiff requests an injunction requiring Defendants to take action under sections 1225(b) and 1182(d) that is not purely ministerial, but political, in that it involves inherently discretionary duties – requiring that the Government charge and detain noncitizens for removal and deny parole. Plaintiff's claim falls squarely under the longstanding bar on judicial interference with the exercise of Executive discretion, *see id.*, and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court must dismiss the Complaint.

Date:  December 3, 2021                    Respectfully submitted,

JASON R. CODY                              BRIAN M. BOYNTON
*Acting United States Attorney*            *Assistant Attorney General*

MARIE A. MOYLE                             WILLIAM C. PEACHEY
*Assistant United States Attorney*         *Director*
Northern District of Florida               Office of Immigration Litigation
                                           District Court Section

                                           EREZ REUVENI
                                           *Assistant Director*

                                           /s/ *Joseph A. Darrow*
                                           JOSEPH A. DARROW
                                           *Trial Attorney*
                                           U.S. Department of Justice
                                           Civil Division
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, DC 20044
                                           Tel.: (202) 805-7537
                                           Joseph.a.darrow@usdoj.gov

                                           SARAH STEVENS WILSON
                                           *Assistant Director*
                                           Office of Immigration Litigation
                                           Appellate Section

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Rule 7.1(F) because, excluding parts of the document exempted by the Rule, it contains 7,776 words.

I further certify that a conference of counsel pursuant to Local Rule 7.1(B) was held on December 1, 2021, but it was unsuccessful in resolving the issues absent litigation.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division