**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

|  |  |
|---|---|
| STATE OF FLORIDA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 3:21-cv-01066 |
| | ) |
| The UNITED STATES OF | ) |
| AMERICA, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION**
**TO TRANSFER VENUE**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................2

BACKGROUND ....................................................................................................3

ARGUMENT .........................................................................................................5

   I.    **Venue is Improper in This Division Under 28 U.S.C. § 1406 and Local Rule 3.1(B)** .........................................................................................5

   II.   **Alternatively, the Case Should Be Transferred Under § 1404** ...............18

CONCLUSION .....................................................................................................25

CERTIFICATE OF COMPLIANCE ....................................................................27

CERTIFICATE OF SERVICE .............................................................................27

i

# TABLE OF AUTHORITIES

## CASE LAW

*Alabama v. U.S. Army Corps of Eng'rs*,
  382 F. Supp. 2d 1301 (N.D. Ala. 2005) ........................................................ 10, 11

*Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*,
  50 F. 790 (5th Cir. 1892) ....................................................................................10

*Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W.D. of Tex.*,
  571 U.S. 49 (2013) ..............................................................................................19

*Bell v. Rosen*,
  No. CV214-127, 2015 WL 5595806 (S.D. Ga. Sept. 22, 2015) .................. 15, 22

*Birnbaum v. Blum*,
  546 F. Supp. 1363 (S.D.N.Y. 1982) .....................................................................10

*Brandon Chrysler Plymouth Jeep Eagle, Inc. v. Chrysler Corp.*,
  898 F. Supp. 858 (M.D. Fla. 1995) ......................................................................11

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) .......................................................................... 9, 11

*Clinton v. Sec. Benefit Life Ins. Co.*,
  No. 19-24803-CIV, 2020 WL 6120565 (S.D. Fla. June 29, 2020).....................24

*Combs v. Fla. Dep't of Corr.*,
  461 F. Supp. 3d........................................................................................... passim

*Ebert v. Poston*,
  266 U.S. 548 (1925) .............................................................................................12

*Estrada v. California Corr. Inst.*,
  No. 118CV00599, 2019 WL 2433656 (E.D. Cal. June 11, 2019) ......................17

*Esurance Ins. Co. v. Hamm*,
  387 F. Supp. 3d 1134 (D. Or. 2019)....................................................................17

ii

*Evans v. Florida*,
   No. 306-CV-269, 2006 WL 3762063 (N.D. Fla. Dec. 20, 2006) ................ 17, 21

*Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*,
   450 U.S. 147 (1981) ............................................................................7

*Fla. Hometown Democracy, Inc. v. Browning*,
   No. 08-CV-80636-CIV, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008) ......... 9, 14

*Fla. Nursing Home Ass'n v. Page*,
   616 F.2d 1355 (5th Cir. 1980) .........................................................6, 7

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ..........................................................................21

*Freedom Watch, Inc. v. Obama*,
   No. 5:13-CV-26-OC-22PRL, 2013 WL 12156045 (M.D. Fla. June 24, 2013) .....7

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
   415 F. Supp. 2d 370 (S.D.N.Y. 2006) ................................................23

*Greene v. Nat'l Head Start Ass'n, Inc.*,
   610 F. Supp. 2d 72 (D.D.C. 2009)......................................................24

*Greene v. U.S. Postal Serv.*,
   745 F. App'x 299 (10th Cir. 2018).......................................................8

*Hanning v. New England Mut. Life Ins. Co.*,
   710 F. Supp. 213 (S.D. Ohio 1989)....................................................20

*Harrington v. United States*,
   No. 406CV285, 2008 WL 2019563 (S.D. Ga. May 9, 2008) ..........................20

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   No. 1:08-CV-3637-CC, 2009 WL 10665434 (N.D. Ga. July 21, 2009).............24

*Hight v. United States Dep't of Homeland Sec.*,
   391 F. Supp. 3d 1178 (S.D. Fla. 2019)................................................7

*Houston v. Marod Supermarkets, Inc.*,
   733 F.3d 1323 (11th Cir. 2013).........................................................12

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (5th Cir. 2009) .................................................................. 19, 20, 22

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .......................................................................24

*In re Ricoh Corp.*,
  870 F.2d 570 (11th Cir. 1989) .....................................................................19

*In re Stolicker Dairy Farms*,
  67 B.R. 459 (Bankr. E.D. Mich. 1986) ........................................................17

*Jenkins Brick Co. v. Bremer*,
  321 F.3d 1366 (11th Cir. 2003) ...................................................................14

*Johnson v. Burlington-N., Inc.*,
  480 F. Supp. 259 (W.D. Mo. 1979).............................................................20

*Kapordelis v. Danzig*,
  387 F. App'x 905 (11th Cir. 2010) ..............................................................14

*Leonhart v. McCormick*,
  395 F. Supp. 1073 (W.D. Pa. 1975) ..............................................................9

*Mamani v. Berzain*,
  825 F.3d 1304 (11th Cir. 2016)....................................................................12

*Miragliotta v. Actavis, Inc.*,
  No. 10-60813-CIV, 2010 WL 11508178 (S.D. Fla. Aug. 11, 2010) ...................19

*Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010)....................................................................23

*Nautilus Ins. Co. v. All Ins. Restoration Servs., Inc.*,
  No. 4:20-CV-505-AW-MAF, 2021 WL 2043418 (N.D. Fla. Apr. 23, 2021) .....14

*Nestor v. Hershey*,
  425 F.2d 504 (D.C. Cir. 1969)........................................................................9

*O'Neill v. Battisti*,
  472 F.2d 789 (6th Cir. 1972) ..........................................................................9

*Paulcin v. Gillian*,
  No. 3:08CV-335, 2008 WL 4328217 (N.D. Fla. Sept. 17, 2008) ................ 17, 20

*Perkins v. Snider*,
  No. CIV. A. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ....................... 9

*Potter v. Cardinal Health 200, LLC.,*
  No. 2:19-CV-00007-JRG, 2019 WL 2150923 (E.D. Tex. May 16, 2019) ......... 24

*RAJMP, Inc. v. United States*,
  No. 18-cv-03045-PAB, 2019 WL 2613304 (D. Colo. May 9, 2019) ................... 8

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) .................................................................................... 11

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
  No. CV 116-071, 2017 WL 2126323 n.2 (S.D. Ga. May 16, 2017) ....... 14, 15, 22

*Reuben H. Donnelly Corp. v. FTC*,
  580 F.2d 264 (7th Cir. 1978) ......................................................................... 7

*Rogers v. Civ. Air Patrol*,
  129 F. Supp. 2d 1334 (M.D. Ala. 2001) ......................................................... 7

*Rowles v. Hammermill Paper Co., Inc.*,
  689 F. Supp. 494 (E.D. Pa. 1988) ................................................................. 23

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
  626 F.3d 973 (7th Cir. 2010) .................................................................. 19, 25

*Slayton v. Cash*,
  No. 3:17-CV-442, 2018 WL 775401 (N.D. Fla. Jan. 4, 2018) ..................... 16, 20

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
  382 F.3d 1097 (11th Cir. 2004) .................................................................... 23

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ....................................................................................... 19

*Sunbeam Prods., Inc. v. Homedics, Inc.*,
  587 F. Supp. 2d 1055 (W.D. Wis. 2008) ....................................................... 23

*K.B. by T.B. v. Mich. Dep't of Health & Human Servs.*,
   367 F. Supp. 3d 647 (E.D. Mich. 2019) .............................................................20

*Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,
   761 F. Supp. 2d 1322 (M.D. Fla. 2010) ...................................... 22, 23

*White v. ABCO Eng'g Corp.*,
   199 F.3d 140 (3d Cir. 1999) ........................................................................20

*Zhang v. Chertoff*,
   No. C 08–02589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ...........................6

## FEDERAL STATUTES

8 U.S.C. § 1182(d)(5)(A) ...................................................................4

8 U.S.C. § 1225(b) ...........................................................................4

8 U.S.C. § 1229a ..............................................................................4

28 U.S.C. § 1391(b)(1).....................................................................11

28 U.S.C. § 1391(c)(1)......................................................................10

28 U.S.C. § 1391(c)(2).......................................................... 8, 10, 12

28 U.S.C. § 1391(c)(3)......................................................................10

28 U.S.C. § 1391(d) .................................................................. 10, 11

28 U.S.C. § 1391(e) ................................................................. 1, 6, 13

28 U.S.C. § 1391(e)(1).......................................................... 6, 10, 15

28 U.S.C. § 1391(f) ...........................................................................10

28 U.S.C. § 1404 ..............................................................................2, 5

28 U.S.C. § 1404(a) ................................................................... 1, 18

28 U.S.C. § 1404(b) .................................................................. 18, 20

28 U.S.C. § 1406 ................................................................................ 1, 5, 16

28 U.S.C. § 1406(a) ................................................................................5, 6

29 U.S.C. § 203(x) ....................................................................................11

29 U.S.C. § 2617(2) ..................................................................................11

42 U.S.C. § 9607(2) ..................................................................................11

## MISCELLANEOUS

17 Moore's Federal Practice - Civil § 110.03 (2021) ................................................10

17 Moore's Federal Practice - Civil § 111.21[2] (3d ed. 2013) ............................24

James M. Wicks, 13 Bus. & Com. Litig. Fed. Cts. § 140:38 (4th ed.), (2018).........................................................................................................9

Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.), Westlaw (2021)........................................................................................8

**INTRODUCTION**

This action should be transferred to the Tallahassee Division of the U.S. District Court for the Northern District of Florida under 28 U.S.C. § 1406, because venue is improper in the Pensacola Division under 28 U.S.C. § 1391(e) and Northern District of Florida Local Rule 3.1(B). Alternatively, this action should be transferred under 28 U.S.C. § 1404(a), because the convenience of witnesses, access to evidence, and interests of justice counsel transfer.

