# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

STATE OF FLORIDA,

    *Plaintiff*,

v.                            Case No. 3:21-cv-1066-TKW-EMT

The UNITED STATES OF AMERICA;
*et al.*,

    *Defendants*.

_____/

## FLORIDA'S RESPONSE TO
## DEFENDANTS' MOTION TO TRANSFER VENUE

Because States "reside[] at every point within the[ir] boundaries," *Atlanta & F. R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892),[1] they routinely sue the federal government in districts and divisions other than where their capital is located. *See* 28 U.S.C. § 1391(e)(1) (providing that a suit against the United States may be brought in any judicial district in which "the plaintiff resides"). The government now takes the position that this established practice, which features in many of the most historic decisions of the last decade, has been improper all along. *See, e.g.*, *Florida v. HHS*, 780 F. Supp. 2d 1256 (N.D. Fla. 2011) (striking down the Affordable Care Act in Pensacola); *New York v. Dep't of Comm.*, 351 F. Supp. 3d

---

[1] Fifth Circuit decisions issued before close of business on September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

502 (S.D.N.Y. 2019) (enjoining the census citizenship question in New York City); *California v. DHS*, 3:17-cv-5235 (N.D. Cal.) (enjoining the DACA recission in San Francisco).

When the federal government makes a claim this bold, one expects it to cite authority. But the government does not cite a *single case* endorsing its position. Instead, it cites several cases rejecting its argument but says they are "wrongly decided." Doc. 7-1 at 10. It also cites several cases holding that *state officials* who reside in the state capital reside there for venue purposes—but that self-evident proposition is neither disputed nor relevant. *Id.* at 8–10.

Florida resides in this district and division, as every court to consider the question has recognized. Further, although the Court need not reach this question, a substantial part of the events or omissions giving rise to Florida's claims occurred here. And the government's "convenience" arguments are meritless. The Court should deny the government's motion to transfer to the Tallahassee Division.

## LEGAL STANDARD

In a suit against the United States or its agencies or officials, venue is proper in any judicial district in which "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Venue is also proper in a district if "a substantial part of the events or omissions giving rise to the claim occurred" there. *Id.* Under Local Rule 3.1(B)—which is the crux of the dispute since the government

2

concedes that venue is proper in this *district*—a case "must be filed in a division in which venue would be proper if the division was a stand-alone district."

Even when venue is proper, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). But a plaintiff's choice of forum is accorded "considerable deference," so "the burden is on the movant to establish" that transfer is appropriate. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## ARGUMENT

### I.   VENUE IS PROPER IN THIS DIVISION.

#### a.  *Florida resides everywhere within its borders.*

Under 28 U.S.C. § 1391(e), a plaintiff may sue the federal government in any district where it "resides." Because Florida "resides at every point within [its] boundaries," *Atlanta & F. R. Co.*, 50 F. at 791, venue is proper. The only court of appeals to consider the question has agreed, *see California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018), as has every district court to consider it, *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005); *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 808–09 (E.D. Pa. 2019), *rev'd on other grounds*, *Little Sister of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020).

The government, citing 28 U.S.C. § 1391(c), contends that Florida resides only in Tallahassee. Doc. 7-1 at 8–12. But § 1391(c) says nothing about the States. Rather, it addresses the residency of only "natural person[s]" and certain "entit[ies]. 28 U.S.C. § 1391(c). The government argues, however, that Florida is an "entity" under § 1391(c)(2) and its "principal place of business" is in Tallahassee. That contention is wrong.

Florida is not an "entity" within the meaning of § 1391(c)(2), as the statutory context and amending history demonstrate. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Section 1391(c)(2) refers to an "entity . . . whether or not incorporated," which indicates "that the term refers to some organization, not a state." *Azar*, 911 F.3d at 570. This makes sense, as an earlier version of the statute referred to "corporation[s]," *see* 28 U.S.C. § 1391(c) (2002), and Congress amended the statute to address a "division in authority as to the venue treatment of unincorporated associations" like partnerships and labor unions. *See* H.R. Rep. No. 112-10, at 21 (2011); *accord Pennsylvania v. Trump*, 351 F. Supp. 3d at 809 ("There is no indication, however, that Congress intended for [§ 1391(c)(2)] to dictate the residency of sovereign States by equating a State with an 'unincorporated association[]' like a labor union.").

