# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-01066 |
| | ) | |
| The UNITED STATES OF | ) | |
| AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

# REPLY IN SUPPORT
# OF MOTION
# TO TRANSFER VENUE

## TABLE OF CONTENTS

INTRODUCTION...............................................................................................2

ARGUMENT .....................................................................................................3

   I.    Venue is Improper under 28 U.S.C. § 1406 and Local Rule 3.1(B) ..........4

  II.    Alternatively, the Case Should Be Transferred under § 1404 ................12

CONCLUSION.................................................................................................14

CERTIFICATE OF COMPLIANCE ................................................................16

CERTIFICATE OF SERVICE ........................................................................16

# TABLE OF AUTHORITIES

## CASE LAW

*Alabama v. U.S. Army Corps of Engineers*,
  382 F. Supp. 2d 1301 (N.D. Ala. 2005) ............................................................6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................11

*Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*,
  50 F. 790 (5th Cir. 1892) ................................................................................7, 8

*Birnbaum v. Blum*,
  546 F. Supp. 1363 (S.D.N.Y. 1982) .....................................................................8

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ............................................................................5, 6

*CBS Inc. v. PrimeTime 24 Joint Venture*,
  245 F.3d 1217 (11th Cir. 2001) ...........................................................................6

*Clinton v. Sec. Benefit Life Ins. Co.*,
  No. 19-24803-CIV, 2020 WL 6120565 (S.D. Fla. June 29, 2020).....................14

*Downey v. United States*,
  No. 19-00406 LEK-WRP, 2019 U.S. Dist. LEXIS 148948 (D. Haw. Aug. 30,
  2019) ..................................................................................................................9

*Fla. Hometown Democracy, Inc. v. Browning*,
  No. 08-CV-80636-CIV, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008) ...............8

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) .........................................................................................13

*Florida v. United States*,
  No. 8:21-cv-541 (M.D. Fla. Mar. 22, 2021)........................................................9

*Harry v. Marchant*,
  291 F.3d 767 (11th Cir. 2002) .............................................................................5

*Health Freedom Def. Fund, Inc. v. Biden*,
    No. 8:21-CV-1693-KKM-AEP, 2021 WL 5416688 (M.D. Fla. Nov. 19, 2021).13

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (5th Cir. 2009) ...............................................................13

*Jenkins Brick Co. v. Bremer*,
    321 F.3d 1366 (11th Cir. 2003) ............................................................11

*Leonhart v. McCormick*,
    395 F. Supp. 1073 (W.D. Pa. 1975) .......................................................8

*Mamani v. Berzain*,
    825 F.3d 1304 (11th Cir. 2016) ..............................................................7

*Nautilus Ins. Co. v. All Ins. Restoration Servs., Inc.*,
    No. 4:20-CV-505-AW-MAF, 2021 WL 2043418 (N.D. Fla. Apr. 23, 2021) .....13

*Nestor v. Hershey*,
    425 F.2d 504 (D.C. Cir. 1969).................................................................8

*O'Neill v. Battisti*,
    472 F.2d 789 (6th Cir. 1972) ......................................................... 4, 5, 8

*Pennsylvania v. Trump*,
    351 F. Supp. 3d 791 (E.D. Pa. 2019)..................................................5,6

*Perez v. United States*,
    402 U.S. 146 (1971) .............................................................................12

*Perkins v. Snider*,
    No. CIV. A. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) .......................8

*Ratzlaf v. United States*,
    510 U.S. 135 (1994) ...............................................................................5

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
    No. CV 116-071, 2017 WL 2126323 (S.D. Ga. May 16, 2017) ..........................11

*Reuben H. Donnelly Corp. v. FTC*,
    580 F.2d 264 (7th Cir. 1978) ...................................................................7

*Saenz v. Roe*,
   526 U.S. 489 (1999) ................................................................12

*United States v. Campa*,
   459 F.3d 1121 (11th Cir. 2006) ...............................................10

## FEDERAL STATUTES

8 U.S.C. § 1182(d)(5)(A) .............................................................11

28 U.S.C. § 1391(b)(2)...................................................................9

28 U.S.C. § 1391(c) ........................................................................7

28 U.S.C. § 1391(c)(1)....................................................................9

28 U.S.C. § 1391(c)(2)....................................................................4

28 U.S.C. § 1391(d) .....................................................................6, 7

28 U.S.C. § 1391(e) .....................................................................2, 7

28 U.S.C. § 1391(e)(1)..................................................................4, 9

28 U.S.C. § 1391(e)(1)(B) .............................................................12

28 U.S.C. § 1391(f)........................................................................7

28 U.S.C. § 1404(a) ...................................................................2, 12

28 U.S.C. § 1406.........................................................................2, 4

28 U.S.C. § 1406(a) .......................................................................4

## MISCELLANEOUS

17 James Wm. Moore et al., Moore's Federal Practice,
   §110.03 (2021)...................................................................8

