**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| STATE OF FLORIDA, )<br><br>*Plaintiff,* )<br><br>v. )<br><br>The UNITED STATES OF )<br>AMERICA, *et al.*, )<br><br>*Defendants.* ) | Civil Action No. 3:21-cv-01066 |

**<u>MEMORANDUM IN SUPPORT</u>**
**<u>OF DEFENDANTS' MOTION</u>**
**<u>TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**INTRODUCTION**............................................................................................**2**

**BACKGROUND** ............................................................................................**3**

**STANDARD** ..................................................................................................**7**

**ARGUMENT** .................................................................................................**8**

  **I.**    **Florida Lacks Standing** ....................................................................**8**

  **II.**   **Florida's Claims are Not Justiciable**...........................................**13**

        A. Committed to Agency Discretion......................................................13

        B. No Final Agency Action ...................................................................17

        C. Statutes Preclude Jurisdiction..........................................................19

        D. Florida Does Not Fall Within the Zone of Interests...........................21

  **III.**   **Florida Fails to State a Claim for Relief**....................................**23**

        A. Counts One, Two and Seven .............................................................23

        B. Counts Three and Four......................................................................30

        C. Counts Five and Six .........................................................................32

        D. Count Eight ......................................................................................33

**CONCLUSION**.............................................................................................**36**

**CERTIFICATE OF COMPLIANCE** ...........................................................**37**

**CERTIFICATE OF SERVICE** .....................................................................**38**

# TABLE OF AUTHORITIES

## CASE LAW

*Alonso-Escobar v. USCIS Field Off. Dir. Miami, Fla.*,
   462 F. App'x 933 (11th Cir. 2012)........................................................................15

*Arizona v. United States*,
   567 U.S. 387 (2012) ........................................................... 1, 13, 14, 24

*Arpaio v. Obama*,
   27 F. Supp. 3d 185 (D.D.C. 2014).......................................... 9, 11, 12

*Ashcroft v. Iqbal*,
   556 U. S. 662 (2009) ............................................................ 7, 33

*Ayuda, Inc. v. Reno*,
   7 F.3d 246 (D.C. Cir. 1993)...................................................22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................ 7, 30

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................ 10, 16, 18, 19

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983) ............................................................ 28, 29

*California v. Texas*,
   141 S. Ct. 2104 (2021) ............................................................8

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ............................................................ 24, 29

*Chiles v. United States,*
   69 F.3d 1094 (11th Cir. 1995)...................................................16

*Citizens to Save Spencer Cty. v. U.S. Env't Prot. Agency,*
   600 F.2d 844 (D.C. Cir. 1979)...................................................30

*City of Columbus v. Trump,*
   453 F. Supp. 3d 770 (D. Md. 2020) ...................................................34

*Clarke v. Security Indus. Ass'n*,
   479 U.S. 388 (1987) ........................................................................21

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) ................................................ 9, 14, 24

*Ctr. for Biological Diversity v. Hamilton*,
   453 F.3d 1331 (11th Cir. 2006) ........................................................9

*Ctr. for Biological Diversity v. Zinke*,
   260 F. Supp. 3d 11 (D.D.C. 2017)...................................................31

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) ................................................29

*Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*,
   93 F.3d 897 (D.C. Cir. 1996)..........................................................21

*Flores v. Lynch*,
   828 F.3d 898 (9th Cir. 2016) ..........................................................10

*Florida v. United States*,
   No. 8:21-CV-541-CEH-SPF, 2021 WL 1985058 (M.D. Fla. May 18, 2021) .....14

*Foster Children v. Bush*,
   329 F.3d 1255 (11th Cir. 2003) ......................................................11

*Francosteel Corp. v. M/V Charm*,
   19 F.3d 624 (11th Cir.1994)..............................................................7

*Garcia-Mir v. Smith*,
   766 F.2d 1478 (11th Cir. 1985)......................................................14

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018)..........................................................25

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................. 13, 15

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ......................................................................34

*Hussion v. Madigan*,
   950 F.2d 1546 (11th Cir. 1992) ............................................................31

*INS v. Aguirre-Aguirre*,
   526 U.S. 415 (1999) ............................................................................24

*Jean v. Nelson*,
   727 F.2d 957 (11th Cir. 1984) .............................................. 14, 17, 33

*Jeanty v. Bulger*,
   204 F. Supp. 2d 1366 (S.D. Fla. 2002) ............................ 15, 18, 29, 33

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ..........................................................................24

*Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ..............................................................................3

*Las Americas Immigrant Advocacy Center v. Biden*,
   No. 3:19-cv-02051-IM (D. Or. Nov. 24, 2021) ...................................34

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ............................................................7

*Lightfoot v. D.C.*,
   273 F.R.D. 314 (D.D.C. 2011) ...................................................... 17, 30

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ............................................................................32

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) ..............................................................................8

*Loa-Herrera v. Trominski*,
   231 F.3d 984 (5th Cir. 2000) ........................................................ 20, 25

*Louisiana v. U.S. Army Corps of Engineers*,
   834 F.3d 574 (5th Cir. 2016) ..............................................................19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................... *passim*

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ..............................................................12

*Matter of Avetisyan*,
    25 I. & N. Dec. 688 (BIA 2012)...........................................23

*Matter of E-R-M- & L-R-M-*,
    25 I.&N. Dec. 520 (BIA 2011)..........................................3, 4

*Matter of J-A-B- & I-J-V-A-*,
    27 I. & N. Dec. 168 (BIA 2017)..................................... 23, 24

*Nasrallah v. Barr*,
    140 S. Ct. 1683 (2020) ........................................................3

*Nat'l Mining Ass'n v. McCarthy*,
    758 F.3d ...................................................... 17, 18, 19

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) ..........................................16

*Nat'l Treasury Emps. Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974)............................................35

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ............................................................31

*Padilla v. ICE*,
    953 F.3d 1134 (9th Cir. 2020) ............................................29

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ................................................. *passim*

*Robbins v. Reagan*,
    616 F. Supp. 1259 (D.D.C.)................................................34

*Ryder Truck Lines v. United States*,
    716 F.2d 1369 (11th Cir. 1983) ..........................................33

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976) ............................................................11

*Snapp v. Unlimited Concepts, Inc.*,
   208 F.3d 928 (11th Cir. 2000)................................................................25

*State of Mississippi v. Johnson*,
   71 U.S. 475, 18 L. Ed. 437 (1866) .......................................................35

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..............................................................................8

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984) ..............................................................................8

*Terrebonne v. Blackburn*,
   646 F.2d 997 (5th Cir. 1981)................................................................28

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ....................................................................... 13, 23

*United States v. Fausto*,
   484 U.S. 439 (1988)..............................................................................22

*United States v. Florida E. Coast Ry.*,
   410 U.S. 224 (1973) ..............................................................................32

*United States v. Velasquez Velasquez*,
   524 F.3d 1248 (11th Cir. 2008)............................................................34

*Whitewater Draw Natural Resource Conservation District v. Mayorkas*,
   5 F.4th (9th Cir. 2021).........................................................................12

*Wilderness Soc'y v. Norton*,
   434 F.3d 584 (D.C. Cir. 2006)..............................................................17

