# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 3:21-cv-01066 |
| The UNITED STATES OF AMERICA, *et al.*, | ) | |
| *Defendants.* | ) | |

# REPLY IN SUPPORT
# OF MOTION
# TO DISMISS THE FIRST
# AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................2

ARGUMENT .......................................................................................................2

I.     Plaintiff Lacks Standing ...........................................................................2

II.    Challenged Decisions Are Committed to Agency Discretion ...................3

III.   Plaintiff Does Not Challenge Final Agency Action ................................7

IV.    Plaintiff Does Not Fall Within The Zone of Interests ...........................8

V.     Plaintiff Fails to State a Claim .................................................................9

       A. *"Non-Detention Policy" (Counts 1, 3, 5, 7)*……………………………9

       B. *Parole+ATD (Counts 2, 4, 6)*……………………………………..11

       C. *Constitutional Claim (Count 8)*……………………………………..14

CONCLUSION...................................................................................................15

CERTIFICATE OF COMPLIANCE ................................................................17

CERTIFICATE OF SERVICE ........................................................................17

# TABLE OF AUTHORITIES

## CASE LAW

*Arizona v. United States*,
  567 U.S. 387 (2012) .........................................................................11

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015).............................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 7, 9, 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................3

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015) ............................................................11

*Cruz-Miguel v. Holder*,
  650 F.3d 189 (2d Cir. 2011) ....................................................... 13, 14

*Ctr. For Biological Diversity v. Hamilton*,
  453 F.3d 1331 (11th Cir. 2006) ..........................................................4

*Delgado-Sobalvarro v. Att'y Gen.*,
  625 F.3d 782 (3d Cir. 2010) .............................................................14

*Demore v. Kim*,
  538 U.S. 510 (2003) ...........................................................................9

*E. V. v. Robinson*,
  906 F.3d 1082 (9th Cir. 2018) ..........................................................15

*Geyen v. Marsh*,
  775 F.2d 1303 (5th Cir. 1985) ..........................................................15

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................4, 5

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
　478 U.S. 221 (1986) ............................................................................4

*Jean v. Nelson*,
　711 F.2d 1455 (11th Cir. 1983) ........................................................10

*Jennings v. Rodriguez*,
　138 S. Ct. 830 (2018) .........................................................................6

*Larson v. Domestic & Foreign Commerce Corp.*,
　337 U.S. 682 (1949) ..................................................................... 14, 15

*Locke v. Warren*,
　No. 19-61056-CIV, 2019 WL 4805716 (S.D. Fla. Oct. 1, 2019) .......................15

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ........................................................................2, 3

*Matter of Garvin-Noble*,
　21 I. & N. Dec. 672 (BIA 1997) .........................................................6

*Nat'l Parks Conservation Ass'n v. Norton*,
　324 F.3d 1229 (11th Cir. 2003) ..........................................................8

*Padilla v. Immigr. & Customs Enf't*,
　953 F.3d 1134 (9th Cir. 2020) ...................................................... 7, 13

*Presbyterian Church (U.S.A.) v. United States*,
　870 F.2d 518 (9th Cir. 1989) ...........................................................14

*Sierra Club v. Van Antwerp*,
　526 F.3d 1353 (11th Cir. 2008) ........................................................13

*Simmat v. U.S. Bureau of Prisons*,
　413 F.3d 1225 (10th Cir. 2005) ........................................................15

*Sure-Tan, Inc. v. NLRB*,
　467 U.S. 883 (1984) ..........................................................................3

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ............................................................ 9, 10

*Town of Castle Rock v. Gonzalez*,
  545 U.S. 748 (2005) ........................................................................5, 7

