UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

   *Plaintiff*,

v.                                      Case No. 3:21-cv-1066-TKW-EMT

The UNITED STATES OF AMERICA;
*et al.*,

   *Defendants*.
_____/

**FLORIDA'S MOTION TO SUPPLEMENT THE
ADMINISTRATIVE RECORD FOR THE PAROLE + ATD POLICY**

On September 28, 2021, Florida filed this suit, challenging, among other things, Defendants' policy of issuing Notices to Report (NTRs) rather than Notices to Appear. Doc. 1 at ¶ 31 (discussing "immigration by the honor system"). Barely a month after Florida filed suit, and after being "beat[en] over the head" with public criticism, Ex. 6 at 5, Defendants rescinded that policy and replaced it with the Parole + ATD policy. Doc. 6-2.

Throughout this case, Defendants have insisted that review of the Parole + ATD policy should be "only on the basis of the record before the agency, not extrinsic evidence." Doc. 7-1 at 28 n.4. They have even gone so far as to refuse to hold a Rule 26(f) conference, Doc. 11 at 10, doing so only after this Court ordered them to, Doc. 26 at 3.

On April 20, 2022, Defendants produced the long-awaited administrative record. Ex. 1 at 3. That record—which Florida has attached in full—is highly irregular and demonstrates a need for extra-record discovery. Ex. 1. An administrative record is supposed to contain "all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981)). But the record produced is a mere 30 pages and contains several significant apparent omissions. Most glaringly, while the Parole + ATD policy is supposedly based on the "urgent humanitarian need to protect the workforce, migrants, and American public against the spread of COVID-19 that may be exacerbated by overcrowding in CBP facilities," Doc. 6-2 at 3, the record barely discusses COVID. It contains no scientific studies, no CDC guidance, and nothing demonstrating an urgent humanitarian need other than the general fact that COVID exists. Similarly, while the Parole + ATD policy only applies to those who are "not covered by or [are] excepted from, on a case-by-case basis, the [CDC] Title 42 Order," *id.* at 4, the record does not even contain a copy of the Title 42 Order.

Based on the record Defendants produced, one of two things must be true: either (a) Defendants did not produce the complete administrative record; or (b) the rationale offered for Parole + ATD—avoiding the "spread of COVID-19" in

2

"overcrowd[ed] . . . CBP facilities", Doc. 6-2 at 3—is pretextual. Most likely, both are true. The Parole + ATD policy was a reaction to public criticism and Florida's lawsuit and an attempt to find a basis for the mass release of migrants into the United States. If this were not already plain, the government's decision to terminate the Title 42 Order while leaving Parole + ATD in place would make that abundantly clear. *See* Doc. 45 at 8 & n.8 (discussing the CDC's conclusion that Title 42 is no longer necessary because of "highly effective vaccines and therapeutics").

For these reasons, and those that follow, this Court should enter an order allowing Florida to supplement the administrative record in this case with extra-record discovery.[1] The record appears to be incomplete and likely to frustrate judicial review and evidences bad faith by Defendants. Florida also requests an order expediting Defendants' deadline to respond to seven days given that a ruling on this motion will have a significant impact on the remainder of the discovery period.[2]

## LEGAL STANDARD

Under 5 U.S.C. § 706, APA review of agency action is ordinarily limited to the administrative record. *Preserve Endangered Areas of Cobb's History, Inc. v.*

---

[1] This motion does not address discovery related to standing, which does not implicate the record rule, *see Nw. Env'l Def. Ctr. v. Bonneville Power Admin*, 117 F.3d 1520, 1528 (9th Cir. 1997), and it does not address discovery related to the non-detention policy because Defendants have refused to provide an administrative record for that policy, insisting that no such policy exists. The parties are conferring in good faith regarding that discovery.

[2] At this time, Florida does not seek to extend the deadline to serve further discovery requests. Florida has already served discovery regarding the Parole + ATD policy. If this motion is granted, the parties will continue following this Court's discovery procedures regarding those requests.

