UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

    Plaintiff,

v.

Case No. 3:21-cv-1066

The UNITED STATES OF AMERICA; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, Acting Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; UR M. JADDOU, Director of U.S. Citizenship and Immigration Services, in her official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

    Defendants.
_____/

# DEFENDANTS' MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO TOPICS 3, 9, 14, AND 15 LISTED IN PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION

Defendants move the Court for a protective order with respect to four topic areas of inquiry listed by Plaintiff in its Notice of Taking 30(b)(6) Deposition to Defendant Department of Homeland Security, dated June 29, 2022, annexed hereto as Exhibit A. Defendants seek this protective order to prevent high-level government officials from being subjected to questioning on topics that are palpably irrelevant to this litigation, subject to the deliberative process privilege, seek information within the public domain, call for abject speculation, call for expert testimony, and seek information that Plaintiff already has or is in the best position to know. The four topics to which this motion pertains are:

- Topic 3 which seeks "[i]nformation and data regarding the causes of the current surge of migrants at the Southwest Border;"

- Topic 9, which asks the government to speak to the "[c]osts to States, financially and in terms of allocation of resources, as a result of unlawful immigration;"

- Topic 14, which seeks "[f]acts and information regarding the processing delays in and around April 2022 and May 2022 at the ICE facility located at 9495 Delegates Drive, Orlando, Florida, including steps taken by DHS to address the delays;" and

- Topic 15, which seeks "[t]he information discussed between or shared with 'senior DHS officials' and 'reporters' on March 29, 2022. *See*

1

https://www.yahoo.com/gma/us-bracing-influx-migrants-southern-003500370.html."

Exhibit A. Defendants are also requesting an order directing Plaintiff to file any response to this motion within seven days so that the depositions of several senior government officials, which have already been scheduled, will be able to proceed on the scheduled dates. Plaintiff has consented to filing its opposition within seven days.

## Procedural Background

As this Court is aware, in this lawsuit, Plaintiff challenges, under the Administrative Procedure Act and the Constitution, two of Defendants' alleged immigration policies: its alleged "non-detention policy" at the Southwest border, and its parole + ATD policy. Plaintiff has already sought, and been denied by this Court, extra-record discovery into Defendants' parole + ATD policy. *See* ECF No. 55. No one disputes, however, that Plaintiff is entitled to targeted discovery as to Defendants' alleged "non-detention policy" at the Southwest border because Defendants deny any such policy exists, and thus have not filed an administrative record relevant to this portion of Plaintiff's APA claim.

On or about May 18, 2022, Plaintiff emailed Defendants a draft Notice of 30(b)(6) Deposition, which listed thirteen topics of inquiry. Plaintiff then updated that draft Notice to include sixteen topics, which was sent to Defendants on or about May 24. On May 26, the parties participated in a lengthy, telephonic meet and

2

confer, during which Defendants addressed with Plaintiff concerns about some of the deposition topics, including topics 3, 9, 14 and 15.

The parties continued to exchange emails with their respective positions, and had another meet and confer on June 16. As a result, on or about June 17, Plaintiff emailed Defendants a revised draft 30(b)(6) Deposition Notice, making limited changes to some topics, including Topics 14 and 15. While Defendants appreciated that Plaintiff narrowed the topics, the changes made did not address all of Defendants' concerns. Accordingly, on June 24, 2022, Defendants reached out to Plaintiff's counsel by email to advise Plaintiff that Defendants would seek a protective order with respect to Topics 3, 9, 14 and 15 unless an agreement could be reached with respect to these topics, and invited Plaintiff to meet and confer again before filing this motion. Plaintiff declined another meet and confer, and on June 29, 2022, formally served Defendants with its Notice of Taking of 30(b)(6) Deposition. *See* Exhibit A.

