UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

    Plaintiff,

v.                              Case No. 3:21-cv-1066

The UNITED STATES OF AMERICA,
*et al.*,

    Defendants.
_____/

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER WITH RESPECT TO TOPICS 3,9,14, AND 15 LISTED IN PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION</u>**

Plaintiff, State of Florida, hereby files this Response in Opposition to Defendants' Motion for Protective Order With Respect to Topics 3, 9, 14 and 15 Listed in Plaintiff's Notice of 30(b)(6) Deposition of DHS and states as follows:

**<u>BACKGROUND</u>**

Plaintiff filed this lawsuit bringing claims under the Administrative Procedure Act (APA) and the Constitution challenging the Defendants' Parole + ATD and non-detention policies. While Plaintiff's APA claim against the Parole + ATD policy will be decided on the administrative record, Plaintiff is entitled to discovery on its constitutional claims, claims regarding the non-detention policy, and the issue of standing. *See* Doc. 55 at 5 (discussing discovery on Plaintiff's APA claims against

1

the non-detention policy and on Plaintiff's constitutional claims); *Nw. Envir. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997) (explaining that the record rule does not apply to standing-related evidence); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case). As such, Plaintiff has sought to depose multiple state agencies through 30(b)(6) witness testimony and Plaintiff issued a 30(b)(6) Notice to DHS. As discussed in Defendants' Motion, the parties conferred multiple times on the topics listed in the notice to DHS and Plaintiff made efforts to revise some of the topics to address some of Defendants' concerns. Despite these efforts, Defendants filed a Motion for Protective Order. As discussed below, Defendants' motion should be denied on the basis that it is premature and lacks merit.

## LEGAL ARGUMENT

### I. Legal Standard

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th

1271, 1276 (11th Cir. 2021) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)).

The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). The Supreme Court has stressed the need to broadly and liberally apply the discovery rules to allow for robust discovery. *Akridge*, 1 F.4th at 1276. However, the discovery rules are not without limits. Pursuant to Rule 26(b)(2)(C), a court must limit the extent of discovery otherwise allowed by the rules if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)

Further, upon a showing of good cause, the court can "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26 (c)(1). A party who moves for a protective order has the burden of establishing good cause. *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). 'Good cause' has been defined as a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820

3

F.2d 352, 356 (11th Cir. 1987)). The party requesting a protective order must make a specific demonstration of facts in support of the request. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). A court must then balance the competing factors involved in determining whether good cause has been shown. *Farnsworth*, 758 F.2d at 1547.

**II.   Analysis**

**A. Defendants' Request for a Protective Order as to Topic Number 3 Should be Denied**

Defendants seek a protective order as to Topic Number 3 on the basis that the request is overly broad and speculative, would intrude on the deliberative process privilege, and requires expert testimony. Doc. 57 at 5-7. Topic 3 requests DHS to provide testimony regarding "[i]nformation and data regarding the causes of the current surge of migrants at the Southwest Border." Doc. 57-1.

Defendants allege that the topic is overbroad and speculative because it would "require" Defendants "to speak to the socio, political, economic and safety conditions in a multitude of foreign nations, as well as similar conditions in this country" and then engage in "speculative testimony" about how those conditions would "influence migrants to risk life and limb to come here." Doc. 57 at 5. Defendants' assertions are based on pure conjecture and speculation as to the scope and content of Plaintiff's intended examination of the Defendants 30(b)(6) witness.

4

Plaintiff is not seeking in-depth testimony as to international affairs.[1] And information as to DHS's knowledge as to the causes of the current surge of migrants at the Southwest Border is certainly relevant to the issues in this lawsuit. The government insists that resource constraints and detention capacity limitations justify their policies, *e.g.*, Doc. 23-1 at 5–6, 26–27, but Florida alleges that any "lack[] of resources" is a problem "of the government's own making," Doc. 16 ¶ 59. In other words, whether Secretary Mayorkas is correct that "the increase at the border is . . . a regional phenomenon," rather than a result of the Biden Administration's policies, is a central dispute in this case.[2]

The topic does not ask DHS to speculate. The topic specifically asks for "information and data" known to DHS. Defendants essentially argue that discovery on this topic should not be permitted because Plaintiff *might* ask questions that call for speculation. But this is not how the discovery process works. If Plaintiff asks a question at the deposition that Defendants deem is speculative, they can object at the time and bring the matter before the court at a later date. Indeed, finding that a protective order is proper on the basis that a party might ask a speculative question, would effectively eliminate depositions as a discovery tool.

