# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

STATE OF FLORIDA,

     *Plaintiff*,

v.                                        Case No. 3:21-cv-1066-TKW-ZCB

The UNITED STATES OF AMERICA;
*et al.*,

     *Defendants*.

_____/

## FLORIDA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff the State of Florida moves for an order compelling production of documents responsive to Plaintiff's Request for Production 2 (RFP 2) and certain other RFPs, served on Defendant the Department of Homeland Security (DHS) on March 16, 2022. RFP 2 requests documents probative to a central dispute in this case—the existence of the non-detention policy. DHS disclosed to Florida only days ago that its search methods in responding to RFP 2 on April 27 were grossly inadequate. Now, on the eve of depositions, DHS refuses to provide a date by which it can complete its production. Moreover, even its revised search methods are unlikely to identify responsive documents.

RFP 2 aside, DHS informed Florida on May 19, 2022, that it had identified approximately 1,000 pages of documents responsive to other RFPs served on the

same date, though DHS did not disclose to Florida which RFPs the documents were responsive to. Because the documents require redaction, Florida requested that they be produced by June 10. DHS refused to agree to the June 10 date and still had not produced those documents as of the morning of July 8.

For these reasons, and those that follow, Florida requests an order compelling production of documents responsive to RFP 2 by July 25, 2022, an order compelling production of the approximately 1,000 pages of responsive documents identified by DHS within three (3) days of the Court's order, an order expediting the deadline to respond to this motion to seven (7) days, and an award of attorneys' fees for the time spent litigating this motion.[1]

## BACKGROUND

RFP 2 seeks documents probative to the existence of the non-detention policy, a policy that Florida alleges is causing hundreds of thousands of applicants for admission to be unlawfully released at the Southwest Border. *See* Doc. 45 at 9 (describing Florida's allegations); *see also* Doc. 55 at 5 n.2 (describing the "reality that hundreds of thousands of aliens have not been detained pending immigration proceedings"). Defendants assert that the non-detention policy is "imaginary." *See*

---

[1] DHS consents to filing a response within seven days.

Doc. 55 at 5 n.2. As the Court has recognized, the existence of that policy is a central question going to the "merits of this case." *Id.*

The full text of RFP 2 is as follows: "Any and all documents disclosing or discussing a policy by the Department of releasing inadmissible aliens entering the United States from the Southern Border."

Defendants provided a written response to RFP 2 on April 27, 2022. The full text of Defendants' written response is as follows:

> Defendants object to Request No. 2 on that grounds that it is vague, confusing, overbroad, unduly burdensome, and not sufficiently limited in time or scope. This request seeks documents that reveal the agency's internal deliberations and discussions, which are protected from discovery by the deliberative process privilege. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

> To the extent this request seeks material pertaining to the Parole+ATD policy, Defendants also object on the grounds that discovery regarding the Parole+ATD policy is not appropriate, because the case is limited to the administrative record with respect to that policy. *See Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The agency's basis for this policy is contained in the certified administrative record, rendering any additional discovery duplicative, unnecessary and unduly burdensome.

> Subject to, and without waiving or in any way limiting these objections, and limiting this request to documents created on or after January 20, 2021 or currently in operation, Defendants refer Plaintiff to the certified administrative record and Initial Disclosure Documents and will produce the CBP Parole Documents, USA00091-000110. Defendants have not identified in their custody or control and are not producing any further responsive documents at this time, although discovery is ongoing and Defendants reserve the right to supplement this production.

In short, Defendants produced only a handful of documents. And each of the documents pre-dated January 20, 2021 and reflected DHS's general parole practices.

The parties conferred by email on May 14 and May 17 and then by phone on May 19. The parties ultimately agreed to defer further discussion of RFP 2 until Defendants responded to additional discovery Florida served on April 27, 2022, which also implicated the non-detention policy.

