**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STATE OF FLORIDA,

    Plaintiff,

v.                                                                                      Case No.  3:21-cv-1066

The UNITED STATES OF AMERICA;
ALEJANDRO MAYORKAS, Secretary
of the United States Department of
Homeland Security, in his official
capacity; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; TROY MILLER, Acting
Commissioner of U.S. Customs and
Border Protection, in his official capacity;
U.S. CUSTOMS AND BORDER
PROTECTION; TAE JOHNSON,
Acting Director of U.S. Immigration and
Customs Enforcement, in his official
capacity; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; UR M.
JADDOU, Director of U.S. Citizenship
and Immigration Services, in her official
capacity; U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

    Defendants.
_____/

# DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Florida's motion to compel is partially premature, partially moot, fully meritless, and should be denied.

While far from clear, it appears that Plaintiff seeks to compel two discrete sets of documents: (1) documents responsive to Request for Production (RFP 2),[1] which includes the 3,000 pages[2] (pre-review) of documents referenced in Plaintiff's motion and the new search terms the parties agreed to; and (2) approximately 1,000 pages (pre-review) of documents responsive to RFP 17, also referred to by the parties as the "Operation Horizon" documents.

As to the documents responsive to RFP 2, some of these documents have already been produced to Plaintiff; the majority of the documents are forthcoming and thus should not have been the subject of a motion to compel; and only a small number of documents are still in review. But notably, Defendants have not refused to produce any of the documents sought in Plaintiff's motion to compel. As to the Operation Horizon documents, Plaintiff's motion should be denied as moot, as the documents were produced on or about July 12, 2022.

In short, Plaintiff has both jumped the gun and raised issues now resolved, so its motion should be denied in its entirety.

---

[1] The full text of RFP 2, and Defendants' response, is included in Plaintiff's motion. *See* Pl. Motion at 3.
[2] These numbers reflect an estimated amount of pages that have been gathered prior to the review by Defendants. These numbers will likely change during the review process, as documents may be withheld for privilege and/or relevance.

## Background

Plaintiff served its First Set of Requests for Production on March 16, 2022, and Defendants served their response on April 27, 2022.[3] *See* Pl. Motion at 1. Also on April 27, 2022, Plaintiff served a Second Set of Requests for Production. *Id.* at 4. In their responses, Defendants objected to RFP 2 on several grounds, indicating that it was difficult to interpret and respond to the request as drafted. On May 14, Plaintiff raised, for the first time, perceived deficiencies in Defendants' responses. *See* Email from James Percival, dated May 14, 2022, attached hereto as "Exhibit A." Defendants responded on May 17, 2022, and specifically said, as to the search for documents related to the non-detention policy:

> As we have mentioned, no non-detention policy exists, making related searches for documents very difficult. To the extent you think our responses to the first and/or second requests are deficient, we are willing to discuss those deficiencies with you. If it seems further discovery is warranted, we are willing to discuss mutually agreeable search terms and custodians. Therefore, we agree we should hold off until we have served our second responses and then we should discuss further.

*See* Email from Joseph Darrow, dated May 17, 2022, attached hereto as "Exhibit B." Defendants served their response to the Second Set of Requests for Production on May 31, 2022. Two weeks later, on June 14, for the first time, Plaintiff agreed to

---

[3] The parties agreed to a brief extension for Defendants to serve their responses. There is no allegation that Defendants' response to Plaintiff's discovery requests were delinquent. *See generally*, Pl. Motion.

2

clarify and limit RFP 2 in response to Defendants' objections and concerns about the scope of the request. *See* Pl. Motion at 4; *see also* Email from Anita Patel, dated June 14, 2022, attached hereto as "Exhibit C." It was not until June 22, 2022, that Plaintiff proposed any search terms for Defendants to use. *See* Email from James Percival, dated June 22, 2022, attached hereto as "Exhibit D."

