# EXHIBIT D

| | |
|---|---|
| **From:** | James Percival |
| **To:** | Darrow, Joseph A. (CIV); Anita Patel; Reuveni, Erez R. (CIV); Moyle, Marie (USAFLN); Wilson, Sarah S. (CIV); Ryan, Erin T. (CIV) |
| **Cc:** | Karen Brodeen; Natalie Christmas; Elizabeth Teegen; Bilal Faruqui |
| **Subject:** | [EXTERNAL] RE: Florida v. U.S. - Defendants" responses to Plaintiffs" first RFPs |
| **Date:** | Wednesday, June 22, 2022 5:04:09 PM |
| **Attachments:** | image001.png<br>image002.png |

Hey Joe,

The term "non-detention policy" is a label we created. We do not allege that Defendants call it by that name. We also referred to the SW border because that is where all (or virtually all) of the relevant immigration issues are occurring. We don't think a policy will necessarily contain the words "SW border."

As such, we think that only searching for documents using those words is unlikely to capture all responsive documents. Below are what we believe are more appropriate search terms.

- (nondetention OR non-detention OR non detention OR don't detain OR do not detain OR stop detaining OR no longer detain OR no longer detaining OR alternatives to detention OR reducing detention OR reduction in detention OR releas*) AND (policy OR policies OR practice OR practices OR prefer OR prefers OR preference OR preferences OR plan OR plans OR approach OR approaches OR priority OR priorities OR prioritize OR prioritizes OR prioritizing OR favor OR favors) w/5 (applicant for admission OR applicants for admission OR arriving alien OR arriving aliens OR arriving noncitizen OR arriving noncitizens OR arriving non-citizen OR arriving non-citizens OR arriving non citizen OR arriving non citizens OR migrant OR migrants OR border crosser OR borders crossers OR family OR families OR FMU OR FMUs OR border OR asylum OR asylee OR asylees)
- (end OR ending OR stop OR stopping OR cease OR ceasing OR limit OR limiting OR abandon OR abandoning OR abolish OR abolishing OR terminate OR terminating OR eliminate OR eliminating OR reduce OR reducing OR refrain OR refraining OR forgo OR forgoing OR avoid OR avoiding OR discontinue OR discontinuing) AND (detention OR detain OR detaining OR incarceration OR incarcerate Or incarcerating OR imprisonment OR imprison OR imprisoning) w/5 (applicant for admission OR applicants for admission OR arriving alien OR arriving aliens OR arriving noncitizen OR arriving noncitizens OR arriving non-citizen OR arriving non-citizens OR arriving non citizen OR arriving non citizens OR migrant OR migrants OR border crosser OR borders crossers OR family OR families OR FMU OR FMUs OR border OR asylum OR asylee OR asylees)

Regarding custodians, do we understand your email correctly that you only searched three custodians? That strikes us as inadequate. We request that you add every named defendant, the Border Patrol Chief, the head of the DHS Office of Strategy, Policy, and Plans, the CBP Executive Director of Policy, the CBP Deputy Chief of Staff of Policy, the CBP Acting Executive Assistant Commissioner of Operations Support, and the CBP Executive Assistant Commissioner of the Office of Field Operations. Finally, we request that you search the chief of staff and second in command/principal deputy for each of these individuals to the extent there is such a position.

Finally, you referenced January 20, 2020, to present. We are happy to limit this to January 20, 2021, to present.

**From:** Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>
**Sent:** Tuesday, June 21, 2022 4:04 PM

**To:** Anita Patel <Anita.Patel@myfloridalegal.com>; Reuveni, Erez R. (CIV) <Erez.R.Reuveni@usdoj.gov>; Moyle, Marie (USAFLN) <Marie.Moyle@usdoj.gov>; Wilson, Sarah S. (CIV) <Sarah.S.Wilson@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>
**Cc:** Karen Brodeen <Karen.Brodeen@myfloridalegal.com>; Natalie Christmas <Natalie.Christmas@myfloridalegal.com>; Elizabeth Teegen <Elizabeth.Teegen@myfloridalegal.com>; Bilal Faruqui <Bilal.Faruqui@myfloridalegal.com>; James Percival <James.Percival@myfloridalegal.com>
**Subject:** RE: Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs

Hi Anita,

I hope y'all had a nice weekend. We discussed the below topics on our call last week, but at your request, we are following up in writing.

