**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STATE OF FLORIDA,

     Plaintiff,

v.                                                             Case No.  3:21-cv-1066

The UNITED STATES OF AMERICA;
et. al,

     Defendants.

_____

**DEFENDANTS' MOTION TO QUASH THE DEPOSITION**
**OF ICE ENFORCEMENT AND REMOVAL OPERATIONS'**
**EXECUTIVE ASSOCIATE DIRECTOR PRICE**

Plaintiff seeks to take the deposition of Corey Price, the Executive Associate Director of Enforcement and Removal Operations ("ERO"), which is a section within U.S. Immigration and Customs Enforcement ("ICE"). *See* Subpoena, Exhibit A. Plaintiff gives no valid reasons for needing the deposition of such a high-ranking official, and inexplicably rejected Defendants' offer of EAD Price's Chief of Staff instead. Plaintiff has already taken official and individual depositions of four other DHS officials, including one from ICE. Plaintiff had the opportunity to, and in fact did, ask these witnesses numerous questions about the information Plaintiff now seeks from EAD Price. Plaintiff already had the opportunity to depose a lower-ranking official from ICE who testified in both his individual and official capacity. This newly noticed deposition of EAD Price clearly shows that Plaintiff failed to properly use that opportunity to gain information for its case. But it does not entitle Plaintiff to now seek testimony from a higher ranked official without showing exceptional circumstances, which Plaintiff has not done.

Therefore, Defendants now move to preclude Plaintiff from taking the deposition of EAD Price. As the highest ranked official in ERO, EAD Price's deposition is subject to the "apex doctrine" and thus, Plaintiff must show both that EAD Price has first-hand knowledge relevant to this matter and that "exceptional circumstances" warrant his deposition. Plaintiff has not, and cannot, show either. As discussed herein, Plaintiff has not provided any justification for deposing EAD

Price, and the Court should issue a protective order precluding Plaintiff from taking this deposition.[1]

## BACKGROUND

As this Court is aware, in this lawsuit, Plaintiff challenges, under the Administrative Procedure Act and the Constitution, two of Defendants' alleged immigration policies: its alleged "non-detention policy" at the Southwest border, and its parole + ATD policy. Plaintiff has already sought, and been denied by this Court, extra-record discovery into Defendants' parole + ATD policy. *See* ECF No. 55. On June 29, 2022, Plaintiff served Defendants with its Notice of Taking of 30(b)(6) Deposition, which was the subject of prior a motion for a protective order heard by this Court. *See* ECF Nos. 57-59, 61, 64.

Defendants put forward four designees to speak as 30(b)(6) witnesses for the Department of Homeland Security ("DHS"): Robert Guadian, Deputy Assistant Director for Domestic Operations East, ERO, which is a section within ICE; Tony Barker, Chief of Law Enforcement Operations Directorate of the U.S. Border Patrol, which is a section within U.S. Customs and Border Protection ("CBP"); Matthew Davies, Executive Director of Admissibility and Passenger Programs, Office of Field Operations, which is another section within CBP; and Raul Ortiz, the Chief of

---

[1] Plaintiff opposes this motion.

the U.S. Border Patrol section of CBP.  After these designations were made, Plaintiff also served notices of individual depositions for all four of these individuals.

These depositions took place throughout the month of July: Chief Barker on July 13, Deputy Assistant Director Guadian on July 14, Executive Director Davies on July 18, and Chief Ortiz on July 28. On July 18, DHS issued a new memo detailing its Parole + ATD policy.  This memo did not make any substantive changes to the Parole + ATD program itself, but only slightly reframed the triggering conditions and provided a more comprehensive description of the policy. Despite these minimal changes, Plaintiff demanded that Defendants consent to a new 30(b)(6) topic, and the individual depositions of Chris Magnus, the Commissioner of CBP, and Tae Johnson, the Acting Director of ICE.  The only explanation given for these individual depositions was that Commissioner Magnus and Acting Director Johnson were signatories on the July 18, 2022 Parole + ATD policy memo.

