# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

STATE OF FLORIDA,

     Plaintiff,

v.                                 Case No. 3:21-cv-1066-TKW-ZCB

The UNITED STATES OF AMERICA,
*et al.*,

     Defendants.

_____/

## FLORIDA'S RESPONSE TO DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER

Among the central issues in this case is whether the Department of Homeland Security (DHS) has a covert "non-detention policy," which would violate the plain language of federal immigration laws. Doc. 74 ¶¶ 77–111. Florida alleges that such a policy exists and has survived a motion to dismiss. Doc. 74 ¶¶ 20–21; Doc. 45.

Defendants initially took the position that there should be zero discovery in this case. Doc. 7-1 at 21 n.4. But because Defendants deny the existence of the non-detention policy, the Court has recognized that Florida is entitled to discovery regarding whether the policy exists. Doc. 55 at 4–5. As part of that discovery, Florida seeks to depose Corey Price, Executive Associate Director of Enforcement and Removal Operations (ERO), which is the section within Immigration and Customs Enforcement (ICE) most likely to have information regarding the actions Florida

1

challenges. Mr. Price is at most a counterpart of, and at worst junior to, Border Patrol Chief Raul Ortiz, whom Defendants already made available for a deposition. That deposition did not go well for Defendants. *E.g.*, Ex. C at 250:15–21[1] (admitting that illegal border crossers are no longer trying to evade Border Patrol because "they think they're going to be released").[2]

Defendants now move to quash the subpoena, and they also seek a protective order essentially cutting off any further discovery of ICE in this case. Doc. 75. Defendants' argument that Mr. Price should not be deposed lacks merit and their request for a sweeping protective order borders on bad faith, especially given Defendants' failure to confer with Florida regarding relief beyond Mr. Price, *see* Local Rule 7.1(B).

Defendants' principal basis is the "apex doctrine," which limits depositions of "top executive department officials." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (quotations omitted). But Mr. Price is not a top executive department official under the apex doctrine. On its website, DHS provides a "[l]ist of senior leaders at the Department." Ex. A. That list names 77 officers, including the Director

---

[1] When citing transcripts, Florida cites the transcript pages and not ECF pagination.

[2] *See also* Ex. C at 53:9–13 (admitting that the crisis at the border is "making the border less safe for Americans and aliens like"); 171:13–22 (admitting that the failure to detain migrants at the border causes border surges); 59:1–16, 67:22–68:5 (admitting that migrants who cite "favorable immigration policy" as a reason to travel to the border are accurately "perceiving what actually is happening in the United States" under President Biden).

and Deputy Director of ICE, but not Mr. Price. *Id.* If Mr. Price is junior to the top 77 officials at DHS, it is likely that hundreds of employees are at the same level as him, and the fact that Defendants' position would apply the apex doctrine to hundreds of officials at DHS is reason alone to reject it. *See SEC v. Comm. on Ways & Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015) (rejecting an apex argument because it would "appl[y] to hundreds of congressional staffers").

Even if Mr. Price were a top official of DHS, Florida has compelling reasons to take his deposition. The official public position of DHS is that no non-detention policy exists, making a Rule 30(b)(6) deposition of DHS a plainly inadequate method to probe that material dispute. And Florida chose a person of Mr. Price's seniority for two compelling reasons. First, discovery has revealed that the more junior officials designated under Rule 30(b)(6) cannot provide informed or accurate testimony regarding whether an agency-wide non-detention policy exists. Whether that is due to lack of access to information, poor preparation, or something more nefarious does not alter the conclusion that Florida needs Mr. Price's testimony.

Second, Florida chose a person of Mr. Price's seniority because Defendants refuse to provide the names of his direct reports. In fact, Defendants have sought to shield the identity of virtually all officials below Mr. Price's level based on an assertion of law enforcement privilege and have only offered to waive that privilege on an ad hoc basis. *See* Doc. 75-5 at 13 (referring to DHS officer information as

"protected by law enforcement privilege"). Defendants should not be permitted to assert an apex theory so broad that it covers every official whose name is discoverable. And they should not be permitted to use ad hoc waiver to micromanage Florida's discovery and force Florida to depose their preferred witnesses. As explained below, Defendants' handpicked witnesses have already provided inaccurate testimony in this case, and their true purpose in filing this motion appears to be ending discovery before the extent of their unlawful conduct is exposed.

