# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

STATE OF FLORIDA,

      Plaintiff,

v.                                        Case No.  3:21-cv-1066

The UNITED STATES OF AMERICA;
et. al,

      Defendants.

_____/

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO QUASH THE DEPOSITION OF EXECUTIVE ASSOCIATE DIRECTOR PRICE

The Court should prevent Plaintiff's baseless attempt to obtain the deposition of the head and chief executive officer of the U.S. Immigration Customs and Enforcement's ("ICE") enforcement, detention and removal operations, ICE Executive Assistant Director ("EAD") Corey Price. Plaintiff has not shown the exceptional circumstances necessary to overcome the apex doctrine, which limits the circumstances under which such high-ranking and operationally essential government officers must be pulled from their roles for depositions. In fact, Plaintiff did not even try to make this difficult showing, ignoring almost all the elements associated with overcoming the apex doctrine, which Plaintiff has the burden of proving. Instead, Plaintiff tries to distract the Court with a dispute that is not relevant to this motion and attempts to change the standard the Court should consider. Unfortunately for Plaintiff, neither of these tactics is sufficient to defeat Defendants' motion. For the reasons herein, and those set forth in their August 19, 2022 moving papers, Defendants respectfully request that this Court grant their motion to quash the subpoena seeking the deposition of EAD Price.

## ARGUMENT

### I. EAD Price is a high-ranking official.

EAD Price is a high-ranking official and none of Plaintiff's arguments to the contrary are persuasive. First, Plaintiff claims that EAD Price is "junior to the top 77 officials at DHS" and therefore he is "not a top executive department official."

Pl. Opp. at 3, 2.   Plaintiff, however, is trying to mislead the Court by making this argument.   Exhibit A of Plaintiff's Opposition is a List of the top officials for the *Department of Homeland Security* ("DHS").   *See* Pl. Opp., Ex. A.   This list includes, *inter alia*, the Administrator of FEMA and the Commandant of the U.S. Coast Guard.   *Id.*   EAD Price is a top official within the *U.S. Immigration and Customs Enforcement*—an agency overseen by DHS.   Indeed, Plaintiff's Exhibit A only includes two names from ICE—the Director and the Deputy Director.   *Id.*   A look at ICE's organizational chart shows that EAD Price—the head of the Enforcement and Removal Operations ("ERO") section, ICE's most significant operational component, responsible for all its immigration enforcement, detention, and removal operations—reports only to the Director and the Deputy Director.   *See* ICE Org. Chart, annexed hereto as Exhibit F.[1]

EAD Price is the joint third highest ranking official within ICE and clearly falls within the apex doctrine.   *See* Defs. Motion, ECF 75 at 10-12 (listing cases applying the apex doctrine to lower-level officials).   Even the case law cited by Plaintiff supports this. *See* Pl. Opp. at 7, *citing RI, Inc. v. Gardner*, No. cv-10-1795, 2011 WL 4974834 (E.D.N.Y. 2011) (stating the apex doctrine applies to the third-ranking agency official). The apex doctrine does not only apply to officials who report to "no one else" as Plaintiff hints at in its opposition.   *See* Pl. Opp. at 8.

---

[1] This chart can also be found at https://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf.

Plaintiff tacitly admits that even an EPA Regional Administrator, who was one of ten direct reports to the agency head would be subject to the apex doctrine. *Id.* at 7, *citing United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 319-20 (D.N.J. 2009). Here, where EAD Price is one of only three direct reports to the head of ICE, Plaintiff has no viable argument that the apex doctrine does not apply. And so, Plaintiff tries instead to confuse the Court. Indeed, were Plaintiff's reasoning to be applied to the EPA Regional Administrator addressed in the previous case, the Court would have to find that because the EPA is part of the Executive Branch and therefore overseen by the President and his office, no one within the EPA would be eligible for the apex doctrine. This is clearly wrong, just as is Plaintiff's attempt to twist the current issue before the Court.

EAD Price is the joint third highest-ranking official within ICE, the head of its entire enforcement operations division, and therefore is a high-ranking official entitled to the protection of the apex doctrine.

## II. Plaintiff has not identified the extraordinary circumstances necessary to overcome the apex doctrine for EAD Price.

In its opposition, Plaintiff does not even try to meet all the requirements to overcome the apex doctrine. Plaintiff asserts what it claims is a "compelling need" to take EAD Price's deposition but having a "compelling need" is not a sufficient element that Plaintiff must show in order to overcome the apex doctrine.

"To demonstrate that a high-ranking government official should be deposed, a party must show: (1) deposing the official is necessary to obtain relevant, first-hand information; (2) the information possessed by the official is important to the case; (3) the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources." *Odom v. Roberts*, 337 F.R.D. 359, 365 (N.D. Fla. 2020) (citations omitted).  Plaintiff bears the burden of showing all these elements, which it has failed to do.

