UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,
    Plaintiff,

vs.                                        Case No.:  3:21cv1066/TKW/ZCB

UNITED STATES OF AMERICA, et al.,
    Defendants.
                                       /

## ORDER

Before the Court is Defendants' Motion to Quash the Deposition of ICE Enforcement and Removal Operations' Executive Associate Director Price. (Doc. 75).  Plaintiff responded in opposition. (Doc. 78).  Defendants replied. (Doc. 80).  The Court held a telephonic hearing on August 31, 2022. (Doc. 81).  The matter is now ripe for decision.  For the reasons below, the Court will deny Defendants' motion in part and grant it in part.

### I. Background

This case involves Plaintiff's challenge to two immigration-related policies of Defendants.  Relevant to this motion is Plaintiff's allegation that Defendants have a "non-detention" policy of releasing immigrants who are subject to mandatory detention under the law.  Defendants deny such a policy exists.  The litigation is currently in the discovery phase, and Plaintiff has already conducted several Rule 30(b)(6) and individual depositions.

1

After completing the Rule 30(b)(6) depositions, Plaintiff subpoenaed the deposition of ICE Enforcement and Removal Operations' Executive Associate Director Corey Price. (Doc. 75-1). Defendants informed Plaintiff that Mr. Price is a high-ranking government official who cannot be deposed absent extraordinary circumstances, which they believe are not present. (Doc. 75 at 5; Doc. 75-5 at 8). During the meet and confer process,[1] Defendants offered to allow Plaintiff to depose Mr. Price's Chief of Staff, Michael Bernacke, in lieu of Mr. Price. (Doc. 75 at 6; Doc. 75-5 at 2). Plaintiff rejected that offer, and instead requested that Defendants provide a list of Mr. Price's direct reports so that Plaintiff could decide whether to depose one of them in lieu of Mr. Price. (Doc. 75-3 at 2). Defendants refused to provide the requested list (Doc. 75-5 at 2), so Plaintiff persisted in its request to depose Mr. Price. (*Id.*). That led Defendants to file the current motion seeking to quash/obtain a protective order preventing Mr. Price's deposition. (Doc. 75). In addition to an order preventing Mr. Price's deposition, Defendants (quite remarkably) ask the Court to go even further and prevent Plaintiff from deposing *any* Enforcement and Removal Operations (ERO) officials—including the very individual they previously offered instead of Mr. Price. (Doc. 75 at 23-25).[2]

---

[1] Exactly who said what and when during the meet and confer process is disputed. One thing, however, is clear—counsel for the parties need to do a much better job communicating with each other.
[2] The Court finds this request puzzling. Defendants have sought to prevent Mr. Price's deposition largely on the basis that Plaintiff could obtain the same

## II.     Discussion

The Federal Rules of Civil Procedure allow for robust discovery and reflect the "basic presumption that the public is entitled to every person's evidence." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546 (11th Cir. 1985). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs to the case[.]" Fed. R. Civ. P. 26(b)(1). Depositions are an important discovery tool, and the "right to take depositions is a broad one." *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (cleaned up). "A party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). Indeed, Rule 30 specifically provides that a "party may, by oral questions, depose *any* person." Fed. R. Civ. P. 30(a)(1) (emphasis added). Given the language of the rule, it is unsurprising that a party seeking to prevent a deposition has a steep hill to climb. *Dunford v. Rolly Marine Serv. Co.*, 233 F.R.D. 635, 637 (S.D. Fla. 2005). Such relief should only be granted in extraordinary circumstances. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

---

information from other, lower-ranking, ERO officials. (Doc. 75 at 20-21). Yet in the next breath, Defendants argue that Plaintiff should not be allowed to depose those other, lower-ranking, ERO officials. (*Id*. at 23-24; Doc. 80 at 14). It is hard to see Defendants' position as anything other than a desire to have its cake and eat it too.

3

Over the years, courts have recognized that one situation where relief from a deposition may be granted is when a party seeks to depose a top-level government official. *Byrd v. District of Columbia*, 259 F.R.D. 1, 4 (D.D.C. 2009). This has come to be known as the "apex doctrine." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021). The doctrine has grown out of the Supreme Court's opinion in *United States v. Morgan*, 313 U.S. 409 (1941). *See In re U.S. Dep't of Educ.*, 25 F.4th 692, 700 (9th Cir. 2022) (citing *Morgan* as the genesis of the apex doctrine). In *Morgan*, the Secretary of Agriculture was required to sit for an examination regarding the legality of an order. 313 U.S. at 422. The Supreme Court stated in dicta at the end of its opinion that "the Secretary should never have been subjected to this examination" because of his status as a cabinet official. *Id*.

