**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**
Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

| | |
|---|---|
| DISTRIBUTION: | ICE |
| DIRECTIVE NO.: | 11002.1 |
| ISSUE DATE: | December 8, 2009 |
| EFFECTIVE DATE: | January 4, 2010 |
| SUPERSEDES: | See section 3. |
| FEA NUMBER: | 601-05 |

1. **PURPOSE.** The purpose of this ICE policy directive is to ensure transparent, consistent, and considered ICE parole determinations for arriving aliens seeking asylum in the United States. This directive provides guidance to Detention and Removal Operations (DRO) Field Office personnel for exercising their discretion to consider the parole of arriving aliens processed under the expedited removal provisions of section 235 of the Immigration and Nationality Act (INA) who have been found to have a "credible fear" of persecution or torture by U.S. Citizenship and Immigration Services (USCIS) or an immigration judge of the Executive Office for Immigration Review. This directive establishes a quality assurance process that includes record-keeping requirements to ensure accountability and compliance with the procedures set forth herein.

1.1. This directive does not apply to aliens in DRO custody under INA § 236. This directive applies only to arriving aliens who have been found by USCIS or an immigration judge to have a credible fear of persecution or torture.

2. **AUTHORITIES/REFERENCES.**

2.1. INA §§ 208, 212(d)(5), 235(b), and 241(b)(3); 8 U.S.C. §§ 1158, 1182(d)(5), 1225(b), and 1231(b)(3); 8 C.F.R. §§ 1.1(q), 208.30(e)-(f), 212.5 and 235.3.

2.2. Department of Homeland Security Delegation Number 7030.2, "Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Custom Enforcement" (Nov. 13, 2004).

2.3. ICE Delegations of Authority to the Directors, Detention and Removal and Investigations and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement, No. 0001 (June 6, 2003).

3. **SUPERSEDED POLICIES AND GUIDANCE.** The following ICE directive is hereby superseded:

3.1. ICE Policy Directive No. 7-1.0, "Parole of Arriving Aliens Found to Have a 'Credible Fear' of Persecution or Torture" (Nov. 6, 2007).

4. **BACKGROUND.**

4.1. Arriving aliens processed under the expedited removal provisions of INA §235(b) may pursue asylum and related forms of protection from removal if they successfully demonstrate to USCIS or an immigration judge a credible fear of persecution or torture.

4.2. Arriving aliens who establish a credible fear of persecution or torture are to be detained for further consideration of the application for asylum. INA § 235(b)(1)(B)(ii). Such aliens, however, may be paroled on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding. 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c) (providing that aliens referred for INA § 240 removal proceedings, including those who have a credible fear of persecution or torture, may be paroled under § 212.5(b) standards).

4.3. The applicable regulations describe five categories of aliens who may meet the parole standards based on a case-by-case determination, provided they do not present a flight risk or security risk: (1) aliens who have serious medical conditions, where continued detention would not be appropriate; (2) women who have been medically certified as pregnant; (3) certain juveniles; (4) aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; and (5) aliens whose continued detention is not in the public interest. *See* 8 C.F.R. § 212.5(b). *But compare* 8 C.F.R. § 235.3(b)(4)(ii) (stating that arriving aliens who have not been determined to have a credible fear will not be paroled unless parole is necessary in light of a "medical emergency or is necessary for a legitimate law enforcement objective").

4.4. While the first four of these categories are largely self-explanatory, the term "public interest" is open to considerable interpretation. This directive explains how the term is to be interpreted by DRO when it decides whether to parole arriving aliens determined to have a credible fear. The directive also mandates uniform record-keeping and review requirements for such decisions. Parole remains an inherently discretionary determination entrusted to the agency; this directive serves to guide the exercise of that discretion.

5. **DEFINITIONS:**

5.1. **Arriving Alien.** For purposes of this directive, "arriving alien" has the same definition as provided for in 8 C.F.R. § 1.1(q) and 1001.1(q).

5.2. **Credible Fear.** For purposes of this directive, with respect to an alien processed under the INA § 235(b) "expedited removal" provisions, "credible fear" means a finding by USCIS or an immigration judge that, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts

as are known to the interviewing USCIS officer or immigration judge, there is a significant possibility that alien could establish eligibility for asylum under INA § 208, withholding of removal under INA § 241(b)(3), or protection from removal under the Convention Against Torture.

