**U.S. Customs and Border Protection**

| | |
|---|---|
| **CBP Directive No.** 3340-043 | **Date:** September 3, 2008 |

**ORIGINATING OFFICE**: OFO: APP
**SUPERSEDES:**
**REVIEW DATE:** September 2011

**SUBJECT:    THE EXERCISE OF DISCRETIONARY AUTHORITY**

**1. Purpose.** To provide guidance and direction to promote the fair, objective and consistent application of U.S. Customs and Border Protection (CBP) discretionary authority in the enforcement of immigration laws nationwide.

**2. Policy.**

2.1     It is the policy of CBP to protect the United States of America from threats posed by terrorist organizations and to prevent terrorists as well as suspected terrorists, terrorist funding, weapons, and instruments, including Weapons of Mass Effects (WME), and their precursors from entering the United States.

2.2     It is the policy of CBP, consistent with the Immigration and Nationality Act (INA) to verify the identity, citizenship and admissibility of persons seeking entry into the United States. Where there is a belief, based on an evaluation of available information, that an alien may have ties to or presents a threat related to terrorism, has criminality rendering him or her inadmissible, or is likely to add to the illegal population of the United States, the alien will be denied admission where there is a legal basis to do so.

2.3     It is the policy of CBP that, through the use of all authorities and sanctions provided by law and procedure, enforcement actions will be vigorously pursued against any individual where there exists any reasonable suspicion of association with terrorism, criminality, illegal migration, smuggling or any other activity contrary to national interests or in violation of U.S. statutes.

2.4     It is the policy of CBP to consider the exercise of discretionary measures in favor of aliens who are inadmissible due to a minor or technical violation of the INA. This includes the use of the waiver and parole processes to allow such aliens into the United States, where appropriate and permissible by law. In keeping with the CBP strategy of risk management, CBP will focus resources on those cases that pose the greatest risk.

2.5     It is the policy of CBP that in individual cases involving technical inadmissibility, minor violations, and apparent bona fide travel, where refusal of admission or withdrawal of application for admission would involve detention or undue hardship, it is appropriate to expansively consider the exercise of discretionary authority. This principle must be applied on a case-by-case basis and may not be interpreted to provide relief from the visa requirement in any systemic manner to any particular class of aliens.

2.6     It is the policy of CBP that supervisors and managers will responsibly assess every case involving a prospective adverse action. This will ensure that CBP's legal and discretionary authority is being exercised judiciously and in a manner consistent with the facts of the case.

Law Enforcement Sensitive / For Official Use Only

CBP Form 232C (04/03)

**3. Authority/References.** Immigration and Nationality Act (INA); Title 8 United States Code (USC); Title 19 USC; Title 8 Code of Federal Regulations (CFR); Inspector's Field Manual (IFM) Chapters 16.1 (Parole); 17.1 (Deferred Inspection); 17.2 (Withdrawal of Application for Admission); and 17.5 (Waivers).

**4. Definitions.**

4.1 "Admission," means, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by a CBP officer.

4.2 "Brief overstay," generally means an overstay of approved nonimmigrant status, unintentional in nature or beyond the control of the alien, covering a period of ███████ or less.

4.3 "Hardship," must be determined based on the factors presented. Applicants must be encouraged to describe and document all applicable factors, since there is no guarantee that any particular reason will result in a finding that an adverse action would cause extreme or undue hardship.

4.4 "Minor or technical violation," means a single infraction of a CBP statute that does not rise to a level of such a serious nature that would preclude the offering of a form of discretion.

4.5 "Significant public benefit," means that the inadmissibility of an alien is outweighed by the public interest in allowing the alien to enter the United States.

