# EXHIBIT 3

Exhibit 3 - 001

# James Percival

| | |
|---|---|
| **From:** | Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov> |
| **Sent:** | Tuesday, May 17, 2022 4:17 PM |
| **To:** | James Percival; Reuveni, Erez R. (CIV); Moyle, Marie (USAFLN); Wilson, Sarah S. (CIV); Ryan, Erin T. (CIV) |
| **Cc:** | Karen Brodeen; Natalie Christmas; Anita Patel; Elizabeth Teegen; Bilal Faruqui |
| **Subject:** | RE: Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs |

Hi Jimmy,

Please our responses to your email below in red. We are available to confer on this during the afternoon on Thursday, May 19 or Friday, May 20.

Thanks,

Joe

---

Threshold Questions

There are two issues that remain unclear to us, as we mentioned on the call. We request that you clarify these issues, either by amending your discovery response or providing us an explanation in writing.

First, is your discovery response complete or are your searches ongoing? You asked us for an extension, and we consented. We thus understood that you were providing a complete production and not producing documents on a rolling basis. We learned on the call, however, that there were documents you had only "discovered later," and we understood you at least once to say that "searches were ongoing." We also know that you were looking into some issues related to a protective order, but until our call on Wednesday, we understood that you had made a complete production and that the protective order was only for purposes of providing unredacted copies of what you had already produced. Please clarify exactly which responsive documents are outstanding. If you need us to provide search terms, please let us know.

- The only thing outstanding from the first set of requests are the set of documents we discussed with you on the phone during our May 11, 2022 phone call. Many of these documents involve access and information about a proprietary database and, as we have discussed previously, a protective order is required for us to produce them. We initially did not think these documents would be responsive to your first set of requests, but upon further review and consideration, out of an abundance of caution, we are willing to identify and produce them to you, subject to a protective order and redactions.

Second, what does your privilege log cover and not cover? In your email, you said it was a "privilege log for the Administrative Record and the first set of documents we produced." The document is labeled "Privilege Log – Defendants' First Round of Production." Does the privilege log not account for documents withheld entirely on the basis of some privilege?

- The privilege log covers the documents that were identified and redacted, and the reason for those redactions are included in the privilege log. Per the agency, no specific identified documents have been entirely withheld on the basis of privilege, and therefore were not covered in the privilege log.

Third, and relatedly, when have you withheld responsive documents without a privilege log and/or without expressly saying so? In your written response, you use several different phrases that we thought meant different things. For example, compare these two responses:

- RFP 3: "For these reasons, Defendants are not producing anything in response to this Request as this time."
- RFP 8: "Subject to, and without waiving or in any way limiting these objections, Defendants state they have not identified any responsive documents within their custody or control dating from the operative time period addressing 'consideration . . . of increasing detention capacity.'"

We had understood these two responses to communicate that, with RFP 3, you were not producing documents due to your objections, and that with RFP 8, you had—notwithstanding your objections—run a search and found no responsive documents. During our call on Wednesday, we understood you to say that you had not in fact run a complete search but had instead run a search "consistent with your objections." Please clarify what your terminology means, particularly whether you have identified responsive documents and withheld them or whether you have limited your search. (We also request that same clarification for your other responses that use similar wording. *Compare, e.g.*, RFPs 5 *and* 6, *with* 11 *and* 12.) To the extent you have limited your search, we request a clarification as to methodology and exactly which search terms you used and which custodians you searched. Your objections to RFP 8, for example, span many different issues such as vagueness, overbreadth, concerns over the "tone" of the request, and "internal considerations." It is not clear to us how a search could be run "consistent with" those objections.

- For the language in RFP 3 (and in other responses where this phrase was used), we did not run a search. Based on the requests you made, and the objections we have to those requests, where we determined a topic was not relevant, privileged, the information sought was protected and/or Plaintiff was not entitled to documents on that request, we noted our objections, and therefore did not search for the requested material. Additionally, given the fact that these requests, as drafted, were problematic for the reasons given, any potential search would have been highly burdensome and disproportional to the needs of the case.
  As is typical in discovery in any case, we are willing to confer on specific requests to the extent they can be clarified and narrowed, and more tightly tailored to be relevant to the issues in this matter and avoid privileged material. Our objections to each request note the problems that we perceive with how they are drafted and/or the information they seek.
- For the language in RFP 8 (and in other responses where this phrase was used), while there were still many of the same issues, we did do a search for responsive material <u>excluding</u> any materials that clearly would have been privileged. Based on that exclusion, no documents were identified as being relevant to the request.

