UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case No. 3:21-CV-1066

**STATE OF FLORIDA**,

        Plaintiff,

   v.

**The UNITED STATES OF AMERICA**, *et al.*,

        Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO REOPEN DISCOVERY**

**INTRODUCTION**

    The Court should deny Florida's motion to reopen discovery more than a month after discovery closed, and after summary judgment motions have already been filed, to seek irrelevant discovery on the basis of a two-page, draft internal memorandum addressing the agency's prior practice of issuing notices to report. Florida amended its complaint in this case to remove claims related to notices to report (NTR), and Defendants were clear during the discovery period that any discovery about notices to report was thus irrelevant to the claims and defenses in this case. If Florida disagreed about the relevance of notice to report practices and discovery related to those practices, then it should have raised that disagreement during the discovery period. Accordingly, Florida cannot meet its burden to establish good cause for reopening discovery.

    Florida's motion is based on a memorandum that only addresses notices to report, but Florida does not dispute that it long ago amended its complaint, *compare* ECF No. 1 *with* ECF No.16, and chose not to include claims challenging notices to report. The information Florida

1

intends to seek if discovery is reopened is thus irrelevant to the claims and defenses in this case, as Defendants clearly and consistently noted whenever Florida previously served discovery requests related to notices to report. By failing to dispute the irrelevance of this information during the discovery period, Florida has given up any opportunity to seek such discovery and, because Florida was well aware of Defendants' position with respect to discovery about notices to report during the discovery period, even if there were some argument that this information is relevant, Florida cannot establish excusable neglect in failing to raise this issue sooner or waiting until after the discovery deadline has lapsed to pursue it.

Moreover, the memorandum is a draft internal and deliberative document that was improperly released under a Freedom of Information Act (FOIA) request but should have been withheld in full as privileged. The agency is thus in the process of clawing back the document, and any information Florida might seek with respect to the memorandum at a deposition would similarly be privileged. Finally, reopening discovery and allowing Florida to take additional depositions after Defendants have already drafted and filed their motion for summary judgment would prejudice Defendants.

## ARGUMENT

Florida argues it should be able to obtain additional discovery, and in particular a deposition of former U.S. Customs and Border Protection official Rodney Scott, on the basis of an undated two-page draft memorandum from Rodney Scott with the subject "Notice to Report." *See* ECF No. 89-1, Pl.'s Mot. Ex. 1. The memorandum discusses notices to report, notes that "Border Patrol Agents (BPAs) retain discretion to place a removable migrants in proceedings" rather than issue a notice to report, sets out some of the considerations for exercising that discretion at the time of the memorandum, such as whether an individual "poses a threat to national security,

border security, or heightened public safety risk," or whether the individual is an "Unaccompanied Child," and notes that "[p]rocessing a migrants for NTR without entering them into proceedings is not taken lightly." *Id*. This draft internal memorandum from a former agency official discussing a prior agency practice does not provide any basis for reopening discovery in this matter.

The standard for reopening discovery after the deadline has lapsed is higher than the standard for extending the discovery deadline while discovery is still ongoing. Not only must the party seeking to reopen discovery show good cause, but they must also show that they failed to act sooner because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). To establish good cause, the moving party must establish that the schedule could not be met despite the party's diligence. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008). "If [a] party was not diligent, the [good cause] inquiry should end." *Id*. (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). To determine if there was excusable neglect, courts consider factors such as: "(1) the danger of prejudice to the nonmovant; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Ashmore v. Sec'y, Dep't. of Transp.*, 503 F. App'x. 683, 685-86 (11th Cir. 2013) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Florida does not dispute that it must show good cause and excusable neglect. Pl.'s Mo. at 4.

Florida cannot meet this standard. First, Florida cannot establish good cause to reopen discovery because discovery related to notices to report is not relevant to the claims or defenses in this matter. Even if it could be considered relevant, Florida was on notice of Defendants' position with respect to producing such discovery during the discovery period and has not shown why it could not have raised this issue before the discovery deadline. Florida argues that "there can be no

3

doubt the document, and any information Florida obtains by deposing its author, is relevant." Pl.'s Mot. at 4. But the assertion that information about notices to report is relevant to this case is both incorrect and untimely. Beginning at least as early as April 27, 2022, Defendants consistently and repeatedly made clear their view that information related to notices to report was not relevant to this case and therefore not responsive to any of Florida's discovery requests in Defendants' objections to those requests. *See, e.g.*, Defs' Responses to Pls' 1st Set of Requests for Production Nos. 3, 10, 14, 31, 39, 40, 49. And Florida did not challenge and thus acceded to this view while discovery was open.

