# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-01066 |
| | ) | |
| The UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## PARTIAL MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................................1

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS ...........................2

ARGUMENT .....................................................................................................4

I.   **Florida Cannot Seek Summary Judgment Solely on Standing** .................5

II.  **Florida Fails to Meet Any of the Requisite Elements for Standing** ...........7

    A.   **Florida's Claims Fail As A Matter of Law at the Threshold**..............7

        i.   **Florida's Claimed Indirect Harms to a State are Insufficient to Establish Standing** ............................................................................8

        ii.  **Florida Has No Cognizable Injury from the Enforcement Decisions of Others** .........................................................................10

        iii. **Florida is Not Entitled to Special Solicitude In This Case**..........11

    B.   **Florida Fails to Establish Injury, Causation and Redressability** .....13

        i.   **Florida Fails to Show Cognizable Harms from "Specific Individuals"** ...................................................................................15

            a.   **Florida Gains Revenue from ID Issuance and Is Not Harmed** ................................................................................15

            b.   **Florida Cannot Trace the SAVE Costs to the Challenged Policies** .............................................................................17

            c.   **Florida's New Declarations Cannot Establish Its Entitlement to Summary Judgment** .......................................................18

        ii.  **Florida Cannot Establish Standing Based Solely on Speculation About Costs for Serving Noncitizens Generally** .........................20

a.   Incarceration - Department of Corrections (DOC) ..............22

b.   Public Assistance - Department of Children and Families (DCF) ...................................................................................23

c.   Public school expenses - Department of Education (DOE)..24

d.   Medical services - Agency for Health Care Administration (AHCA)................................................................................25

e.   Unemployment benefits - Department of Economic Opportunity (DEO)............................................................26

f.   Driver's Licenses – Highway Safety and Motor Vehicles (HSMV) ...............................................................................27

iii.   Florida's One-Dollar Injury Theory Fails ....................................28

C.   Florida Fails to Address, and thus Concedes, Redressability...........30

CONCLUSION...................................................................................................34

CERTIFICATE OF COMPLIANCE ................................................................35

CERTIFICATE OF SERVICE .........................................................................35

## TABLE OF AUTHORITIES

### CASES

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) ............................................................. 9, 12

*Arpaio v. Obama*,
    27 F. Supp. 3d 185 (D.D.C. 2014) ........................................................9

*Barrett v. Walker Cnty. Sch. Dist.*,
    872 F.3d 1209 (11th Cir. 2017) ............................................................6

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) .............................................................13

*Bischoff v. Osceola Cnty., Fla.*,
    222 F.3d 874 (11th Cir. 2000) .............................................................6

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
    781 F.3d 1271 (11th Cir. 2015) ..........................................................13

*Brown v. Publix Super Markets, Inc.*,
    626 F. App'x 793 (11th Cir. 2015) .....................................................18

*California v. Texas*,
    141 S. Ct. 2104 (2021) ......................................................................13

*Carpenters Indus. Council v. Zinke*,
    854 F.3d 1 (D.C. Cir. 2017) ...............................................................29

*Case v. Eslinger*,
    555 F.3d 1317 (11th Cir. 2009) ..........................................................11

*Chiles v. United States*,
    69 F.3d 1094 (11th Cir. 1995) ...........................................................12

*City of Miami Gardens v. Wells Fargo & Co.*,
    931 F.3d 1274 (11th Cir. 2019) ...................................... 11, 14, 21, 28

*Conoco Inc. v. J.M. Huber Corp.*,
    148 F. Supp. 2d 1157 (D. Kan. 2001) ..................................................5

*Cordoba v. Dillard's, Inc.*,
   419 F.3d 1169 (11th Cir. 2005) ...................................................... *passim*

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017) ........................................................................29

*Delorme v. United States*,
   354 F.3d 810 (8th Cir. 2004) ...........................................................31

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ............................................................ 8, 9, 13

*Direct Mktg. Ass'n v. Brohl*,
   575 U.S. 1 (2015) .............................................................................33

*Fed'n for Am. Immigr. Reform, Inc. v. Reno*,
   93 F.3d 897 (D.C. Cir. 1996) ...........................................................21

*Fisher v. Ciba Specialty Chemicals Corp.*,
   No. CIV.A. 03-0566WS-B, 2007 WL 2995525 (S.D. Ala. Oct. 11, 2007) ...........5

*Fla. State Conf. of NAACP v. Lee*,
   566 F. Supp. 3d 1262 (N.D. Fla. 2021) ...................................... 21, 31

*Florida v. Mellon*,
   273 U.S. 12 (1927) ...........................................................................28

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .........................................................................32

*Garland v. Aleman Gonzalez*,
   142 S. Ct. 2057 (2022) ............................................................. 32, 33

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ...........................................................................9

*In re Rawson Food Serv., Inc.*,
   846 F.2d 1343 (11th Cir. 1988) ....................................................5, 6

*Johnson v. Bd. of Regents of Univ. of Georgia*,
   263 F.3d 1234 (11th Cir. 2001) .......................................................11

*Laird* v. *Tatum*,
    408 U.S. 1 (1972) ...........................................................................10

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) .......................................................................10

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ................................................................ *passim*

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ........................................................... 11, 12, 13

*McCormick v. Aderholt*,
    293 F.3d 1254 (11th Cir. 2002)......................................................15

*McCormick v. City of Fort Lauderdale*,
    333 F.3d 1234 (11th Cir. 2003)......................................................18

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*,
    768 F.3d 1135 (11th Cir. 2014)......................................................31

*Native Am. Arts, Inc. v. The Waldron Corp.*,
    253 F. Supp. 2d 1041 (N.D. Ill. 2003).............................................5

*Printz v. United States*,
    521 U.S. 898 (1997) .........................................................................8

*Santhuff v. Seitz*,
    385 F. App'x 939 (11th Cir. 2010).......................................... 19, 20

*Schultz v. United States*,
    529 F.3d 343 (6th Cir. 2008) ...........................................................5

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) .......................................................................29

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ....................................................................8, 29

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) .......................................................................10

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) .................................................................30

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) .................................................................29

*Three Expo Events, L.L.C. v. City of Dallas, Texas*,
  907 F.3d 333 (5th Cir. 2018) .................................................................16

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ...........................................................................10

*Trautt v. Keystone RV Co.*,
  No. 2:19-CV-00342-RAJ, 2020 WL 4539200 (W.D. Wash. Aug. 5, 2020) .........5

