# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-01066 |
| | ) | |
| The UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Nothing in Florida's opposition to Defendants' motion for summary judgment creates any dispute of material fact. *See* ECF 98; ECF 88. The Court should grant Defendants' motion and dismiss Florida's case in its entirety.

## I.   <u>Florida Misunderstands the Applicable Law</u>

### A. 8 U.S.C. §§ 1225 and 1226

Florida claims, without a single record or legal citation, that "Defendants are attempting to pick and choose from conflicting authorities…while ignoring the conditions Congress has placed on the exercise of those authorities." ECF 98 at 22. Such unsupported speculation is not sufficient to defeat summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005); *see* ECF 97.

Regardless, Florida misunderstands the governing law. 8 U.S.C. § 1226 provides authority to arrest and detain removeable noncitizens present in the country, no matter where or for what length of time they have been inside the country, pending a determination on their removal. 8 U.S.C. § 1226(a); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). While ICE utilizes detainers and issues warrants to arrest noncitizens in local criminal custody, *see* 8 C.F.R. § 287.7, DHS has the authority to arrest noncitizens without a warrant if the officer has probable cause to believe the noncitizen is unlawfully present in the United States and is "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. §

1357(a)(2); ECF 106-1, 61:2-62:3. Thus, noncitizens arrested without a warrant may be subsequently detained pursuant to section 1226.

Congress created an overlap in possible enforcement authorities: both sections 1225 and 1226 expressly cover "inadmissible" noncitizens present in the country. *Compare*, *e.g.*, 8 U.S.C. § 1225(b)(1)(A)(i) *with id.* §1226(c)(1)(A); *see also* 69 Fed. Reg. 48,877 (Aug. 11, 2004). DHS has the authority to choose whether to process certain inadmissible noncitizens present in the United States for expedited removal or treat them under the default provision for noncitizens unlawfully in the country in section 1229a removal proceedings, 8 U.S.C. § 1226. ECF 88 at 31-32. Florida and amicus rely on *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), which addressed the authority to detain noncitizens "originally placed in expedited [removal]" but then referred for "further consideration of the[ir] application for asylum" in full removal proceedings, 8 U.S.C. § 1225(b)(2)(B)(ii), and whether those noncitizens qualified for a bond hearing. *Id.* at 511-12. *M-S-* rejected the availability of bond because their continued detention was governed by section 1225(b) rather than 1226(a). *Id.* at 516.

*M-S-* is entirely inapt. Defendants make no argument that noncitizens originally subject to expedited removal may be released on bond. Defendants merely note the overlapping statutory authority provides initial discretion whether to subject those noncitizens to expedited removal at all. *See Matter of E-R-M- & L-R-M-*, 25 I.

3

& N. Dec. 520, 523 (BIA 2011) ("DHS has discretion to put [noncitizens] in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i)[.]"). Indeed, *M-S-* undermines Florida's and amicus's argument, as it recognized section 1226(a) "provides an independent ground for detention that does not limit DHS's separate authority to detain aliens originally placed in expedited removal." 27 I.&N. Dec. at 516.[1]

Additionally, Florida argues that *Jennings* precludes DHS's charging discretion. ECF 98 at 19 n.9. This is incorrect. *Jennings* addressed whether noncitizens placed in proceedings under section 1225(b) were eligible for release on bond; it did not address DHS's discretion whether to place those noncitizens in those proceedings at all. 138 S. Ct. at 842. As discussed in Defendants' motion, *Crane* and *Reno* support this position, regardless of whether those courts found jurisdiction. ECF 88 at 23-24; *Crane v. Johnson*, 783 F.3d 244, 249 (5th Cir. 2015); *Reno v. AADC*, 525 U.S. 471, 483–84 (1999). The jurisdictional defects in those cases do nothing to undermine those decisions' logical reading of section 1225(b) that, regardless of its provision for detention of noncitizens once placed in the specified immigration proceedings, it places no limit on DHS's antecedent decision of whether to pursue removal at all.

---

[1] Florida also cites *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015), which does not address immigration at all, but rather Nevada forfeiture statute.

