# EXHIBIT 2

Exhibit 2 - 001

GARY C. PETERS, MICHIGAN, CHAIRMAN

THOMAS R. CARPER, DELAWARE          ROB PORTMAN, OHIO
MAGGIE HASSAN, NEW HAMPSHIRE        RON JOHNSON, WISCONSIN
KYRSTEN SINEMA, ARIZONA             RAND PAUL, KENTUCKY
JACKY ROSEN, NEVADA                 JAMES LANKFORD, OKLAHOMA
ALEX PADILLA, CALIFORNIA            MITT ROMNEY, UTAH
JON OSSOFF, GEORGIA                 RICK SCOTT, FLORIDA
                                    JOSH HAWLEY, MISSOURI

DAVID M. WEINBERG, STAFF DIRECTOR
PAMELA THIESSEN, MINORITY STAFF DIRECTOR
LAURA W. KILBRIDE, CHIEF CLERK

**United States Senate**

COMMITTEE ON
HOMELAND SECURITY AND GOVERNMENTAL AFFAIRS
WASHINGTON, DC 20510–6250

October 17, 2022

The Honorable Alejandro Mayorkas
Secretary of Homeland Security
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave. S.E.
Washington, D.C. 20528-0525

Dear Secretary Mayorkas:

I write today to request information about the Notice to Report (NTR) and Parole + Alternatives to Detention (Parole/ATD) processes, which the U.S. Department of Homeland Security (DHS) is using to release migrants at the southern border without issuing Notices to Appear (NTA) in immigration court. To date, DHS has not provided Congress or the public with transparency about how these processing pathways operate. I recently reviewed the Government Accountability Office's (GAO) examination of this process, which I requested.[1] I have numerous concerns about DHS's transparency and continued operation of these two processing pathways.

As you are aware, under the NTR and Parole/ATD processes, U.S. Customs and Border Protection (CBP) will release a migrant without fully processing that migrant and will ask him or her and any family members to report to U.S. Immigration and Customs Enforcement (ICE) within 60 days to complete processing and be issued a NTA in immigration court. GAO's examination of these processing pathways found that ICE has set up an online reporting tool and webpage, where a migrant who has been processed with a NTR or Parole/ATD can use an online portal, call a telephone number, or email an email address to "report" and comply with the terms of their release.[2] GAO specifically noted that ICE had "scheduled an additional approximately 15,100 appointments from March 2022 through March 2024" for migrants who were released with a NTR or Parole/ATD and who used the online portal to report to ICE.[3]

It is my understanding that migrants released with NTRs and Parole/ATD have not been issued NTAs unless and until they complete processing at an ICE field office. This means that a migrant cannot enter into the eight-year backlog before the immigration courts until he or she is issued a NTA and that NTA is filed before the immigration courts.[4] If GAO's findings about appointments are correct, then it appears that DHS has significantly expanded the eight-year asylum backlog through its use of NTRs and Parole/ATD.

---

[1] See Govt. Accountability Office, "SOUTHWEST BORDER: Challenges and Efforts Implementing New Processes for Noncitizen Families," GAO-22-105456, (Sept. 2022). See also Sen. James Lankford and Sen. John Cornyn, Letter to the Hon. Gene L. Dodaro, Comptroller Gen. of the United States (August 23, 2021).
[2] See "ICE Check-In" at https://www.ice.gov/check-in (last updated: Oct. 6, 2022).
[3] Govt. Accountability Office, supra note 1, at page 31.
[4] I am also aware and concerned that ICE has not filed over 17 percent of NTAs it has served to migrants who have crossed the border with the immigration courts, and I am awaiting responses to multiple questions my staff has asked on this matter. See Alicia A. Caldwell, Many Migrants Left in Legal Limbo as U.S. Fails to File Cases, Wall St. J., (Sept. 5, 2022), https://www.wsj.com/articles/many-migrants-left-in-legal-limbo-as-u-s-fails-to-file-cases-11662370201.

Exhibit 2 - 002

The Honorable Alejandro Mayorkas
October 17, 2022
Page 2

Immigration officials who issue a NTA must interview the migrant to determine their alienage (country of origin and pathway to the United States) and make a legal determination that the migrant is removable from the United States. Delaying this legal and fact-finding process by two or more years means that the migrant who has been processed with a NTR or Parole/ATD may not be able to recall the exact conditions around his or her border crossing after that two or more year waiting period and could provide false or inaccurate testimony.

