# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |
|---|---|
| STATE OF FLORIDA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 3:21-cv-01066 |
| | ) |
| The UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

## DEFENDANTS' MOTIONS *IN LIMINE*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTRODUCTION**................................................................................1

**STANDARD** ....................................................................................1

**MOTIONS IN LIMINE**....................................................................1

  **I.**    **The Court Should Exclude Evidence Regarding Parole+ATD at Trial, as it is Governed by the Record Rule Requirements of the APA** ...................1

  **II.**   **The Court Should Exclude Evidence Concerning The Rescinded Notice To Report (NTR) Practice**...........................................................7

  **III.**  **The Court Should Exclude Evidence of Costs to Florida From "Illegal" Immigration**...................................................................9

  **IV.**  **Plaintiff Should Not be Permitted to Offer Deposition Designations of Live Witnesses Who Are Available to Testify at Trial**..............................11

  **V.**   **The Court Should Exclude Speculative, Hearsay Testimony From Personal Depositions of Raul Ortiz and Corey Price If Plaintiff Seeks to Use it at Trial**...........................................................................16

**CONCLUSION**................................................................................20

**CERTIFICATE OF CONFERENCE AND COMPLIANCE** ...........................22

**CERTIFICATE OF SERVICE** .........................................................22

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Mayorkas*,
  584 F. Supp. 3d 783 (D. Ariz. 2022) ....................................................3, 5

*Barron v. Fed. Rsrv. Bank of Atlanta*,
  129 F. App'x 512 (11th Cir. 2005) .............................................................23

*Biden v. Texas*,
  142 S. Ct. 2528 (2022) ...........................................................................3, 4

*Brnovich v. Biden*,
  No. CV-21-01568-PHX-MTL, 2022 WL 4448322 (D. Ariz. Sept. 23, 2022) ......8

*Camp v. Pitts*,
  411 U.S. 138 (1973) ...................................................................................6

*Connectus LLC v. Ampush Media, Inc.*,
  No. 8:15-CV-2778-T-33JSS, 2017 WL 565033 (M.D. Fla. Feb. 13, 2017) ..........8

*Florida Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ...................................................................................2

*Handley v. Werner Enters., Inc.*,
  No. 7:20-CV-00235 (WLS), 2022 WL 994883 (M.D. Ga. Apr. 1, 2022) ...........19

*Havasupai Tribe v. Robertson*,
  943 F.2d 32 (9th Cir. 1991) .........................................................................2

*Hawthorne Partners v. AT & T Techs.*,
  831 F. Supp. 1398 (N.D. Ill.1993) ................................................................1

*King v. Dogan*,
  31 F.3d 344 (4th Cir. 1994) .........................................................................8

*King v. Passmore*,
  No. 2:16-CV-00192-JEO, 2017 WL 5202886 (N.D. Ala. Apr. 17, 2017) ..........24

*Lapidus v. Jesup & Lamont*,
  276 F. Supp. 762 (S.D.N.Y. 1967) ...............................................................17

*Lemus-Losa v. Holder*,
  576 F.3d 752 (7th Cir. 2009) ...............................................................12

*Luce v. United States*,
  469 U.S. 38 (1984) ................................................................................1

*Lujan v. National Wildlife Fed'n*,
  497 U.S. 871 (1990) ..............................................................................5

*Mazloum v. Dist. Of Columbia Metro Police,*
  248 F.R.D. 725 (D.D.C. 2008) ...................................................... 15, 16

*New Jersey v. United States*,
  91 F.3d 463 (3d Cir. 1996) ..................................................................21

*Norton v. S. Utah Wilderness, All.*,
  542 U.S. 55 (2004) .................................................................................5

*Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
  87 F.3d 1242 (11th Cir. 1996) ...............................................................2

*Pyrocap Int'l Corp. v. Ford Motor Co.*,
  259 F. Supp. 2d 92 (D.D.C. 2003)................................................. 17, 21

*Rasidescu v. Midland Credit Mgmt., Inc.*,
  No. CIV. 05CV1794, 2005 WL 3271687 (S.D. Cal. Nov. 23, 2005) ...................7

