UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

    *Plaintiff*,

v.                                                 Case No. 3:21-cv-1066-TKW-ZCB

The UNITED STATES OF AMERICA;
*et al.*,

    *Defendants*.
_____/

**FLORIDA'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS IN LIMINE**

Defendants move in limine to exclude broad categories of evidence at the upcoming bench trial. Doc. 120. But "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence." *Singh v. Caribbean Airlines Ltd.*, No. 13-20639-civ, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014). As such, "courts are advised to deny motions in limine in non-jury cases." *Id.* (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2411 (3d ed. 2008)); *accord Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2011) ("[T]his is a bench trial, making any motion in limine asinine on its face.").

To the extent the Court does not summarily deny Defendants' motions, each argument they present is meritless, and many of their requests are either premature or lack specificity.

## ARGUMENT

### I. THIS COURT SHOULD NOT EXCLUDE EVIDENCE OF THE PAROLE + ATD POLICY.

Defendants first move to exclude evidence concerning the Parole + ATD policy on the basis that judicial review of that policy should be based only on the administrative record. Doc. 120 at 6–12.

Florida respects the Court's ruling at the November 18 status conference concerning review of the Parole + ATD policy, Doc. 120-1 at 29–30,[1] and Florida informed Defendants during the attorney conference that the State does not plan to present evidence at trial for purposes of reviewing the merits of the Parole + ATD policy. Insofar as this is what Defendants seek to exclude, the motion is unnecessary.

Defendants, however, appear to seek more. They seem to argue that evidence regarding the Parole + ATD policy is *categorically irrelevant* to Florida's contention that Defendants have a non-detention policy. *See* Doc. 120 at 11 (arguing that evidence of the Parole + ATD policy should not be used "to support Plaintiff's allegation of a larger non-detention policy"). That argument should be rejected.

---

[1] For deposition and hearing transcripts, Florida cites the transcript page rather than the ECF page.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence regarding Parole + ATD meets that standard, among other reasons, because that evidence makes it more probable that Defendants are abusing the parole authority—a central allegation regarding the non-detention policy. *E.g.*, Doc. 74 ¶ 80 ("The government's self-imposed crisis does not suddenly render tens of thousands of migrants eligible for relief limited to incredibly narrow circumstances.").

Defendants do not even invoke the Rule 401 standard. Instead, Defendants suggest that admission of evidence regarding the Parole + ATD policy would violate the record rule. Doc. 120 at 11. But Defendants have provided no administrative record for the non-detention policy. *See* Doc. 55 at 5 ("[B]ecause Defendants deny the existence of the non-detention policy, Florida cannot be constrained by an administrative record as to that alleged policy."). And, as explained, Florida will not present evidence at trial for purposes of reviewing the Parole + ATD policy.

The undertone of Defendants' motion is that they do not trust the factfinder to keep the non-detention and Parole + ATD policies separate. *See* Doc. 120 at 11 (arguing that "Defendants would be prejudiced" by consideration of evidence regarding Parole + ATD); *id.* at 12 (discussing "a backdoor attempt by Plaintiff to get around [the Court's] rulings"). But this is a non-jury case, and the Court is

3

perfectly able to "disregard inadmissible evidence" and limit its consideration of Parole + ATD evidence to a permissible purpose. *Singh*, 2014 WL 4101544, at *1.[2]

## II. EVIDENCE REGARDING THE NOTICE TO REPORT PRACTICE IS RELEVANT TO FLORIDA'S CLAIMS.

Defendants also move to exclude all evidence regarding Defendants' notice to report (NTR) practice, including the March 19, 2021 memo and March 20, 2021 email. *See* Doc. 120 at 7 (discussing Doc. 115-1 and 85-12); *see also* Doc. 120-1 at 11, 13. Defendants argue that this evidence is irrelevant because Florida amended its complaint to drop its separate challenge to the NTR practice.

