# EXHIBIT "A"

#19311

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
'85 JUN 11 PM 2 08
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF ALA.

FILED
JUN 11 1985
CLERK
U.S. DIST. COURT
MIDDLE DIST. OF ALA.
DEPUTY CLERK, BY

CHARLES SMITH, CAROL P. ZIPPERT, RAYMOND AUSTIN, VESELEE JACKSON, WALTER JACKSON, CARRIE FULGHUM, MARSHAL BEASLEY, PRINCE ARNOLD, and REV. MATTHEW BARBER, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

EDWIN W. MEESE III, Attorney General of the United States, WILLIAM BRADFORD REYNOLDS, Acting Associate Attorney General, STEPHEN S. TROTT, Assistant Attorney General, JOHN C. BELL, U.S. Attorney for the Middle District of Alabama, FRANK W. DONALDSON, U.S. Attorney for the Northern District of Alabama, JEFF B. SESSIONS III, U.S. Attorney for the Southern District of Alabama,

Defendants.

Civil Action No. 85-H-752 - N

COMPLAINT

I. INTRODUCTION.

This is a civil action for declaratory and injunctive relief pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, as well as the First, Fifth, and Fifteenth Amendments to the U.S. Constitution. The plaintiffs, Charles Smith, Carol P. Zippert, Raymond Austin, Veselee Jackson, Walter Jackson, Carrie Fulghum, Marshal Beasley, Prince Arnold, and Rev. Matthew Barber, sue on behalf of themselves and a class of black registered voters in the "Black Belt" counties of Greene, Lowndes, Perry, Sumter, and Wilcox. The defendants include the Attorney General of the United States,

officials of the U.S. Department of Justice, and the U.S Attorneys within this state. Plaintiffs charge that the defendants are engaged in a concerted effort to unlawfully interfere with black citizens' associational and political activities in Alabama's "Black Belt" and discourage Alabama's black citizens from exercising their right to vote. In particular, defendants have: (a) adopted a policy of subjecting black civil rights activists to federal criminal investigation and prosecution solely because they are active in efforts to increase black voter registration and turnout; (b) acted in concert with local white public officials, including judicial and law enforcement officers, in pursuing this policy; (c) ignored numerous complaints and other sources of information concerning electoral fraud and intimidation in which white public officials and private citizens have engaged, while initiating criminal investigations of black political leaders and activists alleged to have committed such offenses; and (d) intentionally caused or knowingly permitted criminal investigations of black leaders and activists to be conducted, and to continue to be conducted, in an intimidating and harassing manner calculated to interfere with the associational and political activities of black citizens and to discourage black citizens from exercising their right to vote.

## II. JURISDICTION.

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343.

III. PARTIES.

A. Plaintiffs.

2. Plaintiff Charles Smith is a black citizen and registered voter of the State of Alabama who resides in Lowndes County, Alabama. Mr. Smith is a county commissioner of Lowndes County, an office to which he intends to seek reelection.

3. Plaintiff Carol P. Zippert is a black citizen and registered voter of the State of Alabama who resides in Greene County, Alabama. Ms. Zippert is the chairman of the Greene County Board of Education and president of West Alabama Community College.

4. Plaintiff Raymond Austin is a black citizen and registered voter of the State of Alabama who resides in Greene County, Alabama. Mr. Austin ran for the city council of Eutaw in the past three elections and intends to seek election to public office in Greene County again.

5. Veselee Jackson is a black citizen and registered voter of the State of Alabama who resides in Perry County, Alabama.

6. Walter Jackson is a black citizen and registered voter of the State of Alabama who resides in Perry County, Alabama.

7. Carrie Fulghum is a black citizen and registered voter of the State of Alabama who resides in Sumter County, Alabama. Ms. Fulghum is a member of the city council of Gainesville, Alabama, located in Sumter County.

8. Marshal Beasley is a black citizen and registered voter of the State of Alabama who resides in Sumter County, Alabama. Mr. Beasley intends to seek election to public office in Sumter County.

9. Prince Arnold is a black citizen and registered voter of the State of Alabama who resides in Wilcox County, Alabama. Mr. Arnold is the Sheriff of Wilcox County, an office to which he intends to seek reelection.

10. Rev. Matthew Barber is a black citizen and registered voter of the State of Alabama who resides in Wilcox County, Alabama.

