UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**STATE OF FLORIDA**,

    **Plaintiff**,

v.                                      Case No. 3:21cv1066-TKW-EMT

**UNITED STATES OF AMERICA**,
et al.,

    **Defendants**.
_____/

## ORDER DENYING STAY

This case is before the Court based on Defendants' emergency motion to stay (Doc. 163).[1] No response is necessary as the motion is borderline frivolous.[2]

---

[1] The same motion requested a stay of the temporary restraining order (TRO) entered last week in Case No. 3:23cv9962. That request remains under advisement and will be ruled on in due course.

[2] Florida filed a response (Doc. 164) after the Court put this Order in the internal folder to be posted. The Court has not reviewed the response, but it will do so when ruling on the motion in Case No. 3:23cv9962. That, however, will not occur until Monday because the Court has already wasted more than half of this beautiful Saturday in Pensacola dealing with the motion in this case and it does not intend to waste the rest of Saturday (or Mother's Day Sunday) dealing with the motion in Case No. 3:23cv9962. The Court did not overlook Defendants' threat to seek relief in the Eleventh Circuit if the Court does not grant its motion by Monday at 2:00 p.m., but Defendants do not get to dictate when the Court rules. The Court understands that it needs to rule quickly (and it will do so, as it has done with every other filing in these cases), but these cases are not death penalty cases that require 24/7 attention or immediate rulings and it is unreasonable for Defendants to expect a ruling before the close of business Monday because they had all day Friday to file a motion to stay in Case No. 3:23cv9962, but they waited until nearly midnight eastern time to do so.

Florida filed suit against Defendants (collectively "DHS") in September 2021, challenging DHS's policy of not detaining aliens arriving at the Southwest Border as required by 8 U.S.C. §1225(b). DHS's policy evolved as the case progressed, and by the time the case went to trial in January 2023, the two policies at issue were the "Parole+ATD policy" and a somewhat-amorphous "non-detention policy." The Court had no trouble finding that both policies were contrary to the immigration laws (it was not even close),³ but the Court concluded that only the Parole+ATD policy could be vacated because the non-detention policy was not a discrete "agency action" subject to judicial review. *See* Doc. 157.

The Order vacating the Parole+ATD policy was issued more than 60 days ago, on March 8, 2023. The judgment (Doc. 158) was entered the same day, but was stayed for 7 days to allow DHS to seek appellate review. *See* Doc. 157 at 109 (¶4). DHS did not appeal during that period and, instead, it waited until late in the afternoon of May 5, 2023—the next to last business day of the appeal period—to file a notice of appeal. *See* Doc. 159. DHS did not immediately seek a stay pending appeal, but rather it waited another full week—until 10:36 p.m. CDT on May 12, 2023—to file its "emergency motion" for a stay.

---

³ In short, the Court found that the immigration laws clearly and unambiguously <u>mandate</u> detention of aliens arriving at the border and rejected DHS's argument that it had the discretion to release aliens into the country without at least initiating removal proceedings against them simply because there is not enough space (or money) to detain all arriving aliens.

In ruling on a motion for a stay pending appeal, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)). "The first two factors … are the most critical." *Nken*, 556 U.S. at 434.

Here, none of the factors weigh in favor of granting a stay, but DHS's 65-day delay in seeking a stay undercuts any claim that it will be irreparably harmed absent a stay. That alone is enough to justify denying the "emergency" stay request. But there is more—the affidavit filed by DHS in support of its motion represents that DHS stopped using the Parole+ATD policy on January 2, 2013, two months before the Court vacated the policy. *See* Doc. 163-1 at 2 (¶4). If that is true,[4] then it defies credibility for DHS to claim that the Order vacating the Parole+ATD policy needs to be stayed pending appeal.

---

[4] The Court does not recall DHS's counsel informing the Court at the trial in this case or in their post-trial filings that DHS had already stopped using the Parole+ATD policy, which is troubling to say the least.

3

The Court did not overlook DHS's argument that the practical effect of the Order in this case is that it cannot use the Parole+ATD policy to deal with the surge of aliens seeking entry into the country now that the Title 42 Order has expired. The Court finds this argument unpersuasive for two reasons.

First, the affidavit attached to the motion indicates that DHS planned to use a different policy ("Parole with Conditions") to deal with the post-Title 42 Order surge. There is no indication in DHS's filings in this case or the case challenging the Parole with Conditions policy (Case No. 3:22cv9962) that it had or has any intention to use the Parole+ATD policy in addition or in lieu of the Parole with Conditions policy.