Local Rule 3.1(B) requires that venue be proper in a Northern District of Florida Division as if that division was a stand-alone district. But viewing the Pensacola Division as its own district, venue is improper here in this suit against the federal government under 28 U.S.C. § 1391(e). Defendants—the United States and federal agencies and officers based in Washington, D.C.—reside in the District of Columbia for the purposes of section 1391(e). The events giving rise to this case occurred either in Washington, D.C or in states along the Southwest border with Mexico, not in the Pensacola Division of the Northern District of Florida. Plaintiff State of Florida resides for venue purposes under section 1391 in the division of its principal place of business, its capital in Tallahassee. Tallahassee is, therefore, the only division where venue would be proper under section 1391(e).

Alternatively, the Court could transfer this case to the Tallahassee Division pursuant to 28 U.S.C. § 1404 based on the convenience of the witnesses, access to

evidence, and the interests of justice. Any witnesses and evidence from Florida would be produced by Plaintiff's various agencies and officers which, along with the Florida Attorney General's Office attorneys, are based in Tallahassee, not in the Pensacola Division. Because Tallahassee is not located in this division, Plaintiff's decision to file in this division is entitled to little to no deference. Any section 1404 transfer factors the Court could consider counsel transfer to the Tallahassee Division.

The United States has simultaneously filed a motion to dismiss under Rule 12(b), which includes an argument that venue is improper under Rule 12(b)(3). The United States respectfully submits that this Court should decide the motion to transfer before the motion to dismiss in order to permit the Tallahassee Division to determine the merits of the motion to dismiss if transfer is granted.

## BACKGROUND

In this case, Plaintiff, the State of Florida, sues the United States of America, the Department of Homeland Security ("DHS"), and its component agencies—U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services ("USCIS")—for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), ECF No. 1. Plaintiff alleges that Defendants' alleged policy or practice of "releas[ing] at the border" thousands of inadmissible noncitizens seeking to enter the United States, some portion of which Plaintiff speculates may end up relocating

3

to Florida, harms the State and violates the APA, Immigration and Nationality Act

("INA"), and the Take Care Clause of the United States Constitution. *Id.* ¶¶ 9, 29,

52-72.

Specifically, the complaint alleges that inadmissible noncitizens arriving at

the Southwest border, *i.e,* the land border with Mexico running west from Texas to

California, are, to the extent they are not expeditiously removed, subject to

mandatory detention under 8 U.S.C. § 1225(b) while they undergo removal

proceedings pursuant to 8 U.S.C. § 1229a. ECF No. 1 ¶¶ 22, 23. However, the DHS

Secretary may "in his discretion parole into the United States temporarily under such

conditions as he may prescribe only on a case-by-case basis for urgent humanitarian

reasons or significant public benefit any [noncitizen] applying for admission to the

United States." 8 U.S.C. § 1182(d)(5)(A). Further, the complaint alleges that

Defendants are releasing some arriving noncitizens without first placing them in

removal proceedings, and instead serving them with a "notice to report" to an ICE

office within 60 days to be placed into removal proceedings at that time. ECF No. 1

¶ 31. Plaintiff thus alleges that Defendants "are not limiting the use of parole to

'case-by-case bas[e]s' nor to situations presenting 'urgent humanitarian reasons or

significant public benefit.'" *Id.* ¶ 30. And to the extent that Defendants are releasing

border arrivals on notices to report, Plaintiff alleges that this practice violates the

detention provisions in section 1225. *Id.*

4

The State of Florida Office of the Attorney General, located at the Capitol in Tallahassee, the seat of Florida state government. ECF No. 1 at 22. Florida filed the complaint in the Pensacola Division of the Northern District of Florida on September 28, 2021, alleging that venue is proper here because "a substantial part of the events or omissions giving rise to Florida's claims occurred here." *Id.* ¶ 20.

## II. ARGUMENT

The Court should dismiss the case or transfer it to the Tallahassee Division under 28 U.S.C. § 1406 for adjudication of the motion to dismiss. The Court could also transfer the case under 28 U.S.C. § 1404 because: (1) the case was filed in the wrong division, and (2) the convenience of parties and witnesses and interests of justice counsel transfer.

I.  **Venue is Improper in This Division under 28 U.S.C. § 1406 and Local Rule 3.1(B)**

Venue is improper in this division and the case should be transferred to the Tallahassee Division, if not dismissed. The federal venue statute directs a district court to dismiss or transfer a case filed in the wrong district or division. Section 1406 provides that a district court shall dismiss a case laying venue in the wrong division or district, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Moreover, Northern District of Florida Local Rule 3.1(B) provides that "[a]n original case must

be filed in a division in which venue would be proper if the division was a stand-alone district." Here, the only proper venue for this suit in this jurisdiction is in the Tallahassee Division.

Venue in suits against the federal government such as this is governed by 28 U.S.C. § 1391(e). Section 1391(e) provides that generally in any civil action against the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Venue is not proper in the Pensacola Division—which must be treated as a standalone district for determining proper venue under Local Rule 3.1(B)—because neither Defendants nor Plaintiff resides there, and a substantial part of the events of this case has not occurred in the division.