Consistent with Congress's purpose, § 1391(c)(2) does not address the residency of any "entity," only "an entity with the capacity to sue and be sued in its common name." This is language of corporate law and tracks the disagreement among the States as to whether partnerships can be sued as an entity. At common law, a plaintiff had to sue each individual partner, but many States have modified that rule. *See* J. William Callison & Maureen A. Sullivan, *Partnership Law & Practice* § 14.8 (2021.). For example, in Delaware "[a]n unincorporated association of persons, including a partnership, using a common name may sue and be sued in such common name." 10 Del. C. § 3904; *accord* §§ 620.1105, 620.8307, Fla. Stat. Because "an entity with the capacity to sue and be sued in its common name" is language referring to corporate law, it clearly does not include Florida.

Underscoring that point, § 1391(c) refers to the entity's "principal place of *business*." 28 U.S.C. § 1391(c) (emphasis added). But States do not operate a business, they are sovereigns. *See Alden v. Maine*, 527 U.S. 706, 715 (1999) ("[States] are not relegated to the role of mere provinces or political corporations, but retain the dignity, though not the full authority, of sovereignty.").

The government cites no case supporting its position, but instead relies on several decisions finding that a *public official* "resides" in the State's capital. *See, e.g.*, *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) (concluding that Ohio Supreme Court justices sued in their official capacity resided in Columbus). But

where an official resides is a distinct question from where the sovereign itself resides. *See U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d at 1328 (rejecting this same argument because "Alabama, not its public officials, brought th[e] suit"). In fact, the government's reliance on these cases is strange given that its whole argument is that Florida is an "entity" under § 1391(c)(2)—officials sued in their official capacity are certainly not "entit[ies]" under that provision.

On top of all of this, the government's position runs counter to years of practice. *Cf. Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power," courts "typically greet its announcement with a measure of skepticism."). Numerous cases brought by States against the federal government are pending in districts that do not house the state capital.[2] And this practice is nothing new. There are countless examples of similar cases initiated since Congress enacted the current version of § 1391(c) in 2011.[3] Many of these cases involve immigration policies comparable to the one at issue here. *See, e.g., California v. Trump*, 4:20-cv-1563 (N.D. Cal.)

---

[2] *See, e.g., Louisiana v. Becerra*, 3:21-cv-3970 (W.D. La.); *Missouri v. Biden*, 4:21-cv-1329 (E.D. Mo.); *Louisiana v. Biden*, 1:21-cv-3867 (W.D. La.); *Missouri v. Biden*, 4:21-cv-1300 (E.D. Mo.); *Tennessee v. DOE*, 3:21-cv-308 (E.D. Tenn.); *Texas v. Yellen*, 2:21-cv-79 (N.D. Tex.); *Louisiana v. Biden*, 2:21-cv-1074 (W.D. La.); *Florida v. Becerra*, 8:21-cv-839 (M.D. Fla.); *Texas v. Biden*, 3:21-cv-65 (S.D. Tex.); *Missouri v. Biden*, 4:21-cv-287 (E.D. Mo.); *New York v. U.S. Dep't of Labor*, 1:21-cv-536 (S.D.N.Y.); *California v. Bernhardt*, 4:21-cv-440 (N.D. Cal.).

[3] *See, e.g., Alabama v. Nat'l Marine Fisheries Serv.*, 1:16-cv-593 (S.D. Ala.); *Georgia v. Wheeler*, 2:15-cv-79 (S.D. Ga.); *Texas v. United States*, No. 7:15-cv-56 (N.D. Tex.); *California v. HHS*, 4:20-cv-682 (N.D. Cal.); *California v. Trump*, 4:20-cv-1563 (N.D. Cal.); *Washington v. DHS*, 4:19-cv-5210 (E.D. Wa.).

(border wall funding); *Washington v. DHS*, 4:19-cv-5210 (E.D. Wa.) ("public charge" rule).