**INTRODUCTION**

As Defendants explained in their Motion to Transfer Venue, ECF 7, this action should be transferred to the Tallahassee Division of the U.S. District Court for the Northern District of Florida under 28 U.S.C. § 1406, because venue is improper in the Pensacola Division under 28 U.S.C. § 1391(e) and Northern District of Florida Local Rule 3.1(B). Plaintiff State of Florida resides, for purposes of suing the federal government under section 1391(e), in its capital, Tallahassee. The events giving rise to Plaintiff's claims – the Government's alleged improper parole or release of noncitizens arriving at the Southwest border – occur at that border. Under section 1391(e), Tallahassee is thus the only Division in this District where venue is proper. Alternatively, this action should be transferred under 28 U.S.C. § 1404(a), because the convenience of witnesses and interests of justice counsel transfer.

Florida's counterarguments fail to overcome the simple and clear logic dictating transfer. Florida asks the Court to ignore that section 1391 provides venue rules for several different types of persons and entities, including a catch-all provision for other entities with the ability to sue and be sued, none of which provide those entities with universal residence within all jurisdictions in which they could be said to be located. Instead, Florida asks the Court to read an unwritten exception for States into the otherwise comprehensive statute, based on Florida's "ordinary" view of what the term "resides" should mean, ECF 11 at 8, and grant that exception

2

significantly broader latitude than any of the statutorily prescribed venue residency options. Such an argument defies statutory construction and a authority holding that state officers and agencies generally "reside" where they perform their duties – i.e., the state capital.

Nor can Florida establish venue here based on the location of the underlying events. Florida is not challenging federal authority permitting noncitizen movements between States, but rather immigration enforcement decisions at the Southwest border.

Florida's argument under the equitable transfer provision, section 1404, is similarly unpersuasive. Florida focuses on the location of federal officials; but their testimony on border release policies will not be necessary as the merits of this APA action is governed by the record rule. To the extent that it allows extra-record evidence, this is likely to be located in Tallahassee. Florida ignores that to establish its harm to have standing to bring this suit, it likely will need testimony and evidence from state officers and agencies headquartered in Tallahassee, not Pensacola. *See* ECF 1 ¶¶ 47-50.  The convenience of witnesses and interests of justice thus also counsel transfer.

**ARGUMENT**

3

## I.     Venue is Improper under 28 U.S.C. § 1406 and Local Rule 3.1(B)

As Defendants argued, ECF No. 7 at 5-17, venue is improper in this division under 28 U.S.C. § 1406(a). Local Rule 3.1(B) requires that the Court determine proper divisional venue as "if the division was a stand-alone district," and the federal venue statute provides, in suits against the United States, venue is proper where, as relevant here, "a substantial part of the events or omissions giving rise to the claim occurred" or where "the plaintiff resides[.]" 28 U.S.C. § 1391(e)(1). Neither residency provision applies here.

Florida does not "reside" in this Division. Section 1391(e) does not provide an explicit venue provision for State litigants, although it provides one for many other types of persons and entities. This omission, however, was not an oversight; Congress included a catch-all residual provision into which Florida falls. A State, like other entities that are not corporations but still have the power to sue and be sued, "resides" for venue purposes where it "maintains its principal place of business." 28 U.S.C. § 1391(c)(2). The principal place of business for the state government of Florida is its capital, Tallahassee. *See, e.g., O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio

is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government."); ECF 7 at 8-10 (collecting cases).