## FEDERAL STATUTES

5 U.S.C. § 533 .............................................................................................32

5 U.S.C. § 551(4) .........................................................................................32

5 U.S.C. § 551(5) .........................................................................................32

5 U.S.C. § 551(6) ...................................................................................................32

5 U.S.C. § 551(7) ...................................................................................................32

5 U.S.C. § 553 ........................................................................................................32

5 U.S.C. § 553(b)(3)(A) .........................................................................................32

5 U.S.C. § 701(a)(1) ...............................................................................................19

5 U.S.C. § 701(a)(2) ...............................................................................................12

5 U.S.C. § 704 ........................................................................................................16

5 U.S.C. § 706(1) ...................................................................................................22

5 U.S.C. § 706(2)(A) ..............................................................................................22

6 U.S.C. § 202(5) ............................................................................................. 3, 16

6 U.S.C. § 251 ..........................................................................................................3

6 U.S.C. § 552(d) .....................................................................................................3

8 U.S.C. § 1103(a)(3) ....................................................................................... 3, 16

8 U.S.C. § 1182(d)(5) ..................................................................................... *passim*

8 U.S.C. § 1182(d)(5)(A) ............................................................................... *passim*

8 U.S.C. § 1225 ......................................................................................................13

8 U.S.C. § 1225(a)(1) ...............................................................................................4

8 U.S.C. § 1225(b) ......................................................................................... *passim*

8 U.S.C. § 1225(b)(1) ....................................................................... 3, 20, 23, 24

8 U.S.C. § 1225(b)(2)(A) ............................................................... 3, 4, 24, 25

8 U.S.C. § 1226(a) ...................................................................................................4

8 U.S.C. § 1226(a)(2)(A) ......................................................................................25

8 U.S.C. § 1226(a)(2)(B) ..................................................................25

8 U.S.C. § 1226a(b)(1) ....................................................................22

8 U.S.C. § 1226(e) ................................................................... 22, 25

8 U.S.C. § 1229a .......................................................................... 3, 24

8 U.S.C. § 1229c(f) ........................................................................22

8 U.S.C. § 1231(h) .........................................................................22

8 U.S.C. § 1252(a)(2)(A) .................................................................22

8 U.S.C. § 1252(a)(2)(A)(i) .............................................................21

8 U.S.C. § 1252(a)(2)(A)(i)(iv) ........................................................21

8 U.S.C. § 1252(a)(2)(A)(i)(e)(3) .....................................................21

8 U.S.C. § 1252(a)(2)(B)(ii) ..................................................... *passim*

8 U.S.C. § 1252(a)(2)(C) .................................................................22

8 U.S.C. § 1252(a)(5) .....................................................................22

8 U.S.C. § 1252(b)(4)(D) ................................................................22

8 U.S.C. § 1252(b)(9) .....................................................................22

8 U.S.C. § 1252(d) .........................................................................22

8 U.S.C. § 1252(f) ..........................................................................22

8 U.S.C. § 1252(f)(1) ......................................................................25

8 U.S.C. § 1252(g) ................................................................... 19, 20

28 U.S.C. § 2401(a) .........................................................................9

## FEDERAL REGULATIONS

8 C.F.R. § 212.5 ..................................................................................18

8 C.F.R. § 212.5(b) ............................................................................26

## PUBLIC LAW

Pub. L. No. 109–13, 119 Stat. 231...........................................................29

## MISCELLANEOUS

Gene McNary, *Parole Project for Asylum Seekers at Ports of Entry and INS Detention* (Apr. 20, 1992), 9 Immigration Law Service 2d PSD Selected DHS Document 4110 ....................................................................................28

John Kelly*, U.S. DHS, *Implementing the President's Border Security and Interior Immigration Enforcement Policies* (Feb. 20, 2017), available at https://www.cbp.gov/newsroom/national-media-release/cbp-releases-operational-fiscal-year-2021-statistics#:~:text=CBP%20Efforts%20at%20and%20Between, 1%2C098%2C500%20encounters%20of%20single%20adults ..........................28

ICE Policy No. 11002.1, *Parole of Arriving Aliens Found to Have Credible Fear of Persecution or Torture (Dec. 8, 2009)*, available at https://www.ice.gov/doclib/dro/pdf/11002.1-hdparole_of_arriving_aliens_found_credible_fear.pdf).......................................28

U.S. Customs & Border Prot.*, CBP Releases Operational Fiscal Year 2021 Statistics* (Jan. 3, 2022), available at https://www.cbp.gov/newsroom/national-media-release/cbp-releases-operational-fiscal-year-2021-statistics#:~:text=CBP%20Efforts%20at%20and%20Between, 1%2C098%2C500%20encounters%20of%20single%20adults ..........................26

Victor X. Cerda, U.S. ICE*, ICE Transportation, Detention and Processing Requirements* (Jan. 11, 2005), available at https://www.ice.gov/doclib/foia/dro_policy_memos/icetransportationdetentionan dprocessingrequirements.pdf ..................................................................29

**INTRODUCTION**

The "federal power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 395 (2012). Because immigration policy affects many complex and important areas, Congress constructed an immigration enforcement system whose "principal feature" is the "broad discretion exercised by immigration officials." *Id*. at 395-96. This system reflects the reality—embodied in every Presidential administration's policies for decades—that officials must deploy limited resources according to priorities set by policymakers.

Consistent with that reality, U.S. Customs and Border Protection (CBP), a component of the U.S. Department of Homeland Security (DHS) responsible for enforcing immigration laws at and between ports of entry, has authorized immigration officers at the border to take certain enforcement actions. This includes authorizing CBP officers to address humanitarian and public-safety concerns caused by overcrowding in congregate settings on a case-by-case basis, to better protect its workforce and noncitizens in CBP custody, and to prioritize its limited enforcement resources.

Florida asks the Court to reconsider the Executive's prosecutorial discretion, and curtail its discretion to charge, detain, and release inadmissible noncitizens arriving at the Southwest border. Florida maintains that 8 U.S.C. § 1225(b) requires the government to initiate immigration proceedings against every noncitizen arriving

2

at the Southwest border, and to detain them pending those proceedings without exception. Florida alleges any contrary actions violate the Administrative Procedure Act (APA), the Immigration and Nationality Act (INA), and the Constitution.

Florida misreads the law, which does not require DHS to charge or detain all inadmissible noncitizens encountered at the border. The INA demonstrates Congress's intent to allow the Executive to exercise its enforcement discretion in these decisions. Nothing in the INA prohibits DHS from "declin[ing] to institute proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 484 (1999). Likewise, there is no qualification to DHS's discretion to parole such individuals "temporarily … for urgent humanitarian reasons or significant public benefit," so long as such releases are "on a case-by-case basis," 8 U.S.C. § 1182(d)(5).

Florida's claims are nonjusticiable and without merit. Florida's claims must be dismissed for lack of standing, and because the actions Florida challenges are committed to agency discretion, not final agency action, and precluded from review by statute. Florida also lacks a cognizable cause of action to enforce the INA, and its claims all fail on the merits. Accordingly, the Court must dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and  (b)(6).