## FEDERAL STATUTES

5 U.S.C. § 701(a)(2) ...............................................................................3

5 U.S.C. § 702 .......................................................................................15

5 U.S.C. § 704 .........................................................................................8

5 U.S.C. § 706(2)(B) .............................................................................14

8 U.S.C. § 1182(d) ..................................................................... *passim*

8 U.S.C. § 1182(d)(5)(A) ............................................................ *passim*

8 U.S.C. § 1226(c) .............................................................................6, 9

28 U.S.C. § 2401(a) ...............................................................................4

## FEDERAL REGULATIONS

8 C.F.R. § 212.5(b) ..................................................... 4, 7, 12, 13

8 C.F.R. § 212.5(b)(5) ............................................................................4

## FEDERAL REGISTER

62 Fed. Reg. 10312 ................................................................................4

## MISCELLANEOUS

Gene McNary, *Parole Project for Asylum Seekers at Ports of Entry and INS
  Detention,* (Apr. 20, 1992) ................................................................11

John Kelly, U.S. DHS, *Implementing the President's Border Security and Interior Immigration Enforcement Policies 3*, (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-the-Presidents-Border-Security-Immigration-Enforcement-Improvement-Policies.pdf ............................................................................................................13

U.S. CBP, *CBP Releases Operational Fiscal Year 2021 Statistics,* (Jan. 3, 2022), https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf ..................................................................................................................10

## INTRODUCTION

As Defendants explained in their Motion to Dismiss, Plaintiff Florida's claims should be dismissed for lack of jurisdiction and failure to state any claim for relief. ECF 23.

Plaintiff challenges two alleged policies. First, Plaintiff challenges the Government's general exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A), which Plaintiff characterizes as the "non-detention policy." Although Plaintiff would prefer the Government exercised its discretion differently for individual applications of section 1182(d)(5)(A), there is no overarching "non-detention policy" to contest. Second, Plaintiff challenges the Parole+ATD policy, under which U.S. Customs and Border Protection (CBP) releases certain noncitizens encountered at the border on parole and enrolls them in the U.S. Immigration and Customs Enforcement's (ICE) Alternative to Detention (ATD) program to ensure they check-in within 15 days to be placed in immigration proceedings. ECF 6-2 at 2-3. Parole+ATD is fully consistent with statutory and regulatory parole requirements.

## ARGUMENT

### I.    Plaintiff Lacks Standing.

As explained, Plaintiff lacks Article III standing. ECF 23-1 at 8-13. In response, Plaintiff impermissibly relies on conjectural "unfettered choices made by

independent actors." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). In particular, Plaintiff hypothesizes that paroled noncitizens *might* settle in Florida and, if so, then *might* commit crimes or require social services. ECF 31 at 29-31. Plaintiff's predictions are too attenuated and uncertain to provide standing. *See Arpaio v. Obama*, 797 F.3d 11, 22 (D.C. Cir. 2015). If such incidental, conjectural consequences were sufficient to satisfy Article III, the federal courts could be drawn into every immigration policy dispute between a State and the federal government. Plaintiff's theory would characterize any increase of noncitizens within its borders necessarily as an injury. But the mere increase in population is not a cognizable injury. *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014). Allowing States to assert such generalized grievances would circumvent the principle that no entity has a cognizable interest in the enforcement of laws against another. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). Further, to permit standing on such tentative footing would allow the judicial process "to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

## II.       Challenged Decisions Are Committed to Agency Discretion.

Plaintiff challenges decisions that are "committed to agency discretion by law" and thus unreviewable under the Administrative Procedure Act. 5 U.S.C. § 701(a)(2). ECF 23-1 at 13-17. Whether and when to charge or detain noncitizens for removal are immigration enforcement decisions "generally committed to an

3

agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Moreover, here, Congress explicitly committed the decision whether to release noncitizens on parole to the Government's "discretion," with no guidance as to how that discretion should be exercised other than that it should be exercised "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," terms Congress did not define that entrust the decision to the agency's judgment. 8 U.S.C. § 1182(d)(5)(A); *see* 8 C.F.R. § 212.5(b)(5);[1] *cf. Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986) (no review of "policy choices and value determinations" committed to political branches).[2] Section 1182(d) is thus "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *see* 8 U.S.C. § 1252(a)(2)(B)(ii) (no jurisdiction over discretionary determinations).