*U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996). In certain circumstances, however, a reviewing court may go beyond the administrative record: when (1) "an agency's failure to explain its action effectively frustrates judicial review," (2) "it appears that the agency relied on materials not included in the record," (3) "technical terms or complex subjects need to be explained," or (4) "there is a strong showing of agency bad faith or improper behavior." *Id.* at 1246 n.1 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436–37 (9th Cir. 1988)).[3]

---

[3] Defendants, citing *Alabama Tombigbee Rivers Coalition v. Kempthorne*, have suggested that "going beyond the administrative record" is appropriate only where there is a "strong showing of bad faith or improper behavior." 477 F.3d 1250, 1262 (11th Cir. 2007). But that case merely provides the standard in applying the bad faith exception; it does not eliminate the other exceptions. *See Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020). In any event, the first two exceptions do not seek to "go beyond" the administrative record but to determine its scope in the first instance. *See In re United States*, 131 S. Ct. 378, 372 (2017) (Breyer, J., dissenting from grant of stay) (noting that "lower courts seem to have unanimously rejected the Government's position that the agency may unilaterally determine the contents of the administrative record").

Recognizing as much, the prevailing view of district courts in this circuit is that all four exceptions operate. *E.g.*, *Sierra Club v. U.S. Fish & Wildlife Serv.*, 2021 WL 5634131, at *3 (M.D. Fla. Dec. 1, 2021) (Chappell, J.); *SOSS2, Inc. v U.S Army Corps of Eng'rs*, 403 F. Supp. 3d 1233, 1237 (M.D. Fla. 2019) (Merryday, J.); *St. Johns Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 2018 WL 11346477, at *4 (M.D. Fla. Nov. 27, 2018) (Howard, J.); *Hakki v. Sec'y, Dep't of Veterans Affs.*, 2018 WL 6447305, at *1 (M.D. Fla. Oct. 19, 2018) (Scriven, J.); *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d 1171, 1182 n.16 (M.D. Fla. 2006) (Corrigan, J.); *Arriva Med. LLC v. Sec'y of HHS*, 2020 WL 5757084, at *3 (S.D. Fla. Sept. 28, 2020) (Smith, J.); *United States v. RG Logistics Inc.*, 2020 WL 4923672, at *2 (S.D. Fla. Jan. 2, 2020) (Bloom, J.); *NRDC v. Van Antwerp*, 2008 WL 11333805, at *1 (S.D. Fla. Jan. 18, 2008) (Middlebrooks, J.); *Miccosukee Tribe of Indians v. United States*, 396 F. Supp. 2d 1327, 1330 (S.D. Fla. 2005) (Moore, J.); *Sierra Club v. U.S Army Corps of Eng'rs*, 935 F. Supp. 1556, 1566 (S.D. Ala. 1996) (Butler, C.J.); *Z-Noorani v. Richardson*, 850 F. Supp. 2d 1330, 1335 (N.D. Ga. 2013) (O'Kelley, J.); *Ga. River Network v. U.S. Army Corp. of Eng'rs*, 2011 WL 2551044, at *1–2 (S.D. Ga. June 27, 2011) (Edenfield, J.); *Altamaha Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 2007 WL 1830864, at *2 (S.D. Ga. June 21, 2007) (Bowen, J.).

While Florida need only meet one of these exceptions to justify extra-record discovery, it meets three—Defendants' threadbare record frustrates judicial review, they seem to have omitted materials they considered, and their actions are pretextual and in bad faith.

In meeting the first two, Florida need not "show that the agency acted in bad faith," but instead must only "produce reasonable evidence so that the Court may determine whether the whole record has been filed." *Tex. Steel Co. v. Donovan*, 93 F.R.D. 619, 621 (N.D. Tex. 1982) (quotations omitted).

In meeting the last—bad faith—Florida need not provide "conclusive evidence" of improprieties given "the difficulty the moving party will have in producing evidence of wrongdoing before" discovery. *Schaghticoke Tribal Nation v. Norton*, 2007 WL 867987, at *3 (D. Conn. Mar. 19, 2007); *accord Dep't of Com. v. New York*, 139 S. Ct. 2551, 2574 (2019) (approving of the district court's finding of bad faith where the agency's proffered justification was pretextual).