## **Legal Standard**

Federal courts have "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

3

of the case." Fed. R. Civ. P. 26(b)(1). But under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders can include "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). And under Rule 26(b)(2)(C), a court "must limit the frequency or extent of discovery otherwise allowed" under the Federal Rules:

> if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

A party seeking a protective order bears the burden of establishing good cause. *See Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). In evaluating whether a party has satisfied its burden, a court should balance the non-moving party's interest in obtaining discovery against the moving party's proffer of harm that would result from the discovery. *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Based on the factors set forth

above, Defendants are entitled to a protective order with respect to Topics 3, 9, 14 and 15.

## ARGUMENT

**Topic 3:**

The Court should issue a protective order relieving Defendants of any obligation to provide a witness on the speculative information sought in Topic 3. Plaintiff asks Defendants, in Topic 3, to delegate a witness from the Department of Homeland Security to provide testimony regarding "[i]nformation and data regarding the causes of the current surge of migrants at the Southwest Border." Exhibit 1. This request is overly broad and speculative.

As one Court of Appeals aptly noted, "myriad economic, social, and political realities in the United States and in foreign nations" influence migration. *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Indeed, Plaintiff's request would require Defendants to provide a witness (or, possibly, witnesses) to speak to the socio, political, economic and safety conditions in a multitude of foreign nations, as well as similar conditions in this county, and then provide speculative testimony about how those comparative realities might influence migrants to "risk[] life and limb to come here." *Id*. Such testimony is overly broad and speculative. *See Schwarz v. City of Treasure Island*, No. 8:05-CV-1696-T-30MAP, 2010 WL 11470984, at *1 (M.D. Fla. Oct. 12, 2010) (30(b)(6) topics that ask the City to provide a witness to testify

5

to the causes of declining populations in plaintiff's residential facilities are speculative and the City need not provide a witness for such topics).

Further, given that international migration forms part of the discourse and negotiations between the United States and surrounding nations, questioning on this topic threatens to intrude into decision-making concerning the conduct of foreign affairs and have a chilling effect on future foreign-relations dialogue and decision-making. "[S]ubjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993). Questioning into any understanding of migratory causes potentially gained from, for example, the conduct of foreign affairs and diplomatic discourse with neighboring governments, might also involve complex issues related to privileges for presidential communications, state secrets, attorney-client communications, and the deliberative process. Preparation for such inquiries would require extensive and burdensome preparation that the timing of these depositions does not allow for.

Moreover, a conclusion about the "causes" of mass migration—not simply observable potential factors—to the extent these are even relevant to this litigation,[1] requires expert testimony, not that of a lay Rule 30(b)(6) witness. *Id*. (finding

---

[1] Defendants preserve all objections as to relevance, to this topic, and all others.

6

30(b)(6) topics that call for a city representative to testify about economic conditions in the United States and Pinellas County, Florida are "appropriate for expert deposition, not 30(b)(6) deposition"); *see also F.D.I.C. v. Brudnicki*, No. 5:12-CV-00398-RS-GRJ, 2013 WL 5814494, at *3 (N.D. Fla. Oct. 29, 2013) (a Rule 30 (b)(6) witness is not required to provide expert testimony but only facts); *Perry v. United States*, No. 3:96-CV-2038-T, 1997 WL 53136, at *1 (N.D. Tex. Feb. 4, 1997) ("A party may not circumvent the limitations of Rule 26 and gain access to opposing expert evidence via a bare subpoena duces tecum."). And, as Topic 3 would require expert testimony, preparing a potential witness (or witnesses) from the Department of Homeland Security to speak to this topic would be burdensome and disproportionate to the needs of this case. Balancing the equities, this Court should issue a protective order as to Topic 3.

**Topic 9:**

In Topic 9, Plaintiff asks Defendants to provide a witness to testify to the "[c]osts to States, financially and in terms of allocation of resources, as a result of unlawful immigration." To the extent that Plaintiffs request information about costs to States other than Florida, this Topic is palpably irrelevant. To the extent it seeks information about Florida's own alleged costs, it seeks information that Florida is in the best position to know. For both reasons, it should be quashed.