---

[1] Indeed, Plaintiff notified Defendant that they did not envision an extensive amount of time to be spent on this topic.
[2] https://twitter.com/cspan/status/1519742035036680194?lang=en (video starting at 1:20).

The same argument applies to Defendants' claim that a protective order is necessary to protect against potential intrusion on privileged information. Defendants claim that questioning on this topic "threatens" intrusion on decision-making concerning foreign affairs and that it "might" involve privileges for presidential communications, state secrets, attorney-client communications, and deliberative process. Doc. 57 at 6. Again, Defendants attempt to prohibit Plaintiff from seeking discovery on the basis that something *might* occur.

Defendants' arguments are premature and are more appropriately addressed upon completion of the deposition if the need arises. As this court has previously explained:

> The proper operation of the rule does not require a process of objection and Court intervention prior to the deposition regarding disputed topic designations. *New World Network Ltd. v. M/V Norwegian Sea,* 2007 WL 1068124, *3 (S.D.Fla. April 6, 2007). Instead, the process should be extrajudicial by way of the corporate deponent objecting to the designation topics by notice to the requesting party- as Plaintiff did in this case. The requesting party then has the obligation to reconsider the topics, narrow the scope of the topics or remain firm in its position and "seek to compel additional answers if necessary, *following the deposition." Id.* Thus, Defendants in this case simply should have proceeded with the deposition and then after the deposition if there were disputes regarding any privilege objections raised during the deposition or objections regarding the scope, the Court could then have addressed the issues either through a motion to compel or through a motion for protective order with the benefit of the transcript containing questions and answers (or objections of privilege based upon specific questions).

> Thus, Plaintiff's request to limit the areas of examination before the deposition has taken place on the grounds of scope or relevancy and Defendants' request to compel examination on all of the topics listed in the notice of deposition are premature

*F.D.I.C. v. Brudnicki*, No. 5:12-CV-00398-RS-GRJ, 2013 WL 5814494, at *2 (N.D. Fla. Oct. 29, 2013).

Rule 30(c)(2), specifically provides that deposition "testimony is taken subject to any objection" and provides a mechanism for counsel to instruct a deponent not to answer when necessary to preserve a privilege. Fed. R. Civ. P. 30(c)(2). Therefore, the rules already sufficiently protect Defendants, making entry of a protective order unnecessary. More importantly, a protective order prohibiting discovery on this topic on the basis that something might happen does not comport with the principle of allowing broad discovery and it effectively prejudices Plaintiff. Allowing Defendants to assert a claim for privilege in response to any of the topics in Plaintiff's 30(b)(6) notice creates an "unworkable circumstance" in which Plaintiff "loses a primary means of discovery without meaningful review of [Defendants'] claim of privilege." *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011).

Multiple courts have rejected similar arguments seeking to limit deposition testimony on the possibility that questions seeing protected information might be asked. *See S.E.C. v. Merkin*, 283 F.R.D. 689, 695 (S.D. Fla. 2012) (collecting cases rejecting arguments that a deposition could not go forward on the basis that some

7

questions might be asked seeking protected information). This court should also reject Defendants' argument.

Furthermore, Defendants do not contend that the entire scope of the topic is subject to privilege. It is evident that DHS has information regarding the root causes of the surge given statements made by DHS Secretary Alejandro Mayorkas on May 13, 2021 before a US Senate Committee.[3] These facts are used to guide decision-making including the development of publicly available reports.[4] These reports demonstrate that migration information alone and facts alone do not pose a threat to foreign relations. And Raul Ortiz, Chief of US Border Patrol, who is set for deposition on July 28, 2022, is aware of such information and has been quoted in the press with the future projection of over one million noncitizens encounters at the

---

[3] Oral Testimony of Secretary of Homeland Security Alejandro N. Mayorkas before the U.S. Senate Committee on Homeland Security & Governmental Affairs on "DHS Actions to Address Unaccompanied Minors at the Southern Border, U.S. Dep't of Homeland Security (May 13, 2021), https://www.dhs.gov/news/2021/05/13/oral-testimony-secretary-homeland-security-alejandro-n-mayorkas-us-senate-committee.