On June 14, after receiving DHS's responses to Florida's additional discovery requests, the parties reinitiated conversations regarding RFP 2. As part of those discussions, Florida agreed to limit and clarify RFP 2 as follows:

> Any and all documents disclosing or discussing a <u>new</u> policy by the Department, <u>issued on or after January 20, 2021</u>, of releasing inadmissible aliens entering the United States from the Southern Border. <u>This would include, for example, changes to DHS policy resulting in reducing or eliminating detention of family units and/or a policy of increasing use of alternatives to detention.</u>

Florida also asked DHS to provide information as to the steps it took to identify responsive documents, including the search terms utilized and the custodians searched. On June 16, the parties again conferred by phone. During that conferral, DHS for the first time disclosed that it had run additional searches for RFP 2 and were in the process of reviewing approximately 3,000 additional documents. After further conferral, DHS disclosed to Florida by email on June 29 that it had run *no electronic searches* for its initial production but had only asked certain custodians

to run a *manual search*.  On July 1, DHS further disclosed that the manual searches were conducted by certain employees in certain divisions or departments of DHS.[2]

The parties are now on the eve of depositions (beginning July 13) and Florida learned only days ago that DHS's initial search methods for RFP 2 were plainly inadequate. Even for their new search, DHS has apparently run only the following search terms:

- (nondetention OR non-detention OR non detention) AND (policy OR policies OR practice) w/5 (southwest border OR SW border OR SWB OR southern border)
- (releas*) AND (all OR every) w/5 (southwest border OR SW border OR SWB OR southern border)
- (releas*) AND (policy OR policies OR practice) w/5 (southwest border OR SW border OR SWB OR southern border).

Each of these search terms either (a) requires the document to use some version of the words "policy" or "practice," or (b) requires that the document state that DHS will release "all" or "every" applicant for admission at the Southwest Border. But documents reflecting a policy or practice frequently do not use the words "policy" or "practice," and Florida has never alleged that Defendants are releasing *every* applicant for admission at the Southwest Border. In other words, documents

---

[2] Defendants specifically represented that for ICE the request was handled by the ERO Chief of Staff who delegated the task to various programs within ERO. For Border Patrol, the Acting Deputy Chief for the Law Enforcement Operations Directorate was asked to handle the request which was then delegated to his staff. For the Office of Field Operations, the Deputy Executive Director of Admissibility and Passengers Program was asked to handle the request and he delegated the task to his staff.

generally reflecting Defendants' strong preference for unlawful releases will not be within these search terms.

On June 22, Florida proposed additional search terms. On June 29, DHS responded that those search terms were too burdensome. On July 1, Florida proposed the following narrower search terms:

· (stop* OR end* OR ceas* OR no longer OR eliminat*) w/5 (detaining migrants OR detention of migrants OR detaining applicants OR detention of applicants OR detaining arriving OR detention of arriving OR detaining border OR detention of border OR detaining family units OR detention of family units OR detaining FMUs or detention of FMUs).[3]

On July 5, DHS informed Florida that it was "amenable" to running the searches but "that they calculate that production of any responsive [documents] is not likely to be possible until the latter part of August . . . due to the time it would take their E-Discovery team to do the pull, for the Relativity lab to do the production, and for review and redaction by the same team that currently has to handle a number of such tasks, including FOIA production." On July 6, Florida requested DHS to provide responsive documents by July 25, so that the documents would be available to Florida for at least one deposition (Florida's last deposition is scheduled for July 28). On July 7, DHS responded by stating it "cannot get it done" by that date. To date,

---

[3] Florida asks DHS to use "family units" as a search term because many, if not most, of the applicants for admission being unlawfully released are traveling as a family unit. *See* https://www.nbcnews.com/politics/immigration/mayorkas-gives-strongest-clue-yet-biden-administration-hopes-stop-detaining-n1259639 (quoting Defendant Mayorkas, who stated that detention is "not where a family belongs."); *see also* Doc 23-1 at 20 (in which Defendants acknowledge that Florida's amended complaint implicates its detention practices for family units).

DHS has not informed Florida of the number of documents that it would need to review and redact pursuant to the proposed additional search terms.

RFP 2 aside, DHS has told Florida that it has in its possession approximately 1,000 pages of documents responsive to other RFPs served on the same date. On May 11, during a meet and confer, DHS informed Florida that it had identified additional documents responsive to RFPs served on March 16, which included information about a proprietary database. As such, DHS wanted to release those documents subject to a protective order. Florida requested DHS to provide a redacted sample document and on May 19, just prior to an additional meet and confer, DHS disclosed a "sample" redacted power point presentation.

At the meet and confer, DHS informed Florida that it had about 1,000 pages of similar documents.  Based on the sample, Florida represented that it did not need non-redacted copies of the documents and therefore did not see the need for a protective order. On May 26, Florida asked DHS to produce redacted versions of any responsive documents by June 10.  DHS failed to provide any documents. On July 1, Florida requested DHS to provide the documents by July 5. On July 5, instead of providing responsive documents, DHS notified Florida that they "hoped to have them to you by now but have had some unfortunate staffing issues and turnover in the Relativity lab handling this case's production." They further stated that they "are

aiming to produce them to you by the end of next week." To date, DHS has failed to produce any of the 1,000 pages of documents that they identified.