The search requested by Plaintiff on June 22, 2022, however, was extremely overbroad, including terms that were not relevant to Plaintiff's claims. *Id.* It would also be quite burdensome given the limited amount of time left in discovery and, indeed, impracticable to accomplish within that remaining timeframe. Defendants explained their position on the proposed search, in detail, by email on June 29, and offered to discuss the search terms further. *See* Email from Joseph Darrow, dated June 29, 2022, attached hereto as "Exhibit E." On July 1, Plaintiff agreed with Defendants' burden concerns, and proposed a narrower search, to which Defendants agreed. *See* Email from James Percival, dated July 1, 2022, attached hereto as "Exhibit F"; Email from Joseph Darrow, dated July 5, 2022, attached hereto as "Exhibit G."

It was not until July 5, 2022, that the parties had mutually agreeable search terms and parameters. *Id.* Plaintiff filed this motion only three days later. At no time did Defendants refuse to provide the documents that Plaintiff asks this Court to compel.

3

## ARGUMENT

Although not entirely clear, in its motion to compel Plaintiff appears to ask the Court to compel two discrete sets of documents: (1) documents responsive to RFP 2, which includes the 3,000 pages (pre-review) of documents referenced in Plaintiff's motion and the new search terms the parties agreed to; and (2) approximately 1,000 pages (pre-review) of documents responsive to RFP 17, also referred to by the parties as the "Operation Horizon" documents. The Operation Horizon documents have already been produced to Plaintiff and should not have been the subject of a motion to compel. For the documents responsive to RFP 2, the documents can be split into four groups:

   a. CBP documents gathered in response to Defendants' ESI search;
   b. ICE documents gathered in response to Defendants' ESI search;
   c. CBP documents gathered in response to the parties' agreed upon July 5 search terms; and
   d. ICE documents gathered in response to the parties' agreed upon July 5 search terms.

As detailed below, some of these documents have already been produced to Plaintiff; the majority of the documents are forthcoming and thus should not have been the subject of a motion to compel; and only one group of documents are still being gathered and reviewed. But notably, Defendants have not refused to produce any of the documents sought in Plaintiff's motion to compel. Defendants have been candid with Plaintiff that resource constraints due to the fast pace of this litigation is the cause of delay for some of the documents, but that all the documents would be

4

produced as fast as possible. Rather than work with Defendants to come to a mutually agreeable solution, Plaintiff decided to monopolize the Court's and parties' resources by filing this baseless, partially premature, and partially moot, motion to compel. Plaintiff's motion should be denied in its entirety.

### A. The Majority of Plaintiff's Motion is Moot and Should be Denied.

Most of Plaintiff's motion to compel is moot and should be denied. First, the 1,000 pages (pre-review) of documents Plaintiff sought to compel, referred to by the parties as the "Operation Horizon" documents, were produced to Plaintiff on July 12, 2022. *See* Email from Joseph Darrow, dated July 12, 2022, attached hereto as "Exhibit H." Thus, there is nothing to compel.

Second, as to the documents responsive to RFP 2, the majority of the documents gathered by CBP in response to Defendants' ESI search,[4] were produced to Plaintiff on July 13, 2022. *See* Email from Joseph Darrow, dated July 13, 2022, attached hereto as "Exhibit I."[5] So once again, there is nothing to compel.

The ICE documents gathered in response to Defendants' ESI search and in response to the parties' July 5 search terms[6] have been collected and are in the

---

[4] Group (a), *supra*.
[5] To be clear, the production of these documents on July 12 and July 13 were not made solely in response to Plaintiff's July 8 motion to compel. Defendants were always on track to produce documents during the week of July 11 after their review was complete and had informed Plaintiff of this numerous times. Yet Plaintiff filed their motion to compel regardless, despite knowing that the production of numerous documents mentioned in their motion was imminent.
[6] Groups (b) and (d), *supra*.

5

process of being reviewed by the agency. Defendants anticipate – and have informed Plaintiff of same many times – that these documents will be produced to Plaintiff approximately within the next week.

Plaintiff's argument that Defendants are "delaying" discovery in this case is baseless. To date, Defendants have reviewed, redacted, and produced thousands of pages and over 1,900 megabytes of documents to Plaintiff since April, while also taking, defending, and preparing for, thirteen depositions the parties have scheduled in the month of July. Defendants are also reviewing and preparing for production an additional set of documents in the upcoming week.