I am still waiting for DHS confirmation on whether any responsive documents were identified but then withheld in response to RFP No. 2 on the basis of deliberative process privilege. Generally, where Defendants responded that they "have not identified in their custody or control" any further responsive documents, it was intended to mean that they had either: (1) not found any more responsive documents in their search; or (2) not searched certain categories of documents based on disproportionality/burden under Rule 26 (where that was asserted) or the categorically privileged nature of such categories. Generally, it was not meant to mean that they had searched and identified documents which were then entirely withheld on the basis of privilege.

I am also still waiting for clarification on the method (custodians, terms) of the search originally conducted under RFP No. 2. I will get that information to you ASAP. However, as mentioned on the call, even though Plaintiff wanted to hold off on discussing the search terms regarding the non-detention policy until after Plaintiff receive Defendants' second round of discovery responses, the discovery period was quickly flying by, and given the substantial time requirement often necessary to undergo such searches, we wanted to avoid the discovery period running down before the parties agreed to the scope of any further searches on this issue. As a result, we worked with DHS to continue the search meanwhile, using the following custodians: the Office of Field Operations Executive Director of Admissibility and Passenger Programs, the Border Patrol Chief of Law Enforcement Operations Directorate, and the Enforcement and Removal Operations Deputy Assistant Director for Domestic Operations East. They used the following search terms:

- (nondetention OR non-detention OR non detention) AND (policy OR policies OR practice) w/5 (southwest border OR SW border OR SWB OR southern border)
- (releas*) AND (all OR every) w/5 (southwest border OR SW border OR SWB OR southern border)
- (releas*) AND (policy OR policies OR practice) w/5 (southwest border OR SW border OR SWB OR southern border)

The timing parameter was Jan. 1, 2020 to the present. As noted, this yielded 3,000 plus documents currently in the process of review and redaction.

Given the above search, I believe it would capture anything responsive to your clarified request ("Any and all documents disclosing or discussing a new policy by the Department, issued on or after January 20, 2021, of releasing inadmissible aliens entering the United States from the Southern Border. This would include, for example, changes to DHS policy resulting in reducing or eliminating detention of family units and/or a policy of increasing use of alternatives to detention.") but am confirming that fact with DHS and will follow up with you.

Regards,

Joe


**Joseph A. Darrow**
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Liberty Square Building
450 5th Street, NW
Washington, DC 20530-0001
Mobile:  (202) 598-7537
joseph.a.darrow@usdoj.gov


**From:** Anita Patel <Anita.Patel@myfloridalegal.com>
**Sent:** Tuesday, June 14, 2022 2:05 PM
**To:** Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>; Reuveni, Erez R. (CIV) <Erez.R.Reuveni@usdoj.gov>; Moyle, Marie (USAFLN) <MMoyle@usa.doj.gov>; Wilson, Sarah S. (CIV) <Sarah.S.Wilson@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>
**Cc:** Karen Brodeen <Karen.Brodeen@myfloridalegal.com>; Natalie Christmas <Natalie.Christmas@myfloridalegal.com>; Elizabeth Teegen <Elizabeth.Teegen@myfloridalegal.com>; Bilal Faruqui <Bilal.Faruqui@myfloridalegal.com>; James Percival <James.Percival@myfloridalegal.com>
**Subject:** [EXTERNAL] RE: Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs

Good afternoon, Joe:

As you may recall, we agreed to defer further discussion of Defendants' responses to Plaintiff's first Requests for Production insofar as they were related to the non-detention policy until we could review your responses to our second set. Having had a chance to review them, we wanted to follow up with you on Defendants' response to RFP # 2 in that first set.  RFP #2 asks for this: "Any and all documents disclosing or discussing a policy by the Department of releasing inadmissible aliens entering the United States from the Southern Border." In the response, Defendants' assert an objection based on the deliberative process privilege.   In the email below, you indicate that according to the agency "no specific identified documents have been entirely withheld." We would

like to confirm whether any documents responsive to RFP # 2 have been withheld on the basis of deliberative process privilege.

Also, the response states that Defendants "have not identified in their custody or control and are not producing any further responsive documents." We would like some clarity as to this statement. Does this mean that Defendants are not producing further responsive documents because they have not been identified or because they are being withheld pursuant to the deliberative process privilege or another objection?

We would also like some information as to the steps taken to identify responsive documents, specifically, we are requesting Defendants to provide the search terms utilized in searching for responsive documents and information (including names) of the custodians whose records were searched.