On August 5, 2022, Plaintiff served Defendants with Deposition Notices for Commissioner Magnus and Acting Director Johnson, as well as a subpoena for the deposition of Corey Price, ICE Executive Associate Director (EAD) and head of the ERO section. *See* Subpoena, Exhibit A.[2] After several emails and conferrals on these issues, Defendants consented to be served with a new 30(b)(6) topic and agreed to

---

[2] Plaintiff served an updated subpoena on August 19, 2022, changing the date of the deposition to allow the parties, and the Court, time to litigate and decide this motion.  This updated August 19, 2022 subpoena is included as Exhibit A.

3

provide a designee to discuss same.  Defendants did not, however, consent to any of the newly noticed depositions, as all three deponents were high ranking officials within DHS; EAD Price is a non-party and has no clear relevance to this lawsuit; and the reason given for the depositions of Commissioner Magnus and Acting Director Johnson was because they signed the new July 18, 2022 memo, but the Court has already ruled that Plaintiff is not entitled to extra-record discovery beyond the administrative record on the Parole + ATD policy. *See* ECF No. 55.

Plaintiff agreed to withdraw the Deposition Notices for Commissioner Magnus and Acting Director Johnson but did not withdraw the subpoena for EAD Price.  Defendants informed Plaintiff that EAD Price's deposition was precluded under the "apex doctrine" (discussed *infra*) and asked to confer on alternatives. Plaintiff initially seemed open to discussing the deposition of lower-ranking officials but demanded that Defendants provide them with the names of all of EAD Price's direct reports, without limitation, before they would consider changing their position.  *See* Email from James Percival, dated August 11, 2022, Exhibit C. Citing privacy concerns for the non-public facing employees of DHS, Defendants declined to provide so many names or an internal organizational chart.

Instead, Defendants noted that while EAD Price oversaw all of the ERO component of ICE, thus his high-ranking status, there were six "sub-units" or divisions, and if Plaintiff could identify which sub-unit(s) best dealt with the issues

for which they sought a deposition, Defendants could potentially provide the names of the reports within that unit.[3]   In the alternative, Defendants also offered ERO's Chief of Staff, Michael Bernacke.   *See* Email from Erin Ryan, dated August 16, 2022, Exhibit D.   Like EAD Price, Mr. Bernacke oversees all the divisions of ERO, and is involved in all the same issues as EAD Price's office.   *Id.*   Therefore, if Plaintiff did not want to limit the testimony to any specific division of ERO, Defendants would consent to the deposition of Mr. Bernacke.   *Id.*

On August 17, 2022, Plaintiff rejected both offers of compromise without explanation. *See* Email from James Percival, dated August 17, 2022, Exhibit E.[4] Thus, Defendants move to quash the subpoena noticing the deposition of EAD Price, and ask that the Court preclude Plaintiff from obtaining any additional testimony from the ERO section of ICE.

## **LEGAL STANDARD**

Federal courts have "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of

---

[3] For example, Plaintiff indicated one of the reasons they sought to depose EAD Price was to get testimony about "the detention capacity issue." *See* Email from James Percival, dated August 10, 2022, Exhibit B. Thus, the Custody Management sub-unit of ERO would likely be better informed on the specifics of any issues with detention capacity, rather than the head of the entire section. Given that this would be a personal-capacity deposition, not a corporate 30(b)(6) deposition, and the witness would be testifying only from his or her own experience and knowledge, Plaintiff presumably wishes someone most knowledgeable on the select issues it wants to question about.

[4] Exhibit E includes the entire email exchange, including the preceding Exhibits, for context.

discovery, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). But under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders can include "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).   Similarly, Rule 45 requires the Court to quash or modify a subpoena that subjects a person to undue burden.  Fed. R. Civ. P. 45(d).