## ARGUMENT

### I.   Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The Federal Rules strongly favor full discovery whenever possible. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). And because depositions are "an important tool of discovery," the right to take depositions is "broad." *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020).

The discovery rules, however, are not without limits. Upon a showing of good cause, the court can "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26 (c)(1). Similarly, Rule 45 permits a court to "quash or modify the subpoena if it . . . subjects [the] person to undue burden." Fed. R. Civ. P. 45(d)(3).

"[T]he scope of discovery under Rule 45 is the same as it is under Rule 26." *C.H. v. Sch. Bd. of Okaloosa Cnty. Fla.*, No. 3:18-cv-2128, 2020 WL 6572430, at *2 (N.D. Fla. Nov. 4, 2020). A party who moves for a protective order has the burden of establishing good cause. *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Odom*, 337 F.R.D. at 362 (quotations omitted). A court must then balance the competing factors involved in determining whether good cause has been shown. *Farnsworth*, 758 F.2d at 1547. "The burden of showing good cause to preclude a deposition altogether is a heavy one." *Odom*, 337 F.R.D. at 363 (quotations omitted).

## II.   Defendants' Attempt to Invoke the Apex Doctrine Fails.

The apex doctrine prevents a party from deposing a "top executive department official" unless the party shows "exceptional circumstances" or a "compelling need." *In re United States*, 985 F.2d at 512 (quotations omitted). Defendants bear

the burden to demonstrate that Mr. Price is a top executive department official. *See Sparado v. City of Miramar*, No. 11-61607-civ, 2012 WL 3614202, at *3 (S.D. Fla. Aug. 21, 2012) ("As a threshold matter, an official objecting to a deposition must first establish that she is sufficiently 'high-ranking' to invoke the deposition privilege . . . ." (quotations omitted)). If they make that showing, the burden shifts to Florida to show exceptional circumstances or a compelling need. *Id.* Mr. Price is not a top executive department official, and even if he is, Florida has shown exceptional circumstances and a compelling need.

### A. Mr. Price is not a top executive department official.

The designation of a top executive department official "has generally only been applied to government officials who are at the apex of their organization." *Comm. on Ways & Means*, 161 F. Supp. 3d at 250. Defendants claim that Mr. Price is a top executive department official because he oversees ERO, which is a unit of ICE, a component of DHS. Doc. 75 at 9. As discussed, DHS's website lists 77 "senior leaders." Ex. A. Mr. Price is not on that list.

Nonetheless, Defendants invoke the apex doctrine because Mr. Price has "7,900 employees" and "a budget of approximately $4.12 billion." Doc. 75 at 9. That framing, however, is incomplete. ERO exists within ICE, which exists within DHS. Mr. Price is thus subject to the authority of the Secretary, the Deputy Secretary, the ICE Director, and the ICE Deputy Director, each of which is listed among the 77

senior leaders of DHS. That is no doubt why DHS appears to treat Mr. Price as a mere employee as opposed to a principal or inferior officer under the Appointments Clause. *See* 6 U.S.C. § 113 (listing DHS officials subject to appointment with advice and consent of the Senate or appointment by the President alone). And Defendants' designation of Chief Ortiz—who is at least as senior as Mr. Price—as a 30(b)(6) witness suggests that they do not treat someone at his level as high-ranking.

Defendants cite a multitude of cases applying the apex doctrine. *E.g.*, Doc. 75 at 12. But these cases apply the apex doctrine to agency heads and their direct subordinates. *See id.* (citing *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (co-heads of agency); *RI, Inc. v. Gardner*, No. cv-10-1795, 2011 WL 4974834 (E.D.N.Y. 2011) (third-ranking agency official); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 319–21 (D.N.J. 2009) (EPA Regional Administrator, who was one of ten direct reports to the agency head). Defendants bear the burden to demonstrate that Mr. Price is a top executive department official, *see Sparado*, 2012 WL 3614202, at *3, and they fail to cite a single case holding that a comparable federal official meets that standard. The closest Defendants come is *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002), which applies the doctrine to a cabinet secretary's deputy chief of staff. But in that case, the district court made a finding that the deputy chief of staff was "not far from the Chief of Staff in terms of seniority." *Id.* at 12.