Instead, Plaintiff tries to claim that it must only show a compelling need, citing a case from the Southern District of Florida.  *See* Pl. Opp. at 6.  However, *this* Court has defined the necessary elements to overcome the apex doctrine.  *Odom*, 337 F.R.D. at 365.  While other districts have different opinions of what is sufficient to overcome the apex doctrine, Plaintiff must satisfy the standard of this District, which it has not done.

### A. Plaintiff has failed to establish any of the elements necessary to overcome the apex doctrine.

Plaintiff fails to establish, and indeed wholly fails to address, that deposing EAD Price is necessary to obtain relevant, first-hand information. *Id*. Plaintiff argues that Defendants failed to provide a "declaration or affidavit from Mr. Price" attesting to his lack of first-hand knowledge, and thus Defendants' argument is "meritless."

4

Pl. Opp. at 13.  This, however, is pure burden shifting.  *Plaintiff* bears the burden of showing that EAD Price has unique, first-hand information that is relevant to this case and which cannot be obtained from a less-burdensome source.  *Id.*  And Plaintiff has not even attempted to do so.

Similarly, Plaintiff has not shown that this deposition would not significantly interfere with EAD Price's ability to perform his duties.  *See id.*  Again, Plaintiff tries to fall back on its alleged "compelling need," but such argument does not establish that this deposition would not impose an undue burden on EAD Price, which it would.  Plaintiff does not bother to dispute Defendants' arguments on the burden this deposition would cause, because it cannot.  Yet it is *Plaintiff's* burden to show that this deposition would not be an undue burden on EAD Price or interfere with his ability to perform his job, and they have failed to do so.  Defendants have proffered the hardship this deposition will cause on EAD Price should it go forward, and Plaintiff has not and cannot dispute that.

Finally, Plaintiff does not address Defendants' argument that there are less-burdensome ways to obtain the information sought, nor has Plaintiff explained why Mr. Bernacke is not a sufficient witness.  *See id.*; *see generally* Pl. Opp.  Plaintiff alleges it needs to depose someone of "Mr. Price's seniority" to gain the necessary testimony.  Pl. Opp. at 3, 11.  However, as Defendants explained in their original moving papers, Mr. Bernacke is a senior official who has access to the same

information as EAD Price, but the burden imposed on the government to depose Mr. Bernacke is not as substantial, thus making him a more appropriate option. Plaintiff wholly ignored this showing in Defendants' motion, arguing instead that it must depose EAD Price because Defendants "refuse to provide the names of his direct reports." *Id.* at 3.

Yet Plaintiff does not adequately explain *why* it needs a complete list of all of EAD Price's direct reports. Further, as discussed in the original motion, Mr. Bernacke would have a broader knowledge area than any of the direct reports. Yet Plaintiff wholly fails to explain why Mr. Bernacke—a very reasonable compromise offered by Defendants—would not be a sufficient witness to depose, or why Mr. Bernacke could not provide the information sought, and instead Plaintiff is solely focused on getting a list of EAD Price's direct reports.

Providing such a list, in a case where Plaintiff has repeatedly refused to agree to a protective order for sensitive information like non-forward-facing, career employee identification information, raises serious concerns (as discussed *infra*). Instead, Plaintiff alleges that Defendants are attempting to micromanage Plaintiff's discovery by offering "hand selected or pre-approved" deponents, and thus the Court should deny this motion. But government agencies are entitled to determine which of its employees speak on its behalf, as illustrated by Federal Rule of Civil Procedure

30(b)(6). [2]  Not only is this argument not relevant to the motion at issue but is not a sufficient reason to allow Plaintiff to depose EAD Price in contravention of the apex doctrine.

Also, this claim by Plaintiff—that Defendants only allowed them to depose "hand selected" witnesses—is again misleading.  While Defendants did select their designees to speak to Plaintiff's Rule 30(b)(6) topics, Defendants did not force Plaintiff to only depose those same people in their individual capacity.  That was Plaintiff's choice.  Discovery in this matter has been ongoing since March 2022.  At any time during those six months, Plaintiff could have sought the deposition of other individuals.  Yet Plaintiff waited until the last month of discovery to raise the issue, heightening the burden on Defendants.

Plaintiff's failure to address any of the elements necessary to overcome the apex doctrine is enough to grant Defendants' motion because Plaintiff has failed to substantively meet its burden.

### B. Plaintiff's "compelling need" to depose EAD Price is insufficient and not enough to overcome the apex doctrine.

The only argument Plaintiff makes in support of why it should be entitled to depose EAD Price is that it has a "compelling need" to do so.  *See generally* Pl. Opp.