Taking their cue from *Morgan*, lower courts exercising their broad discretion to regulate discovery have held that top-level government officials should not be deposed absent "extraordinary circumstances." *See S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Comm'rs*, No. 4:10-CV-2163, 2011 WL 1899211, at *2 (E.D. Mo. May 19, 2011); *see also FDIC v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015). This doctrine recognizes that top-level government officials "have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston*,

4

489 F.3d 417, 423 (1st Cir. 2007) (cleaned up).

When deciding if extraordinary circumstances exist to permit a top-level official to be deposed, courts have looked at whether (1) the deposition is necessary to obtain first-hand information; (2) the official has information that would be important to the case; (3) the deposition would not significantly interfere with the official's job responsibilities; and (4) the evidence sought from the official is not reasonably available from alternative deponents. *See Odom*, 337 F.R.D. at 364. A district court has "very wide discretion" in managing discovery, and that wide discretion extends to decisions involving the deposition of high-level government officials. *Bolden v. FEMA*, No. 06-4171, 2008 WL 482727, at *1 (E.D. La. Feb. 19, 2008).

The apex doctrine protects only a limited category of government official— those at the "apex." Thus, the threshold question is whether the official seeking to avoid a deposition is "sufficiently 'high-ranking.'" *Estate of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017). The official bears the burden of making that showing. *Id.*; *see also Odom*, 337 F.R.D. at 364.

Unfortunately, there is no standard for determining whether an official "is sufficiently high-ranking to warrant protection." *Odom*, 337 F.R.D. at 364; *Newman*, 531 F. Supp. 3d at 188. Instead, the decision is made on a case-by-case basis. *Lederman*, 2011 WL 1899211, at *2. It is generally accepted, however, that

5

"high-ranking" encompasses more than "cabinet-level" officials. *See United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 320 (D.N.J. 2009) (citing cases and stating that the apex doctrine has been applied to "officials below cabinet-level rank"). It also seems generally accepted that "heads of government agencies" are covered by the apex doctrine. *See Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (affirming order preventing oral deposition of the Administrator of the Small Business Administration); *see also Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) (stating "heads of Government agencies are not normally subject to deposition"). Exactly where to the draw the line below heads of government agencies is unclear. *Newman*, 531 F. Supp. 3d at 188. There is no Eleventh Circuit precedent on the issue. And looking to cases from other courts is a bit like buying ice cream at Baskin-Robbins—there are so many flavors that anybody can find one or two they like. Most courts have applied the doctrine narrowly,[3] while a few have applied it more broadly.[4]

In the current case, Defendants claim that Mr. Price, the Executive Associate Director of Enforcement and Removal Operations within ICE, is a high-ranking government official worthy of protection by the apex doctrine. They point out that

---

[3] *See, e.g., Bolden*, 2008 WL 482727, at *2 (refusing to apply the apex doctrine to the Assistant Administrator for the Mitigation Directorate at FEMA).

[4] *See, e.g., Church of Scientology v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (applying the apex doctrine to prevent the deposition of the Director of Exempt Organizations Technical Division, National Office of the IRS).

6

Mr. Price supervises a division of ICE that has 7,900 employees and a $4 billion dollar budget. (Doc. 75 at 10). And they argue that Mr. Price is responsible for the day-to-day operations of the United States' internal immigration enforcement efforts.[5] (*Id.*).