5.3. **Parole.** For purposes of this directive, "parole" is an administrative measure used by ICE to temporarily authorize the release from immigration detention of an inadmissible arriving alien found to have a credible fear of persecution or torture, without lawfully admitting the alien. Parole does not constitute a lawful admission or a determination of admissibility, see INA §§ 212(d)(5)(A), 101(a)(13)(B), and reasonable conditions may be imposed on the parole, see 8 C.F.R. § 212.5(d). By statute, parole may be used, in the discretion of ICE and under such conditions as ICE may prescribe, only for urgent humanitarian reasons or for significant public benefit. As interpreted by regulation, "urgent humanitarian reasons" and "significant public benefit" include the five categories set forth in 8 C.F.R. § 212.5(b) and listed in paragraph 4.3 of this directive, including the general category of "aliens whose continued detention is not in the public interest."

6. **POLICY.**

6.1. As soon as practicable following a credible fear determination by USCIS for an arriving alien detained by DRO, DRO shall provide the alien with the attached *Parole Advisal and Scheduling Notification*. This form informs the alien that he or she will be interviewed for potential parole from DRO custody and notifies the alien of the date of the scheduled interview and the deadline for submitting any documentary material supporting his or her eligibility for parole. The contents of the notification shall be explained to such aliens in a language they understand. In determining whether detained arriving aliens found to have a credible fear should be paroled from custody, DRO shall proceed in accordance with the terms of this directive.

6.2. Each alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual alien's case. However, when an arriving alien found to have a credible fear establishes to the satisfaction of DRO his or her identity and that he or she presents neither a flight risk nor danger to the community, DRO should, absent additional factors (as described in paragraph 8.3 of this directive), parole the alien on the basis that his or her continued detention is not in the public interest. DRO Field Offices shall uniformly document their parole decision-making processes using the attached *Record of Determination/Parole Determination Worksheet*.

6.3. Consistent with the terms of this directive, DRO shall maintain national and local statistics on parole determinations and have a quality assurance process in place to monitor parole decision-making, as provided for in sections 7 and 8 of this directive.

6.4. In conducting parole determinations for arriving aliens in custody after they are found to have a credible fear of persecution or torture, DRO shall follow the procedures set forth in section 8 of this directive.

6.5. DRO shall provide every alien subject to this directive with written notification of the parole decision, including a brief explanation of the reasons for any decision to deny parole. When DRO denies parole under this directive, it should also advise the alien that he or she may request redetermination of this decision based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding. DRO shall ensure reasonable access to translation or interpreter services if notification is provided to the alien in a language other than his or her native language and the alien cannot communicate effectively in that language.

6.6. Written notifications of parole decisions shall be provided to aliens subject to this directive and, if represented, their representative within seven days of the date an alien is initially interviewed for parole or the date the alien requests a parole redetermination, absent reasonable justification for delay in providing such notification.

6.7. A decision to grant or deny parole shall be prepared by a DRO officer assigned such duties within his or her respective DRO Field Office. The decision shall pass through at least one level of supervisory review, and concurrence must be finally approved by the Field Office Director (FOD), Deputy FOD (DFOD), or Assistant FOD (AFOD), where authorized by the FOD.

7. **RESPONSIBILITIES.**

7.1. The **DRO Director** is responsible for the overall management of the parole decision-making process for arriving aliens in DRO custody following determinations that they have a credible fear of persecution or torture.

7.2. The **DRO Assistant Director for Operations** is responsible for:

1) Ensuring considered, consistent DRO parole decision-making and recordkeeping nationwide in cases of arriving aliens found to have a credible fear;

2) Overseeing monthly tracking of parole statistics by all DRO Field Offices for such cases; and

3) Overseeing an effective national quality assurance program that monitors the Field Offices to ensure compliance with this directive.

7.3. **DRO Field Office Directors** are responsible for:

1) Implementing this policy and quality assurance processes;

2) Maintaining a log of parole adjudications for credible fear cases within their respective geographic areas of responsibility, including copies of the *Record of Determination/Parole Determination Worksheet*;

3) Providing monthly statistical reports on parole decisions for arriving aliens found to have a credible fear;

4) Making the final decision to grant or deny parole for arriving aliens found to have a credible fear within their respective areas of responsibility or, alternatively, delegating such responsibility to their DFODs or AFODs (in which case, FODs nevertheless retain overall responsibility for their office's compliance with this directive regardless of delegating signatory responsibility to DFODs or AFODs); and

5) Ensuring that DRO field personnel within their respective areas of responsibility who will be assigned to make parole determinations are familiar with this directive and corresponding legal authorities.