4.6 "Unforeseen emergency," as used in 8 CFR § 212.1(g) generally means:

4.6.1 An alien arriving for a medical emergency (an injury or illness that requires immediate medical attention to prevent life-threatening or disabling conditions);

4.6.2 An emergency or rescue worker arriving in response to a community disaster or catastrophe in the United States;

4.6.3 An alien accompanying or following to join a person arriving for a medical emergency;

4.6.4 An alien arriving to visit a spouse, child, parent, or sibling who within the past 5 days has unexpectedly become critically ill or who within the past 5 days has died; or,

4.6.5 An alien whose passport or visa was lost or stolen within 48 hours of departing the last port of embarkation for the United States.

**5. Responsibilities.**

5.1 The Assistant Commissioner, Office of Field Operations, is responsible for policy oversight, which includes the formulation and implementation of guidelines and procedures.

5.2     The Executive Director, Admissibility and Passenger Programs (APP), is responsible for the formulation and implementation of the guidelines set forth by the Assistant Commissioner. In addition, the Executive Director, APP, will be responsible for conducting national reviews to ensure compliance with implemented guidelines outlined in this directive.

5.3     Directors, Field Operations (DFOs) are responsible for the overall management and implementation of this program. DFOs will also be responsible for the overall monitoring of the exercise of discretionary authority within their areas of responsibility.

5.4     Port Directors (PDs) are responsible for performing periodic reviews of cases to ensure that the exercise of discretionary authority is being applied in accordance with this directive. PDs are also responsible to ensure that any exercise of discretionary authority is fully warranted.

5.5     Field managers and supervisors are responsible for ensuring that the Discretionary Checklist is utilized in every case involving a prospective adverse action.  They are further responsible for assessing every case involving a prospective adverse action to ensure that any exercise of discretionary authority is done judiciously and in a manner consistent with the facts of the case.

5.6     Supervisors are responsible for ensuring that the Discretionary Checklist is completed during case processing.  Supervisors are further responsible for ensuring that CBP officers under their supervision are familiar with the policies and procedures established by this directive.

5.7     CBP officers are responsible for knowing, understanding and adhering to the contents of this directive.  CBP officers are further responsible for accurately presenting all facts and circumstances resulting from an inspection that may involve a prospective adverse action to the appropriate level of management, through the chain of command.

5.8     CBP officers are responsible for immediately forwarding information to the appropriate level of management, through the chain of command, regarding time-critical situations, including medical emergencies.

**6. Port of Entry Environments.**

6.1     Land Border and Preclearance Ports of Entry

6.1.1   In these environments, an inadmissible alien can normally be returned to a contiguous country immediately or without the need to arrange for additional transportation or to be taken into federal custody.  Ports may need to consider additional factors where refused aliens must be transported to a designated return location.

6.1.2   In these environments, it is generally reasonable to refuse admission, or accept a withdrawal of application, as it would not create an undue hardship on an alien.  If necessary, an alien can access a United States Embassy or Consulate in an attempt to correct any documentary deficiencies, or can secure additional evidence to support a subsequent application for admission.

6.1.3   Despite the ease with which aliens may be refused admission in these environments, CBP supervisors and officers must continue to evaluate each case to adequately determine if the exercise of discretionary authority is warranted.

6.2     Air and Sea Ports of Entry

6.2.1   In these environments, there is less flexibility due to external circumstances that must be considered, such as transportation schedules and carrier liabilities.

6.2.2   When a violation is technical or minor in nature, and the purpose for travel is determined to be bona fide, discretionary guidelines shall be applied expansively to minimize hardship on an alien ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This does not preclude the use of restraints or detention where there is an articulable concern for officer safety.

## 7. Discretionary Checklist

7.1     The attached Discretionary Checklist serves as an aid to frontline personnel and managers in exercising discretionary authority. It also ensures that the INA is consistently applied and that each applicant's admissibility is viewed as a unique, individual case.

7.2     The Discretionary Checklist should be completed by the inspecting CBP officer and reviewed by a first and/or second line supervisor.

7.3     The Discretionary Checklist should be maintained as a part of the alien's port file or A-file (if one exists), regardless of whether discretionary authority is exercised or denied. The checklist should explain why discretion was approved or denied.