Finally, to the extent you have withheld documents on the basis of some privilege, such as attorney-client or deliberative process, we request that you clarify where you have withheld documents on that basis, confer with us regarding a complete privilege log, and confer regarding whether redactions are a more appropriate way to protect applicable privileges.

- As discussed above, we have not withheld any specific, identified documents on the basis of privilege. If we do, we will include it in a privilege log.

General Objections and Issues

Before we get into specific discovery requests, we want to note a few general issues.

First, we consider your entire method of objecting incomplete and improper. Your objections are general, and it appears that you copied and pasted certain paragraphs into several of your responses. For example, you frequently assert grounds like "burden" without providing any details in support of that objection, such as the type and scope of the burden and supporting details. We ask that you clarify the specific bases for your objections for each response so that we can evaluate the objections and make efficient use of the court's resources if and when we move to compel.

- Our objections are not general – they are tailored to the problems in each requests. Many of the requests had the same problems. For example, numerous requests sought personally identifiable information related to individuals. As each response is self-contained, we have to reiterate the same privacy objections in each flawed request.
- As to our burden objections, as discussed above, given how many of the requests are drafted, any searches are highly burdensome. However, we are willing to confer on specific requests to the extent they can be clarified and narrowed, and more tightly tailored to the issues in this matter, which may help mitigate the burden problem.

Second, your response asserts that anything before January 20, 2021, is irrelevant, but part of the issue in this case is whether there was a change in policy, and that requires comparing what is happening now to what has happened before. In fact, some of *your* discovery requests seek information from earlier than January 20, 2021, suggesting you agree with this point. Similarly, you assert that everything that has occurred since we filed our amended complaint is irrelevant, but the ongoing impact of the challenged policies is surely relevant to Florida's standing. Please let us know your position on these issues.

- The first issue is that many of your requests do not contain a timeframe, which makes them highly overbroad and burdensome. For example, RFP 27 seeks "Any and all documents showing arrests in the United States of aliens who were found to have criminal histories." We are required to read this request literally, i.e., as written. Therefore, as this request is written, Florida purports to be seeking all documents anywhere in the United States related to the criminal history of any alien going back without end. That's hundreds of years of documents. Many of your request are written like this, without proper limitations. Therefore, in order to respond at all, we have to put some logical parameters on the requests, such as a reasonable time parameters.
- Our understanding is that Florida is complaining about alleged new policies created by the current administration. Therefore, as you are alleging that the problems stem from decisions made during this administration, it made sense to designate January 20, 2021 as the beginning of the responsive period.
- If this understanding is incorrect, we are open to conferring on this issue.

Third, your response asserts that what aliens do once they enter the United States is irrelevant to this case, but such facts go to our standing, and you said in your motion to dismiss that our standing allegations on this topic were "speculative." Please let us know whether you have more salient grounds for asserting a relevance objection and, if not, whether you will reconsider your position.

- Many of the documents illustrating Florida's alleged injuries are in Florida's custody and control. We maintain that Florida lacks standing to bring this case, but are willing to confer on this topic to better understand what you are seeking that would not violate the privacy rights of individuals.

Fourth, we would like clarification of your objection regarding our definition of "inadmissible alien." You say that "noncitizens recently apprehended at the Southwest border" are only a "subset of all 'inadmissible noncitizens' governed by 8 U.S.C. § 1225(b)," but you also say that your response is limited to "only those noncitizens subject to section 1225(b) and corresponding policies and procedures." Do you use aliens "governed by" section 1225(b) to mean something different than aliens "subject to" section 1225(b)? If not, we do not understand how you have limited your response. Please clarify whether you understand aliens "subject to" 1225(b) and "governed by" 1225(b) to be distinct categories, and if distinct, whether your responses exclude materials based on that distinction—particularly if Defendants assert another authority such as 8 U.S.C. § 1226 as governing and have excluded such materials from production.