When Florida's discovery requests either directly requested, or included broad statements interpreted by Defendants to cover, information about notices to report, Defendants were clear that they viewed such information as irrelevant to the claims in this case and thus would not be producing any information or documents about notices to report. For example, Florida's third request for production specifically asked for: "Any and all documents disclosing or discussing a policy by the Department of issuing 'notices to report' rather than charging documents to inadmissible aliens subject to removal from the United States." Pl.'s Mot. Ex. 2 at 8. In response, Defendants objected, among other things, "on the grounds that this request is not relevant to any parties' claims or defenses," noting that "Plaintiff amended its complaint and no longer challenges the discontinued Notice to Report processing pathway." *Id*. at 8-9. "For these reasons," Defendants noted that they would not be "producing anything in response to this Request." *Id*. at 9. Florida

4

did not challenge that objection or ever move to compel information related to notices to report during the discovery period.[1]

Defendants consistently made the same objection whenever Florida sought information about notices to report and repeatedly stated that no such documents would be produced in response to Florida's requests. For example, request for production number 10 asked for "documents disclosing or discussing the number of individuals to whom the Department has issued a 'notice to report.'" Pl.'s Mot. Ex. 2 at 17-18. Defendants made a similar objection about the irrelevance of notices to report to this case and were explicit that Defendants were "not producing anything in response to this Request" for this reason. *Id*. Request for production number 14 asked for "documents that disclose or discuss the anticipated effect of the Department's September 30, 2021, enforcement guidance on the Department's decision to issue 'notices to report' rather than charging documents." *Id*. at 22. Defendants again objected that information about notices to report was not relevant to the claims or defenses in this case. *Id*. And request for production number 31 asked for any "database documents that show the names and addresses of inadmissible aliens who reported Florida addresses and were issued a Notice to Report." *Id*. at 53. Defendants raised the same objection to producing anything in response related to notices to report. *Id*. at 54. In total, Florida served 8 separate requests for production that specifically mentioned notices to report, and each time Defendants objected and were clear that no such information would be produced.[2]

---

[1] *See also* Pl.'s Mot. Ex. 3 at 3 (Florida noting it "understood" Defendants' response to "RFP 3" to mean Defendants "were not producing documents due to [Defendants'] objections," and Defendants confirming that it did not plan to search for responsive documents because such documents would be irrelevant).

[2] Defendants raised similar objections to request number 39 ("Any and all emails, letters, memoranda, correspondence, and other documents from a member of Congress or its staff regarding the *Notice to Report practice*"), Pl.'s Mot. Ex 2 at 64 (emphasis added); request number 40 ("Any and all documents that report, allege, or indicate that an inadmissible alien committed a crime in the

5

Florida's assertion now, after accepting Defendants' repeated statements that they would not produce any documents related to notices to report because such information is irrelevant to the claims in this suit, that Florida nonetheless expected Defendants to produce such documents in response to its first request for production—which does not mention notices to report—defies basic logic.

Moreover, even though Florida argues that this memo was responsive to Florida's first request for production, Pl.'s Mo. Ex. 2 at 6, Defendants raised general objections to that request that would have excluded that document anyway, *see id.*, and Florida did not challenge those limiting objections during the discovery period. Florida did not challenge Defendants' clear limiting objections during the discovery period despite being well aware the Defendants were not including discovery on notices to report. Defendants consistently noted that notices to report were not relevant, not just to specific requests, but rather "not relevant to any parties' claims or defenses," because Florida had "amended its complaint and no longer challenges the discontinued Notice to Report processing pathway," *see e.g.*, Pl.'s Mot. Ex. 2 at 9-10.[3] Had Florida disagreed with this position, it could have raised it during the discovery period, but it did not, and Florida cannot show diligence or excusable neglect as a result. Because it cannot show diligence, Florida is precluded from establishing the good cause necessary to reopen discovery. *Oravec*, 527 F.3d at

---

United States after he was issued a *Notice to Report* by the Department."), *Id*. at 65, 67 (emphasis added); request number 49 (seeking the "administrative record for the U.S. Customs and Border Protection's *Notice to Report* processing pathway that was issued in March 2021."), *Id*. at 78 (emphasis added); request number 56 ("Any and all documents disclosing or discussing whether the Parole Plus Alternative to Detention policy was developed in response to Florida's lawsuit or based on federal officials' view that the *Notice to Report* processing pathway was unlawful."), *Id*. at 86-87 (emphasis added).