*United States* v. *Richardson*,
  418 U.S. 166 (1974) ...............................................................................10

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021)..............................................................................29

*Van T. Junkins & Assoc. v. U.S. Indus. Inc.*,
  736 F.2d 656 (11th Cir. 1984) .........................................................3, 19

*W. Virginia v. United States Dep't of Treasury*,
  No. 7:21-CV-00465-LSC, 2021 WL 2952863 (N.D. Ala. July 14, 2021)...........16

*Williams v. Mosaic Fertilizer*, LLC,
  889 F.3d 1239 (11th Cir. 2018)................................................................4

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)................................................................21

**STATUTES**

8 U.S.C. § 1226(a) ...............................................................................32

8 U.S.C. § 1226(a)(3)............................................................................26

8 U.S.C. § 1252(f) ................................................................................32

8 U.S.C. § 1252(f)(1) .........................................................................2, 32

8 U.S.C. § 1182(d)(5)............................................................................26

vi

8 U.S.C. § 1182(d)(5)(A) ............................................................................ 20, 33

8 U.S.C. § 1225 ............................................................................................. 32

Fla. Stat. § 414.095(3) ................................................................................... 23

## REGULATIONS

8 C.F.R. § 212.5(b) ........................................................................... 17, 26, 32

**INTRODUCTION**

Plaintiff, the State of Florida, asserts it may sue the federal government over its disagreement with the Executive Branch about how to enforce immigration law most effectively and efficiently. Florida does nothing more, however, than speculate as to whether its alleged injuries are caused by the immigration actions it challenges and whether a favorable order here would redress its claimed injuries. The Court should therefore conclude that Florida lacks Article III standing and enter summary judgment in Defendants' favor.

To start, Florida's motion for summary judgment is procedurally improper, because it is directed solely to the issue of standing. That alone is reason to deny its motion, as a party cannot move for summary judgment only on standing unattached to any claim or affirmative defense.

Florida has no direct injury imposed by the federal government, and only claims *indirect* costs arising from the possible conduct of third parties. Such incidental effects are not cognizable injuries supporting state standing against the federal government. Additionally, Florida cannot show that any alleged injuries are caused by the challenged practices. Florida challenges Parole Plus Alternatives to Detention (Parole+ATD) and an alleged "non-detention policy." ECF 74. Therefore, to show standing and survive summary judgment, Florida must provide concrete evidence of injury from these specific practices, which is a higher burden than at the

motion to dismiss stage, where Florida could rely simply on favorable inferences. The undisputed evidence developed during discovery establishes that Florida has no evidence of a causal link between Parole+ATD or alleged "non-detention policy" (which the undisputed evidence shows does not exist, *see generally* ECF Nos. 87, 88) and costs to state agencies or programs.

Further, Florida has no evidence the Court can redress its claimed injury of costs from serving noncitizens by vacating or enjoining Parole+ATD or any alleged "non-detention policy." Redressability is therefore purely speculative. In addition, Florida's claims are not redressable because 8 U.S.C. § 1252(f)(1) and separation of powers principles bar the form of judicial intervention that Florida seeks.

Accordingly, the Court should deny Florida's motion and instead, for the reasons given in Defendants' motion for summary judgment, ECF 88, enter summary judgment in Defendants' favor on standing and on all claims.

## RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

The Court should not consider the declarations on which Florida's factual statement relies. The declarants were deposed as Rule 30(b)(6) witnesses for their respective agencies, but rather than use this sworn deposition testimony, Florida submits newly submitted declarations. These declarations improperly seek to add to

or contradict the declarants' deposition testimony and therefore should be disregarded by the Court.[1]

In any event, neither the declarations nor the other evidence Florida cites controverts the testimony of witnesses for Florida's identified agencies.[2] None of these agencies has provided any evidence showing the expenditure of any funds or the provision of services to applicants for admission who were paroled or otherwise released by federal authorities at the border. Nor do the agencies even track this category of noncitizens. ECF 87-3 at 35:15-23, 36:20-37:5, 37:6-14, 38:13-40:3, 70:20-71:1; ECF 87-4 at 31:16-19, 32:9-16; ECF 87-5, 53:18-54:1, 54:16-55:14; ECF 87-6 at 32:22-33:13; ECF 87-7 at 36:5-13, 37:2-38:1; ECF 87-8 at 25:3-7, 26:3-6, 29:18-19, 48:5-23, 51:23-52:2, 67:16-23, 70:17-25; ECF 87-9 at 32:15-34:13, 71:11-18, 74:24-75:5, 84:23-85:3; ECF 87-10 at 43:16-44:12, 57:14-58:13, 75:25-76:4. Further, Florida actually nets revenue from issuing forms of identification to

---

[1] A party "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion, that, by omission or addition, contradicts the affiant's previous deposition testimony." *Van T. Junkins & Assoc. v. U.S. Indus. Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). This is discussed further, *infra* 18.

[2] The specific agencies are: Departments of Correction, Education, Economic Opportunity, Children and Families, Highway Safety and Motor Vehicles, and Agency for Health Care Administration. The specific evidence regarding each agency is discussed in depth, *infra* 22.

noncitizens because it charges more in fees than it spends on the identified verification costs. ECF 87-10, 58:5-8, 59:12-14, 43:3-5.[3]

## **ARGUMENT**

The Court should deny Florida's improper summary judgment motion, and grant Defendants' summary judgment. Florida cannot move for summary judgment on standing unattached to any claim or defense. Moreover, Florida still fails to establish a genuine issue of material fact as to each element required for standing: injury, causation, and redressability. Indeed, Florida points to no evidence on redressability at all, effectively conceding the issue, and its witnesses' uncontroverted testimony precludes Florida from establishing causation because the only harms Florida alleges are indirect and the evidence fails to connect them to the practices challenged in this case.