**B. 8 U.S.C. § 1182 and 8 C.F.R. § 212.5**

Florida's primary challenge to Parole+ATD rests on its mistaken belief that "urgent humanitarian reasons" or "significant public benefit" cannot include health and safety concerns due to overcrowding.[2] ECF 98 at 28-30. Florida cites no precedent supporting this assertion and fails to address cases holding the contrary cited by Defendants. ECF 88 at 41. Rather, Florida's argument relies on its unsupported assertion that section 1182(d)(5)(A) requires that the urgent humanitarian reasons or significant public benefit must be unique to each individual noncitizen and cannot be shared with other similarly situated noncitizens or DHS personnel interacting with them. ECF 98 at 28-30. Statute, regulation, and agency practice all undermine Florida's theory. Both section 1182(d)(5)(A) and its implementing regulation, 8 C.F.R. § 212.5(b), expressly contemplate parole based on "public" considerations, that is, based on a larger group or community than simply the one noncitizen at issue. *See* "Public," Oxford English Dictionary, https://www.oed.com. Thus, while each decision to parole is based on a case-by-case individualized analysis, that analysis can take into consideration larger public considerations such as health and safety concerns due to overcrowding. Further, Florida offers no support for its claim that alleviating the health risk from

---

[2] Yet Florida also concedes that "resource constraints [can] sometimes qualify as an urgent humanitarian reason or significant public benefit" justifying parole under section 1182(d)(5). ECF 98 at 29.

overcrowded facilities cannot address an "urgent humanitarian concern" or create a "significant public benefit" for *both* DHS officers and noncitizens present in those facilities, which in fact it has. ECF 88 at 41.

Further, Florida does not dispute Defendants' explanation that, alternatively, Parole+ATD is a valid exercise of Defendants' regulatory authority to parole noncitizens "whose continued detention is not in the public interest," 8 C.F.R. § 212.5(b)(5), but only argues that that regulation is outdated. ECF 98 at 30. Florida is again mistaken. While this provision did pre-date the 1996 amendment of section 1182(d)(5), in 1997, 8 C.F.R. § 212.5(b) was amended to be consistent with the "case-by-case" and "urgent humanitarian reasons or significant public benefit" requirements added in 1996. Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10,312, 10,313 (Mar. 6, 1997). The regulation now makes explicit that parole for individuals in the enumerated groups would "generally be justified" under the current section 1182(d)(5)(A) requirements. 8 C.F.R. § 212.5(b); 62 Fed. Reg. at 10,313. Additionally, to the extent Florida attempts to challenge the language of this regulation, its challenge is long time-barred. *See* 28 U.S.C. § 2401(a); *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (applying six-year statute of limitations for suits against the United States).

## II.   <u>Non-Detention Policy</u>

### A. Burden

Florida relies heavily on this Court's decision on Defendants' motion to dismiss. *See generally* ECF 98. However, at this stage, inferences from allegations no longer suffice and Florida must put forward "specific facts sufficient to create a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Florida failed to do so.  ECF 88.

Florida claims the absence of a "sworn declaration attesting that the [non-detention] policy does not exist" counts as evidence that it does.  ECF 98 at 13. Such an unwarranted inference is not evidence of the policy. In accordance with the Federal Rules of Civil Procedure, Defendants are aware it would be improper to produce new affidavits from deposed witnesses solely for the purposes of summary judgment. *See* ECF 97 at 18-20. To the contrary, *Florida* has the burden of proffering evidence to defeat summary judgment and support its claims. It has failed to do so despite numerous depositions, discovery requests, and the production of thousands of pages of discovery. *See Celotex Corp.*, 477 U.S. at 323-25. Regardless, the uncontroverted evidence has shown that there is no "non-detention policy." ECF 88 at 25-28.

**B. Florida Cannot Challenge Abstract Views of a Policy**

Florida's opposition makes clear that what it purports to challenge as a "non-detention policy" is the current "Administration's policy" views on managing immigration generally. *See, e.g.,* ECF 98 at 4, 11-12. Florida cannot challenge the Executive Branch's broad political perspective under the APA, which only provides for review of specified, implemented, and objective agency *action*. *See* 5 U.S.C. § 551(13); *Texas v. Biden*, 142 S. Ct. 2528, 2545 (2022); *Brnovich v. Biden*, No. CV-23-01568-PHX-MTL, 2022 WL 4448322 at *10, 12 (D. Ariz. Sept. 23, 2022) (rejecting identical claim, holding states cannot challenge an "amalgam of release decisions" or "some generalized … conception of [DHS]s' detention and parole policies" under the APA). Courts cannot "postulat[e] the existence of an agency decision wholly apart from any agency statement . . . designed to implement that decision." *Texas*, 142 S. Ct. at 2545.