Beyond the unfairness of this process for migrants who are processed with NTRs or Parole/ATD, I am concerned that the use of this online scheduling tool allows DHS to move the goalposts on the public regarding the efficacy of NTRs and Parole/ATD. DHS's use of the online appointment scheduling tool appears to be a direct response to my and other Congressional colleagues' criticisms that migrants were not following the instructions of their release and reporting. While GAO reports that 75 to 78 percent of migrants have "reported," it is unclear how many of those migrants have actually been issued a NTA and how many are waiting for their appointment two or more years down the road.[5]

To better understand these processing pathways in light of the GAO examination, I ask the following questions:

1. To date, how many migrants who received a NTR or Parole/ATD and have not reported to ICE within 60 days have been arrested? How many have been removed?

2. To date, how many migrants who received a NTR or Parole/ATD and have not reported to ICE whatsoever have been arrested? How many have been removed?

3. Is GAO's finding that ICE is scheduling appointments at least two years into the future correct?
   a. If yes, please share a list of the appointment backlog for migrants who have been released with a NTR or Parole/ATD, broken down by ICE field office, date through which appointments have been booked (e.g. March 2024), and number of pending appointments.

4. How many migrants who were processed with a NTR or Parole/ATD have been issued a NTA? How many have not been issued a NTA? In answering this question, please provide a state-by-state breakdown of how many migrants processed through these pathways have received a NTA and how many have not received a NTA.

5. When did ICE create ICE.Gov/Check-In? Please share an archived copy of each edition of this page.

6. When a migrant uses the appointment scheduler, does the scheduling tool capture the IP address or other information that can be used to geo-locate the migrant when they schedule the appointment?
   a. If so, what procedures are in place to address a situation where a migrant's location differs significantly from the address given to CBP upon release?
   b. If it does not capture this information, why not?

7. It is my understanding that a migrant who has been processed will have the intrusiveness of their supervision technology lowered upon reporting. Is this the case?
   a. If it is the case, how does this process work for someone who used the online check-in tool? How does it work for someone who calls or emails an ICE field office as directed on the ICE.gov/Check-In website?

---

[5] Govt. Accountability Office, *supra* note 1, at page 28.

Exhibit 2 - 003

The Honorable Alejandro Mayorkas
October 17, 2022
Page 3

8. Is ICE currently capturing data regarding migrants who have absconded after using the online reporting tool, calling or emailing a local ICE field office, or receiving a mailed-in NTA? Please answer yes or no.
    a. If yes, please share all data regarding the number of migrants who have absconded after completing an initial or subsequent check-in.
    b. If no, why is this information not captured?

9. For a migrant who does abscond after using the online reporting tool, calling or emailing a local ICE field office, or receiving a mailed-in NTA, what consequences does the migrant face?
    a. How many of those migrants have been arrested after absconding?
    b. How many of those migrants have been removed after absconding?

Finally, my staff and I have repeatedly requested copies of guidance regarding the NTR and Parole/ATD processes since September 2021. Shortly after our initial request, DHS indicated that there were no responsive documents and that the guidance was sent to the field by email. Documents provided in a Freedom of Information Act request show that CBP instituted this process with a formal memorandum entitled "Prosecutorial Discretion" on March 19, 2021.[6] The GAO report further indicates that there have been numerous memoranda and other guidance documents issued since the process was instituted on March 19, 2021.[7] I again request copies of the guidance that DHS and its components have issued regarding the Notice to Report and Parole/ATD processes.

Thank you for your consideration of this important matter. I look forward to your response by November 4, 2022. Please do not hesitate to reach out to my staff if you have any questions.

In God We Trust,

James Lankford
Ranking Member
Subcommittee on Government Operations
and Border Management

---

[6] *See* "Prosecutorial Discretion," Memorandum from U.S. Border Patrol Chief Rodney Scott to Acting Commissioner of U.S. Customs and Border Protection Troy Miller, (Mar. 19, 2021), *available at:* https://www.cbp.gov/sites/default/files/assets/documents/2021-Nov/USBP%20Prosecutorial%20Discretion.pdf.
[7] Gov. Accountability Office, *supra* note 1, at pages 10-13.

Exhibit 2 - 004