*Spano v. Satz*,
  No. 09-60255-CIV, 2010 WL 11515691 (S.D. Fla. May 12, 2010) ...................10

*Stewart v. Hooters of Am., Inc.*,
  No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873 (M.D. Fla. June 18, 2007)........1

*Texas v. Biden*,
  20 F.4th 928 (2022) ...............................................................................4

*Thibeault v. Square D Co.*,
  960 F.2d 239 (1st Cir. 1992) ................................................................23

*United States v. Hart,*
  841 F. App'x 180 (11th Cir. 2021)........................................................19

*United States v. Henderson*,
   409 F.3d 1293 (11th Cir. 2005)................................................................ 19, 20, 22

*United States v. Lloyd*,
   807 F.3d 1128 (9th Cir. 2015).................................................................. 19, 20, 22

*United States v. Rivera*,
   780 F.3d 1084 (11th Cir. 2015)..............................................................................19

*Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*,
   No. 08-20395-CIV, 2009 WL 1956236 (S.D. Fla. July 7, 2009).........................8

*White v. Illinois*,
   502 U.S. 346 (1992) .............................................................................................17

*Williams v. Mosaic Fertilizer*, LLC,
   889 F.3d 1239 (11th Cir. 2018).............................................................................18

## STATUTES

5 U.S.C. § 706.......................................................................................................2

8 U.S.C. § 1182(d)(5)(A).....................................................................................12

U.S.C. § 1226(a) ..................................................................................................12

## INTRODUCTION

Defendants United States of America, et al., by and through undersigned counsel, hereby move the Court for an order granting the following motions *in limine*, in anticipation of the trial in this matter, scheduled to start January 9, 2023.[1]

## STANDARD

Courts have authority to make *in limine* rulings pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 (1984). The Court may exclude evidence that is clearly inadmissible. *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (citing *Hawthorne Partners v. AT & T Techs.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).

## MOTIONS *IN LIMINE*

### I.   The Court Should Exclude Evidence Regarding Parole+ATD at Trial, as it is Governed by the Record Rule Requirements of the APA.

In its Order denying the Parties' motions for summary judgment, this Court ruled that "judicial review of the Parole + ATD policy will be limited to the

---

[1] Defendants note that the Court has not yet issued a written opinion on the motions for summary judgment, and its order thereon incorporates the brief oral discussion on those motions at the November 18, 2022 conference. *See* ECF 117 at 1. Thus, regarding these motions, Defendants do not have the benefit of the Court's full written explanation for its decision on summary judgment, and make these motions only on the basis of the oral rulings given at the November 18, 2022 conference. *See* Transcript from November 18, 2022 Conference at 21:12-52:19 (attached as Exhibit A).

supplemental administrative record." ECF No. 117 at 2. The Court expressed that same view at oral argument. "On the Parole + ATD policy, I agree with the defendants that the validity or the ultimate success of that policy . . . is going to be based on the administrative record or the supplemental administrative record." Nov. 18, 2022 Tr. 29:8-12.

Notwithstanding, Plaintiff has indicated it will seek to introduce evidence at trial concerning the Parole+ATD policy.[2] In fact, Plaintiff contends that because the Parole+ATD policy is subsumed within the government's alleged non-detention policy, "[o]nly in the event that the Court declines to vacate the non-detention policy is there reason to review the Parole + ATD policy as a standalone policy." *Id.* at 2. Plaintiff's position that it should be permitted to introduce evidence of the Parole+ATD program at trial ignores basic principles of administrative law, Supreme Court precedent, and is unduly prejudicial.

It is well settled that judicial review of agency action under the APA is generally limited to review of the administrative record. 5 U.S.C. § 706; *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996); *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991).

---

[2] Tr. 52:4-6. ("We may want to present evidence about the Parole + ATD policy simply insofar as it is relevant to the non-detention policy."); ECF No. 86 at 1-2 ("Florida's view . . . is that Parole + ATD is really a subpart of the Biden Administration's broader non-detention policy . . .").