As this Court recognized at the status conference, NTR evidence "ultimately helps explain . . . at least a greater emphasis on this 1226 statute" and "at a minimum . . . is relevant background information to where we [are] today." Doc. 120-1 at 13. Florida agrees and reiterates that any evidence that tends to show that the Biden administration has a "policy of releasing aliens subject to mandatory detention," Doc. 74 at ¶ 20, is relevant to this case.

Defendants' suggestion that Florida could have continued to challenge the NTR practice misses the point. Doc. 120 at 8. Dismissal of Florida's independent

---

[2] Florida disagrees with Defendants' reading of *Biden v. Texas*, 142 S. Ct. 2528 (2022). *See* Doc. 120 at 9. But the application of that case goes to the merits of Florida's claims rather than the admissibility of evidence. *See SE Prop. Holdings, LLC v. HCB Fin. Corp.*, No. 3:13-cv-6, 2015 WL 12868076, at *1 (N.D. Fla. Mar. 13, 2015) ("[M]otions in limine should not be used as disguised motions for summary judgment." (quotations omitted)).

challenge to the NTR practice does not wash away all relevance of the practice to any other claim. *See Perry v. Schumacher Grp. of La.*, No. 2:13-cv-36, 2020 WL 6938391, at *2 (M.D. Fla. Nov. 25, 2020) ("[I]f the dismissed claims and the remaining claims share the same underlying facts, it is possible that those underlying *facts* themselves may be admissible" (quotations omitted)).

At bottom, Defendants' objections to NTR evidence boil down to their position that the non-detention policy does not exist—a central factual issue this Court will resolve at trial.

### III. DEFENDANTS' REQUEST TO EXCLUDE FLORIDA'S COSTS FROM "ILLEGAL" IMMIGRATION IS ILL-DEFINED AND MERITLESS.

Defendants next argue that this Court should exclude all evidence "concerning costs incurred by the [S]tate attributed to 'illegal' immigration or from providing services or benefits to noncitizens 'unlawfully present' in the United States." Doc. 120 at 14. Because Florida uses the terms "illegal immigration" and "unlawfully present" to include immigrants released under the challenged policies, Florida does not understand what Defendants are asking for.

If Defendants are opposing evidence Florida plans to submit on standing because it does not pertain to aliens released under the challenged policies, then Florida does not know what specific evidence Defendants take issue with. All Florida's evidence regarding costs to the State includes services available to aliens

released under the challenged policies. *See* Doc. 86 at 10–14 (explaining the categories of aliens Florida tracks and the public benefits provided to those categories). Without identifying specific evidence that Defendants seek to exclude, a motion to exclude "all evidence related to 'illegal' or 'unlawfully present' noncitizens and associated costs," Doc. 120 at 16, should be denied as ill-defined. *See RJ's Int'l Trading, LLC v. Crown Castle South LLC*, No. 20-25162-civ, 2021 WL 6135137, at *4 (S.D. Fla. Dec. 2, 2021) ("[A] Court cannot preemptively exclude a broad category of evidence without knowing the evidence's substance.").

Finally, to the extent Defendants are arguing that release under the challenged policies is lawful or conveys legal status,[3] that issue is a key legal dispute in the case—i.e., whether Defendants' actions are lawful—and not a proper basis to exclude evidence before trial. *See Peterson v. Corrs. Corp. of Am.*, No. 5:14-cv-265, 2015 WL 5672026, at *2 (N.D. Fla. Sept. 25, 2015) (denying a motion in limine that sought to resolve a legal dispute and observing "there is no need to disguise a motion for summary judgment in the clothing of a motion in limine" (quoting *Gold Cross EMS, Inc. v. Children's Hosp. of Ala.*, 309 F.R.D. 699, 702 (S.D. Ga. 2015))).