B. Defendants.

11. Edwin W. Meese III is the Attorney General of the United States. As Attorney General, defendant Meese participates in setting policy for the U.S. Department of Justice. He has supervisory control over the other defendants in this action.

12. William Bradford Reynolds is the Acting Associate Attorney General of the United States and an Assistant Attorney General. Defendant Reynolds participates in setting policy for the U.S. Department of Justice. As Assistant Attorney General, he oversees the operations of the Civil Rights Division of the U.S. Department of Justice. As Acting Associate Attorney General and as Assistant Attorney General, defendant Reynolds exercises supervisory control over the referral of matters from the Voting Section of the Civil Rights Division to the Election Crimes Branch within the Criminal Division of the U.S. Department of Justice.

13. Stephen S. Trott is an Assistant Attorney General of the United States. He participates in setting policy for the U.S. Department of Justice. As Assistant Attorney General, he oversees the operations of the Criminal Division of the U.S. Department of

Justice. Along with defendant Meese, he exercises supervisory control over defendants Bell, Donaldson, and Sessions.

14. Defendant John C. Bell is the U.S. Attorney for the Middle District of Alabama. As U.S. Attorney, he supervises the federal investigation of electoral fraud and intimidation in Lowndes County, Alabama.

15. Defendant Frank W. Donaldson is the U.S. Attorney for the Northern District of Alabama. As U.S. Attorney, he supervises the federal investigation of electoral fraud and intimidation in Sumter County, Alabama, and Greene County, Alabama.

16. Defendant Jeff B. Sessions III is the U.S. Attorney for the Southern District of Alabama. As U.S. Attorney, he supervises the federal investigation of electoral fraud and intimidation in Perry County, Alabama, and Wilcox County, Alabama.

17. All defendants, acting within the scope of their official responsibilities, are actively and knowingly engaged in the concerted effort described in this complaint.

IV. CLASS ACTION.

18. Plaintiffs bring this action on behalf of themselves and a class of all black registered voters in Greene, Lowndes, Perry, Sumter and Wilcox Counties.

19. The class that plaintiffs seek to represent is so numerous that joinder of all its members is impracticable; there are questions of fact and law common to the claims of the class; the claims of the named plaintiffs are typical of those of the class; and the named plaintiffs and their counsel will fairly and adequately protect the interests of the class. The defendants

have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

V. FACTS.

20. Defendants are all political appointees of the current Republican administration.

21. In recent years many white public officials and private citizens in counties located in Alabama's "Black Belt" have engaged in unlawful conduct designed to deny black voters equal access to the political process and to impair the ability of black voters to elect candidates of their choice.

22. This conduct has included: (a) encouraging and assisting large numbers of white voters to cast unlawful absentee ballots for white candidates or black candidates slated by white political organizations; (b) unlawfully coercing black voters to cast absentee ballots for white candidates or for black candidates slated by white political groups; (c) unlawfully withholding absentee ballots from black voters; (d) unlawfully failing to count absentee ballots cast by blacks; (e) encouraging and assisting widespread intimidation of black voters both before and on the day of elections; (f) unlawfully coercing their black employees, tenants, and clients to vote for white candidates or for black candidates slated by white political groups; (g) buying votes; (h) voting in more than one county; (i) interfering with the operations of voting centers located in predominantly black precincts by, among other things, causing election officials to

fail to appear at the polling place, tampering with voting machines, withholding needed paper ballots, interfering with voter-assistance efforts, denying black voters the opportunity to cast challenged ballots, and thwarting the efforts of black poll watchers; and (j) engaging in conduct violative of the Hatch Act.

23. Federal authorities have for years been aware of this unlawful conduct.

24. The unlawful conduct described in paragraphs 21 and 22 is of a sort, or was committed in such a way, that it violates federal criminal law.

25. For years black citizens in Alabama's "Black Belt" have complained to representatives of the federal government, including defendant Reynolds, about unlawful efforts to interfere with the exercise of their right to vote.

26. Black citizens continue to complain to representatives of the federal government, including defendant Reynolds, about electoral fraud and intimidation committed by white public officials and private citizens.

27. Representatives of the federal government, including defendant Reynolds, also have been made aware of electoral fraud and intimidation committed by white officials and citizens through the federal government's monitoring of elections in Alabama's "Black Belt."