Second, DHS's Chicken Little arguments about the impact of it not being able to (mis)use "parole" under either policy as a processing tool for the surge of aliens arriving at the border are hard to square with the DHS Secretary's recent comments that only "a fraction of the people that we encounter" would be paroled into the country and that "the vast majority will be addressed in our border patrol facilities and our ICE detention facilities."[5] Either the Secretary was not being truthful (or

---

[5] These comments were reported in the NBC news article referenced in the complaint in Case No. 3:23cv9962, which described the policy challenged in that case. *See* https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-trackrcna83704 (May 10, 2023, 8:44 a.m. CDT).

4

maybe he was misquoted) or DHS's inability to use "parole" as a processing pathway is not as big of a deal as Defendants are now making it.[6]

Moreover, even if DHS had shown that it will be irreparably harmed if the Order vacating the Parole+ATD policy is not stayed, DHS has not shown that it is likely to prevail on the merits of its appeal. On that issue, DHS argues that its only needs to show that it has a "substantial case on the merits" (rather than the normal "strong showing" of a likelihood of success on appeal) "because the balance of equities so overwhelmingly favors the government," Doc. 163 at 11 (citing *LabMD, Inc. v. Federal Trade Comm'n*, 678 F. App'x 816, 819 (11th Cir. 2016)), but for the same reason that DHS has not shown that it will be irreparably harmed if a stay is not granted, it has not shown that the balance of equities weighs in its favor. However, even if the lesser standard applies, the Court finds that DHS has not met it because although DHS identifies a number of issues on which it claims that it is likely to prevail on appeal, *see* Doc. 163 at 12-15, the Court finds that DHS is unlikely to succeed on any of those issues for the same reasons that the Court rejected those arguments in the Order vacating the Parole+ATD policy.

---

[6] Given what the evidence in this case showed about DHS's excessive number of releases under the Parole+ATD policy that, on its face, said it was only to be used "sparingly," see Doc. 157 at 87-88 n.30, 98-99, the Court expresses a healthy degree of skepticism about the veracity the Secretary's comments. But because he is the ultimate boss of DHS, the Court also has reason to question the veracity of statements in the affidavit submitted by a lower-level DHS bureaucrat.

Indeed, in the Court's view, the merits on the Parole+ATD policy are not even close. That policy purports to implement 8 U.S.C. §1182(d)(5), but the authority provided by that statue is extremely narrow—it only authorizes DHS to release arriving aliens from custody "temporarily … only on a case-by-case basis for urgent humanitarian reasons or significant public benefit" and it requires the alien to be "returned to custody" "forthwith" "when the purposes of such parole … have been served." That statutory language does in any way shape or form authorize "parole" to be used as it was in the Parole+ATD policy—i.e., as a "processing pathway" that facilitated the release of hundreds of thousands of aliens into the country without even initiating formal immigration proceedings merely for sake of administrative expediency. *See* Doc. 157 at 88-95 (explaining why the Parole+ATD policy is contrary to law).

The Court understands that Defendant think that its rulings are "sabotaging" DHS's efforts to deal with the surge of aliens into the country after the expiration of the Title 42 Order.[7] However, as explained in the TRO entered last week in Case No. 3:22cv9962, DHS has known that this surge was coming for quite some time

---

[7] This ignorant (and dangerous) rhetoric ignores the fact that the evidence presented in this case showed that the "chaos" that the President recently acknowledged has been going on at the Southwest Border "for a number of years" is largely a problem of Defendants' own making because they effectively incentivized the "irregular migration" that has been ongoing since early 2021 through the adoption and implementation of immigration policies that prioritized "alternatives to detention" over actual detention. *See* Doc. 157 at 21-22. Moreover, if it is "sabotage" for a federal court to tell the federal government that it must comply with the law—or at least that it cannot misuse the limited parole authority provided by Congress—then so be it.

and it has known since early March that it would not be able to use the Parole+ATD policy (or anything like it) to deal with the surge. Thus, the situation DHS now finds itself in is effectively one of its own making.

Accordingly, for the reasons stated above, it is **ORDERED** that Defendants' emergency motion to stay (Doc. 163) is **DENIED**.

**DONE and ORDERED** this 13th day of May, 2023.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**