First, the United States, its agencies DHS, CBP, ICE and USCIS, and the heads of those agencies are based in Washington, D.C. *See* ECF No. 1 at 1. "Federal defendants are generally deemed to reside in the District of Columbia." *Zhang v. Chertoff*, No. C 08–02589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public

6

officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) ("to hold that a federal agency can be sued ... wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" as most federal agencies likely maintain offices in "most, if not all, judicial districts"); *Hight v. United States Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1184 (S.D. Fla. 2019) (holding, in suit against two federal agencies and a naval officer, "[h]ere, all the Defendants reside in the District of Columbia" for venue purposes); *Rogers v. Civ. Air Patrol*, 129 F. Supp. 2d 1334, 1338 (M.D. Ala. 2001) ("Because the official residence of the Secretary is either in the District of Columbia or the Eastern District of Virginia, venue in the Middle District of Alabama may not be predicated on the first clause of section 1391(e)."); *Freedom Watch, Inc. v. Obama*, No. 5:13-CV-26-OC-22PRL, 2013 WL 12156045, at *1 (M.D. Fla. June 24, 2013) (holding that suit against federal government was not properly venued in Middle District of Florida, where Plaintiff did not reside, under section 1391(e)). The only policy Plaintiff challenges was promulgated in Washington, D.C. *See* CBP Memorandum, "Parole Plus Alternative to Detention," Nov. 2, 2021 (policy

memorandum issued in Washington, D.C. replacing use of Notices to Report at Southwest border with "Parole Plus" measures) (attached as Exhibit A).[1]

Second, Plaintiff State of Florida also does not reside in this Division. Where a State sovereign brings suit, the sovereign resides in the district—and hence division, for Local Rule 3.1(B) purposes—where it "maintains its principal place of business." *See* 8 U.S.C. § 1391(c)(2) ("For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, … if a plaintiff, only in the judicial district in which it maintains its principal place of business."); Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time."). The State of Florida's principal place of business is its capital, Tallahassee, located in the Tallahassee Division of this judicial district, not here. *See O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio

---

[1] In addition to federal agencies and officers, Plaintiff sues the United States itself. ECF No. 1 at 1. But this does not permit Plaintiff an end run around the venue requirements of section 1391(e). "The United States, like its agencies, is considered to reside in Washington D.C. for purposes of § 1391(e)(1)(A)." *Downey v. United States*, No. 19-00406 LEK-WRP, 2019 U.S. Dist. LEXIS 148948, at *9 (D. Haw. Aug. 30, 2019); *see, e.g., RAJMP, Inc. v. United States*, Civil Action No. 18-cv-03045-PAB, 2019 U.S. Dist. LEXIS 110048, 2019 WL 2613304, at *2 (D. Colo. May 9, 2019) (citing *Greene v. U.S. Postal Serv.*, 745 F. App'x 299, 300 (10th Cir. 2018)).

is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government.") (citing 1 *Moore's Federal Practice* 1487-88 ("Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties.")); *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) ("The uncontroverted evidence demonstrates that the Secretary of State resides and performs his official duties in the Northern District of Florida" because the "general rule" is that "a defendant's residence for venue purposes is the district where he performs his official duties."); *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 13 Bus. & Com. Litig. Fed. Cts. § 140:38 (4th ed.) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties. State officials with "statewide jurisdiction" may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. CIV. A. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22  (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties.");

9

*Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's

Federal Practice - Civil § 110.03 (2021) (same).

Plaintiff's complaint cites authority holding that a State resides for venue

purposes in all of its judicial districts. ECF No. 1 ¶ 20 & n.6 (citing *California v.*

*Azar*, 911 F.3d 558, 570 (9th Cir. 2018); and *Alabama v. U.S. Army Corps of Eng'rs*,

382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005)).[2] To the extent that these cases

indicate that, when a state government is suing the federal government, it resides for

purposes of section 1391(e) in any district or division even within its borders, they

are wrongly decided, as the statutory language indicates. The only specific entities

Congress recognized in the venue statute are:

- Corporations, 8 U.S.C. § 1391(d);
- "[A]n officer or employee of the United States or any agency thereof acting in his official capacity," 28 U.S.C. § 1391(e)(1);
- Foreign states, 28 U.S.C. § 1391(f);
- Natural persons, 28 U.S.C. § 1391(c)(1);
- "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," 28 U.S.C. § 1391(c)(2); and
- Defendants "not resident in the United States, 28 U.S.C. § 1391(c)(3).

Among these identified designations, a state government is not specifically

enumerated and—being neither the federal government, a corporation, a foreign

---

[2] Plaintiff also cites *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892), but that case long preceded the current version of section 1391(e) and the statement about "the state government . . . resides at every point within the boundaries of the state" was in dicta. The case did not concern suit by or against a state governmental entity and did not purport to address where a state government resides for venue purposes.

10

state or resident in a foreign country, nor a natural person—can fall *only* into the residual category for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," 28 U.S.C. § 1391(c)(2). "[T]he whole value of a generally phrased residual clause … is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]" *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). If Congress intended to limit the entity category described in section 1391(c)(2) "to particular [entities] that it had in mind, it could have enumerated them individually," as it did with the federal government, foreign governments, etc. *Id.* Congress knows how to make explicit provisions for State, and particularly State governments, when it chooses. *See, e.g.*, 42 U.S.C. § 9607(2); 29 U.S.C. § 2617(2); 29 U.S.C. § 203(x).