In the past year, Florida has filed ten actions against the federal government in federal district courts without a state capital—either alone or with other States—and only in this case has the government moved to transfer to a division with a state capital.[4] In one of those cases—also challenging nationwide immigration policies—the court sua sponte issued a show cause order asking if it should transfer to Tallahassee. *See* Order to Show Cause, Doc. 16, *Florida v. United States*, 8:21-cv-541 (M.D. Fla. Mar. 15, 2021). Florida filed a response identifying the same authorities it identifies here, and the court withdrew the show cause order. Fla.'s Resp., Doc. 17, *Florida v. United States*, 8:21-cv-541 (M.D. Fla. Mar. 16, 2021); Order, Doc. 20, *Florida v. United States*, 8:21-cv-541 (M.D. Fla. Mar. 22, 2021). Even in that case, the government did not argue that venue was improper.[5]

The government's argument that Florida does not reside in its own territory falls short. *Cf. Bond v. United States*, 572 U.S. 844, 858 (2014) (discussing a clear-statement rule that applies when Congress "alter[s] the balance of federal and state

---

[4] *See Florida v. Becerra*, 8:21-cv-389 (M.D. Fla.); *Florida v. United States*, 8:21-cv-541 (M.D. Fla.); *Florida v. Nelson*, 8:21-cv-2524 (M.D. Fla.); *Florida v. HHS*, 3:21-cv-2722 (N.D. Fla); *Florida v. DHS*, 2:21-cv-14462 (S.D. Fla.); *Texas v. Biden*, 8:21-cv-65 (S.D. Tex.); *Louisiana v. Biden*, 2:21-cv-1074 (W.D. La.); *West Virginia v. U.S. Dep't of Treasury*, 7:21-cv-465 (N.D. Ala.); *Louisiana v. Becerra*, 3:21-cv-4370 (W.D. La.).
[5] It appears the government has endorsed Florida's position in the past. *See, e.g.*, Complaint, Doc. 1, *United States v. Texas*, 2:13-cv-263 (S.D. Tex. Aug. 22, 2013); Complaint, *United States v. North Carolina*, 13-cv-861 (M.D.N.C. 2013).

power"). Section 1391(c) addresses only "natural person[s]" and incorporated and unincorporated "entit[ies]." Another provision, § 1391(f), addresses the residence of "foreign state[s]." 28 U.S.C. § 1391(f). For any others, their residence is governed by the ordinary meaning of the word "resides." *See id.* § 1391(e); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("[A] judge should not presume that every statute answers every question . . . ."). Because Florida "resides at every point within its boundaries," *Atlanta & F. R. Co.*, 50 F. at 791, venue is proper in this division.

### b. *The events giving rise to the action occurred in this division.*

Florida's residency is enough to establish venue. But, as a second basis for venue, Florida alleges that a substantial part of the events or omissions giving rise to its claims occurred here. The government argues that no relevant events occurred in the State, only Florida's harm. *See* Doc. 7-1 at 14 (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)). But the government misunderstands Florida's allegations.[6]

---

[6] Indeed, the government offers cases transferred "under the same or similar circumstances," Doc. 7-1 at 16, but its proffered cases bear little-to-no factual resemblance to Florida's claims. *Slayton v. Cash*, 3:17-cv-442, 2018 WL 775401 (N.D. Fla. Jan. 4, 2018) (transferring civil rights claim against correctional officers to the division in which the correctional institute was located); *Paulcin v. Gillian*, 3:08-cv-335, 2008 WL 4328217 (N.D. Fla. Sept. 17, 2008) (same); *Evans v. Florida*, 3:06-cv-269, 2006 WL 3762063 (N.D. Fla. Dec. 20, 2006) (transferring pro se complaint challenging the legality of Florida agencies' regulation of the unlicensed practice of law to the Tallahassee Division).

Florida alleges that the government has a duty to maintain custody of individuals apprehended at the border *throughout their removal proceedings*. Doc. 1 at ¶ 22 (citing 8 U.S.C. § 1125). The government violates that duty, not just when it unlawfully releases aliens at the border, but every second that the aliens remain at-large rather than in federal custody. And because this omission becomes relevant to Florida the moment the aliens cross state lines and federal officials in Florida implement the government's do-nothing policy, a substantial part of the omissions giving rise to Florida's claims occurred here. *See Bremer*, 321 F.3d at 1371 (noting that the "substantial part" standard in § 1391 "contemplates some cases in which venue will be proper in two or more districts" and "allows for additional play in the venue joints").