Florida contends it is not an "entity," and that the catch-all provision was designed only for "unincorporated associations like partnerships and labor unions." ECF No. 11 at 4. Florida relies on two out-of-circuit cases examining legislative history pertaining to section 1391(c). ECF No. 11 at (citing *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) and *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 808–09 (E.D. Pa. 2019)). However, the Eleventh Circuit has explained that "[e]ven if a statute's legislative history evinces an intent contrary to its straightforward statutory command," which is even further than Florida argues here, "'we do not resort to legislative history to cloud a statutory text that is clear.'" *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)). That principle applies here. Florida is undisputedly an entity with the capacity to sue and be sued in its common name, under the clear language of the statute. It is only through its resort to legislative history, and that of *Azar*, 911 F.3d

5

at 570, and *Pennsylvania*, 351 F. Supp. 3d at 809, that Florida can begin to argue that it does not fall under the plain language of section 1391(c)(2).[1]

Even were the legislative history relevant, and if it were to establish that Congress was primarily concerned with unincorporated associations like trade unions when drafting section 1391(c)(2), this nevertheless would not dictate that a State was not an "entity" – after all, a State falls under the plain meaning of that statutory term. "The 'plain' in 'plain meaning' requires that we look to the actual language used in a statute, not to the circumstances that gave rise to that language." *CBS Inc.*, 245 F.3d at 1224. The scope of the words of the statute dictates what the law is, not *post hoc* views of what particular problem Congress sought to address when penning it.

Florida also cites *Alabama v. U.S. Army Corps of Engineers*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005), but that case, finding no authority dictating either conclusion,

---

[1] Beyond the unnecessary resort to legislative history to confuse otherwise uncomplicated statutory terms, the logic of *Azar* and *Pennsylvania* is further flawed. Those courts "highlight[ed] that the statute explicitly distinguishes between states and entities." *Azar*, 911 F.3d at 570 (citing 28 U.S.C. § 1391(d) ("Residency of corporations in States with multiple districts.")); *Pennsylvania*, 351 F. Supp. 3d at 809 (same). This reference to "States" actually has the opposite implication – i.e., that Congress had States in mind when drafting section 1391 and therefore its decision not to include a provision explicitly providing for their residence was intentional, as they were covered by the catch-all provision for any entity in section 1391(c)(2). *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.") (internal quotation omitted).

based its reasoning only on "common sense dictat[ing] that a state resides throughout its sovereign borders." *Id.* at 1329. This approach is flawed: the Court "cannot rewrite statutes" based on its view of common sense. *See Mamani v. Berzain*, 825 F.3d 1304, 1310 (11th Cir. 2016). Further, it is inconsistent with longstanding interpretation of the residence of the federal government under section 1391(e), which *does not* reside for venue purposes throughout its sovereign borders. *See Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978). Plaintiff provides no explanation for why a State's sovereignty should dictate such broader residency for section 1391(e) than the even greater sovereign authority of the United States within its borders. Nor does Plaintiff explain why the unwritten rule it asks the Court to read into section 1391(e) for States is so much broader than every explicitly enumerated litigant in the statute, all of whom may not sue or be sued everywhere they are present, but only in limited district(s). *See* 28 U.S.C. §§ 1391(c), (d), (e), (f). Finally, Plaintiff cites *dicta* from *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790 (5th Cir. 1892), stating "the state government . . . resides at every point within the boundaries of the state." *Id.* at 791. The case did not concern suit by or against a state governmental entity, and did not purport to address where a state government resides for venue purposes. *See id.* And even were it not *dicta*,

7

*Atlanta & F.R. Co.* precedes the modern amendments to venue statutes including in section 1391(e), and so has been superseded.

Florida contends that states are not businesses, but sovereign governments, and, therefore, they cannot have a "principal place[s] of business" within the meaning of section 1391. ECF No. 11 at 5. Florida cites no authority for their proposition which contradicts numerous authorities applying this concept to governmental actors, referring to the principal place where sovereign entities or individuals perform their duties. *See, e.g.*, *O'Neill*, 472 F.2d at 791; *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969); *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008); *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975); *Perkins v. Snider*, No. CIV. A. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982); 17 Moore's Federal Practice - Civil § 110.03 (2021).

Florida next claims that where the State resides differs from where its officials and agencies reside. ECF 11 at 5-6 (citing *Alabama*, 382 F. Supp. 2d at 1328 (noting "Alabama, not its public officials, brought this suit")). But neither Florida nor *Alabama* explains why this distinction makes any difference. *See id.* Section 1391(e) does not make separate provisions for public officials suing in official capacity on behalf of their government; the only provision for individuals addresses personal

domicile, which has no logical bearing on official capacity suits. *See* 28 U.S.C. § 1391(c)(1). Such a position is inconsistent with the treatment of the federal government, where even though the statute speaks only in terms of employees or agencies, 28 U.S.C. § 1391(e)(1), the rule does not distinguish between the sovereign and its actors. *See, e.g.*, *Downey v. United States*, No. 19-00406 LEK-WRP, 2019 U.S. Dist. LEXIS 148948, at *9 (D. Haw. Aug. 30, 2019) ("The United States, like its agencies, is considered to reside in Washington D.C. for purposes of § 1391(e)(1)(A).").