## BACKGROUND

Legal Background. The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see*, *e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). For decades, the Executive has exercised its discretionary authority to determine which noncitizens to prioritize for removal and through which types of proceedings.

Congress has provided DHS with various overlapping tools, including authority in 8 U.S.C. § 1225(b)(1) to initiate expedited removal proceedings against certain applicants for admission.[1] If a noncitizen seeking admission is not "clearly and beyond a doubt entitled to be admitted" as required pursuant to 8 U.S.C. § 1225(b)(2)(A), the Secretary may place that noncitizen into full removal proceedings held before an immigration judge under section 1229a, by issuing a "Notice to Appear" (NTA), the charging document which initiates those proceedings. The statute leaves to DHS's discretion whether to use expedited or full removal proceedings for noncitizens eligible for both. *See Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. 520, 523 (BIA 2011). Settled law also authorizes DHS not to initiate proceedings for individuals. *AADC*, 525 U.S. at 484. Further, within certain

---

[1] References to the Attorney General in § 1225 now mean the Secretary. 6 U.S.C. §§ 251, 552(d). "Noncitizen" is the equivalent of the statutory term "alien." *Nasrallah v. Barr,* 140 S. Ct. 1683, 1689 n.2 (2020).

limits, DHS may either detain or release applicants for admission pending their removal proceedings. 8 U.S.C. §§ 1182(d)(5), 1225(b)(2)(A), 1226(a).[2] DHS may at its discretion parole into the United States temporarily "on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." *Id.* § 1182(d)(5). DHS may also release on bond or conditional parole certain noncitizens arrested within the United States. 8 U.S.C. § 1226(a).

Procedural Background. Beginning in March 2021, CBP temporarily authorized the use of "notices to report" ("NTRs")—under which noncitizens apprehended between ports of entry were temporarily released with an order to report to ICE within 60 days for issuance of a Notice to Appear in removal proceedings—to relieve overcrowding in congregate settings and to better protect its workforce and noncitizens in CBP custody "when [noncitizen] encounters were consistently high, operational capacity strained, and COVID-19 acute." ECF 6-2, Parole Plus Alternatives to Detention (Nov. 2, 2021) at 1.

On November 2, 2021, the Chief of the U.S. Border Patrol (USBP) issued a guidance memorandum to Border Patrol field offices stating that, going forward, they were to cease the use of NTRs and prioritize resources to issue NTAs to

---

[2] An applicant for admission is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

noncitizens processed for release. *Id*. The November 2 guidance outlines a narrow set of circumstances, applying only to family units processed in certain sectors, under which alternative processing may be permitted on a case-by-case basis by using parole in connection with ICE's Alternatives to Detention ("ATD") program. *Id*. at 2. The availability of Parole+ATD is triggered "when the temporary staffing support to the sector is maximized, the seven-day average of encounters is greater than the sector's [FY] 2019 May daily average," and when the number of subjects taken into custody in 48 hours exceeds the number of individuals booked out in the same period, and at least one of the following is true: (1) the average time in custody in the sector exceeds 72 hours or (2) the sector exceeds 100% of the total non-COVID detention capacity. *Id*. Under this process, a USBP agent may exercise discretion on a case-by-case basis to release a family unit on parole prior to the issuance of an NTA, enroll them in ICE's ATD, and as a condition of their parole, require them to report to ICE within 15 days for issuing an NTA. *Id*. at 1-2. This case-by-case determination to use Parole+ATD also considers any additional humanitarian and public interest factors. *Id.* at 3. For example, Parole+ATD is not available to individuals determined to be a national security risk or public safety threat, or covered by the U.S. Centers for Disease Control and Prevention's Title 42 Order. *Id*.

<u>This Lawsuit.</u> Florida first challenged CBP's use of NTRs and parole. ECF 1 ¶¶ 9, 29, 52-72. Florida amended its complaint after Defendants moved to dismiss (ECF 6), arguing that all claims involving the discontinued NTR practice were moot. The First Amended Complaint challenges: (1) Defendants' so-called "non-detention policy," which Florida asserts must exist because the Government "is releasing and paroling arriving migrants by the tens of thousands," although Florida cannot identify any particular pronouncement or rule creating such a policy; and, (2) the Parole+ATD practice. ECF 16 ¶¶ 19, 20, 78-112. Florida claims these alleged policies or practices violate the APA as contrary to law, arbitrary and capricious, failing to undergo notice and comment, and unlawfully withheld or unreasonably delayed (Counts 1-7); and in violation of the INA and Constitution (Count 8). *Id.* ¶¶ 78-112. Plaintiff asks that the Court "[h]old unlawful and set aside the November [2] memo and the non-detention policy" and permanently "enjoin[] Defendants from enforcing those policies." *Id.* at 33.

## STANDARD

Defendants raise a "'[f]actual attack[]" on jurisdiction under Rule 12(b)(1), so "matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). The plaintiff bears

the burden of establishing the existence of jurisdiction. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir.1994).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009). Conclusory statements and legal conclusions are not afforded a presumption of truth. *Id*. Allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

## ARGUMENT

The Court should dismiss this case under Rule 12(b)(1) because Florida lacks standing, the APA's threshold requirements are not satisfied, and the INA precludes jurisdiction. Alternatively, the case should be dismissed under Rule 12(b)(6) because none of Florida's counts states a plausible claim for relief.[3]

### I.    Florida Lacks Standing.

Florida fails to demonstrate injury, causation, or redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Here, where the challenged government action does not require or forbid any action on the part of the plaintiff, standing is

---

[3] If the Court does not dismiss the entire case, all defendants except CBP should be dismissed because Florida does not make any allegations against any of the other components of DHS, which are not involved in making the admission and release determinations of noncitizens apprehended at or near the border at issue in this case.

substantially more difficult to establish. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-94 (2009); *see also California v. Texas*, 141 S. Ct. 2104, 2117 (2021). Florida's unsupported conjecture that the challenged policy will increase its costs associated with imprisoning, educating, and providing emergency medical care to noncitizens is insufficient to establish standing under that exacting standard. ECF 16 ¶¶ 72-77.

To start, Florida cannot demonstrate any actual or imminent legal injury caused by Defendants' parole practices. ECF 16 ¶¶ 19, 20, 78-112.   First, their alleged harms are premised on the argument that the very existence of 8 U.S.C. § 1182(d)(5) and its implementing regulations, which authorize the releases Plaintiff challenges in this case, harm them. But the existence of a longstanding statute and regulation which Plaintiffs object to does not present any cognizable injury, as it is well settled that a litigant "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (third parties "have no judicially cognizable interest in procuring enforcement of the immigration laws.").