Plaintiff points to section 1225(b)'s "shall be detained" language to offer a standard. This limited phrase, however, is insufficient to provide a basis to review parole because it does not limit or condition discretionary release on parole. Indeed,

---

[1] Plaintiff does not plausibly allege Defendants are failing to follow regulations. *See* ECF 31 at 16. 8 C.F.R. § 212.5(b)(5) explicitly provides for parole when "continued detention is not in the public interest," which is what is required for release on Parole ATD.

[2] Plaintiff challenges implementation of section 1182(d)(5)(A), and the corresponding regulation, 8 C.F.R. § 212.5(b), both promulgated in 1996, *see* 62 Fed. Reg. 10312-01, but such challenge is long since time-barred. *See* 28 U.S.C. § 2401(a); *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

Congress *required* that noncitizens first fall within the "shall be detained" language of section 1225(b) in order to qualify for section 1182(d) parole at all. *See* 8 U.S.C. § 1182(d)(5)(A) (parole only available to "alien[s] applying for admission").

Plaintiff and amicus argue that *Heckler* "applies only to one-off nonenforcement decisions." ECF 31 at 15; ECF 36-1 at 13. First, even were that true, Plaintiff has not identified any "sweeping nonenforcement policies" promulgated by the Government, and challenges only Parole+ATD and aggregated individual decisions applying section 1182(d). Second, Plaintiff misreads *Heckler*. *Heckler* was not confined to an individual's "one-off non-enforcement decision," but concerned the FDA's broad programmatic refusal to undertake take several national enforcement initiatives concerning execution drugs affecting many or all prisoners on death row. *See* 470 U.S. at 824. Under *Heckler*, the non-reviewability presumption applies to aggregated non-enforcement actions regarding charging or detention as much as single non-enforcement decisions. That the discretionary nature of parole is statutorily explicit, *see* 8 U.S.C. § 1182(d)(5)(A), indicates that *Heckler*'s presumption is not rebutted here.[3]

---

[3] *Town of Castle Rock v. Gonzalez* supports the Government, not Plaintiff, because the Supreme Court held that the same "seemingly mandatory" term, "shall," found in section 1225(b) does not displace "the deep-rooted nature of law enforcement discretion." 545 U.S. 748, 761 (2005). Any challenge by Plaintiff to the agency's decision not to immediately issue a charging document also falls under law-enforcement discretion. ECF 23-1 at 14-15.

Plaintiff claims that Congress's inclusion of transitional rules delaying the onset of a mandatory detention of criminal noncitizens under 8 U.S.C. § 1226(c) in 1996 suggests that the absence of any such transitional allowance for section 1225(b) means Congress intentionally "preserved mandatory detention for arriving aliens" despite resource constraints. ECF 31 at 14-15. But no such implication is warranted. The safety valve for section 1226(c) was necessary because, under then-existing law, many categories of criminal noncitizens "could not be released from immigration detention" at all. *Matter of Garvin-Noble*, 21 I. & N. Dec. 672, 674 (BIA 1997). No such temporary fix was necessary for section 1225(b) detention because the statute *already provided* a parallel safety valve, namely parole under 1182(d). *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (noting "there is a specific provision authorizing release from § 1225(b) detention," namely temporary parole under section 1182(d), "whereas no similar release provision applies to § 1231(a)(6)"). And even had Congress not provided for parole under section 1182(d), mandating detention under section 1225(b) despite the Government's lack of detention capacity—of which Congress has been aware for many years—would create conditions of "insufficient resources" and "sheer physical impossibility" that, among other factors, necessitate the availability of non-enforcement discretion. *See Castle Rock*, 545 U.S. at 760.

Although Plaintiff contends the government may not parole noncitizens "en masse," its complaint does not plausibly allege that such practice occurs. Plaintiff fails to allege even a single parole or Parole+ATD decision that was not rendered on an individualized "case-by-case" basis. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff also argues that section 1182(d) only confers discretion to deny parole, and not to grant parole. ECF 31 at 16. Plaintiff offers no support for its unprecedented interpretation. Rather, law authorizes DHS officials to grant or deny parole if urgent humanitarian reasons or significant public benefit counsel release, and other discretionary individual considerations, such as safety or flight risk, do not counsel detention. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b); *e.g.*, *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1145 (9th Cir. 2020) (describing the parole process under still-existing procedure), *judgment vacated*, 141 S. Ct. 1041 (2021).