## ARGUMENT

### I. The administrative record contains critical apparent omissions and frustrates judicial review.

The administrative record almost certainly lacks many key documents considered by Defendants and that are essential to judicial review.

First, the record contains no documents related to public health risks posed by COVID, the purported rationale behind the Parole + ATD policy. *See* Doc. 6-2 at 3.

5

The record contains no CDC guidance, no scientific publications regarding COVID, and no other COVID-related data apart from internal infection counts. Ultimately, this Court must decide whether the Parole + ATD is arbitrary and capricious. But how is the Court supposed to determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation" when the relevant data—for example, the mortality rate of COVID or the efficacy of vaccines and therapeutics—is missing from the administrative record? *See Missouri v. Biden*, 142 S. Ct. 647, 653–54 (2022) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). If Defendants are to have a prayer of defending that claim, they must produce some material in the administrative record providing the basis for these assertions.

Second, the record contains nothing about the COVID-related risks of Border Patrol facilities specifically. This omission is particularly egregious because documents Florida obtained through FOIA show that Defendants are using CDC guidance to drive decisions regarding detention capacity and social-distancing requirements. *See* Ex. 2 at 2 ("The CDC recommendations at the time were groups no larger than 10. So we developed 10-person units, 8 units per pod, 4 pods."). That guidance is, of course, not in the administrative record.

Third, while the Parole + ATD policy references the Title 42 Order and exempts persons governed by that Order, Doc. 6-2 at 4, the Title 42 Order is not in

the administrative record. It is difficult to imagine how Defendants could issue the Parole + ATD policy without considering the Title 42 Order and its scope.

Fourth, while the Parole + ATD policy purports to rescind Defendants' NTR policy, the record does not include any documents regarding the need to replace the NTR policy. According to one media outlet, a spokesman of Defendants recently acknowledged that the NTR policy "was an honor system [and] we got beat over the head with that. So they went back and they looked at the Title 8 law" before enacting the Parole + ATD policy. Ex. 6 at 5. Yet there is no discussion in the administrative record of why the NTR policy needed to be replaced. *Cf. Texas v. Biden*, 20 F.4th 928, 991 (5th Cir. 2021) (noting "DHS's discussion of MPP's supposed shortcomings" in the memo rescinding it but still finding the rescission arbitrary and capricious). This omission is especially hard to understand given that the Parole + ATD memo itself praises the NTR policy and gives no indication why it was rescinded. Doc. 6-2 at 2.

Fifth, Defendants issued the Parole + ATD policy barely a month after Florida filed suit. Doc. 1 (September 28); Doc. 6-2 (November 2). And documents Florida obtained through FOIA show that senior officials in the agency, including Secretary Mayorkas, were briefed on Florida's lawsuit. Ex. 3 at 2–3.[4] Certainly, Florida's

---

[4] Notably, while Florida challenged several DHS practices, the email to Secretary Mayorkas bears the subject line, "Florida Challenge to Use of NTRs." Ex. 3 at 2.

7

lawsuit was something "directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555 (quotations and emphasis omitted). Moreover, it is typical for agencies to include in an administrative record legal filings that were before them when a decision was made. *See, e.g.*, Ex. 4 at 6–8 (index of record for immigration enforcement priorities, which includes documents from lawsuits brought by Arizona, Texas, and Florida). And if, as Florida contends, Parole + ATD was issued in response to this lawsuit, this fact would greatly undercut Defendants' claim of *Chevron* deference. *See* Doc. 23-1 at 38; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) (concluding that deference was "inappropriate" for agency interpretations advancing a "convenient litigating position" or a post hoc rationalization used to defend agency actions).