On its face, Topic 9 seeks a deponent to testify about costs, born by "States," from "unlawful immigration."[2] But there is only one State whose costs are at issue in this litigation—Florida. Because Topic 9 seeks information about costs incurred by States other than Florida, Topic 9 plainly exceeds the scope of this litigation. Courts may limit discovery on the basis of relevance prior to a 30(b)(6) deposition to prevent the government "from becoming trapped in the awkward scenario of having its counsel silently sit by while irrelevant and/or overly broad questions are asked." *S.E.C. v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla.), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012) (striking 30(b)(6) topics that were plainly not relevant to the case); *Schwarz*, 2010 WL 11470984, at *1 (same). Furthermore, as this Court may be aware, States other than Florida, in jurisdictions other than this one, have challenged Defendants' parole policies and have alleged injuries from unlawful immigration. *See e.g. Arizona v. Biden*, 21-CV-1568-MTL (D. Ariz.); *State of Indiana v. Biden,* 22-CV-0192 (N.D. Ind.). Discovery in those cases should be controlled by those courts—not this one. Therefore, to the extent that Topic 9 seeks a deponent to testify as to injuries allegedly suffered by States other than Florida, some of which are plaintiffs in similar lawsuits in other jurisdictions, this Court should quash Topic 9.

---

[2] Plaintiff has not defined this term, which may be susceptible to more than one definition.

8

Further, to the extent Topic 9's aim is to have Defendants to designate a witness to provide information pertaining to the costs the State of Florida has allegedly incurred as a result of unlawful immigration, Plaintiff is in the best position to identify—both in kind and amount—those costs. Indeed, Plaintiff has put forth evidence and deponents to discuss its alleged costs. For example, in response to an interrogatory from Defendants requesting Plaintiff "[d]escribe in detail each and every specific harm and/or expense that you have incurred as a result of Defendants' release of applicants for admission encountered at the Southwest border, excluding litigation expenses, broken down by month from January 2020 through January 2022," Plaintiff provided a ten-page, single-space response, broken down by State agency, and provided with that response more than hundreds of pages of documents and data purportedly quantifying the costs it has incurred. Plaintiff's demand that Defendants now provide a witness to speak to *Plaintiff's costs* is improper. Rule 26(b)(2)(C) provides that a court "must limit" discovery that "can be obtained from some other source that is more convenient, [and] less burdensome." *Cf. Thomas v. City of Jacksonville*, No. 3:13-CV-776-J-39PDB, 2014 WL 12708970, at *1 (M.D. Fla. July 16, 2014) (no discovery of information in the public record and equally accessible to plaintiff). Here, *Plaintiff* is the "other," "more convenient," "source" of the information that it seeks. And Plaintiff has not provided any explanation for why it believes the Department of Homeland Security can provide information about

9

costs allegedly incurred by the State of Florida that Plaintiff does not already have or could not more easily access. Accordingly, this Court should issue a protective order with respect to Topic 9.

**Topic 14:**

In Topic 14, Plaintiff asks Defendants to designate a witness to testify to "[f]acts and information regarding the processing delays in and around April 2022 and May 2022 at the ICE facility located at 9495 Delegates Drive, Orlando, Florida, including steps taken by DHS to address the delays." Exhibit 1.

First, Defendants object to this entire topic because it is patently not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff challenges Defendants' alleged policies concerning the initiation of removal proceedings against, and parole of, applicants for admission apprehended at the Southwest border. *See, e.g.*, ECF No. 16 ¶¶ 1, 13, 19-21. The Amended Complaint does not include any allegations or claims concerning delays regarding Defendants' "processing" of noncitizens once they are inside the United States, let alone delays pertaining to the facility referenced in Topic 14. *See generally id.* Further indicating this topic's lack of relevance, the timeframe referenced, April and May 2022, entirely postdates the filing of the operative complaint on February 1, 2022. ECF No. 16 at 35. The Court should preclude questioning on this topic on these bases alone. *See, e.g., Equal Emp. Opportunity Comm'n v. Doherty Grp., Inc.*, No. 14-CV-