[4] *See e.g.,* Southwest Border Strategic Concepts of Operations (CONOP), U.S. Dep't of Homeland Security (Mar. 28, 2022), https://int.nyt.com/data/documenttools/sbcc-strategic-concept-of-operations/3cd606f92d600718/full.pdf [hereinafter CONOP]; U.S. Strategy for Addressing the Root Causes of Migration in Central America, Nat'l Security Council (July 2021), https://www.whitehouse.gov/wp-content/uploads/2021/07/Root-Causes-Strategy.pdf.

southwest border in the first six months of the fiscal year beginning in October 2021.[5]

Defendants further claim that the topic asks for expert testimony because it asks for the "causes" for the surge. However, use of the word "causes" does not necessarily implicate expert testimony. The topic asks for "information and data" which implicates facts, not expert opinion. And Defendants' Motion notes, "facts" are permissible in a 30(B)(6) deposition. *See* Doc. 57 at 7.

DHS's understanding and knowledge of these causes are relevant to issues before this court. Based on the foregoing, a balancing of the competing interest weighs in favor of denying Defendants' request for a protective order for Topic Number 3.

### B. Defendants' Request for a Protective Order as to Topic Number 9 Should be Denied

Defendants seek a protective order as to Topic Number 9 on the basis that the request is irrelevant. *Id.* Topic Number 9 requests DHS to provide testimony as to the "[c]osts to States, financially and in terms of allocation of resources, as a result of unlawful immigration." Doc. 57-1.

---

[5] Adam Shaw, *Border Patrol Chief Says US on Track to hit 1M Migrant Encounters in 6 Months as Crisis Accelerates*, Fox News (Mar. 22, 2022), https://www.foxnews.com/politics/border-patrol-chief-us-1m-migrant-encounters-southern-border-crisis (March 29, 2022).

Defendants' contention that this argument is irrelevant is without merit. Plaintiff's Amended Complaint clearly alleges that the non-detention policy is arbitrary and capricious because "[i]t ignores costs to the States, a centrally relevant factor when deciding whether to regulate." Doc. 16 at ¶ 90 (citing *Michigan v. EPA*, 576 U.S. 743, 752-53 (2015)). Defendants' Answer denied this allegation. Doc. 53 at 11. Defendants should be able to probe the factual basis for their denial, including any information that it considered or has regarding the costs to the States. If Defendants did not consider costs, the deposition designee can say that.

Moreover, Defendants' objection that Florida is in the best position to have information regarding the costs of the policy on the State is baseless. First, the issue of costs incurred by States, as understood and considered by the Defendants, is a different set of facts, with different relevance, than the actual costs incurred by States. Defendants are obviously in the best position to supply the former set of facts. Moreover, only Defendants have information about where unlawful aliens are encountered in the US interior, when they arrived, and their intended destination. The federal government does not share that information with the State. State agencies in Florida have to seek confirmation of status through the US Citizenship and Immigration Services' SAVE portal when a noncitizen seeks benefits. And the information provided is limited. They are not provided information such as point of entry or date of entry.

Based on the foregoing, a balancing of the competing interest tips in favor of denying Defendants' request for a protective order for Topic Number 9.

### C. Defendants' Request for a Protective Order as to Topic Number 14 Should be Denied

Defendants seek a protective order as to Topic Number 14 on the basis that the request is irrelevant and intrudes on the deliberative process privilege. Doc. 57 at 7. Topic Number 14 requests DHS to provide testimony as to the "[f]acts and information regarding the processing delays in and around April 2022 and May 2022 at the ICE facility located at 9495 Delegates Drive, Orlando, Florida, including steps taken by DHS to address the delays." *Id.* at 10.

This topic is relevant because it directly relates to Florida's standing which Defendants challenge in this case. The processing delays at the Orlando ICE facility reportedly resulted in long lines, people camping out, and sleeping in their cars in the Florida heat.[6] Many of these individuals recently crossed the Southwest Border and were waiting to check into an ICE facility in Florida. This topic is directly relevant to the impact of Defendants' non-detention policy on the State. Florida should be allowed to seek discovery as to the processing delays including whether

---

[6] *Scores Wait in Florida Heat for Days Outside ICE Facility*, U.S. News (May 2, 2022), https://www.usnews.com/news/best-states/florida/articles/2022-05-02/scores-wait-in-florida-heat-for-days-outside-ice-facility

11

and to what extent applicants for admission encountered at the Southwest Border and released by the Defendants were attempting to check into this ICE facility.