## ARGUMENT

DHS failed to adequately respond to RFP 2. Upon receipt of the discovery request in March, DHS failed to adequately search for responsive documents.[4] This is evident by their admission that it only conducted manual searches for responsive documents. DHS's failure to conduct any electronic searches using appropriate and targeted search terms is antithetical to its requirement to make a good faith effort to respond to discovery. Particularly, in light of the fact that DHS is a large government entity which likely has hundreds if not thousands of employees whose primary mode of communications is by e-mail.

Furthermore, Defendants were on notice that Florida was seeking electronically stored information as Florida's Request for Production provided the following definition:

> "Document" has the broadest scope permitted by the Federal Rules of Civil Procedure. It includes any record of information, including writings, data, correspondence, photographs, video and audio recordings, and images. It specifically includes all communications and electronically stored information, including text messages and emails.

---

[4] It should be noted that Florida agreed to a 12-day extension of time for Defendants to respond to Florida's discovery request.

When asked about the search terms DHS utilized, DHS attempted to defray the inquiry by conducting a search using search terms that are wholly inadequate and unlikely to produce responsive documents. When Florida suggested its own search terms, DHS claimed that there was a "logistical burden" with running the searches as framed by Florida, specifically because the structure of the Boolean search would have required DHS to conduct hundreds of separate searches.

Taking DHS's claims at face value, Florida sent DHS revised search terms, as described above. And while DHS agreed to run the new search terms, it asserted that it could not provide responsive documents until the later part of August "due to the time it would take their E-Discovery team to do the pull, for the Relativity lab to do the production, and for review and redaction by the same team that currently has to handle a number of such tasks, including FOIA production." This is patently unreasonable because 1) DHS failed to run a proper search for documents back in March and 2) discovery closes August 10 with depositions of DHS's witnesses occurring in July. Furthermore, Defendants provide no information on whether they have conducted the searches or how many hits the searches returned.

DHS is apparently engaging in delay tactics and making a concerted effort to avoid providing discovery as to the non-detention policy. Indeed, on June 16, DHS informed Florida that its narrower search terms came back with 3,000 documents. It has been over 31 days, and DHS still have not produced any of those 3,000

documents or notified Florida if any of the documents are responsive. Instead, DHS has told Florida that they cannot provide any documents until the end of *next* week. Reviewing 3,000 documents for responsiveness or privilege should not take several weeks—particularly where counsel recognizes that the client's initial searches were inadequate and the parties are on the eve of depositions.

DHS's failure to produce the 1,000 pages that they identified as responsive is also indicative of their delay tactics. On May 19, Florida requested DHS to provide redacted versions of the documents. To date no documents have been produced.

DHS will undoubtedly claim that Florida's decision not to enter into a protective order has contributed to discovery delays. But Defendants were free to move for a protective order without Florida's consent. And whether or not Florida entered into a protective order is beside the point because DHS never properly conducted a search in the first instance. As discussed above, it is evident that DHS is not diligently reviewing potentially responsive documents.

Based on the foregoing, there is good cause for the Court to enter an order compelling DHS to provide documents responsive to RFP 2 by July 25 (including those responsive to Florida's proposed search terms), an order compelling production of the approximately 1,000 pages of responsive documents within 3 days of the Court's order, and an order expediting the deadline to respond to this motion to seven days (which DHS consents to).

## CONCLUSION

For these reasons, the Court should enter an order compelling production of responsive documents to RFP 2 by July 25, an order compelling production of the approximately 1,000 pages of responsive documents within three (3) days of this Court's order, an order expediting the deadline to respond to this motion to seven (7) days, and an award of attorney's fees for the time spent litigating this motion.

## CERTIFICATE OF ATTORNEY CONFERENCE

Pursuant to N.D. Fla. Local Rule 7.1(B) Florida's counsel conferred with counsel for the Defendants on July 6 and July 7.  And, as discussed above, the parties were unable to resolve the disputes addressed herein. On July 8, Defendants consented to filing a response to the Motion within seven (7) days of this filing.

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 2,606 words.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ Anita Patel*
James H. Percival (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Daniel Bell (FBN 1008587)
CHIEF DEPUTY SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Karen Brodeen (FBN 512771)
SPECIAL COUNSEL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

12

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ Anita Patel
Senior Assistant Attorney General