Accordingly, Plaintiff's motion seeking to compel the 1,000 pages of Operation Horizon documents and the CBP documents gathered in response to RFP 2 by Defendants' ESI search should be denied as moot, as those documents have already been produced. And Plaintiff's motion seeking to compel documents from ICE, gathered both in response to Defendants' ESI search and in response to the parties' July 5 search terms, should be denied, as production of these documents is forthcoming.

**B. Plaintiff's Motion to Compel Documents Responsive to RFP 2 Should be Denied.**

Because Plaintiff's other request in their motion is moot, the only outstanding set of documents—and the only category of documents that was potentially ripe for a motion to compel—is ICE documents responsive to RFP 2 gathered in response to

6

the parties' July 5 search terms, listed as group (c), *supra*.[7] And again, Defendants have agreed to produce these documents, so the only dispute ripe for the Court is the timeline on which the documents will be produced.

Defendants objected to Plaintiff's original RFP 2, in part, on the grounds that it was vague, confusing, unduly burdensome, overbroad, and not sufficiently limited in time or scope, as it sought "any and all documents" without limitation "discussing" a policy of "releasing inadmissible aliens entering the United States from the Southern Border." *See* Pl. Motion at 3. Not only is this request widely overbroad with no limitation as to time or scope, but it also purports to seek all documents that mention a policy that does not exist.[8]

Despite this, Defendants attempted a manual search for potentially responsive documents, and produced same, while waiting for Plaintiff to confer on the scope of its request. Defendants informed Plaintiff in their April 27, 2022, responses, and again by email on May 17, that creating a search for a policy that does not exist was difficult and requested that the parties confer to create mutually agreeable search terms. Plaintiff did not initiate this discussion until June 14, 2022. During that time, anticipating the rapidly approaching discovery deadline and fearing Plaintiff may

---

[7] As discussed above, group (a) has already been produced; production is imminent for groups (b) and (d).
[8] DHS Rule 30(b)(6) deponent Tony Barker so testified in his July 13, 2022 deposition. The transcript for that deposition is being expedited but is not available yet.

7

not re-engage on search terms until the eleventh hour, Defendants attempted a second, broader ESI search with their own search terms. It was this ESI search that resulted in the additional approximately 3,000 pages (pre-review) of documents.

This search is, technically, now moot as Plaintiff clarified and narrowed their RFP 2, effectively withdrawing their original request in response to Defendants' objections.[9] *See* Pl. Motion at 4. It was this updated RFP 2 that was the focus of the parties' discussions about potential search terms and custodians. Therefore, any documents gathered as part of Defendants' initial ESI search (groups (a) and (b), *supra*), conducted without Plaintiff's input or assistance, do not technically need to be produced; Plaintiff has withdrawn that original request by drafting a new "RFP 2." However, Defendants are still producing those documents to Plaintiff in an attempt to be overinclusive and accommodating of the short discovery period the parties are engaged in. Plaintiff then asked that Defendants run an additional ESI search in response to its updated RFP 2. As discussed above, this RFP was not suggested until June 14, 2022, and Plaintiff did not provide suggested search terms until June 22, 2022.

---

[9] This is also why Plaintiff's claims that Defendants "never properly conducted a search in the first place" are of no moment. The original, manual search Defendants undertook was in response to an incredibly overbroad request that was not properly limited in scope, and thus was unduly burdensome, but which has now been withdrawn by Plaintiff. Therefore, the sufficiency of the searches Defendants conducted in response to this now defunct request are not relevant to the current dispute and should be disregarded by the Court.

Such delay can only be laid at Plaintiff's feet, and Defendants should not be punished for Plaintiff's failure to engage on this topic until June. In their May 17, 2022, email, Defendants specifically requested that the parties confer on potential search terms and parameters, and yet Plaintiff did not contribute to the discussion until June 14. *See* Ex B, Ex C. Plaintiff cannot, therefore, now turn around and demand that the Court order Defendants to meet an unreasonable deadline to make up for Plaintiff's idleness. Despite this, the parties worked together in good faith to amend these search terms until they were agreeable to both sides. This conferral was not completed until July 5, a date that Plaintiff conveniently left out of its motion to compel, which Plaintiff filed only three days later.