As to Defendants' objection that the request is overbroad and not sufficiently limited in time and scope we are thinking we could agree to limit it to this: "Any and all documents disclosing or discussing a **new** policy by the Department**, issued on or after January 20, 2021,** of releasing inadmissible aliens entering the United States from the Southern Border. **This would include, for example, changes to DHS policy resulting in reducing or eliminating detention of family units and/or a policy of increasing use of alternatives to detention.**"  NBC news has quoted Defendant Mayorkas as stating that detention is "not where a family belongs." If DHS has reduced or eliminated family detention where the family units are applicants for admission, this would be responsive to RFP 2. We believe that this information is discoverable given the court's recent statement that "because Defendants deny the existence of the non-detention policy, Florida cannot be constrained by an administrative record as to that alleged policy." Doc. 55 at 5.  Please provide us with documents responsive to this request, confirm whether any documents were actually withheld because of privilege, and explain what steps were taken to attempt to identify responsive documents. Thank you.



Anita Patel
Senior Assistant Attorney General
Complex Litigation
Office of the Attorney General
PL-01 The Capitol | Tallahassee, FL 32399-1050
Tel.: (850) 414-3694
E-mail: Anita.Patel@myfloridalegal.com

---

**From:** Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>
**Sent:** Tuesday, May 17, 2022 4:17 PM
**To:** James Percival <James.Percival@myfloridalegal.com>; Reuveni, Erez R. (CIV) <Erez.R.Reuveni@usdoj.gov>; Moyle, Marie (USAFLN) <Marie.Moyle@usdoj.gov>; Wilson, Sarah S. (CIV) <Sarah.S.Wilson@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>
**Cc:** Karen Brodeen <Karen.Brodeen@myfloridalegal.com>; Natalie Christmas

<Natalie.Christmas@myfloridalegal.com>; Anita Patel <Anita.Patel@myfloridalegal.com>; Elizabeth Teegen <Elizabeth.Teegen@myfloridalegal.com>; Bilal Faruqui <Bilal.Faruqui@myfloridalegal.com>
**Subject:** RE: Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs

Hi Jimmy,

Please our responses to your email below in red.  We are available to confer on this during the afternoon on Thursday, May 19 or Friday, May 20.

Thanks,

Joe

_____

Threshold Questions

There are two issues that remain unclear to us, as we mentioned on the call. We request that you clarify these issues, either by amending your discovery response or providing us an explanation in writing.

First, is your discovery response complete or are your searches ongoing? You asked us for an extension, and we consented. We thus understood that you were providing a complete production and not producing documents on a rolling basis. We learned on the call, however, that there were documents you had only "discovered later," and we understood you at least once to say that "searches were ongoing." We also know that you were looking into some issues related to a protective order, but until our call on Wednesday, we understood that you had made a complete production and that the protective order was only for purposes of providing unredacted copies of what you had already produced. Please clarify exactly which responsive documents are outstanding.  If you need us to provide search terms, please let us know.

- The only thing outstanding from the first set of requests are the set of documents we discussed with you on the phone during our May 11, 2022 phone call.  Many of these documents involve access and information about a proprietary database and, as we have discussed previously, a protective order is required for us to produce them.  We initially did not think these documents would be responsive to your first set of requests, but upon further review and consideration, out of an abundance of caution, we are willing to identify and produce them to you, subject to a protective order and redactions.

Second, what does your privilege log cover and not cover? In your email, you said it was a "privilege log for the Administrative Record and the first set of documents we produced." The document is labeled "Privilege Log – Defendants' First Round of Production." Does the privilege log not account for documents withheld entirely on the basis of some privilege?

- The privilege log covers the documents that were identified and redacted, and the reason for those redactions are included in the privilege log.  Per the agency, no specific identified documents have been entirely withheld on the basis of privilege, and therefore were not covered in the privilege log.

Third, and relatedly, when have you withheld responsive documents without a privilege log

and/or without expressly saying so? In your written response, you use several different phrases that we thought meant different things. For example, compare these two responses:

- RFP 3: "For these reasons, Defendants are not producing anything in response to this Request as this time."
- RFP 8: "Subject to, and without waiving or in any way limiting these objections, Defendants state they have not identified any responsive documents within their custody or control dating from the operative time period addressing 'consideration . . . of increasing detention capacity.'"