A party seeking a protective order bears the burden of establishing good cause. *See Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).  In evaluating whether a party has satisfied its burden, a court should balance the non-moving party's interest in obtaining discovery against the moving party's proffer of harm that would result from the discovery. *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

Based on the factors set forth above, and those discussed below, Defendants are entitled to a protective order precluding Plaintiff from taking the deposition of non-party Executive Associate Director Price.

## ARGUMENT

A party attempting to depose a high-ranking government official must demonstrate "extraordinary circumstances" requiring such a deposition. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586, 247 U.S. App. D.C. 85 (D.C. Cir. 1985). "Specifically, the party seeking to depose a current or former high-ranking government official must demonstrate [e]xceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Judicial Watch v. United States Dep't of State*, Civil Action No. 13-1363, 2016 U.S. Dist. LEXIS 200935, at *10 n.7 (D.D.C. Aug. 19, 2016); *see also In re United States*, Civ. No. 14-5146, 2014 U.S. App LEXIS 14134, at *2 (D.C. Cir. July 24, 2014) (granting writ of mandamus to quash the deposition of the Secretary of Agriculture because there was no showing of "extraordinary circumstances" justifying the deposition). Indeed, "there is a presumption against deposing high-ranking government officials." *Kelley v. Fed. Bureau of Investigation*, No. CV 13-0825 (ABJ), 2015 U.S. Dist. LEXIS 192773, 2015 WL 13648073, at *1 (D.D.C. July 16, 2015)

(citing *People v. U.S. Dep't of Agric.*, 427 F.2d 561, 567, 138 U.S. App. D.C. 291 (D.C. Cir. 1970)).

By the nature of their position, high-ranking officials are "particularly vulnerable to abusive, harassing depositions." *Brown v. Branch Banking & Trust Co.*, No. 13-81192-CIV, 2014 U.S. Dist. LEXIS 7721, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014). Thus, Courts have developed the "apex doctrine." This doctrine serves several purposes: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citations omitted); *see also Judicial Watch*, 2016 U.S. Dist. LEXIS 200935, at *10 n.7 ("The three primary rationales for the apex doctrine are: (1) respecting the integrity of the administrative process; (2) allowing government officials to perform their tasks without disruption; and (3) to not discourage individuals from public service.").

Although the party seeking the protective order has the burden of establishing good cause, when trying to depose a high-ranking government official, the burden shifts to the party seeking the deposition. *See Sun Cap. Partners, Inc. v. Twin City Fire Ins.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). ("The party seeking the deposition

bears the burden of proof."). Here, Plaintiff has not, and cannot, show that EAD Price should be deposed, and the Court should quash the subpoena.

## I. EAD Price is a high-ranking official.

As a threshold matter, EAD Price is a high-ranking official and the apex doctrine applies to his deposition.

EAD Price is the head of ICE's Enforcement and Removal Operations (ERO). ERO is the component of ICE tasked with managing *all* aspects of the immigration enforcement process, including identification and arrest of removable noncitizens, and their domestic transportation, detention, bond management, and supervised release, including alternatives to detention. ERO further handles the removal of noncitizens ordered removed from the United States to more than 170 countries around the world. As the head of ERO, Price oversees and directs the activities of ERO's six divisions: Custody Management, Enforcement, Field Operations, ICE Health Service Corps, Operations Support and Removal. EAD Price oversees all of ICE's 24 field offices and 129 designated Fugitive Operations Teams, and ICE's detention facilities, which in FY 2021, housed a total of 205,242 individuals across the country. In his role as head of ICE ERO, Price is responsible for a budget of approximately $4.12 billion and leads more than 7,900 employees assigned to the field offices and headquarters, in more than 200 domestic locations and 25 overseas locations. In short, Price is the chief operating officer responsible for directing and

overseeing the United States' internal immigration enforcement efforts on a day-to-day basis.[5]