Without a case applying the apex doctrine to an official at Mr. Price's level, Defendants attempt to compare Mr. Price to a county sheriff. Doc. 75 at 12 (arguing that "even county sheriffs are high-ranking officials"). *But see Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 369–70 (N.D. Cal. 2000) ("A chief of police is not necessarily a high government official . . . ."). That argument, however, reflects a lack of respect for the sovereign States and their constitutional hierarchy. Sheriffs in Florida are independent constitutional officers elected by the people, and they are the heads of their offices, reporting to no one else. *See* Fla. Const. art. VIII, § 1(d). The fact that more people work within ERO than at a sheriff's office does not make Mr. Price equivalent for apex purposes.

Finally, Defendants make much of the fact that Mr. Price is not a named defendant. Doc. 75 at 22 n.10. But the fact that Florida considered Mr. Price too junior to name among its nine defendants only bolsters Florida's position that Mr. Price is not subject to the apex doctrine.

### B. Even if Mr. Price is a high-ranking official, Florida has shown a compelling need or exceptional circumstances.

Florida has demonstrated a compelling need to take Mr. Price's deposition. A Rule 30(b)(6) deposition of DHS is plainly inadequate given DHS's official public position that the non-detention policy does not exist. And Florida requires a witness of Mr. Price's seniority for two reasons. First, Florida is seeking information regarding a central factual dispute—the existence of an agency-wide non-detention

policy—and the unique circumstances of this case require testimony from a reasonably senior official. Second, Defendants have sought to shield the identity of officers below Mr. Price's level on the basis of law enforcement privilege and have offered to waive that privilege only on an ad hoc basis—essentially allowing Defendants to micromanage Florida's discovery and choose whom Florida's deposes.

**1.** From the outset of this case, the parties have disputed the existence of the non-detention policy. According to Florida, the non-detention policy is the Biden Administration's policy of "releasing aliens subject to mandatory detention." Doc. 16 ¶ 20; Doc. 74 ¶ 20. Defendants deny that the policy exists, Doc. 53 ¶ 20, and have even called the policy "imaginary," Doc. 54 at 1 n.1. As such, the court has recognized that discovery is necessary to resolve that central factual dispute. Doc. 55 at 4–5.

During Rule 30(b)(6) depositions, Defendants designated both a Border Patrol official and an ICE official to address the existence of the non-detention policy. The Border Patrol official, Tony Barker, Chief of the Law Enforcement Operations Directorate, testified that there was "no change . . . in how we're doing business" at the border since President Biden took office. Ex. B at 163:8–15. Weeks later, Florida deposed Border Patrol Chief Raul Ortiz, who was designated to speak to a different topic. During the individual portion of his deposition, counsel for Florida asked him

a similar question. Ex. C at 173:13–17. Chief Ortiz gave testimony that directly contradicted Mr. Barker's testimony, explaining that under President Trump Border Patrol was only authorized to release aliens at the border under "very exigent circumstances," Ex C at 174:18–19, and that changes to the release policy under the Biden Administration were communicated telephonically and through email. Ex. C at 176:8–9. Even assuming that Mr. Barker testified honestly and simply did not have knowledge of the communications Chief Ortiz referenced, the discrepancy suggests that he and officials at his level are not privy to key facts regarding material disputes in this case.