---

[2] Defendants acknowledge that this is not a 30(b)(6) deposition directed at the agency itself, but the same logic should apply as Plaintiff seeks a deponent with corporate knowledge of policies and statistics.  Their asserted reason for deposing EAD Price is to explore Defendants' policies regarding detention capacity rather than a specific action taken by EAD Price himself.

Not only is this not an element of the test Plaintiff has the burden of meeting to overcome the apex doctrine, but the "need" proffered by Plaintiff is not persuasive.

First, Plaintiff alleges it needs to depose EAD Price because of alleged contradictions between the individual testimony of Chief Ortiz and the Rule 30(b)(6) testimony of Chief Barker. *See* Pl. Opp. at 9-10. Defendants disagree that there was any contradiction between the testimony given. However, even if there is a discrepancy between testimony of its designated Rule 30(b)(6) witnesses and a witness speaking in their individual capacity, the testimony of the designated witness will control and bind the agency. "[D]eference is owed to the decisionmaker authorized to speak on behalf of the agency, not to each individual agency employee." *Rag Cumberland Res. LP v. Fed. Mine Safety & Health Review Comm'n*, 272 F.3d 590, 598 (App. D.C. 2001) (citing *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998)).

But such alleged discrepancy does not open the door for Plaintiff to go on a fishing expedition by deposing EAD Price. Plaintiff has admitted that it seeks to "probe whether the head of ERO" would also contradict the 30(b)(6) testimony, which is admitting that this deposition is a fishing expedition. *See* Email from James Percival, dated August 10, 2022, Exhibit B. With this reasoning, Plaintiff admits that the deposition is being noticed with the intent to harass or embarrass a high-ranking official by trying to catch him in a lie—which is a mere speculative hope by

8

Plaintiff, lacking any evidence whatsoever or any reason to suggest that Price himself would testify in such manner. Such use of a deposition is impermissible. *See* Fed. R. Civ. P. 26(c)(1).

Just as unpersuasive is Plaintiff's allegation that the previous deponents were unable to provide "informed or accurate testimony regarding whether an agency-wide non-detention policy exists." Pl. Opp. at 3. Defendants have maintained throughout this case that no such policy exists, and all the deponents have testified to same. Just because all the witnesses have testified that there is no non-detention policy does not make their testimony inaccurate. Rather, it just underscores that Plaintiff's theory is baseless.

Also baseless are Plaintiff's claims that ICE Deputy Assistant Director Robert Guadian was unable to provide "complete testimony" on "several issues." Pl. Opp. at 10-11. Much of the questioning of DAD Guadian was not relevant to this case, and certainly did not fall within the topics for which he was designated and prepared to testify about in his Rule 30(b)(6) capacity. *Id.* at Fn. 3. For example, the *Flores* consent decree was not a topic put forth in Plaintiff's Notice of 30(b)(6) Deposition, and therefore DAD Guadian was under no obligation to educate himself or be expected to testify about it. Additionally, asking a corporate representative witness what an agency "feels" about certain actions it takes is not only an improper line of questioning, but was not a topic noticed by Plaintiffs. *Id.* As discussed in

Defendants' motion, Plaintiff's failure to adequately question the witnesses *they* noticed in their individual capacities during discovery does not entitle them to depose an agency head in an attempt to get better testimony. *See* Defs. Motion, ECF 75, at 15-16.

Plaintiff essentially manufactured its own problem as an excuse to depose further witnesses. Plaintiff asked irrelevant questions of the designated witnesses on topics they were under no obligation to be prepared to testify to, and when those witnesses could not provide a fulsome answer—as one would expect—or indeed provided answers that contradict Plaintiff's theory of the case, Plaintiff now cries foul and demands additional witnesses. Such game playing is exactly what Defendants asks the Court to put an end to by granting this motion.

Plaintiff also tries to distract the Court by claiming Defendants are improperly withholding the names of EAD Price's direct reports. First, that is not the basis of this motion, and thus not relevant. Second, Defendants have legitimate concerns about releasing the names of non-forward-facing employees of DHS, a position which Defendants have explained to Plaintiff numerous times during this litigation.

Plaintiff has often challenged and expressed disagreement with Defendants' view of the confidentiality of personally identifiable information (PII) and law enforcement privileged information, specifically as it applies to DHS employees. This, coupled with the fact that Plaintiff has refused to enter into a protective order

in this case, forces Defendants to proceed with extreme caution in releasing employee names, given the potential that they might become public.