Plaintiff claims that Mr. Price is not a sufficiently high-ranking official. Plaintiff highlights that Mr. Price oversees a division of ICE, which is a component of the Department of Homeland Security. (Doc. 78 at 6). Thus, on the organizational chart Mr. Price is several tiers below both the cabinet-level official (the Secretary of Homeland Security) and the component head (the Director of ICE). More specifically, Mr. Price reports to the Deputy Director of ICE, who reports to the Director of ICE, who reports to the Deputy Secretary of Homeland Security, who reports to the Secretary of Homeland Security. *See* https://www.dhs.gov/sites/default/files/publications /21_0402_dhs-organizational-chart.pdf; https://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf. Plaintiff further argues that Mr. Price is neither presidentially appointed nor is he named as one the

---

[5] Defendants also argue that since the apex doctrine has been applied to local officials such as county sheriffs, it surely must apply to a federal official who oversees more employees and has a larger budget. (Doc. 75 at 12-13). That argument misses the mark. County sheriffs are protected by the apex doctrine because they are the head of their agency and, in the State of Florida at least, report to no one other than the electorate. For apex doctrine purposes, it is of no moment that a county sheriff may supervise fewer people and have a smaller budget than Mr. Price.

77 "senior leaders" on the leadership list found on the Department of Homeland Security's website.  (*Id*. at 6-7; Doc. 78-1).  They also point out that Defendants previously offered the Chief of the Border Patrol as one of their Rule 30(b)(6) deponents, and the Chief is at the same hierarchical level with Customs and Border Protection as Mr. Price is with ICE.  (Doc. 78 at 7).

After considering the arguments of the parties and the applicable law, the Court finds that Defendants have failed to show that Mr. Price is a top-level official for purposes of the apex doctrine. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010) (stating that an "official objecting to a deposition must first establish that she is sufficiently 'high ranking' to invoke the deposition privilege"). The doctrine is called the "apex doctrine," and "apex" is defined as the "highest or uppermost point."  Webster's Third New International Dictionary 99 (2002).  Thus, the doctrine should be applied to government officials who are at the pinnacle—or very near the pinnacle—of an agency. *See SEC v. Comm. on Ways and Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015); *see also Thomas*, 715 F. Supp. 2d at 1050 (finding that state official was not sufficiently high ranking because there were several layers in the chain of command between the official and the agency Secretary).

Mr. Price is not at the "highest or uppermost point" of a government agency. He oversees a directorate of a component of a government agency, but so do

hundreds of other people within the federal government. Indeed, it appears there are four other people at Mr. Price's level within ICE alone. *See* https://www.ice.gov/leadership/organizational-structure. The Court finds it hard to believe that when the Supreme Court announced in *Morgan* that a cabinet secretary should not have been deposed, it contemplated its decision morphing into a rule that would shield scores of government employees from being deposed. Mr. Price certainly has an important job with significant responsibility. But that is not the standard. If it were, what was intended as a limited exception to the general rule that all persons are subject to deposition would be expanded exponentially. *See Comm. on Ways and Means of the U.S. House of Reps.*, 161 F. Supp. 3d at 250 (refusing to find that the Staff Director of a House subcommittee was covered by the apex doctrine because the subcommittee was "one of six subcommittees of the Ways and Means Committee, which itself is one of dozens of House committees"); *see also Thomas*, 715 F. Supp. 2d at 1050 (finding no basis to "extend[] the deposition privilege as far down the chain of command as Respondent urges").

The apex doctrine has regularly been applied to government officials who sit atop an agency's organizational chart. *See, e.g.*, *In re United States*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (the Chairman of the Federal Reserve Board); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701, 704 (9th Cir. 2022) (the former Secretary of Education); *Kyle Eng'g Co.*, 600 F.2d at 231 (the Administrator of the Small

Business Administration); *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440-41 (S.D.N.Y. 2014) (the former House Majority Leader); *United States v. Wal-Mart Stores*, No. PJM-01-CV-152, 2002 WL 562301, at *1, *5 (D. Md. Mar. 29, 2002) (the Chair of the Consumer Product Safety Commission). In those instances where the apex doctrine has been applied to individuals who are not at the very top of the organizational chart, the individuals have usually been closely connected to the agency head. Take for example *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009). In *Sensient Colors*, the court held that the apex doctrine applied to the EPA Regional Administrator for Region 2. *Sensient Colors*, 649 F. Supp. 2d at 321. The court highlighted that the Regional Administrator "reports *directly* to the EPA Administrator, who in turn reports directly to the President of the United States." *Id*. (emphasis added).