7.4. **DRO Deputy Field Office Directors** are responsible for reviewing, and forwarding for their respective FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture. Alternatively, DFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.5. **Assistant Field Office Directors** are responsible for reviewing, and forwarding for their respective DFODs' or FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture. Alternatively, AFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.6. As applicable, **DRO field personnel** so assigned by their local chains-of-command are responsible for providing detained arriving aliens found to have a credible fear with the attached *Parole Advisal and Scheduling Notification* and for fully and accurately completing the attached *Record of Determination/Parole Determination Worksheet* in accordance with this directive and corresponding legal authorities.

8. **PROCEDURES.**

8.1. As soon as practicable following a finding that an arriving alien has a credible fear, the DRO Field Office with custody of the alien shall provide the attached *Parole Advisal and Scheduling Notification* to the alien and explain the contents of the notification to the alien in a language he or she understands, through an interpreter if

necessary. The Field Office will complete the relevant portions of the notification, indicating the time when the alien will receive an initial interview on his or her eligibility for parole and the date by which any documentary evidence the alien wishes considered should be provided, as well as instructions for how any such information should be provided.

8.2   Unless an additional reasonable period of time is necessary (e.g., due to operational exigencies or an alien's illness or request for additional time to obtain documentation), no later than seven days following a finding that an arriving alien has a credible fear, a DRO officer familiar with the requirements of this directive and corresponding legal authorities must conduct an interview with the alien to assess his or her eligibility for parole. Within that same period, the officer must complete the *Record of Determination/Parole Determination Worksheet* and submit it for supervisory review. If the officer concludes that parole should be denied, the officer should draft a letter to this effect for the FOD's, DFOD's, or AFOD's signature to be provided to the alien or the alien's representative and forward this letter for supervisory review along with the completed *Record of Determination/Parole Determination Worksheet*. The letter must include a brief explanation of the reasons for denying parole and notify the alien that he or she may request redetermination of parole based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding.

8.3.  An alien should be paroled under this directive if DRO determines, in accordance with paragraphs (1) through (4) below, that the alien's identity is sufficiently established, the alien poses neither a flight risk nor a danger to the community, and no additional factors weigh against release of the alien.

   1) <u>Identity</u>.

      a) Although many individuals who arrive in the United States fleeing persecution or torture may understandably lack valid identity documentation, asylum-related fraud is of genuine concern to ICE, and DRO must be satisfied that an alien is who he or she claims to be before releasing the alien from custody.

      b) When considering parole requests by an arriving alien found to have a credible fear, Field Office personnel must review all relevant documentation offered by the alien, as well as any other information available about the alien, to determine whether the alien can reasonably establish his or her identity.

      c) If an alien lacks valid government-issued documents that support his or her assertion of identity, Field Office personnel should ask whether the alien can obtain government-issued documentation of identity.

    d) If the alien cannot reasonably provide valid government-issued evidence of identity (including because the alien reasonably does not wish to alert that government to his or her whereabouts), the alien can provide for consideration sworn affidavits from third parties. However, third-party affiants must include copies of valid, government issued photo-identification documents and fully establish their own identities and addresses.

    e) If government-issued documentation of identity or third-party affidavits from reliable affiants are either not available or insufficient to establish the alien's identity on their own, Field Office personnel should explore whether the alien is otherwise able to establish his or her identity through credible statements such that there are no substantial reasons to doubt the alien's identity.

2) <u>Flight Risk</u>.

    a) In order to be considered for release, an alien determined to have a credible fear of persecution or torture must present sufficient evidence demonstrating his or her likelihood of appearing when required.

    b) Factors appropriate for consideration in determining whether an alien has made the required showing include, but are not limited to, community and family ties, employment history, manner of entry and length of residence in the United States, stability of residence in the United States, record of appearance for prior court hearings and compliance with past reporting requirements, prior immigration and criminal history, ability to post bond, property ownership, and possible relief or protection from removal available to the alien.

    c) Field Office personnel shall consider whether setting a reasonable bond and/or entering the alien in an alternative-to-detention program would provide reasonable assurances that the alien will appear at all hearings and depart from the United States when required to do so.

    d) Officers should exercise their discretion to determine what reasonable assurances, individually or in combination, are warranted on a case-by-case basis to mitigate flight risk. In any event, the alien must be able to provide an address where he or she will be residing and must timely advise DRO of any change of address.

3) <u>Danger to the Community</u>.

    a) In order for an alien to be considered for parole, Field Office personnel must make a determination whether an alien found to have a credible fear poses a danger to the community or to U.S. national security.

    b) Information germane to the determination includes, but is not limited to, evidence of past criminal activity in the United States or abroad, of activity contrary to U.S. national security interests, of other activity giving rise to concerns of public safety or danger to the community (including due to serious mental illness), disciplinary infractions or incident reports, and any criminal or detention history that shows that the alien has harmed or would likely harm himself or herself or others.

    c) Any evidence of rehabilitation also should be weighed.

4) <u>Additional Factors</u>.

    a) Because parole remains an inherently discretionary decision, in some cases there may be exceptional, overriding factors that should be considered in addition to the three factors discussed above. Such factors may include, but are not limited to, serious adverse foreign policy consequences that may result if the alien is released or overriding law enforcement interests.

    b) Field Office personnel may consider such additional factors during the parole decision-making process.

8.4. Assigned DRO officers should, where appropriate, request that parole applicants provide any supplementary information that would aid the officers in reaching a decision. The *Record of Determination/Parole Determination Worksheet* should be annotated to document the request for supplementary information and any response from the detainee.

8.5. After preparing and signing the *Record of Determination/Parole Determination Worksheet*, and in the case of a denial of parole, drafting a written response to the alien, the assigned DRO officer shall forward these materials and the parole request documentation to his or her first-line supervisor for review and concurrence.

8.6. Upon his or her concurrence, the first-line supervisor shall sign the *Record of Determination/Parole Determination Worksheet* where indicated and forward it, along with any related documentation, to the FOD (or, where applicable, the DFOD or AFOD) for final approval.

8.7. The FOD (or, where applicable, the DFOD or AFOD) shall review the parole documentation, consult with the preparing officer and supervisor as necessary, and

either grant or deny parole by signing the *Record of Determination/Parole Determination Worksheet* where indicated and, in the case of a denial, signing the written response to the alien.

8.8. Following a final decision by the FOD to deny parole (or, where applicable, the DFOD or AFOD), the Field Office shall provide the written response to the alien or, if represented, to the alien's legal representative, indicating that parole was denied. If parole is granted, the Field Office shall provide the alien with a date-stamped I-94 Form bearing the following notation: **"Paroled under 8 C.F.R. § 212.5(b). Employment authorization not to be provided on this basis."**

8.9. If an alien makes a written request for redetermination of an earlier decision denying parole, the Field Office may, in its discretion, reinterview the alien or consider the request based solely on documentary material already provided or otherwise of record.

8.10. The supporting documents and a copy of the parole decision sent to the alien (if applicable), the completed *Record of Determination/Parole Determination Worksheet*, and any other documents related to the parole adjudication should be placed in the alien's A-file in a record of proceeding format. In addition, a copy of the *Record of Determination/Parole Determination Worksheet* shall be stored and maintained under the authority of the FOD for use in preparing monthly reports.

8.11. On a monthly basis, FODs shall submit reports to the Assistant Director for Operations, or his or her designee, detailing the number of parole adjudications conducted under this directive within their respective areas of responsibility, the results of those adjudications, and the underlying basis of each Field Office decision whether to grant or deny parole. The Assistant Director for Operations, or his or her designee, in conjunction with appropriate DRO Headquarters components, will analyze this reporting and collect individual case information to review in more detail, as warranted. In particular, this analysis will rely on random sampling of all reported cases for in-depth review and will include particular emphasis on cases where parole was not granted because of the presence of additional factors, per paragraph 8.3(4) of this directive. Any significant or recurring deficiencies identified during this monthly analysis should be explained to the affected Field Office, which will take appropriate corrective action.

8.12. At least once every six months, the Assistant Director for Operations, or his or her designee, shall prepare a thorough and objective quality assurance report, examining the rate at which paroled aliens abscond and the Field Offices' parole decision-making, including any noteworthy trends or corrective measures undertaken based upon the monthly quality assurance analysis required by paragraph 8.11 of this directive.

9. **ATTACHMENTS.**

- *Parole Advisal and Scheduling Notification.*
- *Record of Determination/Parole Determination Worksheet.*

10. **NO PRIVATE RIGHTS CREATED.** This directive is an internal policy statement of ICE. It is not intended to, shall not be construed to, may not be relied upon to, and does not create, any rights, privileges, or benefits, substantive or procedural, enforceable by any party against the United States, its departments, agencies, or other entities, its officers or employees, or any other person.

Approved: _____
John Morton
Assistant Secretary
U.S. Immigration and Customs Enforcement