7.4     Discretionary authority should generally not be exercised if the alien is unable to establish his or her identity or citizenship.

7.5     Discretionary authority should generally not be exercised if the alien has terrorist ties or affiliations, significant criminal history, or is likely to contribute to the illegal population of the United States. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7.6     The factors outlined below should be considered when deciding whether to exercise discretion. Not every factor will apply in every case.

7.6.1   The nature of the inadmissibility should be reviewed to determine if it is a minor or technical concern as opposed to more serious fraud, criminal or security grounds.

7.6.2   All potential grounds of inadmissibility should be reviewed. Generally, if there are multiple grounds of inadmissibility, it is not merely a minor or technical concern.

7.6.3   Previous violations or determinations of inadmissibility should be reviewed ████████████████████████████████

7.6.4   Previous grants of parole or waiver should be reviewed ████████████████████████

7.6.5   An alien's stated purpose of entry should be reviewed ████████████████████████

7.6.6   An alien's stated family or business ties in the United States should be reviewed and verified to the extent possible.  Such ties must be carefully considered as they may support a legitimate reason for entry, or provide evidence indicating intentions to contribute to the illegal population of the United States.

7.6.7   An alien's current and previous immigration status and length of residence in the United States (if applicable) should be reviewed to assess compliance with previous admissions.

7.6.8   An alien's good faith efforts to obtain correct information or documents prior to arrival should be reviewed and verified to the extent possible.

7.6.9   An alien's knowledge or ignorance of correct procedures or admissibility requirements should be reviewed to determine if a violation is inadvertent, or caused by unfamiliarity with the laws and/or language of the United States.

7.6.10  Advance opportunity to obtain travel documents should be reviewed to determine if the situation provided sufficient time for an alien to comply.  In some cases, an alien may have been aware of the documentary requirements, but may have a plausible reason for not complying.

7.6.11  Any suspected intentions to circumvent admissibility requirements should be reviewed to determine the underlying reason for inadmissibility, and the extent to which the alien was aware of any inability or unlikelihood of being granted a visa or admission to the United States.

7.6.12  Misrepresentations[1] made during the inspection process should be reviewed and treated with the seriousness they deserve.  While certain misrepresentations may subject an alien to Expedited Removal provisions, other misrepresentations may be less severe, and may be made due to fear or distrust of authority, or for cultural reasons.  Where inconsistencies in critical information exist due to misrepresentation, the exercise of discretionary authority is less likely to be appropriate.

---

[1] 

7.6.13  An alien may not be aware that a previous brief overstay has resulted in either the voidance of a visa, or future ineligibility to enter the United States under the Visa Waiver Program (VWP).  In such cases, the alien should be informed of the consequences of his or her previous overstay but discretion may still be considered.

7.6.14  An alien's claim of official misinformation, especially from government officials, should be reviewed to determine the credibility, and verified to the extent possible.

7.6.15  An alien's willingness to cooperate with CBP processing should be reviewed ▌

7.6.16  An alien's age and health should be reviewed to determine if he or she requires assistance, as an infant, child, or elderly person, or if he or she is experiencing a life-threatening or long-term illness.  Such conditions may impact an alien's ability to travel, be detained or be restrained, and may also affect his or her ability to understand or comply with entry requirements.

7.6.17  Any political or media sensitivities should be reviewed to determine if the alien presents high-profile or sensitive issues.  Discretionary authority should not be exercised solely to avoid adverse publicity.

7.6.18  An alien's potential to pose a threat of future terrorist, criminal or violent acts in the United States should be considered.

7.6.19  Any other humanitarian or public interest considerations should be reviewed by the appropriate supervisor to determine if an officer should allow withdrawal of application for admission, or pursue Expedited Removal or removal proceedings before an Immigration Judge. ▌

### 8. Forms of Discretion.

#### 8.1  Waivers.

8.1.1  Generally, waivers approved at ports of entry will be for documentary deficiencies and will be documented using Form I-193, *Application for Waiver of Passport and/or Visa*.  If an alien is inadmissible for reasons other than documentary deficiencies, such a waiver is not appropriate and cannot be approved at the port of entry.  In such cases, parole may be considered as a discretionary means to allow the alien into to the United States.

8.1.2  The authority to approve such waivers under INA § 211(b) and INA § 212(d)(4)(A) is currently delegated to port management at the GS-13 level and above, and port directors at the GS-12 level.

8.1.3   The Form I-193 application fee may be waived for aliens granted a waiver for the first time under INA § 211(b) or INA § 212(d)(4).  Such determination shall be made by port management at the GS-13 level and above, or a port director at the GS-12 level.  Previous beneficiaries of a fee-exempt waiver may be considered for subsequent fee-exempt waivers on a case-by-case basis.

8.1.4   Ports of entry encountering returning lawful permanent residents lacking evidence of alien registration, and thus inadmissible under INA § 212(a)(7)(A)(i), may offer a visa waiver pursuant to INA § 211(b), if otherwise admissible.

8.1.4.1 If a lawful permanent resident claims his or her evidence of registration has been lost or stolen, the port may accept Form I-90, with fee.

8.1.5   Ports of entry encountering nonimmigrant aliens seeking admission to the United States determined to be inadmissible under INA § 212(a)(7)(B), may offer a waiver pursuant to INA § 212(d)(4).

8.1.5.1 Waivers approved pursuant to INA § 212(d)(4) should generally be for unforeseen emergency situations.  Such waivers may also be approved for aliens who fall outside the scope of an unforeseen emergency on a case-by-case basis where it is determined that humanitarian factors support the decision.  The following scenarios are a few examples of situations in which a waiver may be appropriate.

8.1.5.2 An alien is not in possession of a proper visa due to governmental error (e.g., the consulate issued an L-2 instead of an L-1 nonimmigrant visa).

8.1.5.3 An alien is not in possession of a proper visa, but has the requisite documentation for an employment based nonimmigrant visa (e.g., presents an I-797 confirming that a petition has been approved; however, the nonimmigrant visa presented has expired).  Note: CBP cannot waive the underlying documentary requirement for another agency (such as a Department of Labor (DOL) labor certification or petition).

8.1.5.4 An alien with a brief overstay that rendered his or her visa invalid pursuant to INA § 222(g).

8.1.5.5 An alien issued a valid and appropriate visa, but who is unable to present the visa at the time of his or her application for admission.  This often occurs when the visa is contained in a previously issued passport that is not in the alien's possession.

8.1.5.6 Representatives of foreign information media without appropriate visas.


8.2     **Parole.**

8.2.1   Generally, cases requiring parole authorization will present more complex circumstances than those in which a waiver would be considered.  Parole authority is normally exercised when

an alien is inadmissible for reasons other than simple documentary deficiencies. Parole is not regarded as an "admission;" therefore, paroled aliens remain subject to proceedings as inadmissible (under INA § 212), rather than removable (under INA § 237), aliens.

8.2.2   The authority to approve a parole under INA § 212(d)(5) is currently delegated to port management at the GS-13 level and above, and port directors at the GS-12 level.

8.2.3   If a parole is provided as a benefit to an alien, the prescribed fee should generally be collected. However, if a parole is provided in the interest of the government, the fee should be waived.

8.2.4   Since there is no application form for a parole, CBP officers must document all approved port of entry paroles in [REDACTED]

8.2.4.1 Aliens presenting a valid, approved Form I-512, *Authorization for Parole of an Alien into the United States*, need not be documented [REDACTED]

8.2.4.2 Port of entry paroles involving emergency or other time-critical situations should be documented [REDACTED]

8.2.4.3 In time-critical situations, an alien may be allowed to enter the United States [REDACTED]

8.2.5   Ports of entry may grant paroles for deferred inspection, referral for removal proceedings, to facilitate an alien's departure, and in other situations deemed to be in the public interest.

8.2.6   The following situations are a few examples in which parole may be appropriate.

8.2.6.1 An inadmissible alien in need of emergency medical treatment.

8.2.6.2 Emergency workers responding to a natural disaster or other emergency situation.

8.2.6.3 **Medical evacuation** — often termed **MEDEVAC** or **medivac** (land and air ambulance) crew and/or patients.

8.2.6.4 A minor accompanying a detained parent.

8.2.6.5 A missing or abducted minor located and paroled to another agency.

8.2.6.6 Sick or injured crewmembers, including shipwreck or plane crash survivors.

8.2.6.7 An unaccompanied minor who is being released pursuant to an order of preference found in 8 CFR § 212.5(b)(3) or 8 CFR § 236.3(b)(1).

8.2.6.8 Significant Public Benefit Parole, including silent parole, requested by other law enforcement agencies. ████████████████████████████████████████

8.2.6.9   In situations involving minor or inadvertent violations and apparent bona fide travel with no other violations, such as a brief overstay of a VWP admission that rendered an alien statutorily ineligible to apply for admission under the VWP, ████████████████████████████████████████

8.2.6.10  Foreign students on field trips, aliens attending cultural events, and aliens coming for non-emergency medical treatment determined to be inadmissible for reasons other than documentary deficiencies may also be issued a port of entry parole.  When a documentary deficiency is the only apparent ground of inadmissibility, a waiver should be pursued prior to parole consideration.

8.2.7   Aliens placed into expedited removal proceedings must normally be detained until removed from the United States.  However, parole may be permitted if there is a medical emergency, or if it is necessary for legitimate law enforcement purposes, such as for criminal prosecution, or to testify in court.

8.3   **Deferred Inspection**.

8.3.1   A deferred inspection may be used when an immediate decision concerning admissibility cannot be made at a port of entry and when it appears likely that the issues surrounding admissibility can be resolved favorably at the onward port of entry.  Deferred inspections may be necessary to review an existing file, or some other documentary evidence essential to clarifying admissibility.

8.3.2   As a form of parole, the authority to approve a deferred inspection is currently delegated to port management at the GS-13 level and above, and port directors at the GS-12 level. ████████████████████████████████████████

8.3.3   ████████████████████████████████████████

8.3.4   ████████████████████████████████████████

8.3.5   CBP processing shall be deferred for a specific purpose, and not as a way to transfer a difficult case to another office.

8.3.6   CBP processing shall be deferred to the office having jurisdiction over the area where the alien will be staying while in the United States.

8.3.7   CBP processing shall not be deferred where the alien is not expected to establish his or her admissibility. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8.3.8   An inspection shall not be deferred if, based on the totality of circumstances and the presence of articulable facts, there are concerns that the alien may abscond or fail to report for CBP processing as directed.

8.3.9   An inspection may be deferred on behalf of an alien who is the beneficiary of an immediate relative petition, and who has an adjustment of status application pending with U.S. Citizenship and Immigration Services (USCIS), if the only reason for inadmissibility is the alien's failure to have a valid advance parole, and there is a likelihood that USCIS will exercise discretion and allow the alien's adjustment of status application to continue to a final decision.

8.3.10   The deferred inspection provision contained in 8 CFR § 235.2(a) shall not apply to an applicant for admission under INA § 217, except that the removal of a VWP applicant may only be deferred if the alien is paroled for criminal prosecution or punishment.  This is the only provision for deferred removal under the Visa Waiver Program.

8.4   **Withdrawal of Application for Admission**.

8.4.1   A nonimmigrant applicant for admission who does not appear to be admissible may be offered the opportunity to withdraw his or her application for admission pursuant to INA § 235(a)(4), rather than being placed in proceedings pursuant to INA § 240 or removed under INA § 235(b)(1).

8.4.2   An alien cannot, as a matter of right, withdraw his or her application for admission, but may be permitted to withdraw if it is determined to be in the best interest of justice that a removal order not be issued.  All withdrawals of application for admission ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ should be approved by a first-line supervisor.

8.4.2.1 At land border ports of entry, aliens who refuse to pay the fee required for issuance of an entry document (I-94 or I-94W), and aliens who seek immediate return to the country of departure with documented intentions of obtaining or extending status in that country, but who are otherwise admissible, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8.4.3   Prior to permitting an alien to withdraw his or her application for admission, the alien must demonstrate both the intent and the means to depart immediately from the United States.

8.4.4   Withdrawal is strictly voluntary and may not be coerced in any way.  If withdrawal is offered, but not voluntarily accepted, appropriate removal proceedings should be initiated.

8.4.5   In exercising discretion to permit a withdrawal of application for admission, carefully consider all the facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice, or conversely, if justice would be ill-served if an order of removal were issued.

8.4.6   In light of the serious consequences of an expedited removal order, including a minimum 5-year bar on re-entry to the United States, the decision to permit withdrawal should be based on a careful consideration of relevant mitigating and aggravating factors in order to reach a reasonable decision.

8.4.7   Withdrawal of application for admission should not be permitted in situations involving obvious, deliberate fraud on the part of the applicant, or when especially egregious CBP violations are uncovered (e.g., long-term or repeated overstays, unauthorized employment).

8.5   **Voluntary Return.**

8.5.1   Voluntary Return (VR) is an act of discretion that can be applied to non-arriving aliens in circumstances analogous to those where withdrawal of application for admission is allowed, and should be approved by a first-line supervisor.

8.5.2   Usually, when an alien has demonstrated his or her intent to depart the United States, it serves no purpose to issue a Notice to Appear, because the alien is already executing the ultimate objective, which is removal from the United States. There is generally no reason to burden the immigration court with these cases.

8.5.3   When feasible, Voluntary Return cases should be documented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, facts should be articulated documenting the unlawful presence, and an A-file ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Without these actions, it may be difficult to sustain a future ground of inadmissibility regarding the alien's unlawful stay.

8.5.4   In circumstances where CBP officers encounter outbound illegal aliens and there is insufficient time before the departure flight to collect biometrics, CBP officers may use available biographic data alone to create ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

8.6   **Detention.**

8.6.1   When an alien does not pose a potential risk to the United States and transfer to a detention facility may cause undue hardship, parole and/or continued detention at the port of entry should be considered, when feasible. When an alien is permitted to withdraw an application for admission, or is being refused admission under INA § 217, it is particularly important to carefully consider the consequences of transfer to a detention facility in each case.

8.7   **Fee Collection**.

8.7.1    When a form of discretion under consideration requires the payment of an associated fee (such as waiver applications and certain paroles), CBP should determine if the action taken is solely for the benefit of the alien.  If the discretionary action is taken for reasons of significant public benefit, CBP should not charge a fee.

8.7.2    Situations resulting from an action at the port of entry in which it would not be appropriate to charge a fee include the following:

8.7.2.1 Parole for criminal prosecution;

8.7.2.2 Parole for incarceration after conviction for a crime;

8.7.2.3 Parole into the custody of another agency;

8.7.2.4 Parole for INA § 240 proceedings, if detention is not appropriate or feasible;

8.7.2.5 Parole of a stowaway for a medical emergency or legitimate law enforcement objective;

8.7.2.6 Parole of a witness in a judicial, administrative or legislative proceeding being conducted, or to be conducted in the United States;

8.7.2.7 Parole for deferred inspection; and,

8.7.2.8 Parole for deportation from another country through the United States.

8.7.3    Nothing in this directive is intended to diminish the authority of port management to waive fees under other circumstances, where appropriate, in accordance with 8 CFR § 103.7(c).

**9.    No Private Right Created.**  The procedures set forth in this Directive are for CBP internal use only and create no private rights, benefits, or privileges for any private person or party.


/s/
Assistant Commissioner
Office of Field Operations

**Discretionary Authority Checklist for Alien Applicants**

| | |
|---|---|
| **Applicant's Name:** | **Port #:** |
| **Date of Birth:** | **Date of Action:** |
| **Citizenship:** | **Passport / A-#:** |

**1) Identity / Citizenship:**

Identity sufficiently determined:        Yes ☐ No ☐
Citizenship sufficiently determined: Yes ☐ No ☐

**2) Age, Health and Notoriety of Applicant:**

Are age or health relevant factors?   Yes ☐ No ☐
Is the applicant a public figure?        Yes ☐ No ☐
Congressional or media interest?     Yes ☐ No ☐

**NOTE:** *Discretionary authority should generally not be exercised if identity or citizenship can not be established.*
**REMARKS (to include origin, destination and intended length of stay):**

**3) Intended Purpose of Entry:**

Emergency:                    Yes ☐ No ☐
Medical:                         Yes ☐ No ☐
Pleasure:                        Yes ☐ No ☐
Business/Official:           Yes ☐ No ☐
Other:                              Yes ☐ No ☐

**4) Database queries:** [redacted]

[redacted]

**5) Previous Immigration Violations or Inadmissibility:**

Previous Immigration Violation(s): Yes ☐ No ☐
Previous Inadmissibility:                 Yes ☐ No ☐
Previous Beneficiary of Discretion: Yes ☐ No ☐

**6) Nature of Inadmissibility:** [redacted]

**REMARKS:**

**7) Threat posed to the United States:** [redacted]

**NOTE:** *Discretionary authority should generally not be exercised if a threat is posed to the United States.*
**REMARKS:**

14

**8) Other Factors to Consider:**

| | |
|---|---|
| Legitimate reason for entering the United States: | Yes ☐ No ☐ |
| Documentary (Passport / Visa) deficiency only: | Yes ☐ No ☐ |
| Credible claim of official misinformation: | Yes ☐ No ☐ |
| Relationship to a U.S. employer or resident: | Yes ☐ No ☐ |
| Intent to circumvent admissibility requirements: | Yes ☐ No ☐ |
| Misrepresentations made during processing: | Yes ☐ No ☐ |
| Minor children accompanying or already in the United States: | Yes ☐ No ☐ |
| Unaware of visa voidance or consequences of VWP overstay: | Yes ☐ No ☐ |
| Relief available through the parole or waiver process: | Yes ☐ No ☐ |

**REMARKS:**

[ ]

**Examining CBP Officer:** [ ]

**Applicable Ground(s) of Inadmissibility:** [ ]

**Applicable Discretionary Action(s):**

| | | |
|---|---|---|
| Withdrawal of Application for Admission: | Yes ☐ No ☐ | |
| Parole to Depart Foreign / Voluntary Return: | Yes ☐ No ☐ | Length of parole sought: _____ |
| Humanitarian Parole: | Yes ☐ No ☐ | Length of parole sought: _____ |
| Waiver of Passport Requirement: | Yes ☐ No ☐ | Period of admission sought: _____ |
| Waiver of Non-Immigrant Visa Requirement: | Yes ☐ No ☐ | |
|     Classification: _____ | | Period of admission sought: _____ |
| Waiver of Immigrant Visa Requirement: | Yes ☐ No ☐ | |
| Waiver of processing fee (if applicable): | Yes ☐ No ☐ | |
| Deferred Inspection: | Yes ☐ No ☐ | Deferral Period and Location: _____ |

**Supervisory CBP Officer:** [ ]

**Recommendation:**
Approve:     Yes ☐ No ☐
Disapprove:  Yes ☐ No ☐

**Justification for recommendation (to include alternatives, if disapproval is recommended):**

[ ]

**Reviewing 2nd Line Manager:** [ ]
(GS13 or Above)

**Decision:**
Approved: ☐     Disapproved: ☐

**Justification for decision (to include final disposition, if disapproved):**

[ ]