- The terms "governed by" and "subject to" are interchangeable in our responses.
- Our understanding of your Complaint, based on the authority you cite and the use of the term "arriving aliens", is that you are challenging only noncitizens who would be subject to 1225(b). Therefore, we limited our responses accordingly.

Specific Issues

We recognize your contention that the record rule generally governs review of the Parole + ATD policy on the merits. We also understand you to acknowledge that there are exceptions to that rule and that the rule does not apply to issues other than review of the policy on the merits (*e.g.*, standing). We also understand that you are not relying on the record rule for the non-detention policy because you have refused to provide a record. We therefore would like to take the following approach with your responses.

1. On requests related to the merits of Parole + ATD, we will defer conferral on our requests for now while we consider whether to seek any relief, with the exception of the threshold and general issues raised above.

- <span style="color:red">Per your May 17, 2022 email, it seems you have decided to make a motion to seek extra record discovery and demand that the record be supplemented. We will respond to that email separately, and ask that we confer on this before your motion is made, per the Court's Local Rules.</span>

2. On requests related to the merits of and existence of the non-detention policy, our second round of discovery requests aim at similar issues. If you agree, we will defer conferral on those requests until we see your responses to that second round of discovery, with the exception of the threshold and general issues raised above.

- <span style="color:red">As we have mentioned, no non-detention policy exists, making related searches for documents very difficult. To the extent you think our responses to the first and/or second set of requests on this issue are deficient, we are willing to discuss those deficiencies with you. If it seems further discovery is warranted, we are willing to discuss mutually agreeable search terms and custodians. Therefore, we agree we should hold off until we have served our second responses and then we should discuss further.</span>

3. On requests related to standing, we would like to prioritize conferral. You have said that our standing allegations are speculative, and those allegations are not covered by the record rule. You are also aware that the federal government possesses exclusive knowledge regarding aliens' status, when they entered the United States, and whether one of the challenged policies was applied to them. We therefore plan to seek discovery sufficient to prove our standing.

Consistent with the above, we would like to confer on RFPs 16-22, 41-42, and 46-47. Each of these are relevant to Florida's standing.

16-22: Each of these requests go to whether aliens released under the challenged policies travel to Florida and cost the State funds, a contention you insisted was "speculative" in your motion to dismiss. Further, while you say providing this information is "burdensome," DHS already provided similar information to the Governor of Florida—albeit in an aggregated fashion and for a shorter time frame—in the letter we disclosed under Rule 26. Having said that, we are happy to confer regarding ways to narrow this request and work out any privacy concerns, including with a narrow protective order limited to PII. We are also happy to discuss a limited stipulation regarding these issues. We simply want to ensure that we can prove what is obvious—that at least some of the tens of thousands of aliens being released each month at the border come to Florida and cost the State money.

- <span style="color:red">Our objections illustrate our concerns with these requests, but we are willing to confer on how to possibly narrow these requests to avoid violating the privacy rights of individuals, and make the requests more tailored to the issues in this matter. We also agree that a protective order would be necessary <u>if</u> discovery were to be provided.</span>
- <span style="color:red">Regarding a potential stipulation, as discussed in the May 11 phone call, we requested that you send the specific language to us for review. You did not send us any language, so we cannot take a position on a stipulation at this time.</span>

41-42: These requests go to whether these same aliens have committed crimes in Florida. This is relevant to our standing. Whether we need this information depends on what you can provide in response to 16-22. But if you cannot provide names, then we will seek to compel production of this information.

- <span style="color:red">See our response above. Let's revisit after we have conferred on 16-22.</span>

46-47: These requests go to specific examples that would be relevant to 41-42. Our position on this will depend on your position on the above.

- <span style="color:red">See our response above. Let's revisit after we have conferred on 16-22, and 41-42.</span>

Please let us know when you are available to confer.

- <span style="color:red">See above. We are available Thursday or Friday afternoon.</span>

**Joseph A. Darrow**
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Liberty Square Building
450 5th Street, NW
Washington, DC 20530-0001
Mobile: ███████████
joseph.a.darrow@usdoj.gov

---

**From:** James Percival <James.Percival@myfloridalegal.com>
**Sent:** Saturday, May 14, 2022 2:30 PM
**To:** Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>; Reuveni, Erez R. (CIV) <Erez.R.Reuveni@usdoj.gov>; Moyle, Marie (USAFLN) <MMoyle@usa.doj.gov>; Wilson, Sarah S. (CIV) <Sarah.S.Wilson@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>
**Cc:** Karen Brodeen <Karen.Brodeen@myfloridalegal.com>; Natalie Christmas <Natalie.Christmas@myfloridalegal.com>; Anita Patel <Anita.Patel@myfloridalegal.com>; Elizabeth Teegen <Elizabeth.Teegen@myfloridalegal.com>; Bilal Faruqui <Bilal.Faruqui@myfloridalegal.com>
**Subject:** [EXTERNAL] Florida v. U.S. - Defendants' responses to Plaintiffs' first RFPs

All,

Following up on our call on Wednesday, May 11, 2022, we are sending over the issues we want to continue conferring on regarding your responses to our first requests for production.

Threshold Questions

There are two issues that remain unclear to us, as we mentioned on the call. We request that you clarify these issues, either by amending your discovery response or providing us an explanation in writing.

First, is your discovery response complete or are your searches ongoing? You asked us for an extension, and we consented. We thus understood that you were providing a complete production and not producing documents on a rolling basis. We learned on the call, however, that there were documents you had only "discovered later," and we

understood you at least once to say that "searches were ongoing." We also know that you were looking into some issues related to a protective order, but until our call on Wednesday, we understood that you had made a complete production and that the protective order was only for purposes of providing unredacted copies of what you had already produced. Please clarify exactly which responsive documents are outstanding. If you need us to provide search terms, please let us know.

Second, what does your privilege log cover and not cover? In your email, you said it was a "privilege log for the Administrative Record and the first set of documents we produced." The document is labeled "Privilege Log – Defendants' First Round of Production." Does the privilege log not account for documents withheld entirely on the basis of some privilege?

Third, and relatedly, when have you withheld responsive documents without a privilege log and/or without expressly saying so? In your written response, you use several different phrases that we thought meant different things. For example, compare these two responses:

- RFP 3: "For these reasons, Defendants are not producing anything in response to this Request as this time."
- RFP 8: "Subject to, and without waiving or in any way limiting these objections, Defendants state they have not identified any responsive documents within their custody or control dating from the operative time period addressing 'consideration . . . of increasing detention capacity.'"

We had understood these two responses to communicate that, with RFP 3, you were not producing documents due to your objections, and that with RFP 8, you had—notwithstanding your objections—run a search and found no responsive documents. During our call on Wednesday, we understood you to say that you had not in fact run a complete search but had instead run a search "consistent with your objections." Please clarify what your terminology means, particularly whether you have identified responsive documents and withheld them or whether you have limited your search. (We also request that same clarification for your other responses that use similar wording. *Compare, e.g.*, RFPs 5 *and* 6, *with* 11 *and* 12.) To the extent you have limited your search, we request a clarification as to methodology and exactly which search terms you used and which custodians you searched. Your objections to RFP 8, for example, span many different issues such as vagueness, overbreadth, concerns over the "tone" of the request, and "internal considerations." It is not clear to us how a search could be run "consistent with" those objections.

Finally, to the extent you have withheld documents on the basis of some privilege, such as attorney-client or deliberative process, we request that you clarify where you have withheld documents on that basis, confer with us regarding a complete privilege log, and confer regarding whether redactions are a more appropriate way to protect applicable privileges.

General Objections and Issues

Before we get into specific discovery requests, we want to note a few general issues.

First, we consider your entire method of objecting incomplete and improper. Your objections are general, and it appears that you copied and pasted certain paragraphs into several of your responses. For example, you frequently assert grounds like "burden" without providing any details in support of that objection, such as the type and scope of the burden and supporting details. We ask that you clarify the specific bases for your objections for each response so that we can evaluate the objections and make efficient use of the court's resources if and when we move to compel.

Second, your response asserts that anything before January 20, 2021, is irrelevant, but part of the issue in this case is whether there was a change in policy, and that requires comparing what is happening now to what has happened before. In fact, some of *your* discovery requests seek information from earlier than January 20, 2021, suggesting you agree with this point. Similarly, you assert that everything that has occurred since we filed our amended complaint is irrelevant, but the ongoing impact of the challenged policies is surely relevant to Florida's standing. Please let us know your position on these issues.

Third, your response asserts that what aliens do once they enter the United States is irrelevant to this case, but such facts go to our standing, and you said in your motion to dismiss that our standing allegations on this topic were "speculative." Please let us know whether you have more salient grounds for asserting a relevance objection and, if not, whether you will reconsider your position.

Fourth, we would like clarification of your objection regarding our definition of "inadmissible alien." You say that "noncitizens recently apprehended at the Southwest border" are only a "subset of all 'inadmissible noncitizens' governed by 8 U.S.C. § 1225(b)," but you also say that your response is limited to "only those noncitizens subject to section 1225(b) and corresponding policies and procedures." Do you use aliens "governed by" section 1225(b) to mean something different than aliens "subject to" section 1225(b)? If not, we do not understand how you have limited your response. Please clarify whether you understand aliens "subject to" 1225(b) and "governed by" 1225(b) to be distinct categories, and if distinct, whether your responses exclude materials based on that distinction—particularly if Defendants assert another authority such as 8 U.S.C. § 1226 as governing and have excluded such materials from production.

Specific Issues

We recognize your contention that the record rule generally governs review of the Parole + ATD policy on the merits. We also understand you to acknowledge that there are exceptions to that rule and that the rule does not apply to issues other than review of the policy on the merits (*e.g.*, standing). We also understand that you are not relying on the record rule for the non-detention policy because you have refused to provide a record. We therefore would like to take the following approach with your responses.

1. On requests related to the merits of Parole + ATD, we will defer conferral on our requests for now while we consider whether to seek any relief, with the exception of the threshold and general issues raised above.
2. On requests related to the merits of and existence of the non-detention policy, our second round of discovery requests aim at similar issues. If you agree, we will defer conferral on those requests until we see your responses to that second round of discovery, with the exception of the threshold and general issues raised above.
3. On requests related to standing, we would like to prioritize conferral. You have said that our standing allegations are speculative, and those allegations are not covered by the record rule. You are also aware that the federal government possesses exclusive knowledge regarding aliens' status, when they entered the United States, and whether one of the challenged policies was applied to them. We therefore plan to seek discovery sufficient to prove our standing.

Consistent with the above, we would like to confer on RFPs 16-22, 41-42, and 46-47. Each of these are relevant to Florida's standing.

16-22: Each of these requests go to whether aliens released under the challenged policies travel to Florida and cost the State funds, a contention you insisted was "speculative" in your motion to dismiss. Further, while you say providing this information is "burdensome," DHS already provided similar information to the Governor of Florida—albeit in an aggregated fashion and for a shorter time frame—in the letter we disclosed under Rule 26. Having said that, we are happy to confer regarding ways to narrow this request and work out any privacy concerns, including with a narrow protective order limited to PII. We are also happy to discuss a limited stipulation regarding these issues. We simply want to ensure that we can prove what is obvious—that at least some of the tens of thousands of aliens being released each month at the border come to Florida and cost the State money.

41-42: These requests go to whether these same aliens have committed crimes in Florida. This is relevant to our standing. Whether we need this information depends on what you can provide in response to 16-22. But if you cannot provide names, then we will seek to compel production of this information.

46-47: These requests go to specific examples that would be relevant to 41-42. Our position on this will depend on your position on the above.

Please let us know when you are available to confer.



James H. Percival
Deputy Attorney General of Legal Policy
Office of the Attorney General
PL-01 The Capitol | Tallahassee, FL 32399-1050
Tel.: ▮▮▮▮▮▮▮▮
E-mail: james.percival@myfloridalegal.com