[3] In its motion to reopen discovery, Florida acknowledges that "Florida dropped its separate challenge to the notice to report policy." Pl.'s Mot. at 8. Discovery on notices to report was thus not only irrelevant when Defendants responded to Florida's discovery requests, but the discovery Florida seeks to obtain upon reopening is also irrelevant for this same reason.

6

1232 (noting the good cause inquiry should end if a party was not diligent); *EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 813 (11th Cir. 2017) (upholding denial of motion to reopen discovery where the basis for the motion—alleged short comings in the discovery responses—could have been identified and raised before the discovery deadline lapsed); *see also Ashmore*, 503 F. App'x. at 685-86 (noting courts should assess "the reason for the delay" when evaluating whether there was excusable neglect, "including whether it was within the reasonable control of the movant").

Additional points further weigh in favor of finding no good cause or excusable neglect and denying the motion. First, on the discovery response Florida did challenge, the parties negotiated and agreed to search terms and custodians to be used to find documents responsive to Florida's request. ECF No. 67 at 3; ECF No. 67-6 at 2-3; ECF No. 67-7 at 2-3. Florida cannot request and agree to search terms and custodians and then seek to reopen discovery simply because the result of those searches did not provide the information it actually wanted.

Second, discovery produced earlier in this case also referenced Rodney Scott, including the role he played with the notice to report practice. For example, in the deposition of Border Patrol Chief Raul Ortiz on July 28, 2022, Chief Ortiz was questioned about an email to Rodney Scott produced by Defendants, and Ortiz testified that Scott developed the NTR practice. *See* Deposition of Raul Ortiz at 144:9-15, 151:15-18 (attached as Exhibit A). Indeed, Florida attached to its motion for summary judgment an email on this subject to Scott among others, produced to Florida by Defendants during discovery. ECF 85-12. Despite being aware of Rodney Scott during the discovery period, Florida never sought to depose him.

Third, even if discovery were reopened, and discovery from Rodney Scott were relevant to this case, significant barriers exist to obtaining that discovery. For example, the memorandum on

which Florida bases its motion is a draft internal agency communication that was never signed or sent, and that was inadvertently produced under FOIA but that should have been withheld in full as privileged under FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5). The agency is thus in the process of clawing back that document from Florida. *See* Oct. 6, 2022 Letter to James Percival (attached as Exhibit B); *see also EEOC v. Whiting-Turner Contracting Co.*, No. 3:21-cv-753, 2022 WL 3221825, at *6 (M.D. Tenn. Aug. 9, 2022) (noting "courts generally require that documents be returned" when addressing "requests to claw back documents inadvertently produced in a FOIA request" that were not produced in discovery, and collecting cases in support of that proposition). Regardless of whether the document is successfully clawed back, any further questioning in this case about the document or about internal agency deliberations would be privileged under deliberative process privilege. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A deposition aimed at obtaining such information would be useless as any inquiry into privileged information would be objected to, and Florida cannot show good cause to reopen discovery to ask questions at a deposition that the witness could not answer. The "likelihood that the discovery will lead to relevant evidence" is a factor courts consider in evaluating whether there is good cause to reopen discovery. *See Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (collecting cases). Given the privileged nature of testimony concerning this memorandum, or any related internal agency deliberations, pursuing discovery regarding this memorandum would yield little or no evidence.

In addition, Rodney Scott is no longer employed by the agency, meaning that Florida would have to subpoena him directly. However, to the extent Florida would seek to depose him about information obtained during his government employment, DHS would still have to authorize the release of such information. *See* 6 C.F.R. § 5.44(a) ("No … *former employee*[ ] of the Department

8

shall, in response to a demand or request, including in connection with *any litigation*, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Office of the General Counsel") (emphasis added). And before seeking such information "through testimony or otherwise," Florida "must … set forth in writing, and with as much specificity as possible, the nature and relevance of the information sought" and submit such document to DHS's Office of General Counsel for review before any such testimony can be authorized. 6 C.F.R. § 5.45(a); *see also Untied States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951) (upholding lawfulness of agency regulations governing the conditions under which testimony by agency employees may be provided). Florida has not done so here.[4]

Another factor a Court may consider in evaluating good cause and excusable neglect is the danger of prejudice to Defendants, the nonmoving party, from reopening discovery. *Ashmore*, 503 F. App'x. at 685-86. Here, Defendants would be prejudiced by having to devote additional time and resources to discovery that was already extended in this matter on an unopposed motion by Florida, ECF No. 70, and involved extensive discovery requests and a substantial number of depositions of various agency officials, including some high-ranking agency officials. In addition, Defendants have already filed their motion for summary judgment, and would be prejudiced both by being required to engage in additional discovery while completing briefing on summary judgment, including the response to Florida's cross-motion for summary judgment, and from either

---

[4] Nor did Florida explain in its email noting its intent to file this motion what specific information it plans to seek or the relevance of that information. Defendants requested to confer by phone on this motion, but Florida filed the motion before that call was scheduled. Defendants were therefore unable to understand and address Florida's concerns.

losing the opportunity to address any new developments in their motion by having already filed it, or by being requiring to engage in additional rounds of briefing to address it. *See EarthCam*, 703 F. App'x at 813 (finding reopening discovery would cause prejudice to party that had already filed motion for summary judgment and would likely have to submit additional or substitute briefing if discovery was reopened). The prejudice and potential delay to the proceedings from reopening discovery after the parties have already moved for summary judgment are both factors that weigh against reopening discovery. *See Ashmore*, 503 F. App'x. at 685-86. Florida attempts to minimize the extent of the prejudice and delay, but does not dispute that reopening discovery would cause some prejudice and delay. Pl.'s Mot. at 7.

The final factor a court may consider is "whether the movant acted in good faith." *See Ashmore*, 503 F. App'x. at 685-86. Here, Florida's sudden urgency about discovery related to notices to report (and threats of possibly seeking sanctions, *see* Pl.'s Mot. at 2 n.2), is inconsistent with Florida's indifference to such discovery during the discovery period. Florida argues this discovery is necessary to determine whether the alleged "non-detention policy" "exists," Pl.s' Mot at 2, but this is the same justification Florida advanced for the earlier discovery it sought—and already received—including the earlier depositions Florida completed. For example, Florida previously argued, after already completing many depositions in this case, that it should have an opportunity for *another* deposition of *another* high-ranking agency official, Corey Price, for exactly the same purpose of determining "whether the policy exists." ECF No. 78 at 1. Yet after completing that deposition, Florida's subsequent motion for summary judgment barely mentions the Price deposition, and did not use that deposition at all to try to establish the existence of an alleged "non-detention" policy. *See generally* ECF No. 86. Out-of-context video clips of the deposition did, however, quickly end up in the news, just as earlier depositions had, along with

10

exaggerated claims from Florida about what it had established in the deposition, indicating that Florida is using discovery more to generate headlines than to actually advance the litigation. *See* Attorney General Ashley Moody News Release, *http://www.myfloridalegal.com/newsrel.nsf/newsreleases/04C7CF95EC4C74C2852588C500562 10D?Open&*; Fox News, *https://www.foxnews.com/politics/ice-official-testifies-that-biden-admin-removing-7-times-fewer-migrants-than-a-decade-ago-under-obama.amp*.[5]

## CONCLUSION

In sum, Florida does not dispute that it withdrew its claims challenging the former practice of issuing notices to report, nor does it dispute that Defendants put Florida on notice repeatedly that discovery related to notices to report was irrelevant to the claims and defenses in this suit. Florida never challenged those objections and thus cannot show good cause to reopen discovery based on a draft memorandum that solely addresses notices to report, which was inadvertently released in FOIA and is being clawed back as deliberative and privileged. Nor can Florida show diligence or excusable neglect in failing to raise this issue earlier or dispute Defendants' objections during the discovery period. In addition, reopening discovery after Defendants have already moved for summary judgment would delay this case, prejudice Defendants, and would not lead to any relevant, non-privileged, or admissible information.

For these reasons, the Court should deny Florida's motion and allow the case to proceed on the existing schedule without further delay.

---

[5] Florida's assertion that it needs to reopen discovery and seek yet another deposition to search for evidence that the alleged "non-detention policy" actually exists is also an implicit concession that Florida was not able to establish that there is any such policy despite extensive discovery, and further supports Defendants' arguments that Florida lacks standing or a viable claim for relief.

Date: October 20, 2022

JASON R. COODY
*United States Attorney*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

ERIN T. RYAN
*Trial Attorney*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Email: Joseph.a.darrow@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section

## **CERTIFICATE OF WORD COUNT**

Consistent with Local Rule 7.1(F), this response contains 3,484 words.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division