---

[3] The statements by ICE ERO Executive Associative Director Corey Price cited by Florida do not overcome a genuine dispute of material fact, nor do they establish Plaintiff's standing to bring this case. ECF 86 at 8. The prompting questions were all validly objected to during his deposition, as they all call for speculation, and the Court should not admit this testimony for summary judgment. ECF 96-1, 129:1-133:22; *see Williams v. Mosaic Fertilizer*, LLC, 889 F.3d 1239, 1250 (11th Cir. 2018) (citing Fed. R. Evid. 701 Advisory Committee Notes, 2000 Amendments). Mr. Price was not Defendants' Rule 30(b)(6) witness and did not testify that he had personal knowledge of one or more noncitizens enrolled in Parole+ATD or otherwise released since January 20, 2021, who committed crimes or used any state services in Florida. *See* ECF 96-1, 129:1-133:22. His answers were inadmissible speculation, as underscored by the fact that he repeatedly caveated them with statements that "[i]t's a little complicated," he "d[id]n't know" and "can't tell the future," and only "assume[d]" noncitizens would commit crimes or incur costs, further illustrating the impermissibly speculative nature of the testimony. ECF 96-1, 129:20-22, 130:8-11, 130:21-22, 130:12, 132:9-11, 132:22, 133:6. Such speculation should not be considered by the Court in evaluating Florida's standing.

I.   **Florida Cannot Seek Summary Judgment Solely on Standing.**

Florida's motion for summary judgment solely on standing, unattached to any claim or affirmative defense, is procedurally improper and should be denied on this basis alone.

Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The "defense" referenced is an affirmative defense, not merely any proffered "defect" with a claim. *Trautt v. Keystone RV Co.*, No. 2:19-CV-00342-RAJ, 2020 WL 4539200, at *2 (W.D. Wash. Aug. 5, 2020); *see, e.g.*, *Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1165 (D. Kan. 2001); *Fisher v. Ciba Specialty Chemicals Corp.*, No. CIV.A. 03-0566WS-B, 2007 WL 2995525, at *21 (S.D. Ala. Oct. 11, 2007).

Defenses that merely negate an element of a plaintiff's prima facie case—such as the need to establish federal subject matter jurisdiction— "are excluded from the definition of affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Rule 8(c)(1) provides a list of affirmative defenses; lack of standing is conspicuously not among them. Fed. R. Civ. P. 8(c)(1). This is because lack of standing is not an affirmative defense under federal law. *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008); *Native Am. Arts, Inc. v. The Waldron Corp.*, 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003). This is evident both because,

5

unlike with affirmative defenses where the defendant bears the burden of proof, the *plaintiff* bears the burden of pleading and proving standing. *In re Rawson Food Serv., Inc.*, 846 F.2d at 1349 (*citing Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)). And, lack of standing can be raised on a Rule 12(b) motion to dismiss, whereas affirmative defenses cannot. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).

The only case Florida cites to support its proposition that it can move for partial summary judgment solely on the issue of standing, *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1221 n.8 (11th Cir. 2017), is inapt. ECF 86 at 9. The plaintiff in *Barrett* did not file a motion for summary judgment only on standing, but rather also on the merits of his First Amendment facial challenge. *See generally id.* The district court granted summary judgment on the merits and entered a permanent injunction. *Id.* at 1218-20. On appeal, the Eleventh Circuit, in addition to assessing standing, also reviewed and affirmed the grant of summary judgment on the First Amendment "unbridled-discretion" claim and partially affirmed the injunction. *Id.* at 1231. *Barrett* did not address or sanction the possibility of moving for summary judgment solely on standing. *See id.* Florida cannot do so here, unattached to any merits claim for summary judgment.

On this basis alone, the Court should deny Plaintiff's partial summary judgment motion.

II.   **Florida Fails to Meet Any of the Requisite Elements for Standing.**

Florida's motion should also be denied because it fails to establish, much less demonstrate a genuine issue of fact as to, any of the elements necessary to establish Article III standing: concrete and particularized injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 560; ECF 88-1 at 9-20. Florida cannot establish direct harm from Parole+ATD and the alleged "non-detention policy" (if the latter existed, which it does not, ECF 88-1 at 25-38). Such alleged immigration actions do not impose any requirements on states but only regulate the detention or release of noncitizens apprehended at or near the border.

Florida also cannot show a legally cognizable and traceable indirect injury from the challenged actions, in the form of costs to the State should it provide services to any released noncitizens who require public services after independently deciding to settle in Florida. Testimony and documentary evidence confirmed that Florida does not know whether these costs were spent on noncitizens who were released under the practices challenged here. Finally, Florida fails to address, and cannot establish, redressability: it is at best speculative that its requested relief would reduce its costs attributable to noncitizens.

A.   **Florida's Claims Fail As A Matter of Law at the Threshold.**

Before even reaching the factual arguments regarding the elements of standing, the Court should reject Florida's arguments because Florida's alleged

injuries are all indirect and thus categorically cannot support standing, it has no legally cognizable injury in enforcement actions against third-party noncitizens, and it is not entitled to special solicitude.

    **i.**    ***Florida's Claimed Indirect Harms to a State are Insufficient to Establish Standing.***

First, indirect economic harm to a state from federal action that does not directly regulate the state, which is all that Florida alleges here, is insufficient to establish standing to sue the federal government. Generally, to have standing to sue the federal government, a state must be the object of the federal action—for example, where the United States requires the state to act or to refrain from acting, determines how much federal funding it receives, or deprives it of a legal right. *See, e.g., Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (standing based on potential loss of federal funding awarded on basis of state population); *Printz v. United States*, 521 U.S. 898, 904 (1997) (federal statute directed state law enforcement officers to participate in federal gun-regulation program). However, Florida is not itself the object of Parole+ATD or the nonexistent "nondetention policy." Even if the latter existed, it and Parole+ATD would be internal to the federal government, directed at CBP and ICE officers, and concern the detention or release of applicants for admission at the border. The challenged actions would not regulate or operate on Florida; tell Florida or its officers what they must or must not do; nor alter nor deprive any of Florida's federal legal rights. *See Summers v. Earth Island Inst.*, 555

U.S. 488, 493-94 (2009); *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022) ("Contingent injuries, especially those arising from the impact of regulations on third parties not before the Court, rarely create cognizable cases or controversies."). Nor would they deprive Florida of any federal funding. *Dep't of Commerce*, 139 S. Ct. at 2565.

The only injuries Florida alleges (but does not prove with evidence) are putative *indirect* costs from speculation that noncitizens released under the challenged actions will move to Florida and engage public services. Even were this speculation proven true (which it has not been, *infra* 20), a state "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015). Such an injury is a non-cognizable generalized grievance. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). Accepting it "would permit nearly all state officials to challenge a host of Federal laws simply because they disagree with how many—or how few—Federal resources are brought to bear on local interests." *Arpaio*, 27 F. Supp. 3d at 202.

A regime in which any state could challenge virtually any federal policy by claiming to suffer indirect downstream costs from the policy would enable states to treat the federal courts as "an open forum for the resolution of political or ideological

9

disputes." *United States* v. *Richardson*, 418 U.S. 166, 192 (1974) (Powell, J., concurring). And it would distort the separation of powers by turning federal judges into "virtually continuing monitors of the wisdom and soundness of Executive action." *Laird* v. *Tatum*, 408 U.S. 1, 15 (1972).

### ii.   *Florida Has No Cognizable Injury from the Enforcement Decisions of Others.*

Second, Florida cannot establish an injury arising from its disagreement with Defendants over whom the government should detain or release, which is what its challenges in this case amount to. It is black-letter law that a litigant "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Decisions about "how to prioritize and how aggressively to pursue legal actions" against individuals violating law, such as noncitizens entering the country unlawfully, fall "within the discretion of the Executive Branch, not within the purview of private plaintiffs (and their attorneys)." *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). Florida claims that DHS is not immediately initiating removal proceedings and/or detaining certain applicants for admission at the border, when in Florida's view, DHS should be pursuing such enforcement actions against these individuals. Such claims are foreclosed under these settled legal principles. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (third parties "have no judicially cognizable interest in procuring enforcement of the immigration laws"); *Arizona*, 40 F.4th at 383.

10

###### iii.    *Florida is Not Entitled to Special Solicitude In This Case*.

Finally, Florida claims it is entitled to special solicitude as a state. ECF 86 at 9 (citing ECF 45 at 12-13 (quoting *Massachusetts v. EPA*, 549 U.S. 497, 519-20 (2007)). Florida, however, does not develop this argument nor cite any evidence in support of its claim for special solicitude, relying instead on the Court's analysis at the motion to dismiss stage. ECF 86 at 9. The burden at the summary judgment stage is different: mere allegations and conjecture no longer suffice; Florida must advance concrete evidence to support standing. *See Lujan*, 504 U.S. at 561; *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019). The Court should decline to consider this argument due to Florida's failure "to advance it in any meaningful way at the time of summary judgment." *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001); *accord Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009).

Were the Court to address this argument, *Massachusetts* does not support the recognition of "special solitude" here. In affording the state "special solicitude" in *Massachusetts*, the Court explicitly relied on two features of that case that are absent here. 549 U.S. at 520. First, *Massachusetts* involved the threatened loss of territory owned by and subject to the sovereignty of the state—a harm that the Supreme Court has long treated as distinctive and legally cognizable. *Id.*; *see* Ann Woolhandler & Michael G. Collins, *State Standing*, 81 Va. L. Rev. 387, 415-16 (1995). Florida, in

contrast, does not identify any loss of territory, but rather advances injuries in the form of "indirect fiscal burdens" that allegedly result from Defendants' parole or conditional release of applicants for admission under the challenged actions—a "humdrum feature" of federal policies. *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022).

Second, *Massachusetts* attached "critical importance" to the state's "procedural right" under the Clean Air Act to challenge the denial of a petition for rulemaking on emissions standards. 549 U.S. at 516, 518. "[A] person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7. But the INA creates no procedural right for any third party such as a state to challenge immigration enforcement and detention and practices. *See, e.g.*, *Chiles v. United States*, 69 F.3d 1094, 1096 (11th Cir. 1995). ("Congress intended whether the [Secretary] is adequately guarding the borders of the United States to be committed to agency discretion by law and, thus, unreviewable."). Indeed, outside of *Massachusetts*, the Supreme Court has not afforded states "special solicitude" in any other context. To the contrary, since *Massachusetts*, the Court has consistently analyzed state standing without granting states favorable treatment simply because they are states. *See, e.g.*, *California v. Texas*, 141 S. Ct. 2104, 2116-2120 (2021); *Dep't of Commerce*, 139 S. Ct. at 2565.

Further, *Massachusetts* relied on a procedural right specific to the substantive statute at issue. 549 U.S. at 516, 518. It does not support the conclusion that Florida asks for here: that the framework providing general review of agency action under the APA somehow confers a special "procedural right" lowering the bar to establish aspects of Article III standing. To hold such would be wholly inconsistent with the legions of APA cases noting no such lowered standing burdens based on a "procedural right" granted by the APA. *See, e.g.*, *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1281 (11th Cir. 2015); *Beck v. McDonald*, 848 F.3d 262, 277 (4th Cir. 2017); *see also Lujan*, 504 U.S. at 572 (eschewing a generalized view and identifying specific substantive "procedural rights"). In sum, Florida is not entitled to any special solicitude in this case that would lower its ordinary standing burdens.[4]

## B.   Florida Fails to Establish Injury, Causation and Redressability.

Furthermore, Florida fails to point to evidence creating a genuine issue of material fact as to a cognizable and redressable injury caused by the conduct challenged here.

To show standing from indirect costs, Florida advances two theories: (1) "it expends funds on specific individuals who were released under the challenged

---

[4] Even were Florida entitled to special solicitude, such designation still "does not remove Article III's imperative of a cognizable case or controversy or the requirements of injury, causation, and redressability." *Arizona*, 40 F.4th at 385-86.

policies" and (2) noncitizens "are coming to Florida and would not be in Florida but for the challenged policies, and Florida provides and pays for services available to aliens such that there can be 'little doubt' aliens utilize those services." ECF 86 at 9-10. Neither of these theories has merit.

Florida fails to provide evidence establishing a "concrete and particularized" cost directly "caus[ed]" by Parole+ATD or other conditional releases of applicants for admission pending their removal proceedings, *Lujan*, 504 U.S. at 560-61. Florida's showing for each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *City of Miami Gardens*, 931 F.3d at 1282. Florida must point to evidence "indicat[ing] that a genuine issue of material fact exists concerning standing" simply to survive Defendants' summary judgment motion, much less establish that undisputed evidence supports awarding summary judgment in Florida's favor, a significantly harder evidentiary hurdle. *See id.* at 1283. Here, the evidence fails to do both. Florida cannot obtain summary judgment or demonstrate a factual dispute due to the absence of competent evidence causally connecting any alleged cost from serving noncitizens to applicants for admission released under the actions *challenged in this case. See Lujan*, 504 U.S. at 560-61. Further, Florida bears the burden of proof that

federal jurisdiction exists. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). It fails to satisfy this burden.

   i.   ***Florida Fails to Show Cognizable Harms from "Specific Individuals."***

Florida first argues it can show standing based on expenditures for specific noncitizens released by Defendants under the challenged practices. ECF 89 at 9. Florida puts forward only one source of specific-individual cost: to issue a driver's license or identification card to noncitizens, its Department of Highway Safety and Motor Vehicles (HSMV) first verifies the noncitizen's eligibility through DHS's Systematic Alien Verification System (SAVE) at the cost of 50-cents per search. ECF 86 at 10.  That theory is insufficient.

   a.   <u>Florida Gains Revenue from ID Issuance and Is Not Harmed.</u>

Florida's theory fails, first, because the undisputed evidence establishes that Florida actually nets revenue from issuing licenses to noncitizens; it does not incur a cost from the process. Florida may not charge noncitizens an *additional* fee to *specifically* cover the 50-cent charge, ECF 86 at 10, undisputed evidence establishes that Florida charges all applicants $25 for each identification card (ECF 87-10 at 59:12-14) and $48 for each driver's license (*id.* at 43:3-5). This means Florida generates far more in revenue than it expends as part of the process of identification issuance, for citizens and noncitizens alike, netting millions in revenue from this activity (between $18.6 million to $35.8 million for the January 2020 to March 2022

period). ECF 88-1 at 18; ECF 87-10 at 58:5-8, 59:12-14, 43:3-5. Although Florida impermissibly relies on the declaration of Robert Kynoch, *see infra* 18, even he does not deny that Florida charges these fees (which far exceed the SAVE costs) to all identification applicants. ECF 85-1 ¶¶7-8. Thus, when Kynoch declares "it costs FLHSMV at least .50 cents more for each nonimmigrant who applies for a license or ID," *id.* ¶ 8, this means that Florida nets 50-cents less in income from noncitizens, not that it has incurred any cost from issuing them identification cards.

Courts look at overall monetary loss for economic injury in fact purposes, not merely whether a plaintiff paid some amount at some interstitial point in a transaction, regardless of whether they achieved a net gain as result of the challenged defendant conduct. *See, e.g.*, *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333, 342 (5th Cir. 2018) (holding injury to support standing was loss of "net profits"); *W. Virginia v. United States Dep't of Treasury*, No. 7:21-CV-00465-LSC, 2021 WL 2952863, at *6 (N.D. Ala. July 14, 2021) (noting argument based on net loss in revenue). The fact that Florida pays for SAVE verification as part of the process of issuing drivers' licenses does not amount to an injury because that issuance nets Florida significant income.

   b.  <u>Florida Cannot Trace the SAVE Costs to the Challenged Policies.</u>

Even if issuing identification to noncitizens caused Florida an economic harm, as opposed to a substantial revenue gain, Florida cannot trace that harm to

Parole+ATD or the alleged "non-detention policy." Mr. Kynoch testified that HSMV cannot say how many, if any, of the noncitizens submitting documentation to apply for state-issued identification are applicants for admission at the border released pursuant to the practices challenged here. ECF 87-10 at 57:14-58:13. For the first time now, at summary judgment, however, Mr. Kynoch claims HSMV has identified "some examples of noncitizens whose documentation indicate that they crossed the Southwest border and were paroled pursuant to IN[A] § 212(d)(5)." ECF 85-1 ¶6 & Exs. A-H.

But the simple fact that a noncitizen was released under section 1182(d)(5) does not mean they were released pursuant to the "conduct challenged" here. The documents Mr. Kynoch references do not indicate that the subjects were paroled under Parole+ATD as opposed to other uses of parole unchallenged by Florida. *See id.*; 8 C.F.R. § 212.5(b) (justifying parole "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,'" for several groups).

Given the various types of the parole other than Parole+ATD, and Florida's failure to provide evidence connecting the documented individuals specifically to Parole+ATD, the Court is left only to speculate as to the basis of the individuals' parole, and thus as to the cause of Florida's alleged harms. Such speculation cannot serve as a basis for *granting* Florida summary judgment, because it is an insufficient basis for Florida to even demonstrate a factual issue and *survive* an opposing motion

17

for summary judgment. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation omitted); *Brown v. Publix Super Markets, Inc.*, 626 F. App'x 793, 797 (11th Cir. 2015) ("Such speculation, unsupported by evidence, cannot defeat summary judgment.").

    c.  <u>Florida's New Declarations Cannot Establish Its Entitlement to Summary Judgment.</u>

As a threshold matter, Mr. Kynoch's declaration should not be considered because it impermissibly contradicts, without explanation, his deposition testimony and the evidence Plaintiff produced during discovery.

A Court "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Depositions, where both sides can draw out, develop, and test factual assertions through questioning, are more reliable than one-sided, untested assertions

in a sterile declaration. *See id.* "The purpose of summary judgment motions—to weed out unfounded claims, specious denials, and sham defenses—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." *Santhuff v. Seitz*, 385 F. App'x 939, 945 (11th Cir. 2010) (quotation omitted).

In his deposition, Mr. Kynoch said HSMV did not know how many, if any, noncitizens applying for Florida identification were paroled into the country. ECF 87-10 at 57:20-22. Given that HSMV did not have this information, Mr. Kynoch further confirmed that HSMV did not know what whether any portion of the SAVE fees was attributable to applicants for admission released on parole. *Id.* at 58:9-13. He further testified that HSMV could not quantify any harm attributable to DHS's parole practices. *Id.* at 75:20-76:4. If Florida disagreed with these statements, its counsel could have asked Mr. Kynoch questions further exploring these statements at his deposition, but Florida chose not to do so.

Further, ignoring the Eleventh Circuit's requirement that a contradictory *post hoc* affidavit must be explained, *see Van T. Junkins*, 736 F.2d at 657, Mr. Kynoch offers no explanation for his declaration's inconsistency with his deposition testimony, or for why only now, long after his deposition, HSMV was able to identify purported examples of paroled noncitizens applying for identification. ECF 85-1 ¶6; *see Santhuff*, 385 F. App'x at 945. Admitting Mr. Kynoch's later affidavit

19

on this point for summary judgment would not only ignore the questionable reliability of these *post hoc*, self-serving, untested claims and documents, as well as Mr. Kynoch's failure to explain the contradiction of his deposition testimony, but would be deeply prejudicial to Defendants, whom Florida deprived of an opportunity to develop and test this contradictory evidence during discovery.

### ii. *Florida Cannot Establish Standing Based Solely on Speculation About Costs for Serving Noncitizens Generally*.

Under its second theory, Florida claims costs incurred by six state agencies in administering programs or services offered regardless of citizenship or to various broad classifications of noncitizens such as "inadmissible aliens" or "immigrant children." Florida asks the Court to find standing on the conjecture that, because "some aliens released under the challenged policies settle in Florida," some of these costs for noncitizens or "inadmissible aliens" are spent on noncitizens released under the challenged practices. ECF 86 at 10-14. However, Florida again provides no particularized evidence, just impermissible speculation, connecting these expenditures to noncitizens paroled or otherwise released pending removal proceedings, much less released under the actions alleged here, rather than on other longstanding and unchallenged applications of parole and release authority under 8 U.S.C. §§ 1182(d)(5)(A) and 1226(a).

With each type of expenditure, Florida relies on a theory that the Court can find that some of these costs must be caused by the challenged conduct simply due

to an inference based on the number of noncitizens being released and relocating to Florida. However, such inferences are not sufficient to carry Florida's burden at summary judgment. It must provide *actual evidence* that its costs *are* or will be due to noncitizens released under the challenged conduct. *See City of Miami Gardens*, 931 F.3d at 1282. "Plaintiffs must substitute their allegations with sufficient, detailed, and relevant evidence at summary judgment and later." *Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262, 1281 (N.D. Fla. 2021). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

Even if the Court accepts Florida's "position that certain [detention] numbers are lower today than they were in 2019, that does not *show* … that the drop *will cause* the claimed injuries to the State[]." *Arizona*, 40 F.4th at 385 (emphasis added); *cf. Fed'n for Am. Immigr. Reform, Inc. v. Reno*, 93 F.3d 897, 903 (D.C. Cir. 1996) (rejecting theory of injury premised simply on an increase in noncitizens in an area in Florida). Florida has failed to provide evidence "to connect the dots" between Parole+ATD and the alleged "non-detention policy" and an increase in its costs. *See Arizona*, 40 F.4th at 385. For these reasons, each of Florida's alleged injuries fail to support standing:

a. <u>Incarceration - Department of Corrections (DOC)</u>

Florida argues that it "spends over $100 million per year on the incarceration of criminal aliens" of which the federal government only reimburses a fraction ($8,236,498 of the $131,529,255 spent by Florida from July 1, 2018, to June 30, 2019). ECF 86 at 11. Regardless of how much Florida spends on, or is reimbursed for, incarcerating "criminal aliens,"[5] the undisputed evidence establishes that Florida cannot causally connect these expenditures to the conduct challenged in this case. *See Lujan*, 504 U.S. at 560-61. Florida points to no evidence supporting causation, *see* ECF 86 at 11, and fails to offer anything to rebut its DOC's declarant's uncontroverted deposition testimony that the agency does not track and cannot say whether any of the "criminal aliens" it incarcerates are applicants for admission paroled or conditionally released pursuant to the challenged actions. ECF 87-4 at 31:16-19, 32:9-16. Nor can DOC substantiate how much, if any, of its incarceration expenditures are on this narrow group of noncitizens. ECF 87-5 at 53:18-54:1, 54:16-55:14. Mere speculation that applicants for admission paroled or released under Parole+ATD or the alleged "nondetention policy" might be among the "criminal aliens" Florida incarcerates is insufficient to create a genuine factual dispute on standing, much less grant this motion in Florida's favor. *See supra* 20; *Cordoba*, 419 F.3d at 1181.

---

[5] Florida does not define "criminal alien" and the term has no definition under federal law.

b.  <u>Public Assistance - Department of Children and Families (DCF)</u>

Florida argues that it "provides a variety of social services and benefits to all Florida residents—regardless of immigration status—including temporary cash assistance, nutrition benefits, substance abuse and mental health treatment, domestic violence services, and child welfare." ECF 86 at 11-12. Florida admits, however, that it only tracks expenditures for "inadmissible aliens" who receive in-patient mental health and substance abuse treatment, and for noncitizens generally for temporary cash assistance. *Id.*  Florida does not track citizenship or alienage for any other services. *Id.*[6] Further, Florida's Rule 30(b)(6) declarant testified that DCF does not collect the immigration status of individuals using domestic violence, child welfare, substance abuse, and mental health treatment services, and so Florida is unable to identify any costs attributable to noncitizens at all in those programmatic areas. ECF 87-8 at 51:23-52:2, 48:5-23, 70:17-25.

As with incarceration, regardless of how much Florida spends on public assistance for noncitizens, Florida fails to provide any evidence to connect these expenditures to the specific group of noncitizens at issue in this case: applicants for admission released under Parole+ATD or the alleged "nondetention policy." *See*

---

[6] Florida notes that a state statute identifies parolees under section 1182(d)(5)(A) as one category of noncitizen who is a "qualified noncitizen" eligible to receive temporary cash assistance. Fla. Stat. § 414.095(3). But the statute by no means limits such assistance *only* to parolees and identifies several other immigration classifications constituting "qualified noncitizens." *Id.*

*Lujan*, 504 U.S. at 560-61. Rather, undisputed evidence from DCF's declarants establishes that the agency does not know, and has no way of knowing, whether any of the noncitizens using their services were paroled or otherwise released pursuant to the DHS actions challenged here. ECF 87-8 at 67:16-23; ECF 87-9 at 71:11-18, 74:24-75:5, 84:23-85:3. Absent such distinguishing evidence, the Court is left only to speculate as to whether any of the noncitizens using DCF's services were released under Parole+ATD or the (nonexistent) "non-detention policy." *See supra* 20; *Cordoba*, 419 F.3d at 1181.

    c.  <u>Public school expenses - Department of Education (DOE)</u>

Florida argues that it pays to educate all noncitizen children, even inadmissible noncitizens. ECF 86 at 12-13. However, Florida concedes that DOE only tracks whether it is educating "immigrant children" broadly. *Id.* at 12. It does not track or know how many, if any, of those children are inadmissible, much less if any are applicants for admission paroled under the challenged practices. *Id.* This mirrors the uncontroverted testimony that Florida does not know of, and cannot identify, any specific cost attributable to applicants for admission released or paroled under the challenged actions, nor show that a single dollar is spent on these noncitizens or indeed any specific type of noncitizen students. ECF 87-3 at 38:21-40:3, 37:6-14, 70:20-71:1. Speculation that noncitizens released under Parole+ATD or the "non-detention policy" might be among the "immigrant children" educated by

DOE is insufficient to carry or survive summary judgment. *See supra* 20; *Cordoba*, 419 F.3d at 1181.

    d.  <u>Medical services - Agency for Health Care Administration (AHCA)</u>

Florida claims that it spent a net $111,451,901 on emergency medical services for noncitizens from January 2022 to April 2022. ECF 86 at 13. But Florida acknowledges that it provides these services regardless of immigration status. ECF 86 at 13. Florida cannot establish standing based on such costs. The undisputed evidence establishes that Florida cannot trace any such emergency medical expenditures to Parole+ATD or the alleged "non-detention policy." Because AHCA does not track the immigration status of the noncitizens it provides emergency medical coverage for, it has no evidence whether any applicants for admission released under the specific actions challenged here are covered by its expenditures. ECF 87-7 at 36:5-13, 37:2-38:1.

Florida's Rule 30(b)(6) deponent expressly conceded the possibility that no noncitizens released under Defendants' challenged actions received emergency medical services it paid for. *Id.* Absent any evidentiary support for this connection, mere speculation that noncitizens released under Parole+ATD or the "non-detention policy" might be among those noncitizens served by AHCA is insufficient. *See supra* 20; *Cordoba*, 419 F.3d at 1181.

e.  <u>Unemployment benefits - Department of Economic Opportunity (DEO)</u>

Florida contends that, from January 2020 to May 2022, it paid $426,521,033 in unemployment benefits[7] to noncitizens who have obtained work authorization, including parolees under section 1182(d)(5) and noncitizens who have applied for asylum after the application is pending for 180 days. ECF 85-6 ¶7; ECF 86 at 13 & n.7.

This argument also fails to establish an injury caused by Defendants' challenged actions. Regardless of any sums spent on unemployment benefits for noncitizens with work authorization generally, Florida points to no evidence showing that any of these noncitizens are applicants for admission paroled or released under Parole+ATD or the alleged "nondetention policy." As explained, Defendants may parole or conditionally release noncitizens for a variety of reasons outside of Parole+ATD or whatever ultra vires bases presumably comprise the (nonexistent) "non-detention policy." *See supra* 20; 8 U.S.C. §§ 1182(d)(5), 1226(a); 8 C.F.R. § 212.5(b). Some noncitizens released pending removal proceedings are not eligible for work authorization at all, *see* 8 U.S.C. § 1226(a)(3), and thus could not receive state employment assistance. ECF 85-6 ¶6.

Further, even though parolees or certain asylum seekers may be eligible for work authorization, DEO does not know whether any of its benefit recipients

---

[7] Also called "re-employment" benefits.

actually are parolees or having pending asylum applications (as opposed to other types of noncitizens with work authorization) because it does not ask or record this information. ECF 87-6 at 32:11-21. DEO does not know whether it provided benefits to any applicants for admission paroled into the country, much less under Parole+ATD or the alleged "nondetention policy." ECF 87-6 at 32:22-33:13. Florida provides no evidence to controvert this testimony, or any other evidence making this connection to the conduct challenged here, again impermissibly requiring the Court to speculate as to causation. *See supra* 20; *Cordoba*, 419 F.3d at 1181.

f.   Driver's Licenses – Highway Safety and Motor Vehicles (HSMV)

Finally, Florida relies on HSMV's SAVE fees for state driver's licenses or identification provision to noncitizens for its second theory of standing as well as its first. ECF 86 at 13-14. However, Florida cannot overcome uncontroverted testimony that each license or identification provided to a noncitizen actually generates revenue for Florida and does not cost it. ECF 88-1 at 18; ECF 87-10 at 58:5-8, 59:12-14, 43:3-5. And even if this SAVE inquiry cost represented a cognizable injury, Florida fails to prove it is caused by Parole+ATD or the alleged "non-detention policy." The Court should not consider the Kynoch declaration, which contradicts his deposition testimony, as explained. *Supra* 18.  But even if the Court does, the documents fail to make a sufficient causal connection. *Id.* Even if some applicants were paroled, Florida offers no evidence to suggest that the recipients were paroled under

27

Parole+ATD rather than under longstanding uses of section 1182(d)(5)(A) not challenged in this case. Absent such evidence, Florida's argument rests on mere speculation. *See supra* 20; *Cordoba*, 419 F.3d at 1181.

In sum, Florida's second theory fails due to absence of evidence creating a genuine issue of material fact regarding causation for each of the six agencies. Its lack of causation evidence also means that, in each of these areas, Florida fails to satisfy its burden of providing evidence to support the causation element of standing at summary judgment. *See City of Miami Gardens*, 931 F.3d at 1282.

### iii. *Florida's One-Dollar Injury Theory Fails*.

Florida argues that "the only question the Court need resolve is whether aliens released into Florida pursuant to the challenged policies will cost the State at least one dollar." ECF 86 at 14. Florida's "one dollar" formulation is wrong, as it conflicts with the fundamental principle of constitutional law that such incidental, indirect costs from federal regulation of third parties are merely a byproduct of federalism and do not give states standing to sue the federal government. *See Florida v. Mellon*, 273 U.S. 12, 18 (1927). The single case Florida cites to support its "one dollar" argument does not indicate otherwise. ECF 86 at 14 (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)). *Sprint Communications* involved a direct harm in a suit between private parties. *See id.* Cases holding that a small amount of money can suffice as a cognizable Article III injury similarly have not

arisen in the context of a state suing the federal government over indirect costs of federal actions.  *See, e.g., Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021); *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). Further, even if *any* amount of indirect costs would suffice, a minimalist amount, generally acceptable in other contexts, is insufficient given the "substantially more difficult" showing of harm required here where Florida is not the object of the challenged governmental action. *See Summers*, 555 U.S. at 493.[8]

The two *Texas* cases Florida cites are also inapposite. ECF 86 at 14. *Texas v. United States*, 40 F.4th 205, 216–17 (5th Cir. 2022), involved a challenge to a memorandum setting forth removal priorities. Unlike the absence of connective evidence in this case, the Fifth Circuit found there was evidence in that case directly connecting, and concretely quantifying, the memorandum to costs to the state. *Id.* at 218 (noting factual finding that ICE's detainer rescissions "directly caused the Texas Board of Pardons and Paroles to revoke parole for certain aliens who were previously approved for parole and, accordingly, those criminal aliens remain in Texas's custody").[9] Here, Florida has no evidence establishing, on a non-speculative basis,

___

[8] And even if $1 of injury sufficed, Florida still fails to establish standing due to lack of evidence of even $1 of costs attributable to noncitizens released under the practices challenged here.

[9] Defendants disagree with the *Texas* Court's rulings on standing, and the Supreme Court granted the government's petition for certiorari to review that decision. Pet. Br. 10-24, *United States v. Texas*, No. 22-58 (S. Ct.). The Sixth Circuit rejected state standing in a parallel case challenging

whether any of its incarcerated noncitizens were released under Parole+ATD or the alleged "nondetention policy."

In *Texas v. Biden*, 20 F.4th 928, 970–74 (5th Cir. 2021), which was reversed on other grounds by the Supreme Court, 142 S. Ct. 2528 (2022), the Fifth Circuit's standing analysis depended on the same drivers-license-cost theory advanced here, but there, the facts established "that each granted license … costs Texas money." 20 F.4th 970-71. Here, the undisputed evidence establishes that Florida actually *makes money* on each drivers' license or identification card it issues to a noncitizen. *See supra* 15.[10]

## C.   Florida Fails to Address, and thus Concedes, Redressability.

Summary judgment must be denied Florida, and granted for Defendants, as Florida does not point to undisputed material evidence supporting a finding of redressability. In fact, Florida fails to address this required element at all.

Florida's evidentiary failure is fatal. "At the summary judgment stage, a plaintiff *must come forward with evidence* showing the following in order to have Article III standing: … a likelihood that a favorable judicial decision will redress the

---

the Enforcement Guidelines, noting the "causation and redressability problems" with the standing rationale in *Texas*. *Arizona*, 40 F.4th at 385.

[10] Additionally, in *Texas*, the district specifically found that "'[a]s a result of the termination of [Migrant Protection Protocols], some aliens who would have otherwise been enrolled in MPP are being released or paroled into the United States and will obtain Texas driver's licenses.'" 20 F.4th at 968.  Here there is no evidence that would allow this Court to make a comparable finding about the effect of the challenged programs—and certainly not sufficient for summary judgment to be granted to Florida.

injury." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1145 (11th Cir. 2014) (emphasis added); *see Lee*, 566 F. Supp. 3d at 1281.

"Each and every element of the standing requirements must be supported in the same way as any other matter on which the plaintiff bears the burden of proof…." *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004). Failure to address every element is fatal to Plaintiff's claim of standing. Florida neither provides nor points to any evidence, adduces any facts, or even offers argument about the ability of the Court to provide redress in this case. *See generally* ECF 85-1 – 8-15; ECF 86. It fails to meet its burden of supporting this element of standing with evidence, and therefore Defendants are entitled to summary judgment.

Even had Florida addressed redressability, it would not warrant summary judgment in its favor. Redressability requires that it be "*likely, as opposed to merely speculative*, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (emphasis added). However, Florida's alleged injuries are the costs of providing state services to noncitizens generally who are present in Florida. *Supra* 20. There is no evidence indicating whether Florida's agencies provide services to applicants for admission paroled or released under the challenged practices, rather than noncitizens present in the country under a variety of other immigration statuses, including other uses of parole authority, *see* 8 C.F.R. § 212.5(b), or conditional release, *see* 8 U.S.C. § 1226(a), not challenged here. Accordingly, it is no more than

31

speculative, and certainly not *likely*, that an order setting aside or enjoining Parole+ATD or the alleged "non-detention policy" would actually reduce Florida's costs attributed to noncitizens.

Finally, Florida fails to contend with section 8 U.S.C. § 1252(f), which precludes the majority of Florida's requested relief. Florida must demonstrate standing "for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" specified INA provisions including 8 U.S.C. §§ 1225 and 1226, with one exception not relevant here. 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) generally prohibits lower courts from "order[ing] federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065 (2022). Florida requests that the Court declare unlawful, vacate, and permanently enjoin enforcement of Parole+ATD and the alleged "nondetention policy," and order compliance with APA requirements regarding those actions. ECF 74 at 30. Section 1252(f)(1) precludes all this relief save the requested declarations.

32

Vacating[11] and permanently enjoining Parole+ATD or whatever release decisions were deemed to constitute the alleged "non-detention policy" would be ordering Defendants "to take or refrain from taking" detention and conditional release actions implementing sections 1226(a) and 1225(b)—and therefore section 1182(d)(5), the mechanism for releasing noncitizens detained under section 1225(b) where warranted, *see* 8 U.S.C. § 1182(d)(5)(A) (providing for parole of "applicant[s] for admission")—thus restraining operation of those INA provisions. *See Aleman Gonzalez*, 142 S. Ct. at 2065. And even the requested declaratory relief, holding Defendants' discretionary immigration enforcement and resource allocation decisions to be unlawful, would intrude on separation of powers and violate the political question doctrine, as Defendants have previously explained. ECF 88-1 at 18-20.

---

[11] Section 1252(f)(1) precludes vacatur and remand for compliance with the APA as well. Like an express injunction, vacatur "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency action under review. Such restriction on official action implicates section 1252(f)(1). *See Aleman Gonzalez*, 142 S. Ct. at 2065.

## CONCLUSION

For the foregoing reasons and for those set forth in Defendants' motion for summary judgment, ECF 88, the Court should deny Plaintiff's motion for partial summary judgment in its entirety, and grant summary judgment in Defendants' favor.

Date: October 24, 2022                    Respectfully submitted,

JASON R. COODY                            BRIAN M. BOYNTON
*United States Attorney*                  *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                            WILLIAM C. PEACHEY
*Assistant United States Attorney*        *Director*
Northern District of Florida              Office of Immigration Litigation
                                          District Court Section

                                          EREZ REUVENI
                                          *Assistant Director*

                                          /s/ *Joseph A. Darrow*
                                          JOSEPH A. DARROW
                                          ERIN T. RYAN
                                          *Trial Attorneys*
                                          U.S. Department of Justice
                                          Civil Division
                                          Office of Immigration Litigation
                                          District Court Section
                                          P.O. Box 868, Ben Franklin Station
                                          Washington, DC 20044
                                          Tel.: (202) 805-7537
                                          Joseph.a.darrow@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Rule 56.1(C) because, excluding parts of the document exempted by the Rule, it contains 7,996 words.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division