Nor can Florida invoke the President's (or subordinate officials') purported abstract views regarding proper immigration policy, including then-Candidate Biden's views, to assert the existence of an actual policy. ECF 98 at 4, 15 (citing ECF 95-2); *see Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (eschewing attempt to find existence of a secret objective from a political candidate's statements; rather, objective must be gleaned from within the policy document itself). Florida's challenge to the alleged "non-detention policy" is simply Florida's effort to

8

"require[] the [DHS] Secretary to enforce the immigration laws" according to *Florida's* policy views on migration control and to "change [the Administration's] priorities for" detention of noncitizens—which is inherently a political disagreement outside of the realm of the courts. *Texas v. United States*, 809 F.3d 134, 169 (5th Cir. 2015).

### C. Florida's "Unwritten Policy" Case Law is Inapposite

Florida's reliance on cases addressing unwritten policies does not support the existence of the "non-detention policy." ECF 98 at 15-16. To begin, those cases involved APA-cognizable challenges to discrete alleged policies and their violations. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 141 (D.D.C. 2018) (considering deterrence in contradiction of ICE directive). Florida's wholesale challenge to the many discrete decisions comprising DHS's enforcement of sections 1225(b), 1182(d)(5)(A), and 1226(a), i.e., the alleged "non-detention policy", is not cognizable under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990).

Further, Florida's cited cases rely on direct evidence and admissions establishing the unwritten policy and outweighing conflicting countervailing evidence. *See Aracely*, 319 F. Supp. 3d at 146 (noting extensive evidence included "public statements by high level government officials … indicating the existence of a deterrence policy" even under less-rigorous preliminary-injunction standard); *id.*

9

at 247 (noting government actually "admitted to a deterrence policy" in *R.I.L.-R v. Johnson*, 80 F.Supp.3d 164, 177 (D.D.C. 2015); *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 929–30 (D.C. Cir. 2008) (Commission failed to deny or refute that it had a "policy of disclosing confidential information without notice" and indeed conceded that such might occur).[3] Here, Florida offers no direct evidence or admission of a "non-detention policy," only speculation based on mixed statistics. Rather, the evidence, as testified to by multiple deponents, shows there is no unwritten policy governing the parole and release decisions challenged here. ECF 87-11 at 163:2-164:8; ECF 87-12 at 54:5-16.

### D. Purported Inferences of a Policy Are Insufficient

Florida cites no direct evidence of a non-detention policy.[4] First, Florida claims that a non-detention policy exists because DHS "completely abolished detention of family units" and therefore noncitizens who bring minor children to the border are "guaranteed release." ECF 98 at 15, 6. However, Florida failed to counter

---

[3] Florida also cites *Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018), but that case did not involve an alleged unwritten policy, only allegations that ICE was not following its written parole directive (ICE Parole Directive 11002.1). *Id.* at 339. Regardless, the Court found evidence of such violation based on government counsel's concession and its failure to provide evidence disputing or explaining the parole-denial record, *id.* at 339, two conditions not present here.

[4] Throughout its opposition, Florida cites the deposition testimony of Chief Raul Ortiz and EAD Corey Price in support of Florida's contentions regarding border surges, migration dangers, and release of noncitizens bringing children to the border. ECF 98 at 32, 33, and 6 (respectively). These statements, however, were made in the witnesses' personal capacity, not as corporative representatives of DHS. So, at most this testimony suggests what one officer believes; it does not represent DHS's authoritative understanding on these topics, especially where contradicted by testimony from DHS's Rule 30(b)(6) representatives on those topics.

Defendants' statement of undisputed facts on this point. *See generally* ECF 98. Therefore, it is undisputed that, although DHS has repurposed three former family detention centers to house single adults (to address a greater demand), it still could detain family units, if warranted. ECF 87-13, 141:7-142:2; ECF 87-14, 30:11-31:4; ECF 87-12, 67:6-20; 54:21-55:4. Further, the repurposing of these family centers does not mandate release of all family members as Florida claims. If an adult family member requires detention for national-security or public-safety concerns, DHS may detain that individual and release the other family members. ECF 87-16, 111:1-112:10; ECF 87-14, 220:14-221:11. Thus, Florida incorrectly argues that DHS has taken an "all or nothing" approach to family unit detention, ECF 98 at 15, as uncontroverted evidence shows the detention decision is wholly dependent on the case-by-case circumstances of each family member.

Lacking any direct evidence of a non-detention policy, Florida retreats to inferences from DHS statistics to argue irregularity.[5] ECF 98 at 13-14. But the motion to dismiss stage of this case is long past; favorable inferences alone fail at summary judgment. *See Celotex Corp.*, 477 U.S. at 323-25. Even if the Court could rely on inferences, they do not establish that Defendants "have a policy of not

---

[5] Florida concedes that the March 28, 2021 email it cites either pertains to a policy that DHS has expressly rescinded or which utilizes section 1226(a)(2), not section 1225(b). ECF 98 at 14-15. Section 1226(a) imposes no limits or substantive requirements for the conditional release of inadmissible noncitizens. 8 U.S.C. § 1226(a)(2). Either way, Florida thus concedes this email is not evidence of any ongoing policy for releasing noncitizens subject to section 1225(b), the "mandatory" statute Florida claims the "non-detention policy" is violating. ECF 98 at 15-20, 25.

detaining aliens subject to mandatory detention under § 1225." ECF 98 at 25. The statistics indicate Defendants detain thousands of border arrivals. ECF 106-2 at 2 (ICE Detention Data, *also available at* https://www.ice.gov/detain/detention-management). That DHS indisputably detains many noncitizens under section 1225 defeats Florida's suggestion of a categorical policy of non-detention. *See R.I.L.-R*, 80 F. Supp. 3d at 174 (declining to find "a categorical policy … of denying release" given that "in some small number of cases" ICE granted bonds, even under the lesser-evidentiary preliminary-injunction standard).

### III.   Parole+ATD Policy

#### A. Florida Cannot Evade the Limitations of APA Review

For the first time, Florida has put forward a theory alleging that the Parole+ATD program is actually part of the purported "non-detention policy" it is challenging, and thus the Parole+ATD program should be evaluated at trial. ECF 98 at 3-4, 26. The APA, however, does not permit Florida to wrap Parole+ATD into its larger "non-detention policy" and thereby evade the limitations of the APA and obtain a trial along with extra-record discovery on Parole+ATD. ECF 98 at 26.

Several different actions of an agency cannot be combined and "laid before the courts for wholesale correction under the APA"; rather, the Court may only review if "a specific 'final agency action' has an actual or immediately threatened effect." *Lujan*, 497 U.S. at 893. And judicial review of such agency action is focused

on the already-existing administrative record, *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996), "not some new record made initially in the reviewing court" from extra-record evidence, *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The material facts are those in the record; there are no additional facts to be found at trial. *See Sea Turtle Conservancy v. Locke*, No. 1:09-CV-259-SPM-GRJ, 2011 WL 13227945, at *2 (N.D. Fla. July 5, 2011).

Not only has the Court already rejected Florida's attempt to obtain extra-record discovery, ECF 55, but none of the categories of evidence Florida now identifies—which are additionally *post hoc* (statistics of use and alleged "disastrous effects" of Parole+ATD) or far attenuated (ICE family detention decision-making), ECF 98 at 26—would assist the Court's APA review because they were not part of the record considered by the decisionmaker. *See* ECF 87-1.[6] That record is simply "all documents and materials that the agency directly or indirectly considered .... [and nothing] more nor less." *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (collecting authorities). Florida's extrinsic data would not further such record review.

---

[6] Defendants are "entitled to a strong presumption of regularity, that [they] properly designated the administrative record," and Florida has not demonstrated "clear evidence" to the contrary. *Georgia Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1377 (N.D. Ga. 2014).

### B. Parole+ATD is Not Contrary to Law

Florida misunderstands the chronology of Parole+ATD. ECF 98 at 8-10. The November 2, 2021 memorandum terminated the Notice to Report program but did not represent that Parole+ATD began on that day. ECF 87-1 at 96. Rather, the memorandum specifically contemplated that the Parole+ATD pathway already existed, and thus offered guidance for the use of that already-developed practice moving forward. *Id.* (noting "Border Patrol *has developed* an alternative processing pathway: Parole+ATD") (emphasis added). The program formalizes the previously informal combination of two long-existing authorities and practices: CBP's parole authority under the INA for noncitizens apprehended at the border pending removal proceedings, *see* 8 U.S.C. 1182(d)(5)(A), 1226(a), and ICE's longstanding Alternatives to Detention Program, *see* ECF 87-1 at 262, 279-80 (ATD statistics going back to FY 2014).

Florida makes several meritless arguments, undermined by the record, that Parole+ATD fails to account for certain factors. ECF 98 at 31-33. Defendants addressed these claims in their opening motion. ECF 88. Notably, both the operative memorandum (July 18, 2022) and the supporting record indicate that DHS *did* consider the costs of the program, its creation of a backlog, and the potential for use of detention capacity. The record the agency provided, which necessarily contains the "materials that the agency directly or indirectly considered," *Pac. Shores*

*Subdivision*, 448 F. Supp. 2d at 4, contains numerous references to detention figures, holding capacity, remaining ERO detention space, and the costs of the program and the extent of the backlog created thereby. ECF 87-1 at 8-87, 99-106, 259-261, 268-77. The July 18, 2022 memorandum reflects the agency's consideration of these factors and determinations that these drawbacks of the program were outweighed by the benefits. ECF 87-1 at 5-7;[7] ECF 88 at 42-46. DHS has "no duty to write an exegesis" to further show it considered these issues. *Osuchukwu v. I.N.S.*, 744 F.2d 1136, 1142–43 (5th Cir. 1984).

Finally, Defendants note that Florida effectively concedes that Parole+ATD is an interpretive rule, admitting it merely states "DHS's approach to the parole authority," and therefore is not subject to notice and comment. ECF 98 at 34; *see Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) (noting an interpretive rule "typically reflects an agency's construction of a statute").

## IV.   <u>Standing</u>

Florida again fails to show the required elements of standing: particularized injury in fact, causation, and redressability. *See Lujan*, 504 U.S. at 560. Florida claims the "types of injuries" alleged by Florida have been "recognized time and

---

[7] *City of Los Angeles v. Barr*, 929 F.3d 1163, 1178 (9th Cir. 2019), addressed the costs and dangers caused by specifically "illegal" migrants, i.e., those present in the country without authorization. Here, the releases of noncitizens Florida challenges are all of persons who were inspected and permitted to enter the country provisionally. Uncontroverted testimony suggests that Defendants' current practices actually deter illegal immigration and promote lawful entry. ECF 87-14, 249:1-250:22.

again as a cognizable injury." ECF 98 at 36. Florida, however, only cites one decision issued earlier this month. *Id.* Such a recent and specific court decision hardly shows a well-established theory of injury "recognized time and again."[8] All of Florida's alleged injuries remain speculative at best, unsupported by evidence in the record, and legally insufficient. *See* ECF 88 *and* 97.

Florida's claims are also not redressable, which Florida concedes in substantial part in its opposition. "Florida acknowledges that under recent Supreme Court rulings 8 U.S.C. § 1252(f)(1) deprives courts of the power to … enjoin or restrain the operation of some of the statutes applicable here." ECF 98 at 39 (internal citations omitted). This therefore precludes this Court from vacating or permanently enjoining enforcement of the challenged policies. ECF 97 at 32. And even a declaration that the challenged practices are unlawful would violate constitutional separation of powers. ECF 88 at 18-20, 48-49.  Accordingly, Florida has failed to meet the threshold requirements for standing.

---

[8] Amicus's suggestion that states could never sue the United States if Defendants' argument is correct, is meritless. ECF 101-1 at 2-3. Direct injuries, where states are the object of federal action, occur, especially in the Tenth Amendment context. *See, e.g., Printz v. United States*, 521 U.S. 898, 904 (1997).

## **CONCLUSION**

The Court should grant summary judgment in Defendants' favor on all claims.

Date:  October 31, 2022

JASON R. COODY
*United States Attorney*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ERIN T. RYAN
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Rule 56.1(D) and this Court's order permitting 3,600 words because, excluding parts of the document exempted by the Rule, it contains 3,596 words.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division