Indeed, this Court recognized as much when it ruled that judicial review of Parole+ATD must be limited to the administrative record. ECF No. 117 at 2; *see also* Tr. 51:10-12 ("I didn't anticipate that there was going to be evidence at the trial from which I was going to determine whether the Parole + ATD policy was valid or invalid."). Accordingly, the Court should preclude Plaintiff from seeking to introduce evidence at trial pertaining to the Parole+ATD policy.

Plaintiff argues that it should be permitted to introduce evidence of the Parole+ATD policy at trial, because the policy is evidence of the government's alleged broader policy of non-detention. According to Plaintiff, "Parole+ATD is merely one of several mechanisms the federal government is using to implement its general policy of releasing aliens subject to mandatory detention." ECF No. 86 at 1-2. However, "a plaintiff cannot unilaterally characterize a collection of agency policies and programs as a unitary agency action when the agency itself has never viewed the policies and programs in that fashion" and thereby obtain APA review of that amalgamated 'policy.' *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 792 (D. Ariz. 2022), *appeal dismissed*, No. 22-15519, 2022 WL 6105386 (9th Cir. Sept. 12, 2022).  Indeed, the Supreme Court's decision in *Biden v. Texas*, 142 S. Ct. 2528 (2022) strongly suggests that even were Plaintiff able to challenge a general, unwritten policy (which it cannot here), it certainly cannot build that policy out of an amalgamation of existing policies.

3

*Texas* concerned the Secretary of Homeland Security's termination of the Migrant Protection Protocols ("MPP") in a June 1, 2021 memorandum, and later in a superseding October 29, 2021 memorandum. The Fifth Circuit ruled, inter alia, that the October 29 memorandum terminating MPP did not constitute final agency action, because it was merely evidence of the Secretary's separate, broader decision to terminate MPP, and that only the Secretary's broader decision had legal effect. *Texas,* 20 F.4th at 950-58. The Supreme Court reversed. It held that the Fifth Circuit erred by "postulating the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability ... designed to implement' that decision." *Texas*, 142 S. Ct. at 2545. The Supreme Court explained, "[t]o the extent that the Court of Appeals understood itself to be reviewing an abstract decision apart from specific agency action, as defined in the APA, that was error." *Id.*  Thus, at a minimum, *Texas* stands for the proposition that courts cannot "separate an agency's decision from the statement intended to implement that decision." *Brnovich v. Biden*, 2:21-CV-1568-MTL, ECF No. 219, at 16. "That is because an agency's statement is in fact the 'action' that the APA permits courts to review." *Id.*

Thus, while this Court has declined to dismiss Plaintiff's non-detention claim on summary judgment, instead giving Plaintiff the opportunity to establish the existence of *that* discrete policy at trial, Plaintiff must do just that—prove the

existence of *the alleged non-detention* policy, not simply point to other policies, including the Parole + ATD policy, and aggregate them into something else. *See Arizona*, 584 F. Supp. 3d at 792, *appeal dismissed*, 2022 WL 6105386 (supra); s*ee also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 890 (1990) (concluding that a "challenge [to] the entirety of petitioners' so-called 'land withdrawal review program' ... [was] not an 'agency action' ..., much less a 'final agency action,'" because the challenged program was "simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans"); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (only discrete agency action may be reviewed, not broad programmatic attacks).

A decision by this Court to the contrary would upend basic principles of APA review. Any party wishing to challenge agency action could have two bites at the apple. First, a party could challenge a policy on its face, and then it could challenge the policy a second time by arguing that it, along with other discrete policies, together are evidence of a broader policy of its own definition—and thereby evade the record rule requirement, given that an agency will not have a record associated with a "policy" that exists only as a function of the challenger's rhetorical label. That result would be contrary to basic APA review principles.

If the Court permits Plaintiff to introduce evidence of Parole+ATD at trial, it should be only for the fact that the Parole+ATD policy exists, and not to support Plaintiff's allegation of a larger non-detention policy. If the Court permits such evidence to be admitted as part of proving a non-detention policy, it will likely exceed the scope of the administrative record because witnesses' testimony is likely to go beyond the administrative record. Defendants would be prejudiced by such extra-record evidence. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). That is particularly true here, where the Court already found that Plaintiff has not met the standard to permit the "court [to] look beyond . . . the administrative record provided by the agency" with regard to the Parole+ATD claims. ECF No. 55 (decision denying Plaintiff's motion to supplement the record).

Further, including Parole+ATD in adjudication outside the context of the administrative record justifying that policy, especially in light of other extrinsic evidence that will be introduced at trial, would erode the purposes of the record rule to confine administrative challenges to discrete agency actions and judge those actions only the basis of the evidence considered by the decisionmaker. The Court has already ruled that the record rule applies to the adjudication of the Parole+ATD

policy and that there will be no extra-record discovery, and the Court should not permit a backdoor attempt by Plaintiff to get around those rulings.

For all these reasons, this Court should adhere to its decision that "judicial review of the Parole+ATD policy will be limited to the supplemental administrative record," ECF No. 117 at 2, and preclude Plaintiff from introducing evidence of the Parole+ATD policy at trial.

## II.     The Court Should Exclude Evidence Concerning The Rescinded Notice To Report (NTR) Practice.

The Court should prohibit Plaintiff from introducing evidence at trial concerning the long-ago rescinded NTR practice, including but not limited to the March 19, 2021 memorandum and March 20, 2021 email from former Border Patrol Chief Rodney Scott addressing NTRs (Plaintiffs' tentative Exhibits 20 and 21), the deliberative-process-privilege-protected, undated and unsigned draft document addressing NTRs (Plaintiff's tentative Exhibit 59), *see* ECF Nos. 89-1, 93, 94, and any other documents and testimony concerning NTRs Plaintiff seeks to reply upon. *See, e.g.*, ECF No. 95-16. Plaintiff amended its complaint to drop claims concerning NTRs from its case. *Compare* ECF No. 1 *with* ECF Nos. 16 *and* 74. Therefore, such evidence is irrelevant—Plaintiff's Second Amended Complaint makes it clear that the rescinded NTR policy is not part of Plaintiff's theory of a "non-detention policy," nor has Plaintiff alleged such during summary judgment briefing.

Irrelevant evidence is not admissible. Fed. R. Evid. 402. An amended complaint supersedes the original complaint and renders claims not reincorporated both dismissed from the case and irrelevant. *Rasidescu v. Midland Credit Mgmt., Inc.*, No. CIV. 05CV1794, 2005 WL 3271687, at *4 (S.D. Cal. Nov. 23, 2005) (citing *King v. Dogan*, 31 F.3d 344, 346 (4th Cir. 1994)). Evidence related to claims that have been dropped or dismissed from the case is clearly irrelevant. *See, e.g.*, *Connectus LLC v. Ampush Media, Inc.*, No. 8:15-CV-2778-T-33JSS, 2017 WL 565033, at *8 (M.D. Fla. Feb. 13, 2017) ("Connectus also argues Strandberg's opinions are relevant in support of its (now dismissed) unfair competition claim. … But, that claim has been dismissed and so the argument is irrelevant."); *cf. Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, No. 08-20395-CIV, 2009 WL 1956236, at *1 (S.D. Fla. July 7, 2009) ("The Plaintiff's decision to drop those Defendants from its Third Amended Complaint suggest to the Court that those claims against them were not meritorious."). Plaintiff is on the third iteration of its complaint, and it long ago dropped all claims challenging NTRs. *Compare* ECF No. 1 *with* ECF Nos. 16 *and* 74. That was Plaintiff's voluntary choice; by contrast, in a parallel suit, the State of Arizona continues to challenge the NTR practice despite the robust evidence of its long-past cessation. *Brnovich v. Biden*, No. CV-21-01568-PHX-MTL, 2022 WL 4448322, at *2 (D. Ariz. Sept. 23, 2022). Given the elimination of all challenges to the NTR practice from the complaint in this case,

and the undisputed fact that the practice has long since ceased, evidence

concerning NTRs is irrelevant and should be excluded under Fed. R. Evid. 401.[3]

### III. The Court Should Exclude Evidence of Costs to Florida From "Illegal" Immigration.

The Court should prohibit Plaintiff from introducing evidence concerning

costs incurred by the state attributed to "illegal" immigration or from providing

services or benefits to noncitizens "unlawfully present" in the United States.

As noted, irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence

is relevant only "if it has any tendency to make a fact more or less probable than it

would be without the evidence" and "the fact is of consequence in determining the

action." Fed. R. Evid. 401. Evidence concerning unlawfully present noncitizens is

of no consequence to this case. Here, Plaintiff challenges Defendants' alleged

practices of releasing noncitizens apprehended at or near the border. *See generally*

ECF No. 74. These noncitizens have all been inspected and permitted entry to the

United States on parole under 8 U.S.C. § 1182(d)(5)(A) or conditional release

---

[3] Plaintiff has not made any affirmative showing through a motion to supplement that evidence of the NTRs bears any remaining relevance to this case. However, even assuming they had, such relevance would be solely as to the administrative record for Parole+ATD, the practice which rescinded and replaced NTRs. ECF 87-1 at 96. The Parole+ATD record addresses NTRs, their costs and effects, and the reason for ending that practice. ECF 87-1 at 96, 169-73, 259-60, 264-65, 273-78. Indeed, by replacing its NTR claims pleaded in its original complaint with claims challenging Parole+ATD in its subsequent amended complaints, Plaintiff effectively concedes that it views Parole+ATD as the successor to the rescinded NTR practice.  Accordingly, if the Court deems NTRs relevant at all, their relevance is only as part of the historic record for adoption of Parole+ATD, the challenges to which are bound by the record rule, as the Court has ordered. ECF 117 at 2. Evidence concerning NTRs would still be inadmissible at trial on the non-detention policy claims.

under 8 U.S.C. § 1226(a) pending a decision whether the noncitizen is to be removed from the United States. They therefore are not noncitizens "unlawfully" or "illegally" present in the United States, who by definition "entered the United States without inspection." *Lemus-Losa v. Holder*, 576 F.3d 752, 761 (7th Cir. 2009).

However, Plaintiff advances claims and evidence concerning costs for "unlawful" noncitizens. *See, e.g.*, ECF No. 74 ¶ 24 (alleging "Florida spends over $100 million per year just on incarcerating unlawful aliens who commit crimes in the State. And … Florida spends millions of dollars providing public services and benefits to unlawful immigrants."), ¶ 66 (alleging, regarding the noncitizens hypothesized to come to Florida, "[s]ome of these *unlawful aliens* may be otherwise law-abiding, but others are gang members, drug traffickers, and other dangerous criminals") (emphasis added); ¶ 69 ("The presence of these aliens in Florida—who have been excluded by federal law—violates the State's quasi-sovereign interest in its territory"); ¶ 70 ("Florida's state prison system alone spends over $100 million per year incarcerating unlawfully present aliens who commit crimes in Florida."); ¶ 72 ("Florida's Department of Children and Families provides a variety of public services to unlawful aliens at the State's expense").

Any evidence Plaintiff would put forward at trial regarding costs and other claims related to "unlawfully present" or "illegal noncitizens" is wholly distinct

from, and of no consequence to, determining Florida's costs allegedly incurred from serving noncitizens who have been inspected, paroled under § 1182(d)(5) or released under § 1226(a), and permitted to enter the country while they pursue permanent status or await removal proceedings.

Not only is such evidence thus irrelevant and inadmissible under Rules 401 and 402, but it also should be excluded under Rule 403. Such evidence's non-existent probative value is vastly outweighed by its potential to confuse the issues through possible conflation with the valid costs of lawful migration, and thereby severely prejudice Defendants by attributing to their actions costs and consequences arising from noncitizens who have evaded their enforcement efforts and whose presence is not the result of Parole+ATD or the alleged "nondetention policy." *See* Fed. R. Evid. 403.

For these reasons the Court should exclude all evidence related to "illegal" or "unlawfully present" noncitizens and associated costs.

IV. **Plaintiff Should Not be Permitted to Offer Deposition Designations of Live Witnesses Who Are Available to Testify at Trial.**

The Court should exclude the deposition testimony designated by Plaintiff for witnesses who are actually available to testify in person at trial. These witnesses are not "unavailable" within the meaning of Federal Rule of Civil Procedure 30(a)(4)(B) and Federal Rule of Evidence 804(b)(1).

The parties' pretrial stipulation, including deposition designations, are due to this Court on December 9, 2022, so the final designations Plaintiff intends to offer are not known to Defendants yet. However, Plaintiff has indicated, at least preliminarily, that it intends to offer designations from the following depositions: individual deposition of Corey Price, individual deposition of Raul Ortiz, 30(b)(6) deposition of Tony Barker, 30(b)(6) deposition of Robert Guadian, and 30(b)(6) deposition of Matthew Davies. Further, during the parties' conference, Defendants informed Plaintiff they will bring their witnesses to Pensacola, Florida, and have them available to testify in person at the trial.[4]  However, Plaintiff advised that it would proceed with its designations and oppose this motion for live testimony. Thus, Defendants make this argument to preserve their position, and will note their specific objections to the designations on the parties' joint pretrial stipulation.[5]

Federal Rule of Civil Procedure 32(a)(4)(B) states, "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . (B) that the witness is more than 100 miles from the [place of trial.]." Fed. R. Civ. P. 32(a)(4)(B); *see also* Fed. R. Civ. P. 32(a)(4)(D) (stating that the deposition of a

---

[4] Specifically, Defendants will make available the following witnesses: Robert Guadian, Raul Ortiz, Matthew Davies, and Corey Price.  Tony Barker is no longer with DHS, and thus will not be made available to testify in person at trial. This motion does not apply to deposition designations from Mr. Barker's testimony.

[5] Should Defendants become aware that any witness has become unavailable for trial, Defendants agree that designation of that witness' deposition transcript would be appropriate under Fed. R. Civ. P. 32.

witness may be used if "the party offering the deposition could not procure the witness's attendance by subpoena," which is not at issue here as Defendants are willing to make available all witnesses who were deposed); *see Mazloum v. Dist. Of Columbia Metro Police,* 248 F.R.D. 725 (D.D.C. 2008). Likewise, Federal Rule of Evidence 804(b)(1) allows "former testimony" (including deposition testimony) to be admitted into evidence, despite the rule against hearsay, *only* if the witness is "unavailable." The parties do not dispute that Tony Barker will be unavailable for trial, and thus Defendants do not oppose the use of his deposition testimony for non-impeachment purposes.   The rest of the DHS witnesses, however, will be available at trial.

Importantly, Plaintiff is limited in which deposition transcripts can be used at trial for non-impeachment purposes.[6]   Fed. R. Civ. P. 32(a)(3) permits an adverse party to use a Rule 30(b)(6) deposition for any purpose.   However, that Rule applies only to the deposition "of a party" or "anyone who, when deposed, was the party's … designee under Rule 30(b)(6)." Fed. R. Civ. P. 32(a)(3). First, none of the witnesses are parties to this action, and Corey Price was deposed only in his personal capacity. Therefore, Plaintiff cannot use his deposition testimony unless he is deemed unavailable under Fed. R. Civ. P. 32(a)(4). As he will be

---

[6] Defendants do not dispute that deposition testimony can be used for impeachment purposes, subject to the proper foundation being laid at trial.

present in Pensacola at the time of trial, he will not be "unavailable." *See Mazloum v. Dist. of Columbia Metro Police*, 248 F.R.D. 725, 727 (D.D.C. 2008) ("Simply put, it is the fact that a witness will actually be present at trial that renders him or her 'available' and thus outside the scope of Rule 32(a)(4)(B)….").

The remaining trial witnesses, Robert Guadian, Raul Ortiz, and Matthew Davies, were all deposed in both their personal and 30(b)(6) capacity.  As none of these witnesses are parties to this action, none of their personal testimony can be used at trial. Fed. R. Civ. P. 32(a).  Accordingly, Plaintiff's designations from the personal deposition of Raul Ortiz are not permitted under the Federal Rules of Civil Procedure.

Therefore, aside from Tony Barker, the only depositions Plaintiff could potentially use at trial for non-impeachment purposes are the 30(b)(6) depositions of Robert Guadian, Raul Ortiz, and Matthew Davies. Plaintiff has only indicated, so far, that it intends to offer designations from the 30(b)(6) depositions of Robert Guadian and Matthew Davies.  However, the Court should not permit Plaintiff to do so.

The Federal Rules of Civil Procedure indicate a strong preference for live testimony at trial.  *See* Fed. R. Civ. P. 43(a) ("At trial, the witnesses' testimony must be taken in open court."); *see also id.* advisory comm. note to 1996 amndt. ("The importance of presenting live testimony in court cannot be forgotten.").

"Live testimony is always markedly preferable to written depositions, particularly where the resolution of critical factual issues will likely turn on the credibility of witnesses." *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 98 (D.D.C. 2003) (internal citations omitted).

Importantly, this Court must judge the credibility of the witnesses at trial, and may ask questions of the witnesses under Rule 614. The Court will be unable to do so with deposition designations. There is a settled "preference for live testimony" given the "importance of cross-examination." *White v. Illinois*, 502 U.S. 346, 356 (1992). That preference is especially compelling in a case like this, which involves sharply disputed issues of fact in a matter of national significance. *See Lapidus v. Jesup & Lamont*, 276 F. Supp. 762, 763 (S.D.N.Y. 1967) ("Sharply contested, technical and complicated issues of fact should be resolved at a plenary trial, where the fact-finder may have the benefit of … the testimony of other live witnesses, all subject to cross-examination.")

Moreover, the depositions Plaintiff may designate from are replete with hearsay and speculation, sometimes in response to imprecise questions. *See, e.g.*, ECF 96-1 at 129:20-22, 130:8-11, 130:21-22, 130:12, 132:9-11, 132:22, 133:6. Therefore, this Court would have to sift through Plaintiff's designations and rule on the admissibility of them individually. This would take more time and work

15

than simply hearing the witnesses live and ruling on evidentiary objections as they

may arise at trial.

Accordingly, this Court should try this case in accordance with the Rules of

Evidence with live witnesses, which will undoubtedly be more efficient and a

better use of party resources, and will more likely lead to a correct result than a

paper trial based on depositions. Put differently, there are no "exceptional

circumstances" which would make the use of depositions desirable here, especially

where the Rule recognizes "the importance of live testimony." Fed. R. Civ. P.

32(a)(4)(E).

### V.    The Court Should Exclude Speculative, Hearsay Testimony From Personal Depositions of Raul Ortiz and Corey Price If Plaintiff Seeks to Use it at Trial.

To the extent the Court does not require live testimony by all available

witnesses, as argued *supra*, it should at least prohibit Plaintiff from introducing at

trial as standalone testimony certain deposition testimony provided by Raul Ortiz

and Corey Price in their personal capacities, which is inadmissible due to lacking a

foundation in personal knowledge and representing hearsay lacking a valid

exception.

Lay witnesses may testify only based on personal knowledge. Fed. R. Evid.

602; *see Williams v. Mosaic Fertilizer*, LLC, 889 F.3d 1239, 1250 (11th Cir.

2018). "A witness may testify to a matter only if evidence is introduced sufficient

to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. A lay witness may not answer hypothetical questions or questions about causation that necessarily draw on specialized knowledge rather than observations. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005); *Handley v. Werner Enters., Inc.*, No. 7:20-CV-00235 (WLS), 2022 WL 994883, at *3 (M.D. Ga. Apr. 1, 2022); *see also United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (explaining a lay witness "may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements"). Indeed, "the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." *Henderson*, 409 F.3d at 1300 (internal quotation marks and alterations omitted).

Further, an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement" is hearsay. Fed. R. Evid. 801(c); *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015). Hearsay is generally inadmissible, absent a valid exception. Fed. R. Evid. 801(c); *United States v. Hart*, 841 F. App'x 180, 182 (11th Cir. 2021).

While Defendants drafted this motion prior to having the opportunity to examine Plaintiff's proposed deposition designations, Plaintiff previously proffered the personal-capacity deposition testimony of Raul Ortiz discussing possible causes for migration to the United States and migrants' perception of

United States' immigration policy. ECF No. 95-10 at 34-51; ECF 98 at 7, 11-12 & n.6. There is no factual foundation establishing Ortiz's firsthand knowledge of the reasons any particular migrant comes to the United States, let alone all of the migrants who have come to the United States, nor has he been qualified as an expert to opine based on specialized knowledge of international migration trends. To the extent Ortiz's testimony relies on either statements in agency documents or statements by migrants he might have personally heard (although there is no evidence establishing this), such statements' introduction to establish the causes of migration and migrants' perception of domestic immigration policy represents inadmissible hearsay for which Plaintiff has not and cannot establish any valid exception. This personal-capacity lay testimony thus relies on speculation and hearsay, not personal knowledge, and thus is inadmissible. *See Henderson*, 409 F.3d at 1300; *Lloyd*, 807 F.3d at 1154.

Similarly, Plaintiff previously proffered the personal-capacity deposition testimony of Corey Price for his speculation regarding what noncitizens might do upon release into the United States and whether their activities would incur costs to State. ECF No. 86 at 8; ECF No. 85-13 at 130-33. There is no factual foundation to establish that Price has direct, personal knowledge about the impact on state coffers from the noncitizens at issue in this case or generally, nor is there any factual basis showing he personally knows whether any noncitizens in particular,

let alone the ones in "this parole population," will inevitably commit crimes, enroll in public schools or require governmental assistance. *See* ECF No. 85-13 at 130-33. In fact, Price's testimony indicates the opposite. Price had no such personal knowledge regarding the post-release behavior of noncitizens, as his repeated qualifications that he was "assum[ing]" and that his answer was just based on his sense of "the way the immigration system has worked" make clear. ECF No. 85-13 at 131-32. Similarly, regarding the impact on costs to states, Price repeatedly testified he "d[id]n't know the state funding mechanism" pertaining to incarcerating criminal noncitizens or for healthcare qualifications under Medicaid. *Id.* at 131. Nor could Price have any factual basis for answering whether released noncitizens' speculated crimes "are going to cause the states where these aliens live to incur cost for state criminal proceedings," *id.* at 130-31, because whether or not such prosecution happens depends on future discretionary determinations by local prosecutors whether or not to pursue enforcement actions for local reasons. *See New Jersey v. United States*, 91 F.3d 463, 467 (3d Cir. 1996).

Even assuming an expert witness could provide such hypothetical testimony, Price could not do so. He is an immigration enforcement officer and has not been qualified as an expert to opine based on specialized knowledge of sociological trends among immigrants or state financial systems. To the extent his testimony

relies on documents he might have read or information he was told (which there is no evidence to suggest), such testimony would be based on inadmissible hearsay.

In summary, Price's testimony lacked any predicate establishing his personal knowledge that noncitizens released in this context will commit crimes, utilize public education or require governmental assistance, and thereby incur costs to states. His personal-capacity lay testimony thus relies on speculation and hearsay, not personal knowledge, and is inadmissible. *See Henderson*, 409 F.3d at 1300; *Lloyd*, 807 F.3d at 1154.

Therefore, to the extent the Court permits Plaintiff to designate deposition testimony for witnesses who are available to testify at trial, the Court should prohibit Plaintiff from designation and introducing this lay deposition testimony by Ortiz and Price lacking a valid basis in personal knowledge.

## CONCLUSION

For these reasons, the Court should grant all of Defendants' motions *in limine*.

Date: December 2, 2022                    Respectfully submitted,

JASON R. COODY                           BRIAN M. BOYNTON
*United States Attorney*                   *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                           WILLIAM C. PEACHEY
*Assistant United States Attorney*          *Director*
Northern District of Florida              Office of Immigration Litigation
                                          District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ERIN T. RYAN
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 805-7537
Joseph.a.darrow@usdoj.gov

**CERTIFICATE OF CONFERENCE AND COMPLIANCE**

I certify that I conferred with counsel for Plaintiff on December 1, 2022 as required by Local Rule 7.1(B) regarding these motions in limine, but the parties were unable to resolve these issues.

I certify that this brief complies with Local Rule 7.1(F) parts of the document exempted by the Rule, it contains 4,824 words.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice


**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division