---

[3] By arguing that aliens released under the challenged policies "have all been inspected and permitted entry to the United States" and thus are not persons who "entered the United States without inspection," Doc. 120 at 14–15 (quotations omitted), Defendants appear to concede that 8 U.S.C. § 1225, not § 1226, applies to these aliens. "Inspection" is a term of art used only in § 1225. *See* 8 U.S.C. § 1225(b)(1)–(2). In other words, if Defendants believe that their initial encounters with illegal border crossers qualify as "inspections," then they should not be releasing them under § 1226(a).

6

## IV. FLORIDA'S DEPOSITION DESIGNATIONS ARE ADMISSIBLE EVEN IF DEFENDANTS OFFER LIVE WITNESSES.

Defendants seek to prevent Florida from offering portions of four depositions: (1) an individual deposition of Corey Price, Acting Executive Associate Director of ICE's Enforcement and Removal Operations (ERO), (2) an individual deposition of Raul Ortiz, Chief of Border Patrol, (3) a deposition of Robert Gaudian, one of DHS's 30(b)(6) designees, and (4) a deposition of Matthew Davies, another one of DHS's 30(b)(6) designees. Defendants plan to call each of these witnesses at trial and thus seek to exclude the deposition testimony because of a "strong preference for live testimony at trial." Doc. 120 at 19.

While Defendants devote significant attention to Rule 32(a)(4)'s availability requirements, Florida explained to Defendants during the attorney conference—in advance of Defendants' filing—that the State relies only on Rule 32(a)(3). Under that rule, "[a]n adverse party may use for any purpose" a deposition of another party without regard to the party's availability. Fed. R. Civ. P. 32(a)(3). This includes depositions of 30(b)(6) designees and "managing agent[s]." *See id.*

Davies and Guadian were Defendants' 30(b)(6) designees, thus their depositions are plainly permitted. And Ortiz and Price, as the heads of Border Patrol and ERO, were both managing agents at the time of their depositions. *See Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-civ, 2008 WL 4487679, at *2 (S.D. Fla.

7

Sept. 29, 2008) (noting that "courts focus on whether the person had power regarding the matters at stake in the litigation and whether the person's interests are still aligned with the corporation" to determine whether a person is a managing agent and collecting authorities); *accord Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). Defendants do not argue otherwise. In fact, they sought to prevent the deposition of Price because he is the official tasked with "managing *all* aspects of the immigration enforcement process." Doc. 75 at 10.

Rather than contest that these four depositions fall within Rule 32(a)(3), Defendants appear to assume that some abstract "preference for live testimony" trumps the "any purpose" language in Rule 32(a)(3). Doc. 120 at 19. Defendants, however, cite no case reaching that conclusion. And it is black letter law that a court applying Rule 32(a)(3) "may not refuse to allow the deposition to be used merely because the party is available to testify in person." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2145 (3d ed. 2022); *accord Jenkins v. Corizon Health Inc.*, No. CV418-099, 2022 WL 332383, at *1 (S.D. Ga. Feb. 3, 2022) ("Courts in this circuit have held that Rule 32(a)(3) permits use of a corporate designee's deposition testimony regardless of the adversary's availability to testify at trial." (quotations omitted)).

V. **DEFENDANTS' REQUESTS TO EXCLUDE PORTIONS OF DEPOSITIONS ARE VAGUE, PREMATURE, AND MERITLESS.**

Defendants also move to exclude "certain deposition testimony provided by Raul Ortiz and Corey Price" based on lack of foundation. Doc. 120 at 21.[4]

As a threshold matter, Defendants' motion should be rejected as premature. Defendants do not identify specific deposition testimony to which they object. *See Southpoint Condo. Ass'n v. Lexington Ins. Co.*, No. 19-cv-61365, 2020 WL 3547028, at *4 (S.D. Fla. Jun. 30, 2020) ("[A] district court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded." (quotations omitted)). Rule 26(a)(3)(B) contemplates that the parties file objections to deposition excerpts 14 days after the due date for pre-trial disclosures. Defendants should file their objections on December 23. Presumably Defendants will be more specific in those objections, and the Court can deal with them in due course.

Should the Court rule on the substance of Defendants' objections at this juncture, the result is the same. To begin, to the extent Defendants identify specific testimony at all, Defendants did not preserve objections to that testimony. Defendants identify two portions of testimony. *See* Doc. 120 at 23 (citing Doc. 85-

---

[4] Defendants also mention a hearsay objection, but they identify no statement that might qualify as hearsay.

13 at 130–33 (Ortiz) and Doc. 95-20 at 53–70 (Price)[5]). Defendants, however, did not preserve an objection in either portion. Counsel for Defendants merely stated the word "objection," and "[s]imply saying 'objection' does not tell the other party what is wrong with the question's form [and] cannot preserve a form objection." *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21-cv-186, 2022 WL 610358, at *3 n.4 (N.D. Fla. Jan. 27, 2022); *see* Fed. R. Civ. P. 32(d)(3)(B).

Additionally, the statements in the cited testimony have a proper foundation. Defendants object to Ortiz's testimony regarding "possible causes for migration" and "migrants' perception of United States' immigration policy." Doc. 120 at 22–23. But Ortiz based his testimony on his "31 years of experience" and "experience as a Border Patrol agent." Doc. 95-20 at 53, 59. Defendants cannot seriously contend that the head of Border Patrol lacks personal knowledge on these issues.

While Defendants assert a foundation objection under Rule 602, they allude to opinion objections under Rules 701 and 702. Doc. 120 at 23. Those objections, too, lack merit. First, Ortiz testified to facts, not opinions. He said that "from [his] experience . . . aliens ha[d]" an "unfavorable view of Trump's immigration policies." Doc. 95-20. And he said that "in [his] experience, we have seen increases [in border traffic] when there are no consequences." Doc. 95-20 at 171. Second, even

---

[5] While Defendants reference Doc. 95-10 at 34–51, *see* Doc. 120 at 23, this is a miscite. It appears that Defendants intended to cite Doc. 95-20 at 34–51 (transcript pages 53–70).

if these statements were opinions, they would qualify as permissible lay opinions. Rule 701 allows a lay opinion if it reflects "particularized knowledge gained from . . . personal experiences." *See United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011). Any opinions offered by Ortiz were predicated on his particularized knowledge and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Defendants' issues with Price's testimony are similar. Defendants assert that Price's testimony on numerous issues lacks a proper foundation. Price is head of the ERO component of ICE, has been with ICE for decades, and in his current role is entrusted with "managing *all* aspects of the immigration enforcement process." Doc. 75 at 10. He made clear that his testimony was based on his own experiences. He testified, for example, that "past experience" tells him that "some number of aliens that are included in this parole population are going to commit crimes." Doc. 83-13 at 130. He also testified that the costs associated with these crimes are paid by the States, and he said "that's been the way our immigration system has worked for as long as I've been in this job." Doc. 85-13 at 131.

Further, to the extent Price lacked a foundation, he said so. *E.g.*, Doc. 85-13 at 131 ("I don't know the state funding mechanism for that."); *id.* ("I don't know the . . . qualifications for Medicaid myself."). The Court need not exclude these statements because his answers accurately reflect the extent of his personal

11

knowledge, and the parties should trust the Court to give these statements their appropriate weight.

Finally, as Defendants have emphasized in their motions, these witnesses will be available at trial and may offer clarifying testimony to the extent Defendants or the Court wish to probe their personal knowledge further.

## CONCLUSION

For these reasons, this Court should deny Defendants' motions in limine.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Joseph E. Hart (FBN 124720)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Karen Brodeen (FBN 512771)
SPECIAL COUNSEL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

# CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this response contains 2,684 words.

## CERTIFICATE OF SERVICE

I certify that on December 9, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ James H. Percival*
Deputy Attorney General