28. The conduct described in paragraphs 21 and 22 has had the effect of denying black citizens equal access to the political process and of impairing the ability of black voters to elect candidates of their choice.

29. Defendants have deliberately failed to initiate

investigations of election crimes committed by white public officials and private citizens.

30. In recent years black voters in Alabama's "Black Belt" counties, including the counties of Greene, Lowndes, Perry, Sumter, and Wilcox, have succeeded in electing minority candidates to certain state, county, and municipal political offices. However, black voters are still struggling to elect minority candidates to many other such offices. In addition, black voters are struggling to maintain the electoral successes they have already achieved.

31. In Alabama's "Black Belt," there has been, and continues to be, substantial white resistance to the election of black candidates to state, county, or municipal office and to the sharing of political power with black citizens.

32. White officials and private citizens who continue to resist efforts by blacks to obtain political representation and a fair share of political power in the "Black Belt" tend to vote in elections for national office for candidates of the Republican Party.

33. Blacks in the "Black Belt" vote in the main for candidates of the Democratic Party.

34. After ignoring for years complaints and other information about fraud and intimidation in which whites have engaged to thwart black representation and political power in the "Black Belt," defendants in 1984 initiated major investigations of black political leaders and activists alleged to have committed election crimes in the counties of Greene, Lowndes,

Perry, Sumter, and Wilcox.

35. The alleged crimes that are the subject of these federal investigations are no different in kind or in degree than the offenses, described in paragraphs 21 and 22, in which white officials and citizens have engaged and continue to engage in the course of elections in the "Black Belt," and of which representatives of the federal government, including defendant Reynolds, have been aware.

36. Defendants initiated the investigations described in paragraph 34 based on little more than rumor.

37. Defendants have deliberately pursued, and are deliberately pursuing, a discriminatory policy of ignoring complaints and other sources of information about unlawful electoral conduct in which white public officials and private citizens in the "Black Belt" have engaged, while at the same time initiating major investigations of alleged electoral offenses supposedly committed by black citizens.

38. Defendants have deliberately focused the federal investigations on widely known and well-respected black leaders and activists.

39. These leaders and activists are in large part responsible for the dramatic increase in the number of black citizens who have registered to vote and have in fact voted in the "Black Belt."

40. These leaders and activists are associated with organizations that have undertaken successful efforts to identify and promote the election of candidates who are concerned with the needs of black citizens and, conversely, to identify and defeat

candidates who are unsympathetic to blacks citizens' needs.

41. The criminal investigations initiated by defendants coincided with the 1984 national elections, in which voter turnout among blacks was expected to have a major impact.

42. The criminal investigations initiated by defendants also coincided with, and directly resulted from, changes in the U.S. Department of Justice's pre-existing policies regarding the prosecution of election crimes.

43. Before 1984 the federal government conducted election crime investigations almost exclusively for the purpose of protecting the integrity of federal elections.

44. Federal guidelines governing election crime investigations place a very low priority on what are known as "category 3" offenses (offenses that are part of a pattern of abuse in mixed federal-state elections in which the crime in question cannot be shown to have adversely affected the vote count of the federal election) and the federal government before 1984 conducted very few investigations of offenses in this category.

45. Before 1984 it was also the policy of the federal government to defer to local authorities in matters involving offenses with little, if any, potential for adversely affecting federal contests.

46. The investigations of black leaders and activists, described in paragraph 34 involve alleged offenses that: (a) only relate to contests for local office; (b) implicate an exceedingly small number of votes; and (c) were isolated, had no potential

adverse impact, and in fact had no adverse impact upon the outcome of the contests.

47. Sometime in the summer of 1984, officials of the U.S. Department of Justice, including defendants Reynolds and Trott, devised a new policy for federal investigations of election offenses, which was announced in a release dated September 27, 1984. Under this policy, federal officials would begin to investigate and prosecute "political participants" who "seek out the elderly, socially disadvantaged, or the illiterate, for the purpose of subjugating their electoral will" or under whose "watchful eye" a voter happened to "mark his or her ballot." According to the U.S. Department of Justice's manual on election crimes, the policy is aimed at persons who "exploit ... the franchise of ... socially dependent voters."

48. Explicitly using racial criteria, the U.S Department of Justice targeted for investigation under this policy only Alabama "Black Belt" or other Southern majority-black counties.

49. All investigations initiated pursuant to the Department's new policy have been of black civil rights leaders and activists.

50. In selecting the majority-black counties in which investigations would be initiated, the Department has placed a high priority on counties in which complaints have been made by local white officials and would-be officials opposed by the black majority.

51. The Department's new policy invidiously singles out for investigation and prosecution persons engaged in free expression and political advocacy designed to influence or change the minds

of ("exploit" the voting power of) the poor, the elderly, and the socially disadvantaged.

52. The Department's new policy invidiously singles out for investigation and prosecution persons who engage in voter-assistance activities that are explicitly protected by federal law and that are necessary to overcome the effects of prior discrimination in voting and education.

53. The authors of the policy, including defendants Reynolds and Trott, intended the policy's references to poor, elderly, and socially disadvantaged voters to be understood as references to black voters, and defendants have applied the policy consistent with this interpretation.

54. The policy, and the resulting conduct complained of in this suit, perpetuates the effects of prior unlawful discrimination.

55. The investigations initiated by defendants in Greene, Lowndes, Perry, Sumter, and Wilcox counties, described in paragraph 34, were launched pursuant to the above-described policy.

56. The investigations in these counties have not yet concluded.

57. Defendants have intentionally caused, or have knowingly permitted, the investigations in Greene, Lowndes, Perry, Sumter, and Wilcox counties to be conducted in a manner that improperly interferes with the associational and political activities of black citizens and that is calculated to discourage poor, elderly, and socially disadvantaged blacks from exercising their

right to vote.

58. Agents of the federal government have knowingly and intentionally structured these investigations as witchhunt-type probes of constitutionally and statutorily protected political advocacy and association, voting behavior, and voter-assistance activities.

59. Acting beyond the proper scope of their investigation, agents of the federal government have intensively and abusively interrogated poor, elderly, socially disadvantaged, and often frightened, black voters concerning the membership, finances, and activities of political organizations of which they are members or with which they are affiliated.

60. Agents of the federal government have suggested to poor, elderly, and socially disadvantaged black voters, as well as other black citizens, that various constitutionally protected activities in which they and others have engaged amount to violations of federal or state criminal law.

61. Agents of the federal government have misinformed black voters concerning their eligibility to cast absentee ballots and have implied that these voters might face criminal charges if they again vote absentee.

62. Agents of the federal government have told black citizens whom they have questioned not to discuss the substance of their conversations with federal agents with others, including attorneys for the black leaders and activists who are targets of the federal investigations.

63. Agents of the federal government, without first obtaining the permission of a federal court and the approval of

the Public Integrity Office of the U.S. Department of Justice, have caused absentee ballots to be marked in a manner that enabled public authorities to identify the candidates for whom particular persons voted.

64. Agents of the federal government, without first obtaining the permission of a federal court and the approval of the Public Integrity Office of the U.S. Department of Justice, have seized, or caused local law enforcement agencies to seize, ballots cast in local elections.

65. The federal investigations were initiated and carried out in violation of the U.S. Department of Justice's guidelines for the conduct of investigations relating to elections that prohibit federal investigations from interfering with or becoming issues in elections, forbid the commencement of investigations until the conclusion of the election, and require that any actions taken with regard to securing custody over or marking ballot materials be authorized by a federal court and be formally approved by officials in the Public Integrity Office of the U.S. Department of Justice.

66. The federal investigations began before the September 1984 primary, became widely known after the primary and before the general election, and became an issue in the general election.

67. The investigations caused a decline in black voting in the 1984 general election.

68. Defendants' conduct is intended to obtain indictments and convictions of black leaders and activists in the "Black

Belt," including the counties of Greene, Lowndes, Perry, Sumter, and Wilcox, to punish them for and to discourage plaintiffs and the plaintiff class from engaging in associational and political activities that are anathema to the white citizens of this area.

69. Defendants do not expect to develop strong cases against the black leaders and activists under investigation.

70. Nonetheless, defendants anticipate obtaining indictments and criminal convictions of these leaders and activists because their cases will be submitted to federal juries all or most of the members of which will be white. As defendants know, white jurors will be inclined to indict and to convict the leaders and activists under investigation solely because these blacks have engaged in activities of which the jurors disapprove.

71. Defendants know that local juries in the "Black Belt," which unlike federal juries would be composed predominantly of black citizens, would be unlikely to permit invidious racial considerations to affect their deliberations.

72. The purpose and effect of defendants' conduct is to interfere with associational and political activities of black citizens and to discourage black voters from exercising their right to vote.

73. The purpose and effect of defendants' conduct is to punish black voters for their support of candidates of the Democratic Party, to reward whites for their support in elections for national office of candidates of the Republican Party, and to encourage whites to continue their support of such candidates.

74. The defendants initiated the criminal investigations described in paragraph 34 partly at the behest of white

public officials in the "Black Belt" whose candidacies were opposed by black poltical organizations.

75. Defendants initiated these criminal investigations after white local officials were unsuccessful in obtaining indictments and convictions of several of the black leaders and activists who are now targets of federal investigations.

76. Local white public officials, including district attorneys, probate judges, sheriffs, police chiefs, circuit clerks, and circuit judges, as well as their employees and agents, have worked in concert with agents of the federal government in carrying out the federal investigations.

77. These public officials have conspired with defendants to accomplish the unlawful ends complained of in this suit and have used their public positions to encourage and assist defendants in the unlawful conduct described herein.

## VI. CAUSES OF ACTION.

### Count I
### (42 U.S.C. §1983)

78. Plaintiffs restate the allegations set forth in paragraphs 1-77.

79. In carrying out the illegal conduct described above, defendants have conspired with or acted in concert with public officials who hold state, county, or municipal office in the State of Alabama.

80. Defendants, in conspiracy with or in concert with public officials acting under color of state law, have caused plaintiffs and members of the plaintiff class to be subjected to, and

continue to cause them to be subjected to, deprivations of rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States, in violation of 42 U.S.C. §1983.

Count II
(42 U.S.C. §1985)

81. Plaintiffs restate the allegations set forth in paragraphs 1-77.

82. Defendants have conspired, and continue to conspire, for the purpose of depriving plaintiffs and members of the plaintiff class of equal protection under the law and for the purpose of preventing plaintiffs and class members, by intimidation or threats, from supporting candidates of the Democratic Party for national office, thereby causing injury to plaintiffs and class members, in violation of 42 U.S.C. §1985(3).

Count III
(Direct Action Under the First Amendment)

83. Plaintiffs restate the allegations set forth in paragraphs 1-77.

84. By their conduct, defendants have violated, and continue to violate, rights secured to plaintiffs and to members of the plaintiff class by the First Amendment to the U.S. Constitution.

Count IV
(Direct Action Under the Fifth Amendment)

85. Plaintiffs restate the allegations set forth in paragraphs 1-77.

86. By their conduct, defendants have violated, and continue to violate, the right to equal protection secured to plaintiffs

and to members of the plaintiff class under the Fifth Amendment to the U.S. Constitution.

Count V
(Direct Action Under the Fifteenth Amendment)

87. Plaintiffs restate the allegations set forth in paragraphs 1-77.

88. By their conduct, defendants have violated, and continue to violate, rights secured to the plaintiffs and to members of the plaintiff class under the Fifteenth Amendment to the U.S. Constitution.

VII. RELIEF.

WHEREFORE, plaintiffs pray that the Court grant them relief as follows:

a. Certify a plaintiff class in this action.

b. Issue injunctive and corresponding declaratory relief directing defendants to: (i) cease enforcement of the discriminatory policies described above; and (ii) initiate and carry out investigations of alleged election crimes in a nondiscriminatory fashion.

c. Award plaintiffs the costs of this suit and reasonable attorneys' fees.

d. Grant such other or different relief as the Court deems just and proper.

Respectfully submitted,

IRA A. BURNIM
DEBORAH A. ELLIS
DENNIS S. SWEET
P.O. Box 2087
400 Washington Ave.
Montgomery, Alabama 36102
(205) 264-0286

NEIL BRADLEY
LAUGHLIN MCDONALD
Suite 355
52 Fairlie Street, N.W.
Atlanta, Georgia 30303
(404) 523-2721
SOUTHERN REGIONAL OFFICE OF
THE ACLU FOUNDATION

ATTORNEYS FOR THE PLAINTIFFS