Further, Congress was clearly cognizant of States when drafting section 1391, *see* 28 U.S.C. §§ 1391(b)(1), (d), and knew how to provide a separate venue provision for them if it had so intended. "[A] court may not supply words where the legislature excludes things by omission." *Brandon Chrysler Plymouth Jeep Eagle, Inc. v. Chrysler Corp.*, 898 F. Supp. 858, 863 (M.D. Fla. 1995). The cases Plaintiff cites ignore this principle and seek to craft a new venue provision onto section 1391 for States—taking a form found in none of the other entity venue provisions which, even for the federal government, limit residence to certain districts and do not

11

provide for "ubiquitous" presence—based on a "common sense" view of the nature of States. *California*, 911 F.3d at 570; *Alabama*, 382 F. Supp. 2d at 1329.

The Court's role, however, is to interpret what the statute says, or omits, not based on what Plaintiff believes makes for "common sense" application. The Court "cannot rewrite statutes," that is Congress's job. *Mamani v. Berzain*, 825 F.3d 1304, 1310 (11th Cir. 2016). "The import of statutory language is what it says, not what it ought to say." *Id.* (internal citations omitted). "The 'absence of legislative language' restricts [the Court's] interpretation," because it is not allowed to add or subtract words from a statute. *Id.* (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013)); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it."). A seeming omission in a statute "does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554 (1925).

Congress omitted an explicit venue provision for State governments. The structure of section 1391 and other provisions indicate that this was not an oversight. The only eligible designation within the statute is the residual provision for "entit[ies]" with the capacity to sue and be sued, whether or not incorporated. 28 U.S.C. § 1391(c)(2). The plain language of the statute and traditional principles of statutory construction and the role of the judiciary dictate that this provision applies

12

to State governments when they act as plaintiffs. And under this construction, Plaintiff resides in the division of its principal place of business, Tallahassee, not within the Pensacola Division. *See id.*

Third, there is no property at issue here. *See* 28 U.S.C. § 1391(e)(1)(C). Further, "a substantial part of the events or omissions giving rise to the claim" did not occur in the Pensacola Division, to the extent they could be said to have occurred in Florida at all. *See* 28 U.S.C. § 1391(e)(1)(B). Despite Plaintiff's conclusory allegation that a substantial part of the events did "because illegal border crossers typically cross into Florida's territory in this district and division," ECF No. 1 ¶ 20, the Complaint makes clear that Plaintiff's challenge is not in fact to the allegedly illegal migration of noncitizens who have entered the United States without inspection into Florida, but rather DHS's decisions under its statutory authorities to parole or otherwise release pending initiation of removal proceedings noncitizens it has apprehended and inspected crossing the "Southwest border," *id.* ¶ 1, which is neither in nor adjacent to Florida or this division. Plaintiff acknowledges that the decision to release such noncitizens occurs only at the Southwest border, after DHS apprehends individual noncitizens there, and Florida is only allegedly impacted when such noncitizens are "released into the interior" and some portion of them decide to locate in Florida, *id.* ¶ 29. Regardless of whether Florida experiences downstream harm therefrom, which is very much in dispute, the complaint alleges

that the "events giving rise" to Florida's claims in this case are the decisions to release noncitizens *at the Southwest border*. *See* 28 U.S.C. § 1391(e).

Nor can Plaintiff rely on their argument that a *substantial* portion of the alleged harms arise in this division. To start, the focus of the venue inquiry is not where harms are experienced, but where the relevant events giving rise to those harms *occurred*. That harm on its own, apart from the locus of the alleged unlawful acts, cannot support venue because "only the events that directly give rise to a claim are relevant" to the venue analysis and "of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). As the Eleventh Circuit further explained, the venue statutes are concerned with protecting defendants, not plaintiffs, and Congress "meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Id.* Florida's allegations concerning where it believes it has been harmed because of the "activities of the defendant" are irrelevant. *See id.*; *Kapordelis v. Danzig*, 387 F. App'x 905, 906 (11th Cir. 2010) (unpublished) (similar); *accord Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *4 (S.D. Fla. Aug. 12, 2008) ("The relevant inquiry for the Court rests on the activities of Defendant, and not Plaintiffs."); *Nautilus Ins. Co. v. All Ins. Restoration Servs., Inc*, No. 4:20-CV-505-AW-MAF, 2021 WL 2043418, at *2 (N.D. Fla. Apr. 23, 2021) (recognizing

14

11th Circuit's holding that courts must "focus on relevant activities of the defendant, not of the plaintiff."); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. CV 116-071, 2017 WL 2126323, at \*3 n.2 (S.D. Ga. May 16, 2017) ("But that some harm was felt here, without more, does not show that a substantial part of the events giving rise to Plaintiffs' claims occurred in this district."); *Bell v. Rosen*, No. CV214-127, 2015 WL 5595806, at \*5 (S.D. Ga. Sept. 22, 2015) ("The harm to Plaintiffs' reputations in this District, by itself, would likely not be a sufficiently substantial event to establish venue, because the inquiry into relevant events focuses on the actions of Defendants."). Indeed, the fact that the venue provision's focus is on defendants' actions rather than plaintiffs' harm, *Bremer*, 321 F.3d at 1371, explains further why section 1391(e)'s provision for venue where a state plaintiff "resides" in suits against the federal government exists. Absent a provision allowing for venue where the plaintiff resides, States would not be able to sue the federal government in courts anywhere in their state, if the events giving rise to the suit did not occur there. *See* 28 U.S.C. § 1391(e)(1).

Even if the location of Florida's alleged harms were relevant for venue purposes and not foreclosed by controlling Eleventh Circuit precedent, their argument still fails. Florida argues venue is appropriate in the Pensacola Division on the basis noncitizens may cross into the State in this division. *Id.* ¶ 20. However, the harms Plaintiff enumerates in its complaint are speculative *statewide* costs for the

state prison, educational systems, Department of Children and Family, and emergency medical services, should migrants relocate to Florida. *Id.* ¶¶ 47-50. The Florida Department of Corrections is headquartered in Tallahassee, *see* http://www.dc.state.fl.us/, as is the Office of the Commissioner of the Florida Department of Education, *see* https://www.fldoe.org/contact-us/, and the Florida Department of Children and Families, *see* https://www.myflfamilies.com/contact-us/, as well as the Emergency Medical Services System of the Florida Department of Health, *see* http://www.floridahealth.gov/licensing-and-regulation/ems-system/index.html. Thus, even were it appropriate to look to where the Plaintiff's harms arise, rather than where substantial events relevant to the suit occurred, as required by the venue statute, those harms occur, if at all, in the Tallahassee Division, and not in this Division.

Multiple courts in this division have held that cases should be transferred to Tallahassee under the same or similar circumstances. *See, e.g.*, *Slayton v. Cash*, No. 3:17-CV-442, 2018 WL 775401, at *2 (N.D. Fla. Jan. 4, 2018) ("Although the Northern District of Florida is the correct district under the venue statute, because the events giving rise to the Complaint occurred in the Tallahassee Division, and all Defendants are located in the Tallahassee Division, this case should have been filed in that division of this Court."); *Paulcin v. Gillian*, No. 3:08CV-335, 2008 WL 4328217, at *2 (N.D. Fla. Sept. 17, 2008) (holding that "the acts or occurrences

16

forming the basis of the complaint occurred in Franklin County, Florida, which is located in the Tallahassee Division of this District" and "the community in the Pensacola Division appears to have no relation to the litigation at issue" and transferring the case to Tallahassee under Local Rule 3.1(C)); *Evans v. Florida*, No. 306-CV-269, 2006 WL 3762063, at *1 (N.D. Fla. Dec. 20, 2006) (transferring case against State of Florida to Tallahassee because "plaintiff indicates that this case was improvidently filed in the Pensacola division of this court, and that it should have been filed in the Tallahassee division"). Courts in other jurisdictions have also found intra-district transfer appropriate based on local venue rules. *See, e.g.*, *Esurance Ins. Co. v. Hamm*, 387 F. Supp. 3d 1134, 1137 (D. Or. 2019) (transferring per § 1406 when plaintiff failed to comply with District of Oregon divisional venue local rule); *Estrada v. California Corr. Inst.*, No. 118CV00599, 2019 WL 2433656, at *1 (E.D. Cal. June 11, 2019) ("If the venue provision of Local Rule 120 is not followed, the Court is authorized to transfer the case to the proper division without limitation; consideration of § 1404 factors is unnecessary."); *In re Stolicker Dairy Farms*, 67 B.R. 459, 461 (Bankr. E.D. Mich. 1986) ("The Court further concludes that the change of venue requested by the debtor is in the best interest of all concerned" pursuant to local rule permitting intradistrict transfer.).

Accordingly, the case should be transferred to the Tallahassee Division or dismissed under section 1406 and Local Rule 3.1(B).

## II.     Alternatively, the Case Should Be Transferred under § 1404

Should the Court find that venue is not improper in the Pensacola Division and transfer warranted by section 1406 and Local Rule 3.1(B), the Court should nevertheless transfer this case to the Tallahassee Division based on the convenience of parties and witnesses, and interests of justice, pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "When addressing opposed motions for an intra-district transfer, courts analyze such motion using the applicable factors relevant to inter-district transfers pursuant to [section] 1404(a)."[3] *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1206 (N.D. Fla. 2020).

Section 1404(a) gives the district court discretion to grant transfer based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation

---

[3] If Plaintiff does not oppose transfer, the Court may transfer this case to the Tallahassee Division without undergoing the analysis of the section 1404(b) factors. *See Combs*, 461 F. Supp. 3d at 1206. "Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b); *see* 15 Fed. Prac. & Proc. Juris. § 3842 (4th ed.).

omitted). The movant bears the burden to establish that the suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Courts typically consider multiple public and private factors, to the extent they are relevant:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Combs*, 461 F. Supp. 3d at 1207 (citing *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W.D. of Tex.*, 571 U.S. 49, 62 n.6 (2013)). The list is non-exhaustive in that the inquiry is "broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *Id.* at 1208 (quoting *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). For example, another factor courts consider is "the local interest in having localized interests decided at home." *See, e.g.*, *Miragliotta v. Actavis, Inc.*, No. 10-60813-CIV, 2010 WL 11508178, at *4 (S.D. Fla. Aug. 11, 2010) (quoting *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (5th Cir. 2009)); *Harrington v. United States*, No. 406CV285, 2008 WL 2019563, at *2 (S.D. Ga. May 9, 2008).

Because an intra-district transfer generally has milder ramifications than transfer to another district, courts are less rigorous in applying the section 1404(a)

analysis. *Combs*, 461 F. Supp. 3d at 1206; *see, e.g.*, *K.B. by T.B. v. Mich. Dep't of Health & Human Servs.*, 367 F. Supp. 3d 647, 654 (E.D. Mich. 2019). An intra-district transfer "is much less cumbersome" than an inter-district transfer, as the former "can be handled by the same lawyer(s) and will be governed by the same rules and procedures." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999). In contrast, an inter-district transfer "unload[s]" a case "onto an entirely new system." *Id.*; *cf. Hanning v. New England Mut. Life Ins. Co.,* 710 F. Supp. 213, 215 (S.D. Ohio 1989) ("Intradivisional transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under § 1404(a) but apparently judged by a less rigorous standard."); *Johnson v. Burlington-N., Inc.,* 480 F. Supp. 259, 260 (W.D. Mo. 1979) ("Discretionary transfers [w]ithin a district, however, are subject to fewer guidelines.").

Here, many of these factors do not point in either party's direction, but the ones that do, strongly counsel that this case be transferred to the Tallahassee Division. *See, e.g.*, *Slayton v. Cash*, No. 3:17-CV-442, 2018 WL 775401, at *2 (N.D. Fla. Jan. 4, 2018); *Paulcin v. Gillian*, No. 3:08CV-335, 2008 WL 4328217, at *2 (N.D. Fla. Sept. 17, 2008); *Evans v. Florida*, No. 306-CV-269, 2006 WL 3762063, at *1 (N.D. Fla. Dec. 20, 2006). The majority of Defendants' witnesses and evidence are located in either Washington, D.C. or along the Southwest border. Any witnesses or documents relevant to this case located in Florida—for example, agency

20

declarants from the Departments of Corrections, Education, Children and Families, or Health, *see supra*, or records submitted by Plaintiff from those agencies to establish the alleged impact on the state from the interstate migration and resettlement of noncitizens released at the Southwest border—would be in the seat of state government in Tallahassee, where the relevant agencies have their main offices and maintain their records.[4] Thus, the convenience of the witnesses and location of relevant documents counsel in favor of transfer to Tallahassee. *See Combs*, 461 F. Supp. 3d at 1207

The "convenience" of the parties "concerns the appearance of employees at court, and, to some extent, the appearance of counsel." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010). Tallahassee would be a better forum for Plaintiff because it is the location of the state's executive officers and lawyers litigating this matter. Similarly, "the local interest in having localized interests decided at home," *In re Nintendo Co.*, 589 F.3d at 1198, to the extent it is applicable here as the challenged action is occurring at the Southwest border, counsels in favor of Tallahassee, as opposed to Pensacola,

---

[4] Defendants maintain that this case, a challenge to federal administrative policy and practice under the APA, *see generally* ECF No. 1, is governed by the record rule and thus to be decided only on the basis of the record before the agency, not extrinsic evidence. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). But to the extent that Plaintiff disagrees and seeks to introduce extrinsic evidence, the majority or all of such evidence, whether testimony or documentary, would be located in Tallahassee, for the reasons explained above.

because the alleged "local interests" are all financial costs incurred by state agencies headquartered in Tallahassee. *See* ECF No. 1 ¶¶ 47-50.

The following factors are neutral or inapplicable:

- the locus of the operative facts, which is the Southwest border where Plaintiff claims the unlawful parole and release policies are being put into practice, or Washington D.C., where the alleged policy would have been promulgated,[5] ECF No. 1;

- the relative means of the parties, who are both sovereign governments;

- the familiarity of the forum with the governing law, which is a factor that "is seldom, if ever, relevant in cases involving motions for an intra-district transfer," *Combs*, 461 F. Supp. 3d at 1213, as courts in both the Pensacola and Tallahassee Divisions are equally capable of applying the APA framework governing this case; and

---

[5] As noted, it is the location of the events giving rise to the cause of action, and not merely the location where harms therefrom may be felt, that determines venue. *See, e.g.*, *Resolute Forest Prod.*, 2017 WL 2126323 at *3 n.2; *Rosen*, 2015 WL 5595806, at *5. Here, the locus of the events giving rise to Plaintiff's claim that Defendants are unlawfully releasing inadmissible noncitizens apprehended at the Southwest border into the interior is either at that border or in the District of Columbia, where policy decisions are made. Nevertheless, even if the Court looks to the location where harm therefrom allegedly may be felt in the State of Florida, the specific harms Plaintiff alleges are speculated costs to state agencies headquartered in Tallahassee, not Pensacola. *See* ECF No. 1 ¶¶ 47-50.

- the availability of process to compel the attendance of unwilling witnesses, as most or all witnesses will be employees of the Plaintiff or Defendants, "whose attendance at trial will not need to be compelled," *Trinity Christian Ctr.*, 761 F. Supp. 2d at 1329.

There is generally a presumption in favor of the plaintiffs' initial forum choice. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). The presumption is diminished, however, where the plaintiff does not reside in the forum. *Combs*, 461 F. Supp. 3d (citing *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1168 (10th Cir. 2010); *Sunbeam Prods., Inc. v. Homedics, Inc.*, 587 F. Supp. 2d 1055, 1057 (W.D. Wis. 2008); and *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006). The presumption is further diminished when the conduct at issue did not occur in Plaintiff's chosen forum. *Combs*, 461 F. Supp. 3d (citing *Rowles v. Hammermill Paper Co., Inc.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988); *Greene v. Nat'l Head Start Ass'n, Inc.*, 610 F. Supp. 2d 72, 75 (D.D.C. 2009)); *accord Hexcel Corp. v. Ineos Polymers, Inc.*, No. 1:08-CV-3637-CC, 2009 WL 10665434, at *3 (N.D. Ga. July 21, 2009) ("The weight accorded plaintiff's choice of forum is diminished substantially, however, when the forum is neither plaintiff's home district nor the place where the majority of the operative events or transactions underlying the action occurred."); *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL

6120565, at *8 (S.D. Fla. June 29, 2020) (noting that courts award a plaintiff's venue

choice less deference when the plaintiff does not reside there, "when the conduct at

issue did not occur in plaintiff's chosen forum" and/or where there is any suggestion

of "forum shopping"). Both factors that diminish the presumption are present here—

Plaintiff does not reside in this division for venue purposes under section 1391(e)

and the conduct at issue occurred at the Southwest border. Further, any deference to

Plaintiff's forum choice is further reduced because the requested transfer is only

intra-district. *See, e.g., In re Radmax, Ltd.,* 720 F.3d 285, 289 (5th Cir. 2013) (citing

17 MOORE'S FEDERAL PRACTICE § 111.21[2], at 111–155 (3d ed. 2013); *Potter*

*v. Cardinal Health 200, LLC.,* No. 2:19-CV-00007-JRG, 2019 WL 2150923, at *2

(E.D. Tex. May 16, 2019).

> Finally, "the interests of justice" is a separate factor considering:
>
> (1) where the action is more likely to be expeditiously and efficiently litigated; (2) judicial economy and docket congestion in the competing districts or divisions; (3) each party's ability to enforce a judgment; (4) whether transfer would allow for a consolidation of litigation; (5) the relationship of each community to the controversy; and (6) any obstacles to a fair trial that the parties may encounter in the competing venues.

*Combs*, 461 F. Supp. 3d at 1215 (citing *Research Automation, Inc.*, 626 F.3d at

978).

Applying these factors, Defendants know of no litigation in either division

with which this case could be consolidated. *See id.* Regarding judicial economy,

docket congestion, and efficiency of litigation, there is   evidence that the court docket in Tallahassee is substantially more congested than in Pensacola, or vice versa, or that the case could be more expeditiously or efficiently litigated in one division over the other. *See id.* There is no evidence that the Pensacola community has any greater connection to the subject matter of this case – noncitizens being released at the Southwest border – than the Tallahassee community. *See id.* Thus, the interests of justice factor is also neutral.

Plaintiff's decision to file this case in the Pensacola Division is entitled to little to no deference given that Plaintiff does not reside in this Division, and the events giving rise to the case did not occur in within the Pensacola Division. The convenience of witnesses and parties and the location of records and evidence all counsel in favor of transfer to Tallahassee, and the remaining factors are neutral. The interests of convenience and fairness weigh substantially in favor of litigating this case in Tallahassee as opposed to Pensacola, and therefore the Court should exercise its discretion to transfer this case to the Tallahassee Division under section 1404(a).

## IV. CONCLUSION

For the foregoing reasons, the Court should transfer this action to the U.S. District Court for the Northern District of Florida, Tallahassee Division or dismiss the case due to improper venue. Moreover, the Court should decide that motion before it adjudicates the pending motion to dismiss.

Date:  December 3, 2021                Respectfully submitted,

JASON R. CODY                          BRIAN M. BOYNTON
*Acting United States Attorney*        *Assistant Attorney General*

MARIE A. MOYLE                         WILLIAM C. PEACHEY
*Assistant United States Attorney*     *Director*
Northern District of Florida           Office of Immigration Litigation
                                       District Court Section

                                       EREZ REUVENI
                                       *Assistant Director*

                                       /s/ *Joseph A. Darrow*
                                       JOSEPH A. DARROW
                                       *Trial Attorney*
                                       U.S. Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Tel.: (202) 805-7537
                                       Joseph.a.darrow@usdoj.gov

                                       SARAH STEVENS WILSON
                                       *Assistant Director*
                                       Office of Immigration Litigation
                                       Appellate Section

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Local Rule 7.1(F) because, excluding parts of the document exempted by the Rule, it contains 6,247 words.

I further certify that a conference of counsel pursuant to Local Rule 7.1(B) was held on December 1, 2021, but it was unsuccessful in resolving the issues absent litigation.

 */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

27