## II.  THE SECTION 1404 FACTORS DO NOT FAVOR A TRANSFER.

If the Court agrees that venue is proper in the Pensacola Division, it should decline to transfer to the Tallahassee Division under 28 U.S.C. § 1404(a) because the convenience of the parties and the interests of justice do not favor a transfer.[7]

First, a plaintiff's choice of forum is accorded "considerable deference." *In re Ricoh Corp.*, 870 F.2d at 573. And any arguments tailored to convenience *for the*

---

[7] Section 1404(a) does not apply to intra-district transfers, which are governed exclusively by the local rules. *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1206 (N.D. Fla. 2020).  Still, some courts have considered the same factors in considering intra-district transfers. *E.g.*, *id.* Florida notes, however, that Local Rule 3.1(D) would authorize this Court to set hearings in Tallahassee in this case. So it is not obvious that transfer would be the appropriate remedy even if the Court agreed with the government's analysis, which Florida believes is meritless in any event.

*plaintiff* are given no weight. That is Florida's judgment to make. *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3849 (4th ed. 2021) ("That the plaintiff may suffer some inconvenience in the district it chose is not an argument that a defendant can make successfully in support of its transfer motion.").

Second, Florida is perplexed by the government's argument that the convenience of witnesses favors Tallahassee. Doc. 7-1 at 20–21. The government views this case as one in which witnesses and discovery are inappropriate because, as it frames the issue, the case is governed by the "record rule." *Id.* at 21 n.4.[8] Counsel for the government has, to this point, been unwilling to even have a Rule 26(f) conference with Florida, which means the parties have not exchanged initial disclosures. The government therefore can make no representations about what witnesses Florida will call—and presumably plans to object to Florida even doing so.

Moreover, if Florida does call witnesses, they would principally be the federal officials responsible for implementing the government's unlawful border policies. This Court—like any resident of North Florida—is well-aware that it is easier to fly to Pensacola than to Tallahassee. *See also Health Freedom Def. Fund, Inc. v. Biden,*

---

[8] Florida disagrees, but the government should not be permitted to dispute Florida's right to present witness testimony and simultaneously argue that the case should be transferred for convenience of those witnesses.

8:21-cv-1693, 2021 WL 5416688, at *5 (M.D. Fla. Nov. 19, 2021) (finding that the burden to travel to Orlando is the same as the burden to travel to Tampa). Further, "[i]n cases where witnesses are employees of a party, . . . their convenience is entitled to less weight because the respective party will be able to compel their attendance and testimony at trial." *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1208 (N.D. Fla. 2020) (denying motion to transfer from Panama City Division to Tallahassee where witnesses were state agency employees based in Tallahassee).

Third, to the extent the government relies on non-witness evidence, Doc. 7-1 at 20–21, the location of such evidence is not a convenience factor in the 21st Century. *Trinity Christian Cntr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("[T]he significance of [the location of relevant documents] is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production.").

Finally, contrary to the government's arguments, Doc. 7-1 at 21 ("Tallahassee would be a better forum for Plaintiff because it is the location of . . . lawyers litigating this matter."), convenience of *counsel* "is emphatically not a proper consideration in the § 1404(a) transfer analysis." *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp. 2d 634, 637 (S.D. Ala. 2007) (collecting cases); *accord In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (concluding that a district court's consideration of counsel convenience as factor in a motion to transfer was an abuse

of discretion); *Andersons, Inc. v. Enviro Granulation, LLC*, 8:13-cv-3004, 2015 WL 2025590, at *9 (M.D. Fla. Apr. 30, 2015) ("[T]he convenience of litigation counsel is not relevant.").

The government has not met its burden to show that Florida's choice of forum was "clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

## CONCLUSION

For the foregoing reasons, the Court should deny the government's request to transfer this case to the Tallahassee Division.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

James H. Percival (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY

*/s/ Natalie P. Christmas*
Natalie P. Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Daniel Bell (FBN 1008587)
CHIEF DEPUTY SOLICITOR GENERAL

Rachel Siegel (FBN 1029143)
DEPUTY SOLICITOR GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
natalie.christmas@myfloridalegal.com

*Counsel for the State of Florida*

13

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this memorandum contains 2939 words.

## CERTIFICATE OF SERVICE

I certify that on December 27, 2021, a true and correct copy of the foregoing

was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Natalie P. Christmas*
Assistant Attorney General