Finally, Florida argues Defendants' position "runs counter to years of practice" because it and other states have cases pending against the federal government in districts or divisions not housing the state capital. ECF 11 at 6-7. But the only case Florida identifies in which this issue was actually raised, the court merely issued a summary order finding that venue in that District "ha[d] been sufficiently alleged," without further analysis. *Florida v. United States*, No. 8:21-cv-541 (M.D. Fla. Mar. 22, 2021), ECF 20.  The lack of analysis offers no guidance as to why the court ruled as it did, and on what basis.[2] Unlike this case, where the

---

[2] In that case, Florida had argued that venue was proper both based on its alleged residency throughout the state and due to the occurrence of a substantial portion of the acts or omissions in that District. *Florida*, No. 8:21-cv-541, ECF 17. And, unlike here, where the underlying acts challenged are the release of noncitizens at the Southwest border, there Florida challenged actions with a direct connection to the District – the government's alleged failure to take into custody and remove noncitizens being released from Florida's prisons. *Id.* ECF 1 ¶ 49; ECF 1-7.

underlying action concerns specifically the release of noncitizens at the Southwest border, not in Florida or this division, the Court may have found that Florida plausibly alleged that a substantial portion of the underlying action did occur in the Middle District of Florida. *See* 28 U.S.C. § 1391(b)(2). As for the other cases Florida references, even if the government waived a venue argument or acceded to venue in a division outside the capital based on the different facts and equities of those cases, it does not rise to the extreme circumstances that would estop the Government from challenging venue here. *See United States v. Campa*, 459 F.3d 1121, 1152 (11th Cir. 2006) (explaining judicial estoppel applies where "the allegedly inconsistent positions were made under oath in a prior proceeding" that was related to the one at issue, and "such inconsistencies were calculated to make a mockery of the judicial system") (internal quotation omitted).

In sum, the language of section 1391, traditional principles of statutory construction, and the statute's provisions for limited residences for venue purposes for other individuals and entities, governmental and private alike, defeats Florida's argument that the Court must read in an unwritten exception permitting the State to "reside" for venue purposes everywhere it is present.

A substantial part of the events did not occur in Pensacola. Despite the fact that Florida is challenging release decisions for noncitizens apprehended at the Southwest border, and not in Florida, Florida nevertheless maintains that the action

underlying its claim did occur in the Pensacola Division because it "alleges that the government has a duty to maintain custody of individuals apprehended at the border throughout their removal proceedings." ECF 11 at 8-9.

However, the Complaint does not make this allegation.[3] What the Complaint does allege regarding nexus is that "illegal border crossers typically cross into Florida's territory in this district and division," ECF 1 ¶ 20, and then eventually impose a statewide cost on social services, *id.* ¶¶ 47-50.

First, this allegation improperly focuses on where alleged harms are experienced, but the venue inquiry is only concerned with where relevant events giving rise to those harms occurred. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. CV 116-071, 2017 WL 2126323, at *3 n.2 (S.D. Ga. May 16, 2017) ("But that some harm was felt here, without more, does not show that a substantial part of the events giving rise to Plaintiffs' claims occurred in this district."); ECF 7 at 14-15. Noncitizens choosing to settle in Florida and increasing service costs is the alleged harm; but the

---

[3] If the Complaint had, it would fail the plausibility pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint challenges two release practices, parole and Notice to Report (NTR), ECF 1 ¶¶ 30, 31, both of which categorically defeat Florida's theory as a matter of law.  Contrary to violating any duty to maintain custody "throughout their removal proceedings," the parole authority explicitly grants DHS discretion to temporarily release noncitizens while their proceedings are pending, 8 U.S.C. § 1182(d)(5)(A), while, as Florida concedes, noncitizens released on NTRs had not (yet) been charged and placed into removal proceedings at all. *See, e.g.*, ECF 1 ¶¶ 7, 56.

11

action giving rise to this harm, the decision to release these noncitizens on parole or (previously) an NTR occurred at the Southwest border. With the venue inquiry, courts must "focus on relevant activities of the defendant, not of the plaintiff," *Nautilus Ins. Co. v. All Ins. Restoration Servs., Inc.*, No. 4:20-CV-505-AW-MAF, 2021 WL 2043418, at *2 (N.D. Fla. Apr. 23, 2021), and the allegedly unlawful activity by Defendants challenged here occurred at the Southwest border, not in Florida. The Complaint fails to allege a nexus to the Pensacola division under 28 U.S.C. § 1391(e)(1)(B).[4]

## II. Alternatively, the Case Should Be Transferred under § 1404

Alternatively, the Court should nevertheless transfer this case to the Tallahassee Division based on the convenience of parties and witnesses, and interests of justice, pursuant to 28 U.S.C. § 1404(a). As Defendants argued, Plaintiff is not at home in this division and the underlying events did not occur here, so its forum choice receives little deference. *See Combs*, 461 F. Supp. 3d. Additionally,

---

[4] If the Complaint challenged, not the release of noncitizens at the border, but the lawfulness of federal action permitting them to cross into Florida, such a claim would be defeated by the Constitution. *See Saenz v. Roe*, 526 U.S. 489, 501 (1999) (reaffirming the constitutional "right to free interstate movement" and tracing its origins to the Articles of Confederation); *Perez v. United States*, 402 U.S. 146, 150 (1971) (explaining the Commerce Clause grants the federal government authority over "persons or things" engaged in interstate commerce). Whether Florida alleges it suffers *harm* from the movement of people into the state is another matter (an allegation Defendants dispute), but that movement itself is not the *action giving rise to its claim* challenging border entry policies.

given that the record rule will govern the merits of this matter, Tallahassee is much more convenient for the only witnesses likely to be called – state agencies providing extra-record evidence to establish Florida's standing. ECF 7-1 at 18-25; *see also id.* at 16 (collecting cases of intradistrict transfers to Tallahassee)

Florida argues that witnesses are likely to be federal officials making border policy, and "it is easier to fly to Pensacola than to Tallahassee."[5] ECF 11 at 10. However, the merits of this challenge to federal administrative action must be determined on the record before the agency, not a different record created by testimony in this Court. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). To the extent the Court decides to admit extra-record evidence, however, it is more convenient for testimony and evidence to be obtained in Tallahassee, and Tallahassee has a greater local interest in the adjudication of matters allegedly affecting State coffers. ECF 7 at 20-21; *see In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (5th Cir. 2009). Specifically, Defendants have challenged Florida's standing to challenge federal enforcement actions against noncitizens at the Southwest

---

[5] Florida cites *Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-CV-1693-KKM-AEP, 2021 WL 5416688 (M.D. Fla. Nov. 19, 2021) for this proposition, but as Florida itself concedes, this case merely stated that the burden of flying from out of state to each division was comparable. *Id.* at *5 ("To be sure, Defendants' counsel must commute to Florida from the Washington, D.C., area regardless and raise no concern that Tampa creates a higher burden on them compared to Orlando."). It does *not* stand for the proposition that it is easier for litigants to get to Pensacola than Tallahassee.

border, *see* ECF 6 at 9-13, and substantial evidence of Florida's injury to support its standing is unlikely to be in the administrative record, given the extremely attenuated nature of Florida's alleged connection to such Southwest border actions.  To the extent it tracks the Complaint's allegations regarding harm, ECF 1 ¶¶ 47-50, evidence of injury is likely to come from state agencies headquartered in Tallahassee, making that division more convenient for any witnesses with even the potential to be called by either party in this case.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court should transfer this action to the Tallahassee Division.

Date:  January 10, 2022            Respectfully submitted,

JASON R. CODY                      BRIAN M. BOYNTON
*United States Attorney*           *Assistant Attorney General*

MARIE A. MOYLE                     WILLIAM C. PEACHEY
*Assistant United States Attorney* *Director*
Northern District of Florida       Office of Immigration Litigation
                                   District Court Section

---

[6] Florida argues that convenience of state witnesses should not be a factor, but does not dispute that it would be more convenient for any potential state witnesses to have this matter litigated in Tallahassee, where their offices are, rather than having to travel to Pensacola. *See* ECF 11 at 9-10. Defendants maintain that, at the least, Florida's odd choice to incur extra time and inconvenience for its employees, and extra travel costs to be borne by taxpayers, requires further inquiry. *See Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020) (courts award a plaintiff's venue choice less deference when the plaintiff does not reside there and "when the conduct at issue did not occur in plaintiff's chosen forum").

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section

15

**CERTIFICATE OF COMPLIANCE**

I certify that this reply brief complies with the type-volume limitation of Local Rule 7.1(F), (I) because, excluding parts of the document exempted by the Rule, it contains 3,199 words.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division