Even were such an injury cognizable, simply providing evidence that a "state provides social benefits" to state residents, and speculating that costs will increase if the population increases, is insufficient to satisfy the requirements of Article III standing, which "mandate" Plaintiffs show "a 'concrete and particularized' injury that is 'fairly traceable'" to the challenged government action. *Crane v. Johnson*,

783 F.3d 244, 252 (5th Cir. 2015). Plaintiff alleges that the policy will increase its noncitizen population, and that Florida will expend more resources on noncitizens than they otherwise would. ECF 16 ¶¶ 72-77. But a state "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11. Such an injury is a generalized grievance; to accept it "would permit nearly all state officials to challenge a host of Federal laws simply because they disagree with how many—or how few—Federal resources are brought to bear on local interests." *Id.*

Nor are these injuries traceable to the challenged actions or redressable here. Florida's alleged harms do not stem from any challenged policy, but from the existence of the parole statute and regulations, and so could only be addressed by eliminating the Secretary's discretionary authority to parole or otherwise release noncitizens into Florida. But any such challenge to the legality of the parole statute and regulation, implemented in 1996, is long since time-barred, so no order of this court can set aside either provision. *See* 28 U.S.C. § 2401(a); *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (applying six-year statute of limitations for suits against the United States). Moreover, Florida concedes that DHS has the authority to release individuals on parole on a case-by-

case basis. ECF 16 ¶ 9. Indeed, with respect to families that are the subject of the November memorandum, DHS is obligated to release noncitizen minors "without unnecessary delay" or, if not released and in the case of an emergency or influx, transfer them to a licensed program "as expeditiously as possible." *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (confirming settlement agreement applies to accompanied minors); *Flores* Settlement Agreement ¶¶ 12.A, 14. Thus, the harms alleged by Florida are not fairly traceable to challenged policy, nor are they capable of being remedied by an order by this Court.

Likewise, Florida's alleged costs are not fairly traceable to the challenged policies because they would be caused, if at all, by third parties, *see Lujan*, 504 U.S. at 562, and Florida cannot show the challenged conduct has a "determinative or coercive effect upon the action of someone else" to commit crimes, abandon their children, or fail to pay for medical services. *Bennett v. Spear,* 520 U.S. 154, 169 (1997). For example, the risk that Florida may bear the burden of increased medical expenses is not traceable to the challenged practices, but to a string of third-party actions, including noncitizens paroled under these practices (assuming they are not independently eligible for parole on other grounds) needing medical care, noncitizens failing to pay for that care, healthcare providers requesting Florida to pay, and Florida paying without federal reimbursement. *Cf. Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976). Thus, the alleged injuries, assuming

they occur, would be the result of "unfettered choices made by independent actors," and not the challenged policy. *Lujan*, 504 U.S. at 562.

Similarly, Florida's hypothesis that an increase in noncitizens living in the state will increase crimes committed by noncitizens is insufficient to establish standing. It ignores that the independent decision of the individuals committing the crimes and "numerous other factors, such as the local economy, population density, access to jobs, education, and housing, and public policies that directly and indirectly affect the crime rate" make crime "notoriously difficult to predict." *Arpaio*, 797 F.3d at 22. The challenged policies do not encourage or cause any noncitizen to perform an illegal act. *See Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) (future injury depending on the unauthorized acts of a third party "is too speculative to satisfy standing requirements"). "On this record, it is pure speculation whether an increase in unlawful immigration would result in an increase, rather than a decrease or no change, in the number of crimes committed in [Florida]. Where predictions are so uncertain, [the Court] is prohibited from finding standing." *Arpaio*, 797 F.3d at 22.

Finally, although states sometimes receive "special solicitude in [the] standing analysis" to assert procedural rights and protect "quasi-sovereign interests," that does not obviate Florida's burden to establish each element of standing. *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007); *Lujan*, 504 U.S. at 78 (holding

12

that a plaintiff asserting "procedural injury" could not establish injury-in-fact absent a distinct "concrete injury"). Additionally, a "claim of procedural injury does not relieve Plaintiff[] of [its] burden—even if relaxed—to demonstrate causation and redressability," *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997, 1015 (9th Cir. 2021). Florida thus cannot invoke "special solicitude" as a defense to its failure to demonstrate injury, causation, and redressability.

## II. Florida's Claims are Not Justiciable.

Florida challenges decisions that are committed to agency discretion and do not constitute final agency action. Their claims are also precluded by the INA and fall outside the INA's zone of interests.

### A. Committed to Agency Discretion

Both challenged activities are "committed to agency discretion by law" and thus unreviewable. 5 U.S.C. § 701(a)(2).

First, the decision whether to commence removal proceedings or to release noncitizens on Parole+ATD is committed to agency discretion. The choice to refrain from pursuing particular enforcement actions is "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Such decisions "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether agency resources are best spent

13

on this violation or another … and, indeed, whether the agency has enough resources to undertake the action." *Id.*

Florida does not dispute that the presumption against reviewability applies to enforcement decisions, but contends only that Congress imposed statutory duties on DHS through 8 U.S.C. § 1225. The statute, however, imposes no unconditional duty on DHS. *See infra* pp. 23-30. In brief, Congress has not displaced the power inherent to the Executive to exercise prosecutorial discretion—a power the Supreme Court has held is "greatly magnified" in the immigration context. *AADC*, 525 U.S. at 490. Although section 1225 uses the word "shall," the Supreme Court has instructed that the "deep-rooted nature of law-enforcement discretion" persists "even in the presence of seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005).

This understanding is bolstered by precedent discussing the Government's authority under section 1225. DHS has "broad discretion" to decide "whether it makes sense to pursue removal at all." *Arizona v. United States*, 567 U.S. 387, 396 (2012). DHS may "decline to institute proceedings" in the first instance. *AADC,* 525 U.S. at 484; *see also Crane*, 783 F.3d at 249 ("[Section 1225] does not limit the authority of DHS to determine whether to pursue the removal of the immigrant."). Congress has not required that DHS initiate removal proceedings and detain every inadmissible noncitizen it encounters at or near the border, and CBP's policy

14

prioritizing when and how to issue NTAs at crowded border patrol stations is committed to agency discretion by law. *See, e.g.*, *Fla. v. United States*, No. 8:21-CV-541-CEH-SPF, 2021 WL 1985058, at *10 (M.D. Fla. May 18, 2021) (concluding that policy guiding enforcement discretion is committed to agency discretion by law); *Arizona v. DHS*, CV-21-0186, 2021 WL 2787930, at *9-11 (D. Ariz. June 30, 2021) (same).

Second, regarding release on parole, the principle that seemingly mandatory statutory language does not supplant inherent enforcement discretion applies equally to "shall detain" in section 1225(b). *See Castle Rock*, 545 U.S. at 761. The discretion underlying release on parole is explicit. "Congress has delegated remarkably broad discretion to executive officials under the [INA]" and its grants of authority "are nowhere more sweeping than in the context of parole." *Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985); *see Jean v. Nelson*, 727 F.2d 957, 966 & n.8 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (*Jean II*). Accordingly, the parole statute provides that the Secretary "*may … in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission," 8 U.S.C. § 1182(d)(5)(A) (emphasis added).  Courts lack jurisdiction to review the discretionary decision whether to parole an individual under 8 U.S.C. § 1252(a)(2)(B)(ii). *See e.g.*, *Alonso-Escobar v. USCIS Field Off. Dir. Miami, Fla.*,

462 F. App'x 933, 935 (11th Cir. 2012) (unpublished); *Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1382 (S.D. Fla. 2002), *aff'd*, 321 F.3d 1336 (11th Cir. 2003).

The decision to release an individual on parole involves the same "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise" and is therefore committed to agency discretion. *Heckler*, 470 U.S. at 831. Indeed, parole determinations encompass, among other things, "the possibility that [a noncitizen] may abscond to avoid being returned to his or her home country," "priorities for the use of limited detention space," whether detention is in the public interest, and of course, the statutorily undefined requirements that parole be for "urgent humanitarian reasons or significant public benefit." *See Jeanty*, 204 F. Supp. 2d at 1377-78, 1382; 8 U.S.C. § 1182(d)(5).

Florida essentially argues section 1225 forecloses CBP from having any enforcement priorities with respect to initiating removal proceedings and paroling individuals under section 1182(d)(5). But Congress has said otherwise, authorizing DHS and its components to establish "immigration enforcement policies and priorities," 6 U.S.C. § 202(5), and to "issue such instructions" and "perform such other acts as [the Secretary] deems necessary for carrying out [DHS's] authority" under the INA, 8 U.S.C. § 1103(a)(3). Indeed, "[t]he overall statutory scheme established for immigration demonstrates that Congress intended whether the [Secretary] is adequately guarding the borders of the United States to be committed

16

to agency discretion by law and, thus, unreviewable." *Chiles v. United States,* 69 F.3d 1094, 1096 (11th Cir. 1995). Even amalgamated in an attempt to show a "policy," as Florida does here, these parole decisions are nevertheless committed to agency discretion and not subject to APA review.

### B. No Final Agency Action

Plaintiff does not challenge "final agency action" subject to judicial review. 5 U.S.C. § 704. Agency action is final if it determines legal "rights or obligations." *Bennett*, 520 U.S. at 178. Even if they were "policies," rather than merely a series of individual enforcement decisions, Defendants' parole practices do not finally determine legal rights or obligations. Agency action that "does not itself adversely affect" a party but instead "only affects his rights adversely on the contingency of future administrative action" is "nonfinal." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003).

Neither Parole+ATD nor the alleged "non-detention" overall parole "policy" satisfy this rule. As the CBP guidance indicates, Parole+ATD neither creates legal rights nor imposes legal obligations. *Norton,* 758 F.3d at 250. Indeed, the agency retains the discretion to alter or revoke the guidance at will, so the guidance is nonfinal, notwithstanding any expectation that rank-and-file officers will comply with the guidance while it is in effect. *Cf. Wilderness Soc'y v. Norton*, 434 F.3d 584, 596 (D.C. Cir. 2006). Nor does the Parole+ATD program require CBP officers to

take any specific action in any specific circumstance. CBP officers retain discretion on a "case-by-case basis" to release an individual or to take any other enforcement action authorized by statute. ECF 6-2 at 1-2. Agency officials are thus "free to exercise discretion" to grant or deny release in particular cases, such that the November 2 guidance describing the availability of Parole+ATD does not constitute final agency action. *See Jean I*, 711 F.2d at 1481; *Florida*, 2021 WL 1985058, at *9.

Second, Florida has not identified any actual "non-detention policy." Instead, Florida challenges an amalgam of parole decisions made by DHS at the Southwest border. But, as explained, parole is an individual discretionary decision made on a "case by case basis." 8 U.S.C. § 1182(d)(5)(A). Accordingly, Plaintiff cannot establish a unified "policy" to challenge. *Cf. Lightfoot v. D.C.*, 273 F.R.D. 314, 326 (D.D.C. 2011) ("The question is not whether a constellation of disparate but equally suspect practices may be distilled from the varying experiences" but rather, "Plaintiffs must first identify the 'policy or custom' they contend violates the" law).

A noncitizen's parole decision may be final with respect to that individual. *See Norton*, 758 F.3d at 253. But such parole decisions, even aggregated, are not final with respect to Florida, because those *individuals'* decisions do not constitute the "direct and appreciable legal" consequences to *Florida* that the APA's finality inquiry requires. *Bennett*, 520 U.S. at 178.

18

Even if the alleged "non-detention policy" that provided guidelines for making such parole decisions existed, that overarching "policy" offering yet-to-be-applied-in-a-given-case guidelines would also not itself constitute final agency action. *See id.* Parole by its nature requires a case-by-case assessment and Plaintiff has identified nothing that *requires* DHS officers to take a specific action with respect to parole in any specific case. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5; *Jeanty*, 204 F. Supp. 2d at 1383. Mere guidelines that need not be applied in a given case are not "final." *See Norton*, 324 F.3d at 1237.

To the extent Florida points to a possible increase in migration to Florida, this would not show APA finality. *If*, as Florida speculates, more noncitizens settle in Florida after their parole, there may eventually be *practical* consequences to Plaintiff, such as increased expenditures on social services. These consequences, however, do not constitute the "direct and appreciable legal" consequences that the APA's finality inquiry requires. *Bennett*, 520 U.S. at 178; *see, e.g., Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016) (distinguishing practical consequences from legal consequences).

C. Statutes Preclude Jurisdiction

The INA, and therefore the APA, also bars Florida's claims. *See* 5 U.S.C. § 701(a)(1).

19

Section 1252(g). Florida's claim that DHS must issue NTAs to each inadmissible noncitizen apprehended at or near the border, and inspected under section 1225, is barred by section 1252(g). Section 1252(g) bars jurisdiction over any "claim by or on behalf of any alien arising from the decision or action by the [Secretary] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Section 1252(g) reflects Congress's desire to "protect[] the Executive's discretion from the courts" in general and from "attempts to impose judicial constraints upon prosecutorial discretion" in particular. *AADC*, 525 U.S. at 485-86, 485 n.9.

Florida challenges Parole+ATD on the grounds that section 1225(b) "commands the government to initiate [removal] proceedings" against noncitizens within its scope. ECF 16 ¶¶ 44-48. Plaintiff thus challenges Defendants' decision whether to "commence proceedings" with respect to individual noncitizens, a claim which falls squarely under the jurisdictional bar of section 1252(g). *See AADC*, 525 U.S. at 487.

Section 1252(a)(2). Florida's challenges to Defendants' individual decisions to release noncitizens on parole are barred by section 1252(a)(2)(B)(ii)—which bars review of "decision or action[s] … the authority for which is specified under this subchapter to be in the discretion of … the Secretary of Homeland Security"— because the INA specifically provides that the decision whether to grant parole is

"in [the] discretion" of the Secretary.  8 U.S.C. § 1182(d)(5)(A); *supra* pp. 13-17. And because the court lacks jurisdiction to review any individual determination by the Secretary that parole is warranted, the court also lacks jurisdiction over any challenge to a parole policy or procedure. *See Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000) ("discretionary judgment regarding the application of parole . . . is not subject to review").

Florida also challenges the decision not to serve NTAs on noncitizens subject to section 1225(b)(1), i.e., amenable to expedited removal, whether or not showing a credible fear of persecution or torture, ECF 16 ¶¶ 44-47, but review of these decisions pertaining to expedited removal is permitted, if at all, only in the District of Columbia, and otherwise even more forcefully barred by section 1252. *See* 8 U.S.C. § 1252(a)(2)(A)(i), (iv), (e)(3).

### D. Florida Does Not Fall Within the Zone of Interests

Florida's claims also do not fall within the zone of interests of sections 1182(d)(5) or 1225(b). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). If a plaintiff is not the object of a challenged regulatory action—which Florida is not—the plaintiff has no right of review as its "interests are so marginally related to or inconsistent with the purposes implicit in the statute[.]" *Clarke*, 479 U.S. at 399.

21

Nothing in the text, structure, or purpose of the INA generally, or sections 1182(d)(5) or 1225(b) specifically, suggests that Congress intended to permit a State to invoke attenuated financial impacts of immigration enforcement policies to contest those policies. *See Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) ("*FAIR*"). *FAIR* rejected a similar challenge that the federal government's "scheme for parole" of inadmissible noncitizens violated statutory limits on parole authority, holding the plaintiff was not within the zone of interests as there was nothing in the "language of the statutes on which it relies" nor the "legislative history that even hints at a concern about regional impact" of immigration. *Id*. at 900-01. So too here.

Congress has enacted several provisions specifically aimed at protecting the Executive's discretion from the courts, *AADC*, 525 U.S. at 486–87, making clear that only noncitizens may challenge enforcement decisions, and only certain types of decisions, and only through their removal proceedings. *See, e.g.*, 8 U.S.C. §§ 1226(e); 1252(a)(2)(B)(ii), 1252(a)(5), (b)(9), (g); *see also id*. §§ 1226a(b)(1), 1229c(f), 1231(h), 1252(a)(2)(A), (a)(2)(C), (b)(4)(D), (b)(9), (d), (f), (g); *United States v. Fausto*, 484 U.S. 439, 448 (1988) (a detailed review scheme that allows challenges by particular parties is "strong evidence that Congress intended to preclude [other parties] from obtaining judicial review"); *Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C. Cir. 1993).

### III. Florida Fails to State a Claim for Relief.

The First Amended Complaint must also be dismissed under Rule 12(b)(6) as each of the eight counts fails to state a plausible, cognizable claim for relief.

### A. Counts One, Two and Seven

These Counts allege Defendants' "non-detention policy," i.e., general parole practices (Count One) and Parole+ATD (Count Two) are "not in accordance with law" or "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(A), (C) (Count 1), and the general parole practices represent agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1) (Count Seven). ECF No. 16 ¶¶ 78-86, 108-09. That is, Florida argues that these parole practices violate the law because they conflict with the detention mandates of section 1225(b)(1) and (2) and the parole provision, 8 U.S.C. § 1182(d)(5)(A).

These claims fail as a matter of law because the cited statutes do not support Plaintiff's theory of wrongdoing. Sections 1225(b)(1) and (2) do not require that Defendants initiate removal proceedings against (immediately or ever), or detain, every noncitizen encountered at or near the border.

First, as discussed, *supra* pp. 13-17, nothing in sections 1225(b)(1) and (b)(2) overcomes the "deep-rooted nature of law-enforcement discretion." *Castle Rock*, 545 U.S. at 760-61. The fact that section 1225(b) uses the terms "shall ... detain[]" and "shall order" does not constrain the government's longstanding discretion to

determine whether commencement of removal proceedings is appropriate. DHS is "invested with the sole discretion to commence [such] removal proceedings," *Matter of Avetisyan*, 25 I. & N. Dec. 688, 690-91 (BIA 2012), and nothing in the statute evinces a "stronger indication" of intent to mandate removal or detention in every instance. *See Castle Rock*, 545 U.S. at 761.

Second, sections 1225(b)(1) and (b)(2) by their terms do not require initiating removal and detention in all cases. Section 1225(b)(1)—which authorizes the expedited removal of certain noncitizens—does not mandate expedited removal. Nothing in the statute compels "DHS to exercise its prosecutorial discretion to initiate expedited removal proceedings" in the first place. *Matter of J-A-B- & I-J-V-A-*, 27 I. & N. Dec. 168, 172 (BIA 2017).

Next, nothing in section 1225(b)(2)(A) mandates the commencement of removal proceedings under section 1229a against all applicants for admission. *See, e.g., E-R-M-*, 25 I. & N. Dec. at 523 (noting "broad discretion given to … charging decisions by the Executive Branch, that is, the DHS, in the immigration context"). Rather, section 1225(b)(2)(A) "authorizes the Government to detain certain aliens" seeking admission to the United States *if* it decides to remove them through section 1229a removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). The antecedent decision whether to pursue removal at all is a separate, discretionary decision of the Secretary. *See Arizona*, 567 U.S. at 396. Accordingly, "[i]t is

24

undisputed that Section 1225(b)(2)(A) only directs [immigration officers] to detain an alien for the purpose of placing that alien in removal proceedings. The provision does not limit the authority of DHS to determine whether to pursue the removal of the immigrant" in the first place. *Crane*, 783 F.3d at 249. And deciding against seeking noncitizens' removal at this time means there is no statutory provision requiring their detention, *see id.*, defeating Florida's argument that Parole+ATD violates section 1225(b) (Count Two). *See, e.g.*, ECF 16 ¶¶ 11-13, 51-58.

As for noncitizens actually in removal proceedings, Florida's claim that they must be detained (Counts One and Seven), *see, e.g.*, ECF 16 ¶¶ 4-10, 49-50, relies on a narrow, out-of-context reading of the language of section 1225(b)(2)(A). *The INA does not require DHS to take into custody and detain any particular individual. See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) ("We read each statutory provision with reference to the whole Act."). Instead, the INA's interrelated provisions authorize DHS to release detained noncitizens in particular circumstances, subject to statutory and regulatory limitations, including through parole, 8 U.S.C. § 1182(d)(5)(A), or "bond" and "conditional parole," 8 U.S.C. § 1226(a)(2)(A)-(B).[4]

---

[4] Under 8 U.S.C. § 1252(f)(1), the Court cannot enter an injunction placing requirements and limitations on Defendants' authority to charge and detain or release noncitizens under section 1225, *see AADC*, 525 U.S. at 481-82; *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018), and so Florida's claims for such injunctive relief must be dismissed.

Indeed, Florida concedes the Government's discretion to employ parole, and argues only that the Government is limited to doing so on a "case by case basis" and for "urgent humanitarian reasons or significant public benefit." ECF 16 ¶ 40. Florida argues the Government's parole practices are not case-by-case because thousands of noncitizens have been paroled and the Parole+ATD guidance provides a necessary (but not on its own sufficient) detention-capacity and time-in-custody requirement for exercising that discretionary option. *Id.* ¶¶ 50, 54; *see* ECF 6-2 at 3-4. But the number of grants of parole says nothing about their merit and does not indicate that each noncitizen is not being considered individually, on a case-by-case basis. And even if statistics were relevant, Florida's statistics are meaningless when taken out of context of the *millions* of noncitizens apprehended at the border each year and subject to enforcement action. *See* U.S. CBP, "CBP Releases Operational Fiscal Year 2021 Statistics," Jan. 3, 2022 (noting "in FY 2021, there were 1.72 million CBP encounters" with noncitizens eligible for expulsion or removal proceedings).[5]

Moreover, the requirement of "case-by-case" consideration does not mean that many parole recipients cannot have humanitarian reasons or public benefits in common, such as "to avoid crowding in CBP facilities" already at capacity and resultant health risks. ECF 6-2 at 2. Instead, the case-by-case requirement is

---

[5] https://www.cbp.gov/newsroom/national-media-release/cbp-releases-operational-fiscal-year-2021-statistics#:~:text=CBP%20Efforts%20at%20and%20Between, 1%2C098%2C500%20encounters%20of%20single%20adults.

26

satisfied by the Government's individualized consideration of the totality of a noncitizen's circumstances, including other critical parole factors such as flight or danger risk (*see* 8 C.F.R. § 212.5(b) (parole is available only if noncitizen "present[s] neither a security risk nor a risk of absconding")), as the guidance states. ECF 6-2 at 2 ("USBP may consider use of Parole + ATD on a case-by-case basis for [family units] when certain conditions, laid out below, exist."); *id.* at 3 ("Parole + ATD may not be used for noncitizens who pose a national security or public safety threat"); *id.* ("[I]f parole is appropriate based on a consideration of the above factors (as well as any other applicable … considerations), USBP agents may exercise their discretion to" use Parole+ATD). This practice is fully consistent with the parole statute and regulation, which have long required case-by-case determinations. *See* IIRIRA § 602(a), 110 Stat. 3009-689 (1996). That the number of noncitizens paroled fluctuates over time does not indicate that such individualized analysis is not continuing to occur.

Every administration since IIRIRA was promulgated has interpreted section 1182(d)(5)(A) to provide that if an applicant for admission presents neither a security nor a flight risk, release of that noncitizen pending his or her proceedings may achieve urgent humanitarian reasons and significant public benefit, especially where parole would free up limited detention capacity for other, higher-priority noncitizens such as criminals. *See, e.g.*, John Kelly, U.S. DHS, Implementing the President's

Border Security and Interior Immigration Enforcement Policies 3 (Feb. 20, 2017),

https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-

the-Presidents-Border-Security-Immigration-Enforcement-Improvement-

Policies.pdf; ICE Policy No. 11002.1, Parole of Arriving Aliens Found to Have a

Credible Fear of Persecution or Torture (Dec. 8, 2009), https://www.ice.gov/

doclib/dro/pdf/11002.1-hdparole_of_arriving_aliens_found_credible_fear.pdf);

Victor X. Cerda, U.S. ICE, ICE Transportation, Detention and Processing

Requirements          2          (Jan.          11,          2005),

https://www.ice.gov/doclib/foia/dro_policy_memos/icetransportationdetentionandp

rocessingrequirements.pdf).[6] [7]

---

[6] The Court may take judicial notice of these publicly available federal agency memoranda concerning parole practices. *See Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

[7] These considerations pre-existed IIRIRA and continue to be fully consistent with section 1182 so long as applied on a case-by-case basis. *See* Gene McNary, *Parole Project for Asylum Seekers at Ports of Entry and INS Detention* (Apr. 20, 1992), 9 Immigration Law Service 2d PSD Selected DHS Document 4110, at 1 (explaining that INS "has limited detention space" and establishing priorities for release of asylum seekers so that it will "be able to detain those persons most likely to abscond or to pose a threat to public safety rather than to base the detention decision solely or primarily on the availability of detention space"). Florida does not dispute that the Government does not have adequate resources to detain every person for whom detention is authorized by Section 1225. And in the face of limited resources, the Executive Branch necessarily must make individualized judgments about which noncitizens are the highest priorities for detention.

Courts have noted this long-standing interpretation of parole authority. *See e.g.*, *Padilla v. ICE*, 953 F.3d 1134, 1145 (9th Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1041 (2021) (describing ICE policy allowing parole "in light of available detention resources"); *Jeanty*, 204 F. Supp. 2d at 1377 (parole decision may take into consideration "priorities for the use of limited detention space"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324 (D.D.C. 2018) (describing DHS's "Parole Directive," effective since 2009). Congress has amended the INA since 1996, *e.g.*, REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 231, but not once has it sought to disturb longstanding agency practice. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 599 (1983) (Congress's clear awareness of, but failure to address, widely-known agency action "when enacting other and related legislation make out an unusually strong case of legislative acquiescence").

Congress's failure to define "urgent humanitarian reasons" or "significant public benefit" thus constitutes a delegation to the agency to flesh out these terms, and include within their scope the health and safety, and individual-rights issues posed by overcrowded detention facilities is reasonable. ECF 6-2 at 2; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Defendants' interpretations of those terms, and application of them in particular cases, are entitled to judicial deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-425 (1999). Defendants' alleged practice of considering general detention

constraints and their impacts on public interests as a common factor in otherwise case-by-case individual parole determinations is fully consistent with the statute and precedent.

Finally, Florida's argument regarding mandatory detention and the limits on parole only applies to the narrow subset of applicants for admission subject to section 1225(b). ECF 16 ¶¶ 38-40. Noncitizens who cross the border between ports of entry and are only apprehended once they are *within* the United States are amenable to section 1226, *see Jennings*, 138 S. Ct. at 837, which does not mandate detention or provide a standard for granting parole. *See* 8 U.S.C. § 1226(a).

B. Counts Three and Four

Counts Three and Four allege Defendants' general parole and Parole+ATD practices, respectively, are arbitrary and capricious due to insufficient rationale and failure to consider important factors. ECF 16 ¶¶ 87-100.

Plaintiff's argument fails at the threshold because it presumes Defendants' parole practices represent a cohesive program and are articulated in a policy document that would address such other considerations.[8] But no such "policy"

---

[8] The November 2 Parole+ATD guidance, ECF 6-2, also does not represent an agency "policy" document subject to APA review. It is merely guidance to field agents interpreting existing statutory and regulatory parole authorities; it does not create a new rule, "legislative in nature," that is subject to APA arbitrary and capricious review for informal rulemaking. *See Citizens to Save Spencer Cty. v. U.S. Env't Prot. Agency*, 600 F.2d 844, 889 (D.C. Cir. 1979). But even if it did create a

exists, only Florida's speculation that the release of a certain threshold number of noncitizens suggests the Government is not properly applying section 1182(d)(5)(A). ECF 16 ¶ 50. Florida alleges no facts showing any of those parole decisions did not involve an individualized inquiry and urgent humanitarian reasons or significant public benefit. Florida's mere conjecture fails to allege the existence of any cohesive policy addressing the conduct at issue. *See Twombly*, 550 U.S. at 570; *Lightfoot*, 273 F.R.D. at 326.

Florida merely challenges an amalgam of presumptively valid individual parole decisions that it disagrees with as a philosophical matter. *See Hussion v. Madigan*, 950 F.2d 1546, 1550 (11th Cir. 1992) ("review of the agency's action accords a presumption of administrative regularity"). However, the APA may not be invoked to demand "day-to-day agency management" of agency decisions, *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 67 (2004), which the Court lacks jurisdiction to review, *see* 8 U.S.C. § 1252(a)(2)(B)(ii). Further, the APA's limitation of review to "agency action" does not permit this "kind of broad programmatic attack" seeking "*wholesale* improvement of [a] program by court decree.'" *Norton,* 542 U.S. at 64. Florida "must direct its attack against some

---

new rule, the memorandum adequately explains the basis for the availability of Parole+ATD based on lack of detention space and COVID-19 concerns coupled with the very limited duration of release and individualized determinations that release did not present other risks. ECF 6-2.

particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891. The APA does not provide a cause of action for Florida to promote its view of how parole determinations generally must be decided. *See id.*; *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) ("The discreteness limitation precludes using broad statutory mandates to attack agency policy[.]"). Florida thus fails to allege a cognizable "agency action" that could be scrutinized under the APA for arbitrary and capricious reasoning.

C. <u>Counts Five and Six</u>

Counts Five and Six argue that Defendants violated 5 U.S.C. § 553 by not engaging in notice and comment for their "non-detention policy" or Parole+ATD practice. ECF 16 ¶¶ 101-07.

First, the APA only requires notice and comment for "rule making." 5 U.S.C. § 533; *see id.* § 551(4)–(5) (defining "rule" and "rule making"). Plaintiff has not identified any "rule" that it challenges regarding parole, only what it views as unlawful decisions in aggregation of individual discretionary determinations. These individual determinations based on the facts of specific cases are best described as "adjudications," not "rules," and are not bound by notice-and-comment rulemaking. *See* 5 U.S.C. § 551(6)–(7); *United States v. Florida E. Coast Ry.*, 410 U.S. 224, 244–45 (1973).

Second, the "non-detention policy" (if it existed) and the guidance concerning Parole+ATD both would constitute "general statements of policy," 5 U.S.C. § 553(b)(3)(A), that "advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power," *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993), and thus not subject to notice-and-comment rulemaking. "The key inquiry" separating a rule from a general statement of policy is the extent to which the challenged policy leaves the agency free to exercise its discretion to follow or not to follow that general policy in an individual case[.]" *Ryder Truck Lines, Inc. v. U.S.*, 716 F.2d 1369, 1377 (11th Cir. 1983); *Jean I*, 711 F.2d at 1481.

Such is the case here. Florida identifies no general parole policy document and the November 2 memorandum offered guidelines, but no requirement, for when agency officers "may consider" Parole+ATD, and provided that these discretionary decisions must still be assessed "on a case by case basis," leaving officers discretion not to release noncitizens where individual circumstances, such as public safety, counsel otherwise. *See id.*; ECF 16 at 1-2. "[E]ach case receives individual consideration" indicating that such alleged policies would "not establish a 'binding norm'" and "need not be promulgated as a rule under the APA." *Bulger,* 204 F. Supp. 2d at 1383. Notice and comment thus are not required.

D. <u>Count Eight</u>

Count Eight, alleging "the federal government cannot ignore federal statutes, and the Constitution—including the separation of powers doctrine and the Take Care Clause—provides a separate cause of action to challenge the conduct described in Count 1," ECF 16 ¶¶ 110-12,  fails to state a cognizable claim.

First, Florida offers no factual allegations in support, and its one-sentence, conclusory, legal assertion is insufficient to plead a claim for relief. *See Iqbal*, 556 U.S. at 678. There is no INA violation: section 1225(b) does not override the government's discretion to decide whether to initiate proceedings or detain, and CBP's parole practices are consistent with section 1182(d), as explained. *Supra* 23-30.

Second, the separation of powers principle, to the extent it is implicated at all, defeats Plaintiff's legal theory. *See United States v. Velasquez Velasquez*, 524 F.3d 1248, 1253 (11th Cir. 2008) (holding that executive, not judiciary, has the authority to decide to detain noncitizens).

Finally, Plaintiff's Take Care Clause argument fails as a merely conclusory legal assertion (*see id.*), and lacks a cause of action. No court has directly held that the Take Care Clause provides a private right of action. *Las Americas Immigrant Advocacy Center v. Biden*, No. 3:19-cv-02051-IM, slip op. at 7 (D. Or. Nov. 24, 2021) (collecting cases); *see, e.g., City of Columbus v. Trump*, 453 F. Supp. 3d 770, 800 (D. Md. 2020) ("No court in this circuit, or any other circuit, has definitively

found that the "Take Care Clause" provides a private cause of action[.]"); *Robbins v. Reagan*, 616 F. Supp. 1259, 1269 (D.D.C.), *aff'd*, 780 F.2d 37 (D.C. Cir. 1985) (similar)). The Supreme Court has cautioned courts against "creat[ing] new causes of action" under the Constitution. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020). Plaintiff's conclusory invocation of this Clause offers no basis for this Court to be the first to break with the caution that has deterred all other courts from recognizing a new private right of action.

Even were the Court to recognize such a cause of action, Plaintiff's claim still fails. The Supreme Court has distinguished between duties that are ministerial and "executive and political," explaining that the court lacked authority to order the Executive to take certain action in the latter case but possibly could for ministerial duties where "nothing was left to discretion" and there was "no room for the exercise of judgment." *State of Mississippi v. Johnson*, 71 U.S. 475, 498, 18 L. Ed. 437 (1866); *see Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 608 (D.C. Cir. 1974). Ordering the Executive to take action involving discretion and political judgment would violate separation of powers "and the general principles which forbid judicial interference with the exercise of Executive discretion." *Johnson*, 71 U.S. at 499.

Florida asks the Court to order Defendants to take action that is not purely ministerial but discretionary. *See id.* Florida's requested relief, by enjoining

Defendants' parole and Parole+ATD practices, requires the Government to charge and detain noncitizens for removal and deny discretionary parole. ECF 16 at 33. Florida's claim falls squarely under the longstanding bar on judicial interference with the exercise of Executive discretion and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court must dismiss the First Amended Complaint.

Date:  March 7, 2022                    Respectfully submitted,

JASON R. COODY                          BRIAN M. BOYNTON
*United States Attorney*                *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                          WILLIAM C. PEACHEY
*Assistant United States Attorney*      *Director*
Northern District of Florida            Office of Immigration Litigation
                                        District Court Section

                                        EREZ REUVENI
                                        *Assistant Director*

                                        /s/ *Joseph A. Darrow*
                                        JOSEPH A. DARROW
                                        *Trial Attorney*
                                        U.S. Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        Tel.: (202) 805-7537
                                        Joseph.a.darrow@usdoj.gov

                                        SARAH STEVENS WILSON

36

*Assistant Director*
Office of Immigration Litigation
Appellate Section

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Rule 7.1(F) because, excluding parts of the document exempted by the Rule, it contains 7,995 words.

I further certify that a conference of counsel pursuant to Local Rule 7.1(B) was held on March 4, 2022, but it was unsuccessful in resolving the issues absent litigation.

 */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2022, I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of for the Northern

District of Florida by using the CM/ECF system. Counsel in the case are registered

CM/ECF users and service will be accomplished by the CM/ECF system.

> By: */s/ Joseph A. Darrow*
> JOSEPH A. DARROW
> Trial Attorney
> United States Department of Justice
> Civil Division