### III.    Plaintiff Does Not Challenge Final Agency Action.

Plaintiff's strawman "non-detention policy" does not exist and cannot create a final agency action subject to challenge. The Parole+ATD practice is a general statement of policy: it guides officers on how to employ that discretion, but leaves that discretion intact, and thus is not "final agency action" under the Administrative Procedure Act (APA). ECF 23-1 at 17-19; *see* 5 U.S.C. § 704.  Plaintiff asserts that

7

"the policy" could result in the parole of noncitizens who could obtain work authorization, and that "these releases determine rights, obligations, and legal consequences for Florida's administration of Medicaid." ECF 31 at 18-19. But Plaintiff's argument confuses guidelines for officers' exercise of discretion under section 1182(d) with those officers' ultimate decisions to release in individual cases, which Plaintiff expressly does not challenge. *Id.* at 16. Agency action that "only affects [a party's] rights adversely on the contingency of future administrative action," such as a CBP officer examining the circumstances and applying the guidelines in an individual decision to parole, is "nonfinal." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003).

## IV.    Plaintiff Does Not Fall Within The Zone of Interests.

Several statutory provisions protecting the Executive's discretion from the courts, and permitting only noncitizens to challenge enforcement decisions, indicate Congressional intent to exclude States from the zone of interests of these statutes. ECF 23-1 at 21-22. Plaintiff points to *Texas v. Biden*, 20 F.4th 928, 975 (5th Cir. 2021), which relied on *Demore v. Kim*, 538 U.S. 510, 517–22 (2003), to hold "the INA aimed, at least in part, to protect States from [financial] harms." However, while *Demore* noted that criminal noncitizens were a growing population in federal, and to a lesser extent state, detention, section 1226(c) did not directly address this interest, because it required greater detention of criminal noncitizens than then-

existing law. *See id.* at 518. Rather, Congress enacted section 1226(c) in response to studies "suggest[ing] that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country." *Id.* at 521. Nothing about that rationale suggests a Congressional intent to permit States a cause of action to sue over immigration detention issues.

## V.    Plaintiff Fails to State a Claim.

Plaintiff's Complaint suffers legal and pleading flaws, and each count fails to state a claim under Rule 12(b)(6). ECF 23-1 at 23-36.

### A.   *"Non-Detention Policy" (Counts 1, 3, 5, 7)*

Plaintiff's challenges to the "non-detention policy" all fail to state a claim. At the outset, Plaintiff's conclusory allegation that this "policy" exists is insufficient to survive a motion to dismiss. ECF 31 at 22. Only plausible factual allegations, not legal conclusions—such as the assertion of the existence of a legal policy—are entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

Plaintiff's bald assertion that a policy exists because there have been thousands of parole grants, without any specific factual allegations pertaining to the cause of any of those grants, fails to plausibly support the inference of such a "policy." This shortcoming is especially evident in light of the judicially-noticeable fact that even thousands of releases would represent a tiny fraction of the *millions* of noncitizens subject to border enforcement action each year. *See* U.S. CBP, "CBP

Releases Operational Fiscal Year 2021 Statistics," Jan. 3, 2022 (noting "in FY 2021, there were 1.72 million CBP encounters" with noncitizens eligible for expulsion or immigration proceedings).[4]

Plaintiff similarly misplaces reliance on *Jean v. Nelson*, 711 F.2d 1455, 1481 (11th Cir. 1983) ("*Jean I*"), *on reh'g*, 727 F.2d 957 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985), to argue such a policy exists and, therefore, should have been subject to notice and comment rulemaking. ECF 31 at 23-24. In *Jean I*, there were substantial factual indicia that the Government had instituted a new parole policy regarding Haitians in 1981, including a Presidential statement and Congressional testimony from the INS Commissioner. 711 F.2d at 1469-70. In contrast, Plaintiff has not alleged any such official statements or testimony acknowledging any new or changed general parole policy here. *See Iqbal*, 556 U.S. at 678.

Further, Plaintiff incorrectly suggests that detention limitations are an inappropriate consideration when making a parole determination. As explained, every administration since the Illegal Immigration Reform and Immigrant

---

[4] Amicus's presentation of recent immigration figures only supports this conclusion, as paroles are a small monthly fraction of the population encountered at the border. ECF 36-1 at 11-12. IRLI emphasizes the number of "releases," but does not parse which "releases" pertain to Plaintiff's challenge here. *See id.* IRLI also fails to note that the court records it cites indicate that, due to physical structure limits and court orders responding to Covid-19, Defendants' total national detention capacity is currently *less than 35,000* beds—CBP has 5,935 and ICE has approximately 28,933. *Texas v. Biden*, No. 2:21-CV-067-Z (N.D. Tex.), ECF 133.

Responsibility Act of 1996 was promulgated has administered section 1182(d)(5)(A) to permit such a consideration. ECF 23-1 at 14-15 (collecting authorities). If a noncitizen presents neither a security nor a flight risk, release may achieve urgent humanitarian reasons or significant public benefit, especially where parole would maximize the use of limited detention space to prioritize detention of criminal noncitizens. *Id.*; *see also* Gene McNary, Parole Project for Asylum Seekers at Ports of Entry and INS Detention (Apr. 20, 1992) (applying this rationale for parole pre-IIRIRA).

### B. *Parole+ATD (Counts 2, 4, 6)*

Plaintiff's challenges to Parole+ATD reflect a fundamental misunderstanding of the program. ECF 31 at 24-28. First, regarding the Government's discretion not to immediately issue a charging document, Congress has empowered the Executive to decide "whether it makes sense to pursue removal at all." *Arizona v. United States*, 567 U.S. 387, 396 (2012). Section 1225 "does not limit the authority of DHS to determine whether to pursue the removal of the immigrant." *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015).

Next, Plaintiff asserts that "the underlying reason for parole" under section 1182(d)(5)(A) must "be specific to the parolee," implying that that the humanitarian or public-interest rationale cannot simultaneously apply to more than one parole grant. *See* ECF 6-2 at 3. Not only does Plaintiff fail to identify any legal support for

11

this interpretation, it is wholly inconsistent with relevant law. The parole regulation itself provides that parole would "generally be justified" based on noncitizens' membership in various groups. 8 C.F.R. § 212.5(b). These include: noncitizens "who have serious medical conditions in which continued detention would not be appropriate," "[w]omen who have been medically certified as pregnant," and noncitizens "whose continued detention is not in the public interest." *Id.* As explained, Parole+ATD determinations are similarly conducted on a case-by-case basis to determine whether individual factors counsel release of the noncitizen. *See* ECF 23-1 at 27. Because any release is conditioned on finding an applicable urgent-humanitarian or significant-public-interest factor, such as avoiding the spread of disease in overcrowded CBP facilities, the Parole+ATD process is fully consistent with the statute and regulation.; ECF 6-2 at 3.

Plaintiff simply disagrees with CBP's determination of what constitutes an urgent-humanitarian or significant-public-interest rationale for detention. ECF 31 at 25-26. But that judgment is for the agency, not Plaintiff, to make.  Even if that judgment is judicially reviewable (which, as noted above, it is not), the court's role, if any, "is to ensure that the agency came to a rational conclusion, not … substitute its own judgment for the administrative agency's decision." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008). And CBP officers' determination

that health and safety concerns in overcrowded facilities require parole is hardly an irrational humanitarian or public-benefit judgment.

Plaintiff also alleges without support that the November 2, 2021 memorandum addressing Parole+ATD "was created in response to Plaintiff's challenge to explain practices that were already occurring." ECF 31 at 26. The memorandum does not address litigation, and does not offer a "post hoc rationalization," as its effect is prospective. It makes clear that its purpose is to "ceas[e] the use of NTRs" "[e]ffective immediately," and offers guidelines for implementing Parole+ATD. ECF 6-2 at 2-4.[5]

Plaintiff cites *Cruz-Miguel v. Holder*, 650 F.3d 189, 199 n.15 (2d Cir. 2011), to argue that temporary releases on Parole+ATD contravene Congressional intent in amending section 1182(d)(5)(A). ECF 31 at 27. But as the authority *Cruz-Miguel* relied on makes clear, Congress was concerned with using parole to provide a basis for lawful permanent residence (LPR), not, as here, temporarily while the Government places them in removal proceedings. *See, e.g.*, *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 786 (3d Cir. 2010) (explaining "the history of the statute

---

[5] Plaintiff's contention that the previous Administration did not consider detention capacity restraints in parole decisions is incorrect. ECF 23-1 at 27-28 (citing John Kelly, U.S. DHS, Implementing the President's Border Security and Interior Immigration Enforcement Policies 3 (Feb. 20, 2017)). Parole guidance from that period considered "available detention resources." *Padilla*, 953 F.3d at 1145.

suggests that Congress sought to limit the universe of those who could adjust status"
to LPR).

### C. *Constitutional Claim (Count 8)*

Plaintiff maintains that its three-sentence Count 8 does not constitute a
conclusory constitutional claim. ECF 16 ¶¶ 110-12. It also claims Count 8 does not
raise a Take Care Clause challenge, but rather a freestanding constitutional claim at
equity to challenge unlawful executive action. ECF 31 at 10 n.5. Regardless, Count
8 fails to state a cognizable claim.

First, such a constitutional claim would not bring this count outside the scope
of APA review. *See* 5 U.S.C. § 706(2)(B) (APA review encompasses claims that
agency action is "contrary to constitutional right, power, privilege, or immunity").
Second, the traditional ultra vires claim at equity to which Plaintiff refers (*see, e.g.*,
*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)), fails because
the APA has generally supplanted the availability of such a claim and it is
unavailable here. The 1976 amendment to the APA was intended "to eliminate
the sovereign immunity defense in all equitable actions for specific relief against a
Federal agency or officer[.]" *Presbyterian Church (U.S.A.) v. United States*, 870
F.2d 518, 525 (9th Cir. 1989) (quoting H.R. Rep. No. 94-1656, at 9 (1976). The
principal purpose of this amendment to the APA "was to do away with the ultra vires
doctrine." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). Courts now look

to the APA and its waiver of sovereign immunity, 5 U.S.C. § 702, "to serve the purposes of" the ultra vires doctrine. *E. V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018); *see, e.g.*, *Locke v. Warren*, No. 19-61056-CIV, 2019 WL 4805716, at *4 (S.D. Fla. Oct. 1, 2019) (collecting cases).

Even were this ultra-vires equitable claim still available, it does not aid Plaintiff. Even the *Larson* waiver of sovereign immunity never encompassed claims for "injunctions requiring officials to act." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005). Because there is no "nondetention policy," granting Plaintiff the relief it requests would require an affirmative act: the Court would have to order (and supervise) the Government to implement a policy of restricting or prohibiting CBP officers from granting parole under section 1182(d).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint.

Date: April 12, 2022                    Respectfully submitted,

JASON R. COODY                         BRIAN M. BOYNTON
*United States Attorney*                 *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                         WILLIAM C. PEACHEY
*Assistant United States Attorney*       *Director*
Northern District of Florida           Office of Immigration Litigation
                                        District Court Section

                                        EREZ REUVENI
                                        *Assistant Director*

15

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ERIN T. RYAN
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section

16

## CERTIFICATE OF COMPLIANCE

I certify that this reply brief complies with the type-volume limitation of Local Rule 7.1(F), (I) because, excluding parts of the document exempted by the Rule, it contains 3,192 words.

*/s/ Joseph A. Darrow*

JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

17