Finally, the miniscule size of this administrative record itself suggests that materials were omitted. *See NVE, Inc. v. HHS*, 436 F.3d 182, 196 (3d Cir. 2006) ("[T]he size of the record is certainly a factor that a court should consider in deciding whether to take the unusual step of permitting invasive discovery into administrative decision-making."). The record produced by Defendants, excluding cover pages and the like, is a mere 30 pages. By contrast, the administrative record for Defendants' "Guidelines for the Enforcement of Civil Immigration Law" is over 6,000 pages, *see* Ex. 4 (index of administrative record), and the administrative record for Defendants' recission of the Migrant Protection Protocols was almost 700 pages, *see* Ex. 5 (index

of administrative record). Yet Defendants would have this Court believe that their decision to change the processing pathway used for tens of thousands of migrants per month—and ending a policy that by their own explanation was effective at meeting their goals—was made after consideration of only 30 pages of documents. This position is brazenly out of step with reality. *See In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017) ("Put bluntly, the notion that the head of a United States agency would decide to terminate a program giving legal protections to roughly 800,000 people based solely on 256 pages of publicly available documents is not credible, as the district court concluded."), *vacated on other grounds*, 138 S. Ct. 443 (2017) (holding that the court should have addressed jurisdictional issues in the government's motion to dismiss before ordering extra-record discovery).

## II.     Defendants' actions are pretextual and in bad faith.

Arguably, the preposterously thin administrative record produced by Defendants alone demonstrates bad faith. *See Cook Cnty. v. Wolf*, 461 F. Supp. 3d 779, 795–96 (N.D. Ill. 2020) (finding bad faith where the agency referenced communications with officials outside the agency in the final rule and the administrative record did not include these communications). But any lingering doubt would be resolved by the government's decision to rescind the Title 42 Order while leaving Parole + ATD in place. *See Dep't of Com.*, 139 S. Ct. at 2574

9

(concluding that evidence suggesting the rationale provided in the administrative record was pretextual is sufficient to establish bad faith or improper motive).

As this Court has noted, Doc. 45 at 8, the federal government has rescinded the Title 42 Order—a policy permitting exclusion of certain migrants based on the existence of the COVID pandemic. Public Health Determination and Order Regarding Suspending the Right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 87 Fed. Reg. 19,941 (Apr. 6, 2022). The offered justification for that decision is that "suspending the right to introduce" migrants into the United States "is no longer necessary" because "the cross-border spread of COVID-19 due to covered noncitizens does not present the serious danger to public health that it once did." *Id.* at 19,943–44.

Despite this decision, Defendants are continuing the Parole + ATD policy, even though the policy treats COVID as an "urgent humanitarian need" justifying the mass release of migrants at the border and specifically states that "when COVID-19 conditions eventually improve, it is expected that there will no longer be a need for this alternative pathway," Doc. 6-2 at 4.

It is hard to understand how COVID no longer provides a basis to expel migrants but continues to provide a basis to release migrants *en masse*. The obvious answer is that Parole + ATD was never about COVID. Rather, COVID is a "contrived reason[]" to justify unlawful action this Administration has been

10

"determined" to accomplish for other yet undisclosed reasons. *Dep't of Com.*, 139 S. Ct. at 2574–76. In fact, even as the pandemic wanes, Defendants are using Parole + ATD more than ever, including a record 40,024 times in the last month reported.[5] Because that undisclosed reason does not appear in the administrative record, extra-record discovery is necessary.

## CONCLUSION

For these reasons, Florida respectfully requests this Court enter an order permitting Florida to take extra-record discovery to supplement the administrative record provided by Defendants. Florida also requests that the Court expedite Defendants' response to this motion to aid in the efficient resolution of ongoing discovery discussions.

---

[5] https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics (U.S. Border Patrol – Disposition and Transfers tab).

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

James H. Percival (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Daniel Bell (FBN 1008587)
CHIEF DEPUTY SOLICITOR GENERAL

*/s/ Natalie P. Christmas*
Natalie P. Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Karen Brodeen (FBN 512771)
SPECIAL COUNSEL

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
natalie.christmas@myfloridalegal.com

*Counsel for the State of Florida*

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(B), Florida's counsel conferred with Defendants' counsel by email on May 17, 2022, and by phone on May 19, 2022. Defendants oppose all relief sought.

*/s/ Natalie P. Christmas*
Assistant Attorney General

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 2,788 words.

*/s/ Natalie P. Christmas*
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on May 19, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Natalie P. Christmas*
Assistant Attorney General