81184, 2016 WL 6583786, at *2 (S.D. Fla. Sept. 14, 2016) ("Topic #14 seeks irrelevant information and shall not be permitted by the Court."); *McCreight v. AuburnBank*, No. 3:19-CV-865-MHT-SMD, 2020 WL 13005154, at *5 (M.D. Ala. Nov. 18, 2020) (granting protective order as to Topic 4 because "AuburnBank declines to provide a witness to testify as to Topic 4, arguing that the information sought is irrelevant to Plaintiffs' claims. The undersigned agrees").

Second, Defendants object to Topic of 14 because its inquiry into "steps taken by DHS to address the [alleged] delays"[3] seeks information protected from disclosure by the deliberative process privilege. "[T]he deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (citation omitted). The privilege "distinguishes between predecisional, deliberative documents [and communications], which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *Id.* at 785-86. Predecisional documents and communications include recommendations, draft documents, proposals, suggestions, which reflect the personal opinions of the writer or speaker rather than the policy of the agency. *Moye,*

---

[3] Defendants do not concede that there were any such alleged delays.

11

*O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004). A document or communication is "deliberative" if its disclosure would reveal an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thus, undermine its ability to carry out its functions. *Id*. at 1278.

To the extent the situation Plaintiff alleges exists, this Topic provides for inquiry into Defendants' internal, still-developing "plans" for addressing it. This predecisional, internal agency discourse is privileged and not a proper topic for a Rule 30(b)(6) deposition. Defendants should not be required to incur the burden of identifying and preparing a witness to testify to this topic, which is wholly irrelevant to this lawsuit and will likely lead to no substantive information, because Topic 14 is largely, if not completely, aimed at privileged internal agency information.

**Topic 15:**

In Topic 15, Plaintiff asks Defendants to designate a witness to testify to "[t]he information discussed between or shared with 'senior DHS officials' and 'reporters' on March 29, 2022. *See* https://www.yahoo.com/gma/us-bracing-influx-migrants-southern-003500370.html." Exhibit 1. The article referenced by Plaintiff was published on March 29, 2022 by ABC news. It begins with the sentence, "The Department of Homeland Security is bracing for as many as 18,000 migrants per day at the southern border if Title 42 is revoked, according to senior DHS officials who

briefed reporters on Tuesday." *See* https://www.yahoo.com/gma/us-bracing-influx-migrants-southern-003500370.html. It continues, "Officials said they have run through three scenarios and the highest level of migrants coming across the border per day was 18,000. They stressed it is only a prediction and they are prepared for anything." *Id*. And, finally, it references a 16-page strategic plan "outlining the steps DHS will take in 'response to irregular migration patterns.'" *Id*.

Plaintiff is not entitled to "the information discussed between or shared with 'senior DHS officials' and 'reporters' on March 29, 2022" because the request is patently not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This news report and the scenario it alleges postdate the Amended Complaint and lack relevance to the claims at issue in this case. This case is not about the termination of Title 42.[4] Rather, this case concerns the Defendants' alleged release policies with respect to applicants for admission who enter the country at the Southwest border. The potential effects of the termination of Title 42—a termination that has been

---

[4] In March 2020, the Trump Administration implemented Title 42 under the Public Health Service Act, which allowed for the immediate expulsion of migrants without complying with immigration procedures required by Title 8 of the U.S. Code. In April, 2022, the U.S. Centers for Disease Control and Prevention announced that it planned to end Title 42 on May 23, 2022 because the Title 42 scheme is no longer required in the interest of public health. Florida and 23 other states filed a federal lawsuit in the Western District of Louisiana, challenging the planned termination of Title 42. *Louisiana v. Centers for Disease Control & Prevention* ("*CDC*"), No. 6:22-CV-885 (W.D. La.). They successfully obtained a preliminary injunction and the Government has appealed.

enjoined and has not occurred—are speculative, and more importantly, are palpably irrelevant to this lawsuit. Moreover, because Plaintiff requests the testimony of "senior DHS officials," Plaintiff must show some special need for this testimony. *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (A party must demonstrate a special need to justify deposing a high government official; "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged."); *Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 408 (N.D. Ala. 2017) ("[T]here must be a showing of special need before a high-ranking executive official can be compelled by the judiciary to appear."). Here, such testimony is particularly unnecessary because information pertaining to the termination of Title 42 and its projected consequences is publicly available. The administrative record concerning the government's decision to terminate Title 42, was publicly filed in the *Louisiana* case. *See Louisiana v. Centers for Disease Control & Prevention* ("*CDC*"), No. 6:22-CV-885 (W.D. La.), ECF No. 39. And, the "strategic plan" referenced in the article about which Plaintiff asks, is also publicly available on multiple websites.[5] *See Thomas*, 2014 WL 12708970, at *1.

Additionally, to the extent that Plaintiff seeks, via Topic 15, to question Defendants about internal communications between senior DHS officials related to

---

[5] *See e.g.* https://borderoversight.org/2022/03/28/southwest-border-strategic-concept-of-operations-conop/.

the termination of Title 42, Defendants' preparations for such termination, or the strategic plan referenced in the article, those internal discussions are protected from disclosure under the deliberative process privilege. "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (cleaned up). Accordingly, the Court should issue a protective order with respect to Topic 15. *See e.g. Equal Emp. Opportunity Comm'n v. Army Sustainment, LLC*, No. 120-CV00234-RAH-SRW, 2021 WL 6884912, at *5 (M.D. Ala. Oct. 25, 2021) (quashing topic in deposition notice regarding steps taken in EEOC investigation as subject to deliberative process protection).

## CONCLUSION

Defendant Department of Homeland Security has designated four witnesses to testify to twelve topics identified by Plaintiff in its June 29, 2022 Notice of Taking of 30(b)(6) deposition. Notwithstanding, the four topics discussed herein—Topics 3, 9, 14, and 15—are objectionable because as set forth above, they are palpably irrelevant, subject to the deliberative process privilege, seek information within the

public domain, call for abject speculation, call for expert testimony, and seek information that Plaintiff already has or is in the best position to know.

Accordingly, Defendants respectfully request that this Court issue a protective order with respect to Topics 3, 9, 14 and 15. Defendants filed this motion promptly upon receiving Plaintiff's Notice of Taking 30(b)(6) Deposition on June 29, 2022, and request that to avoid postponing the depositions, this Court order Plaintiff to respond to this motion within seven days. Defendants seek this order in advance of the depositions to avoid the need to prepare witnesses, including high ranking agency officials, on these improper topics, as well as the need to possibly designate even more witnesses to cover these additional, improper, topics.

Dated: July 1, 2022              Respectfully submitted,

                                 BRIAN M. BOYNTON
                                 Principal Deputy Assistant Attorney General

                                 WILLIAM C. PEACHEY
                                 Director

                                 EREZ REUVENI
                                 Assistant Director

                                 */s/ Joseph A. Darrow*
                                 JOSEPH A. DARROW
                                 ERIN T. RYAN
                                 Trial Attorneys
                                 U.S. Department of Justice, Civil Division
                                 Office of Immigration Litigation,
                                 District Court Section
                                 P.O. Box 868, Ben Franklin Station

        Washington, D.C. 20044
        Tel: (202) 598-7537
        Email: joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

## LOCAL RULE 7.1(B) CERTIFICATE

I HEREBY CERTIFY that Defendants' counsel consulted with Plaintiff's counsel about the relief requested in this Motion and Plaintiff objects to the Motion and relief sought, but does not object to the 7-day timeframe for its response to this Motion.

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 3,787 words.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 1, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division