The fact that the topic encompasses a timeframe that "postdates the filing of the operative complaint" does not mean that it is irrelevant. *Id.* The amended complaint alleges that "aliens illegally released by the Biden Administration *will come* to Florida and cause the State to incur . . . expenses." Doc. 16 ¶ 77 (emphasis added). In other words, it asserts *future harm*. Defendants themselves requested extensive discovery from the State regarding the costs incurred by the State and those requests sought information from prior to the filing of the initial Complaint to present day. Yet, somehow they now take the position that any information that postdates the filing of the Amended Complaint is irrelevant. This argument should be rejected.

Defendants allege that the topic seeks information protected by the deliberative process privilege because it provides for inquiry into Defendants' "still-developing" internal plans. Doc. 57 at 11. But the topic specifically asks for "steps-taken" by DHS. Therefore, it clearly asks for steps that DHS has already implemented which would not be pre-decisional. And as discussed above, Defendants' attempt to preempt any questioning on this topic on the basis that Plaintiff *might* ask a question that invokes the deliberative process privilege should be rejected. If such a scenario arises, Defendants can make their objection during

the deposition and seek court intervention at a later date. A balancing of the competing interest weighs in favor of denying Defendants' request for protective order for Topic Number 14.

### D. Defendants' Request for a Protective Order as to Topic Number 15 Should be Denied

Defendants seek a protective order as to Topic Number 15 on the basis that the request is irrelevant and because it requests the testimony of senior officials. Doc. 57 at 12-13. Topic Number 15 requests DHS to provide testimony as to the "[t]he information discussed between or shared with 'senior DHS officials' and 'reporters' on March 29, 2022. *See* https://www.yahoo.com/gma/us-bracing-influx-migrants-southern-003500370.html." Doc. 57-1.

Defendants allege that the potential effect of the termination of Title 42 is "speculative" and "palpably irrelevant" to this lawsuit. Doc. 57 at 14. However, the termination of Title 42 bears on future injury to Florida. The federal government has acknowledged that the termination of Title 42 will cause a significant increase in arrivals along the Southwest Border.[7] Plaintiff should be able to probe the federal government's decision to utilize Parole + ATD or use of the non-detention policy which would effectively release immigrants into the interior some of which will come to Florida. The fact that termination of Title 42 has been enjoined does not

---

[7] CONOP, *supra* note 4.

13

make the topic irrelevant, particularly since the federal government has appealed that decision.

Defendants further argue that the topic is improper because "information pertaining to the termination of Title 42 and its projected consequences is publicly available." *Id.* However, simply because some statements or information from DHS is publicly available does not mean that it is not subject to discovery.

Defendants misconstrue this topic as requesting "the testimony of 'senior DHS officials." *Id.* The topic only requests information about the conversations that these officials had with reporters. Rule 30(b)(6) does not require someone with personal knowledge to testify, it simply requires the organization to designate someone with knowledge to testify. A balancing of the competing interest weighs in favor of denying Defendants' request for protective order for Topic Number 15.

## CONCLUSION

In light of the foregoing, the state of Florida respectfully requests the court deny Defendants' motion for protective order and award attorney's fees and costs associated with the filing of this response.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

14

> James H. Percival (FBN 1016188)
> DEPUTY ATTORNEY GENERAL OF LEGAL POLICY
>
> Henry C. Whitaker (FBN 1031175)
> SOLICITOR GENERAL
>
> Daniel Bell (FBN 1008587)
> CHIEF DEPUTY SOLICITOR GENERAL
>
> Natalie P. Christmas (FBN 1019180)
> ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY
>
> Karen Brodeen (FBN 512771)
> SPECIAL COUNSEL
>
> Anita J. Patel (FBN 1029143)
> SENIOR ASSISTANT ATTORNEY GENERAL
>
> */s/ Anita Patel*
> Office of the Attorney General
> The Capitol, PL-01
> Tallahassee, Florida 32399-1050
> Telephone: (850) 414-3300
> Facsimile: (850) 410-2672
> Anita.Patel@myfloridalegal.com
>
> *Counsel for the State of Florida*

## CERTIFICATE OF SERVICE

I certify that on July 7th, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

> */s/ Anita Patel*
> Anita Patel