Defendants were not given a chance to comply with the parties' agreement, and Plaintiff now runs to the Court in an inappropriate attempt to paint Defendants as dilatory and obstructionist. During the parties' discussions, Defendants were very clear that while they were amenable to running the search, given all the other productions and resource constraints in this case, Defendants could not produce any responsive documents – with redactions – until August.

To demand production of responsive documents by July 25 is unduly burdensome. Due to the technology used at CBP, there is no ability to easily conduct an agency-wide search of employee emails. *See* Affidavit of Elaine Dismuke, eDiscovery Team Lead, U.S. Customs and Border Patrol, attached hereto as "Exhibit

J" at 2. The emails are maintained on a server by a third-party contractor, which is searchable by time period, custodian, and keyword, but not by mailbox. *Id.* at 2-3. Therefore, for CBP to search for emails from a particular custodian for a particular keyword within a certain year, the serves must search through *all* CBP emails for that *entire* year. *Id.* at 3. The archiving system was also changed in May 2021, requiring CBP to run searches in both the old and new systems for this case, which increases the amount of time each search takes. *Id.*

Based on the search terms and custodians the parties agreed on, CBP will be required to run a total of 36 searches to gather all possibly responsive documents. *Id.* at 5. This is in addition to the approximately 160 open cases CBP's eDiscovery Team is working. *Id.* Each analyst can run only one search at a time, as the system can only run one collection at a time. *Id.* It is only after all these steps are taken, and all the potentially responsive documents are gathered, that the attorneys can begin their review for relevance and privilege.

And despite Plaintiff's claims in its motion, Plaintiff's refusal to enter into a protective order in this case, *does* delay the production of documents. A fact which Defendants expressed to Plaintiff numerous times during discovery. Because there is no protective order in this case, Defendants cannot skip a single page in their review, for fear that sensitive, confidential, privileged, or non-responsive information may be included. Defendants attempted to negotiate a protective order

10

with Plaintiff for several weeks, noting that if a protective order were in place, Defendants could do less redactions—since the documents would remain confidential and there was no fear of public dissemination, intentionally or unintentionally—and therefore Defendants could produce documents to Plaintiff much faster. Plaintiff, however, refused to agree to a protective order. Thus, once the agency finishes gathering all possibly responsive documents, the attorneys must then do a very detailed review, which often requires a high number of redactions.

So, Plaintiff's baseless assertion that "reviewing 3,000 documents for responsiveness or privilege should not take several weeks" is plainly wrong and shows a flawed understanding of the intense process Defendants undergo to produce documents in this matter. *See* Pl. Motion at 10. Defendants have produced an enormous number of documents already, on top of the other discovery demands such as depositions, and are in the process of running the additional search terms Plaintiff has requested. The agency anticipates the search will be completed by July 29—less than three weeks since the parties agreed on the search terms—and the attorneys will work to review those documents as quickly as possible. However, a deadline of July 25, 2022 is not feasible and the Court should not entertain it.

Considering all the above, Defendants respectfully submit that there is nothing that needs to be compelled by the Court, as Defendants have agreed to produce the

responsive documents, and Plaintiff's motion requested that these documents be produced by July 25 should be denied.

### C. Plaintiff is Not Entitled to Attorney's Fees.

In its motion, Plaintiff also requests – without legal support – "an award of attorney's fees for the time spent litigating this motion." *See* Pl. Motion at 2. This passing request is made at the beginning and end of Plaintiff's motion, but at no point does Plaintiff explain why it believes it's entitled to such an award. *See generally,* Pl. Motion. Plaintiff is not entitled to attorney's fees and this request should be denied.

First, as demonstrated above, all of Plaintiff's motion to compel is meritless, and much of it is moot and premature. Most of the documents Plaintiff seeks to compel have already been produced or will be produced within a short period of time. Notably, Plaintiff was aware of these upcoming productions when it filed this motion to compel. Plaintiff should not be awarded attorney's fees for filing a motion that did not actually require Court intervention.

Second, Plaintiff does not meet the definition of a "party" entitled to obtain attorney's fees against the United States under the Equal Access to Justice Act (E.A.J.A.), and thus an award of attorney's fees is not permitted in this case.

"EAJA is a fee-shifting statute that allows a party who prevails in a civil action brought by or against the government to recover attorney's fees and costs." *Davis v.*

*Nicholson*, 475 F.3d 1360, 1363 (Fed. Cir.); *see also Robinson v. O'Rourke*, 891 F.3d 976, 980 (Fed. Cir. 2018) ("The EAJA is a fee-shifting statute that allows a party who prevails in a civil action brought by or against the government to recover attorney fees and costs."). Under EAJA, eligibility for an award of attorneys' fees and expenses in a civil action requires: (1) that an eligible claimant be a prevailing party; (2) that the government's position viewed over the entire course of the dispute was not substantially justified; (3) that no special circumstances make an award unjust; and (4) that any fee application be timely submitted and supported by an itemized statement. *See* 28 U.S.C. § 2412(d)(1)(A)-(B); *see also Scarborough v. Principi*, 541 U.S. 401, 407-08 (2004).

Under E.A.J.A., a "party" is defined as "(i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed…" 28 U.S.C.S. § 2412(d)(2)(B)[10].

---

[10] This provision exempts from such limitations "an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 [1986] (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a))," which "may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of title 5." 28 U.S.C.S. § 2412(d)(2)(B). The State of Florida does not fall into any of these exemptions.

13

The State of Florida falls into neither of these categories: it is not an individual, a business, an organization, or a "unit of local government" and thus cannot obtain attorney's fees against the United States. Even assuming, *arguendo*, that the State of Florida were to allege it were a "unit of local government," it would still have to show it was eligible under E.A.J.A. *See St. Bernard Par. Gov't v. United States*, 142 Fed. Cl. 504, 557 (2019) ("In order for a unit of local government to be included in the EAJA's definition of an eligible 'party,' the unit of local government must have had a net worth of less than $7,000,000.00 and must have had less than 500 employees at the time the civil action was filed.") (internal citations omitted). "The plaintiff bears the burden of demonstrating that it satisfies the net worth requirements set forth in the EAJA." *Id*.

Here, not only did Plaintiff fail to provide any legal basis showing it is entitled to attorney's fees under E.A.J.A., but it could also not meet these requirements if it tried. Indeed, the State of Florida has well over 500 employees – the state's website shows over 98,000 individuals currently draw a salary from the State. *See* https://salaries.myflorida.com/, last accessed July 13, 2022. Plaintiff is not entitled to attorney's fees and the Court should deny it's request for same.

Even if, *arguendo*, Plaintiff were somehow entitled to fees—which again, it is not—an award of fees is not warranted in this situation. While Federal Rule of Civil Procedure 37 allows for an award of attorney's fees to a prevailing party on a

14

motion to compel, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

Here, Plaintiff waited only three days from the time the parties agreed on search terms before filing this motion; it cannot be said this was a "good faith" attempt to "obtain the discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i). Additionally, Defendants never objected to producing the requested documents, but merely asked for a reasonable amount of time to provide the production. Thus, any alleged "nondisclosure" by the Defendants was substantially justified, *see* Fed. R. Civ. P. 37(a)(5)(A)(ii), but the filing of this motion was not. "A motion is substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Roof Doctors, LLC v. Metro. Cas. Ins. Co.*, No. 5:19-cv-264-TKW/MJF, 2019 U.S. Dist. LEXIS 233998, at *9 n.3 (N.D. Fla. Dec. 9, 2019), *citing Pierce v. Underwood*, 487 U.S. 552, 565-66 n.2 (1988).

All these factors weigh against any award of attorney's fees for Plaintiff, and the Court should deny this request.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion to compel in its entirety and deny Plaintiff's request for attorney's fees in filing this unnecessary motion.

Date: July 15, 2022

Respectfully submitted,

JASON R. COODY
*United States Attorney*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Erin T. Ryan*
ERIN T. RYAN
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section
*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this opposition contains 3,897 words.

> By: */s/ Erin T. Ryan*
> ERIN T. RYAN
> Trial Attorney
> United States Department of Justice
> Civil Division

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

> By: */s/ Erin T. Ryan*
> ERIN T. RYAN
> Trial Attorney
> United States Department of Justice
> Civil Division