We had understood these two responses to communicate that, with RFP 3, you were not producing documents due to your objections, and that with RFP 8, you had—notwithstanding your objections—run a search and found no responsive documents. During our call on Wednesday, we understood you to say that you had not in fact run a complete search but had instead run a search "consistent with your objections." Please clarify what your terminology means, particularly whether you have identified responsive documents and withheld them or whether you have limited your search. (We also request that same clarification for your other responses that use similar wording. *Compare, e.g.*, RFPs 5 *and* 6, *with* 11 *and* 12.) To the extent you have limited your search, we request a clarification as to methodology and exactly which search terms you used and which custodians you searched. Your objections to RFP 8, for example, span many different issues such as vagueness, overbreadth, concerns over the "tone" of the request, and "internal considerations." It is not clear to us how a search could be run "consistent with" those objections.

- For the language in RFP 3 (and in other responses where this phrase was used), we did not run a search.  Based on the requests you made, and the objections we have to those requests, where we determined a topic was not relevant, privileged, the information sought was protected and/or Plaintiff was not entitled to documents on that request, we noted our objections, and therefore did not search for the requested material.  Additionally, given the fact that these requests, as drafted, were problematic for the reasons given, any potential search would have been highly burdensome and disproportional to the needs of the case.
  As is typical in discovery in any case, we are willing to confer on specific requests to the extent they can be clarified and narrowed, and more tightly tailored to be relevant to the issues in this matter and avoid privileged material.  Our objections to each request note the problems that we perceive with how they are drafted and/or the information they seek.
- For the language in RFP 8 (and in other responses where this phrase was used), while there were still many of the same issues, we did do a search for responsive material <u>excluding</u> any materials that clearly would have been privileged.  Based on that exclusion, no documents were identified as being relevant to the request.

Finally, to the extent you have withheld documents on the basis of some privilege, such as attorney-client or deliberative process, we request that you clarify where you have withheld documents on that basis, confer with us regarding a complete privilege log, and confer regarding whether redactions are a more appropriate way to protect applicable privileges.

- As discussed above, we have not withheld any specific, identified documents on the basis of privilege.  If we do, we will include it in a privilege log.

<u>General Objections and Issues</u>

Before we get into specific discovery requests, we want to note a few general issues.

First, we consider your entire method of objecting incomplete and improper. Your objections are general, and it appears that you copied and pasted certain paragraphs into several of your responses. For example, you frequently assert grounds like "burden" without providing any details in support of that objection, such as the type and scope of the burden and supporting details. We ask that you clarify the specific bases for your objections for each response so that we can evaluate the objections and make efficient use of the court's resources if and when we move to compel.

- Our objections are not general – they are tailored to the problems in each requests. Many of the requests had the same problems. For example, numerous requests sought personally identifiable information related to individuals. As each response is self-contained, we have to reiterate the same privacy objections in each flawed request.
- As to our burden objections, as discussed above, given how many of the requests are drafted, any searches are highly burdensome. However, we are willing to confer on specific requests to the extent they can be clarified and narrowed, and more tightly tailored to the issues in this matter, which may help mitigate the burden problem.

Second, your response asserts that anything before January 20, 2021, is irrelevant, but part of the issue in this case is whether there was a change in policy, and that requires comparing what is happening now to what has happened before. In fact, some of *your* discovery requests seek information from earlier than January 20, 2021, suggesting you agree with this point. Similarly, you assert that everything that has occurred since we filed our amended complaint is irrelevant, but the ongoing impact of the challenged policies is surely relevant to Florida's standing. Please let us know your position on these issues.

- The first issue is that many of your requests do not contain a timeframe, which makes them highly overbroad and burdensome. For example, RFP 27 seeks "Any and all documents showing arrests in the United States of aliens who were found to have criminal histories." We are required to read this request literally, i.e., as written. Therefore, as this request is written, Florida purports to be seeking all documents anywhere in the United States related to the criminal history of any alien going back without end. That's hundreds of years of documents. Many of your request are written like this, without proper limitations. Therefore, in order to respond at all, we have to put some logical parameters on the requests, such as a reasonable time parameters.
- Our understanding is that Florida is complaining about alleged new policies created by the current administration. Therefore, as you are alleging that the problems stem from decisions made during this administration, it made sense to designate January 20, 2021 as the beginning of the responsive period.
- If this understanding is incorrect, we are open to conferring on this issue.

Third, your response asserts that what aliens do once they enter the United States is irrelevant to this case, but such facts go to our standing, and you said in your motion to dismiss that our standing allegations on this topic were "speculative." Please let us know whether you have more salient grounds for asserting a relevance objection and, if not, whether you will reconsider your position.

- Many of the documents illustrating Florida's alleged injuries are in Florida's custody and control.  We maintain that Florida lacks standing to bring this case, but are willing to confer on this topic to better understand what you are seeking that would not violate the privacy rights of individuals.

Fourth, we would like clarification of your objection regarding our definition of "inadmissible alien." You say that "noncitizens recently apprehended at the Southwest border" are only a "subset of all 'inadmissible noncitizens' governed by 8 U.S.C. § 1225(b)," but you also say that your response is limited to "only those noncitizens subject to section 1225(b) and corresponding policies and procedures." Do you use aliens "governed by" section 1225(b) to mean something different than aliens "subject to" section 1225(b)? If not, we do not understand how you have limited your response. Please clarify whether you understand aliens "subject to" 1225(b) and "governed by" 1225(b) to be distinct categories, and if distinct, whether your responses exclude materials based on that distinction—particularly if Defendants assert another authority such as 8 U.S.C. § 1226 as governing and have excluded such materials from production.

- The terms "governed by" and "subject to" are interchangeable in our responses.
- Our understanding of your Complaint, based on the authority you cite and the use of the term "arriving aliens", is that you are challenging only noncitizens who would be subject to 1225(b).  Therefore, we limited our responses accordingly.

Specific Issues

We recognize your contention that the record rule generally governs review of the Parole + ATD policy on the merits. We also understand you to acknowledge that there are exceptions to that rule and that the rule does not apply to issues other than review of the policy on the merits (*e.g.*, standing). We also understand that you are not relying on the record rule for the non-detention policy because you have refused to provide a record. We therefore would like to take the following approach with your responses.

1. On requests related to the merits of Parole + ATD, we will defer conferral on our requests for now while we consider whether to seek any relief, with the exception of the threshold and general issues raised above.
- Per your May 17, 2022 email, it seems you have decided to make a motion to seek extra record discovery and demand that the record be supplemented.  We will respond to that email separately, and ask that we confer on this before your motion is made, per the Court's Local Rules.
2. On requests related to the merits of and existence of the non-detention policy, our second round of discovery requests aim at similar issues. If you agree, we will defer conferral on those requests until we see your responses to that second round of discovery, with the exception of the threshold and general issues raised above.
- As we have mentioned, no non-detention policy exists, making related searches for documents very difficult.  To the extent you think our responses to the first and/or second set of requests on this issue are deficient, we are willing to discuss those deficiencies with you. If it seems further discovery is warranted, we are willing to discuss mutually agreeable search terms and custodians.  Therefore, we agree we should hold off until we have served our second responses and then we should discuss further.
3. On requests related to standing, we would like to prioritize conferral. You have said that our standing allegations are speculative, and those allegations are not covered by the record rule. You are also aware that the federal government possesses exclusive knowledge regarding aliens' status, when they entered the United States, and whether one of the

> challenged policies was applied to them. We therefore plan to seek discovery sufficient to prove our standing.

Consistent with the above, we would like to confer on RFPs 16-22, 41-42, and 46-47. Each of these are relevant to Florida's standing.

16-22: Each of these requests go to whether aliens released under the challenged policies travel to Florida and cost the State funds, a contention you insisted was "speculative" in your motion to dismiss. Further, while you say providing this information is "burdensome," DHS already provided similar information to the Governor of Florida—albeit in an aggregated fashion and for a shorter time frame—in the letter we disclosed under Rule 26. Having said that, we are happy to confer regarding ways to narrow this request and work out any privacy concerns, including with a narrow protective order limited to PII. We are also happy to discuss a limited stipulation regarding these issues. We simply want to ensure that we can prove what is obvious—that at least some of the tens of thousands of aliens being released each month at the border come to Florida and cost the State money.

- Our objections illustrate our concerns with these requests, but we are willing to confer on how to possibly narrow these requests to avoid violating the privacy rights of individuals, and make the requests more tailored to the issues in this matter.  We also agree that a protective order would be necessary *if* discovery were to be provided.
- Regarding a potential stipulation, as discussed in the May 11 phone call, we requested that you send the specific language to us for review.  You did not send us any language, so we cannot take a position on a stipulation at this time.

41-42: These requests go to whether these same aliens have committed crimes in Florida. This is relevant to our standing. Whether we need this information depends on what you can provide in response to 16-22. But if you cannot provide names, then we will seek to compel production of this information.

- See our response above.  Let's revisit after we have conferred on 16-22.

46-47: These requests go to specific examples that would be relevant to 41-42. Our position on this will depend on your position on the above.

- See our response above.  Let's revisit after we have conferred on 16-22, and 41-42.

Please let us know when you are available to confer.

- See above.  We are available Thursday or Friday afternoon.


**Joseph A. Darrow**
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Liberty Square Building
450 5th Street, NW
Washington, DC 20530-0001

Mobile:  (202) 598-7537
joseph.a.darrow@usdoj.gov

---

**From:** James Percival <James.Percival@myfloridalegal.com>
**Sent:** Saturday, May 14, 2022 2:30 PM
**To:** Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>; Reuveni, Erez R. (CIV) <Erez.R.Reuveni@usdoj.gov>; Moyle, Marie (USAFLN) <MMoyle@usa.doj.gov>; Wilson, Sarah S. (CIV) <Sarah.S.Wilson@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>
**Cc:** Karen Brodeen <Karen.Brodeen@myfloridalegal.com>; Natalie Christmas <Natalie.Christmas@myfloridalegal.com>; Anita Patel <Anita.Patel@myfloridalegal.com>; Elizabeth Teegen <Elizabeth.Teegen@myfloridalegal.com>; Bilal Faruqui <Bilal.Faruqui@myfloridalegal.com>
**Subject:** [EXTERNAL] Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs

All,

Following up on our call on Wednesday, May 11, 2022, we are sending over the issues we want to continue conferring on regarding your responses to our first requests for production.

Threshold Questions

There are two issues that remain unclear to us, as we mentioned on the call. We request that you clarify these issues, either by amending your discovery response or providing us an explanation in writing.

First, is your discovery response complete or are your searches ongoing? You asked us for an extension, and we consented. We thus understood that you were providing a complete production and not producing documents on a rolling basis. We learned on the call, however, that there were documents you had only "discovered later," and we understood you at least once to say that "searches were ongoing." We also know that you were looking into some issues related to a protective order, but until our call on Wednesday, we understood that you had made a complete production and that the protective order was only for purposes of providing unredacted copies of what you had already produced. Please clarify exactly which responsive documents are outstanding.  If you need us to provide search terms, please let us know.

Second, what does your privilege log cover and not cover? In your email, you said it was a "privilege log for the Administrative Record and the first set of documents we produced." The document is labeled "Privilege Log – Defendants' First Round of Production." Does the privilege log not account for documents withheld entirely on the basis of some privilege?

Third, and relatedly, when have you withheld responsive documents without a privilege log and/or without expressly saying so? In your written response, you use several different phrases that we thought meant different things. For example, compare these two responses:

- RFP 3: "For these reasons, Defendants are not producing anything in response to this Request as this time."
- RFP 8: "Subject to, and without waiving or in any way limiting these objections, Defendants state they have not identified any responsive documents within their custody or

>control dating from the operative time period addressing 'consideration . . . of increasing detention capacity.'"

We had understood these two responses to communicate that, with RFP 3, you were not producing documents due to your objections, and that with RFP 8, you had—notwithstanding your objections—run a search and found no responsive documents. During our call on Wednesday, we understood you to say that you had not in fact run a complete search but had instead run a search "consistent with your objections." Please clarify what your terminology means, particularly whether you have identified responsive documents and withheld them or whether you have limited your search. (We also request that same clarification for your other responses that use similar wording. *Compare, e.g.*, RFPs 5 *and* 6, *with* 11 *and* 12.) To the extent you have limited your search, we request a clarification as to methodology and exactly which search terms you used and which custodians you searched. Your objections to RFP 8, for example, span many different issues such as vagueness, overbreadth, concerns over the "tone" of the request, and "internal considerations." It is not clear to us how a search could be run "consistent with" those objections.

Finally, to the extent you have withheld documents on the basis of some privilege, such as attorney-client or deliberative process, we request that you clarify where you have withheld documents on that basis, confer with us regarding a complete privilege log, and confer regarding whether redactions are a more appropriate way to protect applicable privileges.

General Objections and Issues

Before we get into specific discovery requests, we want to note a few general issues.

First, we consider your entire method of objecting incomplete and improper. Your objections are general, and it appears that you copied and pasted certain paragraphs into several of your responses. For example, you frequently assert grounds like "burden" without providing any details in support of that objection, such as the type and scope of the burden and supporting details. We ask that you clarify the specific bases for your objections for each response so that we can evaluate the objections and make efficient use of the court's resources if and when we move to compel.

Second, your response asserts that anything before January 20, 2021, is irrelevant, but part of the issue in this case is whether there was a change in policy, and that requires comparing what is happening now to what has happened before. In fact, some of *your* discovery requests seek information from earlier than January 20, 2021, suggesting you agree with this point. Similarly, you assert that everything that has occurred since we filed our amended complaint is irrelevant, but the ongoing impact of the challenged policies is surely relevant to Florida's standing. Please let us know your position on these issues.

Third, your response asserts that what aliens do once they enter the United States is irrelevant to this case, but such facts go to our standing, and you said in your motion to dismiss that our standing allegations on this topic were "speculative." Please let us know whether you have more salient grounds for asserting a relevance objection and, if not, whether you will reconsider your position.

Fourth, we would like clarification of your objection regarding our definition of "inadmissible alien." You say that "noncitizens recently apprehended at the Southwest border" are only a "subset of all 'inadmissible noncitizens' governed by 8 U.S.C. § 1225(b)," but you also say that

your response is limited to "only those noncitizens subject to section 1225(b) and corresponding policies and procedures." Do you use aliens "governed by" section 1225(b) to mean something different than aliens "subject to" section 1225(b)? If not, we do not understand how you have limited your response. Please clarify whether you understand aliens "subject to" 1225(b) and "governed by" 1225(b) to be distinct categories, and if distinct, whether your responses exclude materials based on that distinction—particularly if Defendants assert another authority such as 8 U.S.C. § 1226 as governing and have excluded such materials from production.

Specific Issues

We recognize your contention that the record rule generally governs review of the Parole + ATD policy on the merits. We also understand you to acknowledge that there are exceptions to that rule and that the rule does not apply to issues other than review of the policy on the merits (*e.g.*, standing). We also understand that you are not relying on the record rule for the non-detention policy because you have refused to provide a record. We therefore would like to take the following approach with your responses.

1. On requests related to the merits of Parole + ATD, we will defer conferral on our requests for now while we consider whether to seek any relief, with the exception of the threshold and general issues raised above.
2. On requests related to the merits of and existence of the non-detention policy, our second round of discovery requests aim at similar issues. If you agree, we will defer conferral on those requests until we see your responses to that second round of discovery, with the exception of the threshold and general issues raised above.
3. On requests related to standing, we would like to prioritize conferral. You have said that our standing allegations are speculative, and those allegations are not covered by the record rule. You are also aware that the federal government possesses exclusive knowledge regarding aliens' status, when they entered the United States, and whether one of the challenged policies was applied to them. We therefore plan to seek discovery sufficient to prove our standing.

Consistent with the above, we would like to confer on RFPs 16-22, 41-42, and 46-47. Each of these are relevant to Florida's standing.

16-22: Each of these requests go to whether aliens released under the challenged policies travel to Florida and cost the State funds, a contention you insisted was "speculative" in your motion to dismiss. Further, while you say providing this information is "burdensome," DHS already provided similar information to the Governor of Florida—albeit in an aggregated fashion and for a shorter time frame—in the letter we disclosed under Rule 26. Having said that, we are happy to confer regarding ways to narrow this request and work out any privacy concerns, including with a narrow protective order limited to PII. We are also happy to discuss a limited stipulation regarding these issues. We simply want to ensure that we can prove what is obvious—that at least some of the tens of thousands of aliens being released each month at the border come to Florida and cost the State money.

41-42: These requests go to whether these same aliens have committed crimes in Florida. This is relevant to our standing. Whether we need this information depends on what you can provide in response to 16-22. But if you cannot provide names, then we will seek to compel production of this information.

46-47: These requests go to specific examples that would be relevant to 41-42. Our position on this will depend on your position on the above.

Please let us know when you are available to confer.



James H. Percival
Deputy Attorney General of Legal Policy
Office of the Attorney General
PL-01 The Capitol │ Tallahassee, FL 32399-1050
Tel.: (850) 245-0178
E-mail: james.percival@myfloridalegal.com