There is no basis to dispute that EAD Price is a high-ranking official to whom the apex doctrine applies, although Plaintiff has alleged to defense counsel that the apex doctrine does not apply to EAD Price.   Plaintiff did not articulate why it believes EAD is not subject this doctrine. Courts have applied the apex doctrine to, *inter alia*, "top executive department officials," agency Commissioners, and city managers. *See, e.g., Simplex Time Recorder Co.*, 766 F.2d at 586 ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *In re United States*, 985 F.2d at 512 ("If the Commissioner [of an agency] was asked to testify in every case which the [agency] prosecuted, his time would be monopolized by preparing and testifying in such cases. In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony."); *League of Women Voters of Fla. v. Lee*, No. 4:21cv186-MW/MAF, 2021 U.S. Dist. LEXIS 208704, at *4 (N.D. Fla. Oct. 19, 2021) ("For example, courts have found sheriffs, corporate general counsels, state secretaries of state, and city managers to be high-ranking officials.").

---

[5] A full description of ERO, and EAD Price's role, can be found at https://www.ice.gov/about-ice/ero.

The rationale that "[h]igh ranking government officials" should not ordinarily be deposed because they have "greater duties and time constraints than other witnesses," is not limited to cabinet-level officials. *In re FDIC,* 58 F.3d 1055, 1060 (5th Cir. 1995); *see RI v. Gardner*, 18 Wage & Hour Cas. 2d 361, 2011 WL 4974834 (E.D.N.Y. 2011) (apex doctrine applies to official below the Secretary or Deputy Secretary); *U.S. v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 319-21 (D.N.J. 2009) (Level IV agency positions such as assistant or regional administrators are high-level officials who should not be deposed absent extraordinary circumstances); *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (officials in positions of "substantial authority" with "responsibility for budget, personnel, and resource issues" have "sufficiently high rank to warrant protections beyond those afforded to deponents in the regular course").

Further, Courts in this Circuit, and across the country, have held that even county sheriffs are high-ranking officials and thus subject to the apex doctrine. *See, e.g., Odom v. Roberts*, 337 F.R.D. 359, 364 (N.D. Fla. 2020) ("As sheriff, Roberts is the highest-ranking official in the Jackson County Sheriff's office and the chief policy maker. By virtue of being a sheriff, Roberts likely would be subjected to numerous depositions—some of which would be designed merely to harass and abuse him—concerning matters of which he has no personal knowledge and which other members of his office would be better-suited to address. Accordingly, Roberts

is a sufficiently high-ranking official to warrant heightened protection from depositions.").

If a sheriff, overseeing policy and enforcement for a single county is a high-ranking official, it follows that the head of ICE's Enforcement and Removal Operations, overseeing all immigration enforcement, detention and removal operations for the entire country, necessarily falls under the apex doctrine.

## II.   Plaintiff has not identified the extraordinary circumstances to overcome the apex doctrine for EAD Price.

As Defendants have shown that EAD Price is a high-ranking official, the burden now shifts to Plaintiff. "To demonstrate that a high-ranking government official should be deposed, a party must show: (1) deposing the official is necessary to obtain relevant, first-hand information; (2) the information possessed by the official is important to the case; (3) the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources." *Odom*, 337 F.R.D. at 365 (citations omitted).

Plaintiff cannot satisfy any of these requirements.[6]

---

[6] Defendants also request, and will reiterate such at the end of this motion, that they be granted a reply to respond to the arguments made in Plaintiff's opposition. As discussed herein, Plaintiff provided only high level, general reasons as to why it seeks to depose EAD Price. As Plaintiff now bears the burden and will have to make affirmative arguments to show it is entitled to this

### A. Plaintiff has not identified any unique, first-hand information EAD Price has relevant to this case that cannot be obtained from a less-burdensome means.

There is nothing in the record to indicate that EAD Price has any unique first-hand information relevant to this case. To date, Plaintiff has deposed four other DHS officials both in their official and individual capacities, and not a single deponent has mentioned EAD Price. Nor has Plaintiff pointed to any other document or information in the record that indicates EAD Price has information relevant to this case that can only be obtained through a deposition.

"[H]igh ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998); *see also In re Cheney*, 544 F.3d 311, 314, 383 U.S. App. D.C. 216 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere."). "An officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in the deposition was pursued unsatisfactorily through less intrusive means." *McMahon v. Presidential Airways*, No. 6:05-cv-1002-Orl-28GJK, 2009

---

deposition, Defendants should be granted an opportunity to dispute the arguments Plaintiff will make for the first time in its opposition.

U.S. Dist. LEXIS 151314, at *6-7 (M.D. Fla. Jan. 8, 2009); *see also, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirmed protective order because the plaintiff sought to depose the president in the first instance before lower-level employees). High-ranking government officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999).

Here, Plaintiff has not shown any indication that EAD Price has first-hand knowledge relevant to this lawsuit. When asked to provide an explanation for why the deposition of EAD Price was necessary, Plaintiff provided the following explanation: "(1) several deponents have refused to answer questions, suggesting that we should ask someone at ICE; (2) Raul Ortiz was one such witness, and Price is essentially his counterpart when it comes to the detention capacity issue, which is a central issue in this case; and (3) Ortiz contradicted the testimony of your 30b6 designee several times on issues related to Border Patrol, and we are well within our rights to probe whether the head of ERO would do the same." *See* Email from James Percival, dated August 10, 2022, Exhibit B.

All three of these explanations are unpersuasive, lack any direct bearing on EAD Price or indicate he has relevant knowledge not already provided by ICE's Rule 30(b)(6) witness, and are altogether not sufficient to establish that EAD Price

is the necessary deponent.  First, the reason a few of the deponents were unable to answer questions, and directed Plaintiff to ICE, is because those deponents were from CBP, which is a wholly different agency than ICE.  Plaintiff improperly asked questions of the 30(b)(6) witnesses that were outside the scope of their designated testimony, as each witness was only designated to speak about the topics as it related to their agency or division.

Plaintiff was permitted to depose Deputy Assistant Director Guadian of ICE, both as a 30(b)(6) deponent and an individual.  If Plaintiff had questions about ICE's detention capacity, which it did, DAD Guadian's deposition was the proper place to ask them.  Indeed, Plaintiff questioned DAD Guadian extensively on this topic.  If Plaintiff is not satisfied with the questions it chose to ask and answers it obtained at DHS's many depositions, that does not permit them to now depose an agency head to seek information they failed to seek from a less burdensome source.

Second, unlike the other DHS witnesses, Chief Ortiz was deposed for over five hours in his **individual** capacity, with only three minutes dedicated to his 30(b)(6) deposition.  First, Plaintiff has not identified which specific information it believes Chief Ortiz was unable to provide, nor why it is information that only EAD Price can provide.  If Chief Ortiz was unable to answer questions about ICE as an individual—and the Chief of Border Patrol, a sub-unit of CBP—that is because Plaintiff directed its questions to the wrong witness or witnesses from a different

agency.   As an individual being deposed, Chief Ortiz was under no obligation to learn about the workings or knowledge of another agency.   Further, even if EAD Price is the same level as Chief Ortiz as Plaintiff contends, that does not entitle Plaintiff to automatically depose EAD Price.   Chief Ortiz was offered by CBP as a 30(b)(6) deponent and was also named in Defendants' Initial Disclosures as a potential witness; EAD Price was not.

Finally, while Defendants contest Plaintiff's claim that "Ortiz contradicted the testimony of your 30b6 designee several times on issues related to Border Patrol," even if that were true, *arguendo*, it does not open the door for Plaintiff to go on a fishing expedition by deposing EAD Price.   If Chief Ortiz's individual testimony contradicted 30(b)(6) testimony of other witnesses—which again, it did not—then the 30(b)(6) testimony controls and binds the agency.   Saying that the purpose of this deposition is to "probe whether the head of ERO" would also contradict the 30(b)(6) testimony is admitting that this is a fishing expedition. Such use of a deposition is impermissible generally, *see* Fed. R. Civ. P. 26(c)(1), and it is not an exception to the apex doctrine.

EAD Price has no first-hand or unique knowledge of the issues in this case, and Plaintiff has not, and cannot, prove otherwise.   This alone is enough to preclude EAD Price's deposition under the apex doctrine.

### B. The deposition of EAD Price would significantly interfere with his ability to perform his duties.

Not only does EAD Price not have any first-hand knowledge of the issues in this lawsuit, requiring him to prepare for and sit for a deposition would place a significant burden on him and the agency, and would interfere with this ability to perform his duties as the Executive Associate Director of ICE's enforcement operations.

Here, Plaintiff has noticed EAD Price for a deposition to take place a week from today, on August 26, 2022[7], in person, at a community office space in Arlington, Virginia—even though EAD Price works in Washington, DC. *See* Subpoena, Exhibit A. Plaintiff has not offered to limit the deposition in time or scope in any way. Additionally, to date, Plaintiff has refused to engage in discussion about relocating the in-person depositions to the agency's offices, or to conduct the deposition virtually, to limit the burden on the deponent. Indeed, Plaintiff's counsel affirmatively stated that they are not willing to conduct EAD Price's deposition virtually, should this motion fail.

As described, *supra*, EAD Price oversees more than 7,900 employees, located in more than 200 domestic locations and 25 overseas locations. He also oversees all of ICE's detention facilities, which house hundreds of thousands of individuals at

---

[7] Plaintiff has indicated that it will pick a new date for EAD Price's deposition to allow the parties time to litigate this motion. *See* Exhibit F.

any given time.  In addition, he oversees and directs all the divisions of ERO which, collectively, handle identification and arrest of removable noncitizens, and their domestic transportation, detention, bond management, and supervised release, including alternatives to detention, as well as international removal efforts.  As the top ranking official in ERO, EAD Price does not have multiple days to devote to preparing for, and attending, a deposition of such tenuous relevance.

Plaintiff seeks to depose a high-ranking government official for 7 hours, plus breaks, in-person, in a different state, which requires significant travel time to and from the deposition, without agreeing to any limit to the topics or testimony sought. In addition to this entire day lost to the deposition, EAD Price would need to attend prep sessions with defense counsel, which will further impact his ability to focus on his substantial and pressing duties in the days leading up to the deposition. Requiring EAD Price to shoulder such a burden is also incompatible with Plaintiff's allegations in this case: Plaintiff claims the southwest border is "in crisis" (ECF No. 74, ¶ 1) and that there are hordes of migrants flooding the country, yet also proposes to take one of the highest ranked officials at DHS away from his job for multiple days to prep for and engage in what amounts to a fishing expedition.

The burden that this deposition imposes is clear should not be permitted, especially because, as explained below, Defendants have offered less burdensome alternatives.

## C. There are less-burdensome means and alternative sources for the testimony Plaintiff seeks.

Finally, there are less-burdensome means for Plaintiff to obtain testimony about ERO and its detention capacity.  In fact, Defendants suggested just such an alternative: in place of EAD Price, Defendants were willing to permit Plaintiff to depose the ERO Chief of Staff, Michael Bernacke.  Mr. Bernacke deals with all the same issues as EAD Price's office, often before EAD Price is called in for a decision on them and would also be able to speak about ERO at an executive level.[8]

Yet Plaintiff rejected this offer without explanation, even though Mr. Bernacke could provide the same substantive testimony as EAD Price, but his deposition would pose less of a burden to the agency.[9]  Indeed, if the purpose of the deposition was to actually obtain testimony about ERO, there is no reason a lower ranking employee would not be sufficient.  Plaintiff's refusal of such an offer by Defendants, however, is potentially indicative of an ulterior motive in seeking to depose EAD Price.

Rule 26 also requires that the discovery sought must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Proportionality "focuses on the marginal

---

[8] Plaintiff also had the opportunity to ask these questions of DAD Guadian during his two depositions, which would have been another less-burdensome option.

[9] To be clear, Defendants offered Mr. Bernacke as an alternative to EAD Price.  As Plaintiff has rejected this offer, Mr. Bernacke's deposition is no longer an option for Plaintiff at a later date, if they are unsuccessful at opposing this motion. Defendants ask that the Court expressly preclude any such bad faith attempt to end-run around the protective order it may grant.  *See* Section IV, *infra*.

utility of the discovery sought." *Obukwelu v. Tallahassee Mem'l Healthcare, Inc.*, No. 4:15cv55-MW/CAS, 2017 U.S. Dist. LEXIS 236609, at *4-5 (N.D. Fla. Mar. 7, 2017) (citations omitted).  Rule 26(c) also empowers courts to issue protective orders when discovery is sought to annoy, embarrass, oppress, harass, or cause undue burden or expense. Fed. R. Civ. P. 26(c)(1). Therefore, even if relevant, "courts **must** limit discovery if it determines that 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'"  *Obukwelu*, 2017 U.S. Dist. LEXIS 236609, at *4-5, *citing* Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added).

Plaintiff cannot show that they are entitled to depose EAD Price given his lack of first-hand knowledge, the substantial burden his deposition would impose, and the availability of less-burdensome ways to obtain the same testimony. *See id.* Further, taking EAD Price's deposition for the purpose of obtaining testimony on DHS's detention capacity is unreasonably duplicative. Plaintiff already obtained authoritative testimony on DHS's detention capacity, at length, from ICE's 30(b)(6) designee, DAD Guadian.  Plaintiff also questioned other DHS 30(b)(6) designees, including Chief Ortiz and Chief Barker, on various aspects of detention and detention capacity. Further, Defendants have produced, as well as pointed Plaintiff to, numerous public sources detailing DHS's detention capacity. Plaintiff has not shown why it needs to burden yet another high-ranking DHS official to obtain

duplicative evidence already exhaustively addressed through written and oral discovery. Under the apex doctrine, the Court should issue a protective order and preclude the deposition of EAD Price.

## III. As a non-party, this subpoena is unduly burdensome.

Not only should EAD Price's deposition be precluded under the apex doctrine, but his status as a non-party[10] also requires that the Court quash this subpoena. "[I]n a discovery dispute involving a nonparty, the nonparty's status is considered by the court in assessing the burden of complying with the discovery request." *In re Photochromic Lens Antitrust Litig.*, No. 8:10-md-2173-T-27EAJ, 2012 U.S. Dist. LEXIS 197371, 2012 WL 12904391, *2 (M.D. Fla. Dec. 20, 2012) (citation omitted). Rule 45 requires a party issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

"When determining whether a subpoena imposes an undue burden, courts must balance the requesting party's need for discovery against the burden imposed on the subpoenaed party." *Palmisano v. Paragon 28*, No. 21-60447-CIV-DIMITROULEAS/S, 2021 U.S. Dist. LEXIS 83747, at *13 (S.D. Fla. Apr. 7, 2021)

---

[10] While ICE is a defendant, EAD Price is not named as a defendant in the caption, nor is he named in relation to any of the claims in this matter. Nor was he named as a potential witness in Defendants' Initial Disclosures, or designated to speak as a 30(b)(6) witness. Plaintiff obviously does not dispute EAD Price's status as a non-party, as Plaintiff sought EAD Price's individual deposition through a subpoena, rather than a Notice of Deposition.

(citations omitted). "Courts consider various factors, including the relevance of the sought-after information and the breadth of information requested." *Id.*

As discussed, *supra*, attending this deposition would significantly impact EAD Price's ability to perform his duties and cause an undue burden on both him and the agency. EAD Price has no unique knowledge or information that would be relevant to this matter, and there are less burdensome means to obtain that testimony. Finally, the breadth of the information sought is boundless, as Plaintiff has not offered to limit the testimony by time or scope in any way, opening EAD Price up to a potential fishing expedition about irrelevant topics. This should not be permitted, especially given EAD Price's high-ranking status. Add to this the fact that if EAD Price sat for a deposition, his testimony would be duplicative of multiple other witnesses and written discovery, and the burden to Defendants increases.

These factors all support Defendants' position that Plaintiff should be precluded from taking EAD Price's deposition, and the Court should order same.

## IV. Should this motion be granted, Plaintiff should be precluded from subpoenaing Mr. Bernacke, or other ERO officials.

Finally, should the Court grant this motion for a protective order, then Plaintiff should be precluded from seeking additional depositions from the ERO section of ICE, and specifically of Mr. Michael Bernacke. As discussed *supra*, Defendants offered Mr. Bernacke in an attempt to reach a compromise, avoid unnecessary motion practice, and still allow Plaintiff to obtain testimony it sought from the ERO

22

unit of ICE.  Plaintiff rejected this offer without explanation as to why only EAD Price would be a permissive deponent, requiring Defendants to file this motion. Therefore, should the Court grant this motion and preclude Plaintiff from deposing EAD Price, the Court should also prohibit Plaintiff from performing a bad-faith end-run around this motion practice and the Court's ruling by serving a subpoena for Mr. Bernacke's deposition.

Plaintiff should not be allowed to play games with the time and resources of defense counsel and the Court when a viable compromise was offered.  *See* Fed. R. Civ. P. 26 Advisory Committee Notes (advising Courts to apply the standards of Rule 26 in a way that misuses discovery to wear down or coerce the other party); *see also Vaigasi v. Solow Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 18460, at *70 (S.D.N.Y. Feb. 16, 2016) (Granting a protective order relieving defendants of certain discovery obligations to "ensure that plaintiff will not succeed in using discovery to wage a war of attrition.")

The parties are less than a month from the close of discovery and will have to spend considerable time and resources litigating this motion.  Should Plaintiff be permitted to serve a subpoena for Mr. Bernacke's deposition a few weeks from now, it will pose a significant burden on Defendants to prepare and attend a deposition on such short notice before the close of discovery.  Again, the information Plaintiff seeks could have been obtained at the two depositions of DAD Guadian already

conducted, or Plaintiff could have agreed to Defendants' offer to produce Mr. Bernacke within short order, and the parties could easily have completed the deposition within the existing discovery schedule. Instead, Plaintiff has forced Defendants to devote time to multiple conferrals only for Plaintiff to refuse any compromise without explanation.

Therefore, after subjecting Defendants to the time and burden of filing this motion, Plaintiff should not be permitted to seek additional discovery when they could have already obtained it through much less burdensome means. Mr. Bernacke was offered in an attempt to reach a good faith agreement and Plaintiff rejected it. Plaintiff should not be permitted to seek his deposition later if the Court grants this motion.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court quash the August 19, 2022 subpoena, noticing the deposition of Executive Associate Director Price, and issue a protective order regarding the same.

Additionally, as Plaintiff bears the burden of showing that EAD Price should be deposed despite the apex doctrine—discussed *supra*—Defendants request they be permitted a reply to Plaintiff's opposition, in order to respond to whatever arguments are raised for the first time in Plaintiff's opposition.

Date:  August 19, 2022

Respectfully submitted,

JASON R. COODY
*United States Attorney*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Erin T. Ryan*
ERIN T. RYAN
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section

*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 5,872 words.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division