In addition to Mr. Barker, Defendants designated an ICE official from ERO to speak to the non-detention policy—Robert Guadian, Deputy Assistant Director for Domestic Operations East. Unlike with Border Patrol, however, Defendants only designated one official from ICE under Rule 30(b)(6). Given the conflicting testimony offered by Border Patrol witnesses, Florida has a compelling need to assess whether the junior ICE official designated by Defendants similarly provided inaccurate testimony. There are good reasons to believe that Mr. Guadian lacks knowledge regarding agency-wide policies. For example, Mr. Guadian was unable to provide complete testimony on DHS's decision to eliminate its family detention capacity—a central feature of the non-detention policy. *See* Ex. D at 150:15–24;

Doc. 74 ¶ 89 (alleging that "Defendants have eliminated 100% of the government's detention capacity for family units").[3]

**2.** Florida also has a compelling need for Mr. Price's testimony because Defendants refuse to disclose the names of more junior officers. During conferrals, Florida asked for the following information:

> [W]e request . . . the names and titles of Corey Price's direct reports—while we do not believe Apex applies to Mr. Price, we do think we need this information to meaningfully confer, since the whole point of Apex is you are supposed to obtain the information from less senior officials. If you assert that Apex applies to Mr. Price's direct reports, please provide those officials' direct reports, and please continue that down to the level where Defendants will no longer object on Apex grounds.

Doc. 75-3 at 2. Defendants refused. Instead, Defendants said that they "could *potentially* provide the names of reports within" Mr. Price's unit if Florida first identified a particular officer by title. Doc. 75 at 5 (emphasis added). In a follow up email, Defendants also offered to make Mr. Price's chief of staff, Michael Bernacke, available. *Id.* at 6.

Neither solution offered by Defendants mitigates Florida's compelling need. By insisting that Florida is limited to Rule 30(b)(6) designees and witnesses that Defendants pre-approve through ad hoc privilege waiver, Defendants are attempting

---

[3] Mr. Guadian lacked knowledge on several other issues, for example: (1) "if it [was] possible that ICE could create new detention centers that comply with the *Flores* consent decree," Ex. D at 147:15–20; (2) whether "ICE ever considered as an alternative to releasing family units just releasing people" who were high risk for COVID, Ex. D at 153:18–22; (3) whether "ICE views the detention of family units as humane or inhumane," Ex. D at 165:24–166:1; and (4) "whether ICE views immigration detention as cruel and unjust," Ex. D at 166:2–5.

to commandeer Florida's discovery.[4] If Defendants' position prevails, the only deponents in this case will be witnesses that Defendants hand select. That is an exceptional way to conduct discovery, and it gives Defendants an unfair advantage by allowing them to choose witnesses that they believe will offer favorable testimony. "The obvious and overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *State Nat'l Ins. Co. v. City of Destin*, No. 3:15-cv-31, 2015 WL 11109379, at *1 (N.D. Fla. Sept. 1, 2015).

This is not a hypothetical concern. As discussed, Mr. Barker has already demonstrated Florida's need to choose its own deponents.[5] Mr. Guadian's testimony on behalf of ICE raises similar issues. For example, he testified that ICE eliminated all of its family detention capacity in order to "best . . . support the U.S. Border Patrol in their bed space needs." Ex. D at 141:20–25. The Chief of Border Patrol, who was deposed after Mr. Guadian, suggested the opposite. He testified that ICE's

---

[4] Florida also notes that Defendants' practice of waiver for litigation convenience calls into question the good faith nature of the privilege assertion.

[5] Mr. Barker's inaccurate testimony regarding the non-detention policy was not an isolated incident. He also testified that he did not recall any person "express[ing] a concern regarding the closing of family detention facilities." Ex. E at 8:3–6. Defendants subsequently produced an email to Florida in which a DHS employee—whose name was redacted—expressed concern to Mr. Barker regarding Border Patrol's inability to refer family units to ICE for detention. Ex. F at 2.

actions have caused a significant strain on Border Patrol. Ex. C at 33:3–16. Mr. Guadian's testimony is not a minor inconsistency, it goes to a central issue in this case—the reasons for implementing the non-detention policy.

The needs of this case require Florida to take a deposition of an additional ICE witness. That witness should be both (a) senior enough to know the relevant facts and (b) not hand selected or pre-approved by Defendants. Given Defendants' assertions of privilege—and their willingness to waive that privilege only strategically—Mr. Price is best suited to provide that testimony.

### III.    Defendants' Other Arguments Are Plainly Meritless.

Defendants make several other objections regarding Mr. Price's capacity as a deponent and ask this Court to grant an expansive protective order preventing any further depositions from the State of Florida. Defendants' objections are plainly meritless. Further, the request for a protective order is preemptive and overbroad and should be denied.

First, Defendants argue that Mr. Price should not be subject to a deposition because he does not have any unique or relevant non-repetitive first-hand knowledge.[6] But they failed to provide a declaration or affidavit from Mr. Price attesting to that fact and merely assert guesses as to why he would not have

---

[6] Defendants' position is puzzling given that they also oppose Florida deposing any of the named officials in this case.

knowledge. *See McMahon v. Presidential Airways, Inc.*, No. 6:05-cv-1002, 2006 WL 5359797, at *2 (M.D. Fla. Jan. 18, 2006). Further, as explained above, Florida has a compelling need for Mr. Price's testimony. And by Defendants' own characterization of Mr. Price, he should have knowledge relevant to the non-detention policy. Doc. 75 at 9 (describing Mr. Price as the head of a section that is "tasked with managing . . . detention").

Second, this deposition would not be unduly burdensome to Mr. Price under Rule 45. Florida has demonstrated a compelling need for the information held by Mr. Price. And taking a single-day deposition of an employee of the Defendants who works five miles from the deposition location is not unduly burdensome. Florida attempted to negotiate a date and time that would cause the least disruption to Mr. Price, but Defendants refused to engage in such negotiations. Moreover, all the inconveniences cited by Defendants are typical burdens of litigation. They are burdens on *the Defendants* rather than burdens on Mr. Price. Fed. R. Civ. R. 45(d)(1) (requiring someone issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a *person subject to that subpoena*" (emphasis added)). Rule 45 "was meant to protect those who are powerless to control the scope of litigation and discovery and should [therefore] not be forced to subsidize an unreasonable share of the costs of a litigation that does not concern them." *Culliver*

*v. Ctr. for Toxicology & Envt'l Health LLC*, No. 3:22-mc-6, 2022 WL 475185, at \*4 (N.D. Fla. Feb. 16, 2022) (alteration in original). Mr. Price does not fit that category.

Finally, Defendants' request for a blanket protective order preventing any and all depositions of ERO officials is premature and overbroad. As a preliminary matter, counsel for Defendants did not confer with counsel for Florida regarding that relief. *See* Local Rule 7.1(B) ("Before filing a motion raising an issue, an attorney for the moving party *must* attempt in good faith to resolve the issue . . . ." (emphasis added)). That is reason alone to deny the request. Further, "[b]lanket protective orders prohibiting a deposition are rarely granted absent extraordinary circumstances." *Greacen v. Town of Redington Beach*, No. 8:20-cv-2568, 2021 WL 2551625, at \*2 (M.D. Fla. June 22, 2021). If that is true for a single noticed deposition, it applies with even more force here where Florida has not yet sought any further depositions.

Defendants' goal appears to be ensuring that Florida only deposes witnesses that they approve. Now that Florida is resisting that approach, Defendants ask the Court to go beyond quashing the subpoena of Mr. Price and grant a protective order that would essentially end discovery.

## **CONCLUSION**

In light of the foregoing, the State of Florida asks the Court to deny Defendants' motion.

15

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

James H. Percival (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL
POLICY

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL
POLICY

Karen Brodeen (FBN 512771)
SPECIAL COUNSEL

Anita J. Patel (FBN 1029143)
SENIOR ASSISTANT ATTORNEY GENERAL

BILAL FARUQUI (FBN 15212)
SENIOR ASSISTANT ATTORNEY GENERAL


*/s/ James H. Percival*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 410-2672
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 3,762 words.

*/s/ James H. Percival*
James H. Percival

## CERTIFICATE OF SERVICE

I certify that on August 26, 2022, a true and correct copy of the foregoing

was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ James H. Percival*
James H. Percival