Such fears of dissemination are not unfounded. On August 30, 2022, Fox News published an article[3] about the July 28, 2022 deposition of Chief Ortiz taken by Plaintiff. The article contained links to the complete deposition transcript, as well as excerpts from the deposition video. According to the article, Fox News received the information and documents directly from Plaintiff. Without a protective order in place, there is nothing stopping Plaintiff from continuing to disseminate to the media and the public addition information it received during discovery in this matter, including the names of DHS employees. And the publication of such information could have dangerous outcomes.[4]

DHS employees constantly face the risk of being targeted and harassed or harmed after the improper release of their private identifying information (a practice called "doxing") because of their employment with the agency, especially given the current political climate. *See, e.g., Kidd v. Wolf*, No. 2:20-cv-03512, ECF No. 37 at *1 (C.D. Cal. Oct. 5, 2020) (permitting defendant ICE officers to proceed under

---

[3] The article can be found here: https://www.foxnews.com/politics/border-patrol-chief-says-border-crisis-caused-bidens-no-consequences-policies-illegal-migrants.

[4] Attached as Exhibit G to this Reply is a letter from ICE to the Office of Personnel Management, dated April 7, 2020, explaining, in detail, some of the risks ICE employees face if their personal information were to be made public. This letter has been previously shared with Plaintiff during this litigation to explain Defendants' concerns surrounding this issue.

pseudonyms, and directing plaintiff to keep their identities confidential, due to risk of harassment and doxing if their identities were publicly disclosed). Many of DHS' employees are not public facing, and not politically appointed.  Disclosing the names of all of EAD Price's direct reports in this litigation, where there is no protective order in place, could expose those employees to the risk of their names being misused by individuals with nefarious intentions against DHS and its employees.

DHS considers the release of employee names to be an unwarranted invasion of privacy, and there is no reason Plaintiff needs the names of all of EAD Price's direct reports.  There is no public interest served in their disclosure when there are other options available.  And given that the State of Florida has very broad public record laws, the information Plaintiff receives in this litigation will remain part of the public record long after this litigation is over.

Defendants offered three separate options to Plaintiff to try and address Defendants' security concerns and Plaintiff's desire for additional discovery. First, Defendants offered to provide names of selected direct reports of EAD Price if Plaintiff could narrow down a specific title or role it was seeking to depose. Next, Defendants offered to provide the leadership structure for a subpart of ERO, such as the Custody Management Unit, if Plaintiff could identify which subpart would best address the information they were seeking. Finally, Defendants offered to make EAD Price's Chief of Staff available for a deposition.  Plaintiff rejected all these

offers without explanation and now claims that none of these solutions would mitigate their need. *See* Pl. Opp. at 11. Plaintiff is incorrect in this assertion. And Plaintiff's refusal without explanation to agree, as an alternative, to Mr. Bernacke, who has wide-ranging knowledge about agency policies, undermines Plaintiff's claim that what they seek is information about the agency's policies.

It seems instead that, from reading Plaintiff's opposition, Plaintiff is seeking the deposition of EAD Price merely *because* of Defendants' refusal to give Plaintiff full access to the names of every DHS employee. *See* Pl. Opp. at 3 ("Florida chose a person of Mr. Price's seniority because Defendants refuse to provide the names of his direct reports."). Such game playing is what Defendants seek to avoid, and they ask the Court to order the same. This is precisely why Defendants asked in their motion that, should Defendants succeed in quashing the deposition of EAD Price, Plaintiff be precluded from subpoenaing Mr. Bernacke or other ERO officials. Plaintiff should not be able to waste the time and resources of the Court and parties litigating a meritless motion, and then turn around and obtain the compromise relief Defendants offered in good-faith negotiation to avoid this need for Court involvement.

## CONCLUSION

For the foregoing reasons, and those set forth in their August 19, 2022 motion, ECF No. 75, Defendants respectfully request that this Court quash the subpoena noticing the deposition of EAD Price.

Date: August 30, 2022                    Respectfully submitted,

JASON R. COODY                          BRIAN M. BOYNTON
*United States Attorney*                   *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                          WILLIAM C. PEACHEY
*Assistant United States Attorney*          *Director*
Northern District of Florida                Office of Immigration Litigation
                                        District Court Section

                                        EREZ REUVENI
                                        *Assistant Director*

                                        /s/ *Erin T. Ryan*
                                        ERIN T. RYAN
                                        JOSEPH A. DARROW
                                        *Trial Attorney*
                                        U.S. Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        Tel.: (202) 805-7537
                                        Joseph.a.darrow@usdoj.gov

                                        SARAH STEVENS WILSON
                                        *Assistant Director*
                                        Office of Immigration Litigation
                                        Appellate Section

                                        *Counsel for Defendants*

14

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 3,199 words.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division