Here, unlike the cases cited above, Mr. Price does not sit atop a government agency's organizational chart. Nor does he report directly to the agency head as the Regional Administrator did in *Sensient Colors*. This case is analogous to *Bolden v. FEMA*, where the defendant sought to prevent the deposition of the Assistant Administrator for Mitigation because he was "at the top of the Mitigation Directorate branch of FEMA." 2008 WL 482727, at *1 (E.D. La. Feb. 19, 2008). Rejecting that argument, the *Bolden* court observed that "the Mitigation Directorate is one of FEMA's many sections" and, therefore, the Assistant Administrator was not a high-

ranking official for purposes of the apex doctrine. *Id*.

Just as there were "many sections in FEMA," it appears there are four other directorates in ICE led by people who are on the same level as Mr. Price. *See* https://www.ice.gov/leadership/organizational-structure.[6]   And ICE is just one of the many components within the Department of Homeland Security, all of which likely have officials at an equivalent level to Mr. Price.  It is hard to see how that many people that many steps below the cabinet-level agency head—i.e., the Secretary of Homeland Security—can be viewed as residing at the agency's "highest or uppermost point."[7]  Moreover, it is hard to square the argument that Mr. Price is a top-level official worthy of apex doctrine protection with the fact that his name appears nowhere on the Department of Homeland Security's rather lengthy senior leadership list.  (*See* Doc. 78-1).  Accordingly, Mr. Price is not a top-level official who is entitled to protection from deposition by the apex doctrine.

---

[6] Aside from Enforcement and Removal Operations, the directorates are Homeland Security Investigations, Management and Administration, Principal Legal Advisor, and Professional Responsibility. *See* https://www.ice.gov/leadership/organizational-structure.

[7] Although certainly not dispositive, the Court does find it interesting that on the one hand Defendants offered the Border Patrol Chief as a Rule 30(b)(6) deponent, yet on the other hand they assert that Mr. Price—who appears to be at the same hierarchical level as the Border Patrol Chief—is such a high-level official that he cannot be deposed. *Compare* https://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf (ICE organizational chart) *with* https://www.cbp.gov/sites/default/files/assets/documents/2017-Oct/US-CBP-org-charts-10.25.17.pdf  (Customs and Border Protection organizational chart).

Although the Court will not apply the apex doctrine to prevent Mr. Price from being deposed altogether, the Court will issue a protective order that places some limits on the deposition of Mr. Price.  District courts have the power to limit the scope of discovery to ensure a deponent is not subjected to an undue burden or annoyance.  *See, e.g.*, Fed. R. Civ. P. 26(c)(1)(B) (permitting the court to specify the terms—including the time and place—of discovery to protect a person from annoyance, embarrassment, oppression, undue burden, or expense).  This includes the ability to impose shorter time limits on depositions than the seven hours set forth in Rule 30(d)(1).  *See, e.g.*, *Wallace v. Wayne Cnty.*, 602 F. App'x 223, 232 (6th Cir. 2015) (affirming district court's decision that limited deposition to three hours).

Given the circumstances of this case, the Court finds there is good cause to believe that a seven-hour deposition of Mr. Price at a location away from his workplace would be unduly burdensome and would subject Mr. Price to potential annoyance.  *See Odom*, 337 F.R.D. at 365 (stating that "courts can ameliorate the burden placed on a government official by imposing time limits and restricting depositions to approved topics").  The Court, therefore, will exercise its discretion under Rule 26(c) to limit Plaintiff's deposition of Mr. Price to three hours (exclusive of any breaks), with such deposition to occur at Mr. Price's office, unless Plaintiff and Defendants agree on another location.  *See Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 414 (N.D. Ala. 2017) (permitting the Secretary of State to

be deposed but limiting the deposition to four hours); *see also Hacker v. Dart*, 2018 WL 1177916, at *3 (N.D. Ill. Mar 6, 2018) (allowing sheriff's department official to be deposed but limiting the deposition to two hours).

### III.    Conclusion

For the reasons above, Defendants' Motion to Quash the Deposition of ICE Enforcement and Removal Operations' Executive Associate Director Price (Doc. 75) is:

(1) **DENIED in part** as the Court will not prevent the deposition of Mr. Price nor will it prevent the deposition of other ICE Enforcement and Removal Operations officials;

(2) **GRANTED in part** as the Court will limit the deposition of Mr. Price to three hours (exclusive of breaks), and will require it to occur at his office or such other location as agreed upon by both parties.

It is so **ORDERED**.  This the 2nd day of September 2022.

*Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge